# **EXHIBIT 1**



10240 Old Columbia Road
Columbia, MD 21045
www.unityscientific.com

September 24, 2008

Arnold Eilert
405 High Street
Wauconda, IL 60084

Dear Arnold:

I am writing to offer you a position as Applied Technology Manager with Unity Scientific, LLC. This position involves designing software and programming and assisting with other related tasks as needed. This position requires execution of a Confidentiality and Non-Competition Agreement, a copy of which is attached and may require a significant amount of travel.

The salary for this position is $90,000.00 per year. In addition, other benefits available through Unity Scientific, LLC include:

    (a)    Group Health Insurance: Unity will offer a group health insurance plan. Unity will covers 100% of employee's premium and makes dependent coverage available at employee's cost.
    (b)    401(k) Plan with matching
    (c)    Short-term Disability Coverage at employee's cost
    (d)    Paid vacation based on term of service

Should you accept this position, you will be credited for your years of service with Unity Scientific, Inc. for purposes of eligibility for Unity Scientific, LLC's benefit programs and paid vacation and any accrued but unused vacation days from 2008 will carry over. Your date of hire with Unity Scientific, Inc. was ~~07/21/03~~ 01/02/03.

This offer of employment will remain open for 10 days from the date of this letter. If you accept the terms of this offer, please sign and return a copy of this letter before the expiration of that time.

I am looking forward to your positive response. .

Kind regards,

*[signature]*

Joseph Platano
Unity Scientific, LLC

Accepted by,

*[signature]*

Arnold Eilert

## CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

This Confidentiality and Non-Competition Agreement (this "Agreement") is made as of the 30 day of September, 2008 by and between UNITY SCIENTIFIC, LLC, a Maryland Limited Liability Company ("Company") and Arnold Eilert, a resident of Illinois ("you").

### WITNESSETH:

**WHEREAS**, you are currently or hereafter will be seeking employment from Company;

**WHEREAS**, during the course of your employment by Company, you have or will have access to certain confidential and proprietary information of Company and Company's clients;

**WHEREAS**, Company's and its clients' confidential and proprietary information is highly valuable and its disclosure would cause serious or irreparable harm to Company and its clients; and

**WHEREAS**, you agree to protect confidential and proprietary information of Company and its clients on the terms and conditions set forth herein.

**WHEREAS**, you understand that employment with Company is contingent upon execution of this Confidentiality and Non-Competition Agreement.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, you and Company covenant and agree as follows:

1. **Confidential Information.**

A. Definition. "Confidential Information" means all confidential and proprietary information of Company and its clients, whether or not such information is protected by statute, common law, proprietary rights, or otherwise, and including, without limitation: names, addresses, contact persons, purchasing histories and prices, credit standing and other information relating to Company's clients or prospective clients and their personnel; current, past, potential or prospective prices, costs, profits, markets, products, and innovations; business expansion plans, including business development; internal practices and procedures; trade secrets; technologies, developments, inventions or improvements; and any other information relating to the business of Company or its clients, including, without limitation, information related to detection systems operating in the range from Ultra Violet through Infra Red, and/or any similar or related products, inventions or improvements which employ discrete testing technology or any other detection systems either developed or acquired by Company. Notwithstanding the foregoing, Confidential Information shall not include information that is generally known to the public; provided, however, that such general knowledge was not obtained by your act or omission.

Initial                                                                                                                 Company

B.      <u>Disclosure of Company's Confidential Information</u>.  As an employee of Company, you will learn and will have access to Confidential Information.  To the extent such Confidential Information is owned by Company, you acknowledge and agree that Company developed this Confidential Information at great expense, it is proprietary to Company and it is and shall remain the exclusive property of Company.  You further acknowledge and agree that the Confidential Information is highly valuable and proprietary to Company and that the disclosure of any such Confidential Information to third parties or the otherwise unauthorized use of the Confidential Information by you would cause Company serious or irreparable harm.  Accordingly, you agree not to, without the express, written consent of Company, either while engaged by Company as an employee or after such engagement, disclose, copy, make any use of, or remove from Company's premises the Confidential Information except as required in the performance of your duties and responsibilities to Company.  Upon your termination as an employee of Company, you shall immediately deliver to Company any Confidential Information and all copies thereof, whether in hard copy, computerized or other form, which you have in your possession or control.

C.      <u>Disclosure of Client's Confidential Information</u>.  As an employee of Company, you will also learn and will have access to Confidential Information belonging to Company's clients.  You agree not to, without the express, written consent of Company, either while engaged by Company or thereafter, disclose, copy, make any use of, or remove from Company's premises Confidential Information of Company's clients except as may be required in the performance of your duties and responsibilities as an employee of Company.

2.      **<u>Non-Compete and Non-Solicitation</u>**.  Company has developed and has acquired, at considerable expense, relationships with, and knowledge about, clients and prospective clients, which are very valuable to Company.  You have or may have substantial contact with many of these clients and prospective clients.  Therefore, to protect the value of Company's business, you agree not to, directly or indirectly, for a period of one (1) year from the date upon which your employment with Company is terminated for any reason and by either party, as the case may be, in any capacity whatsoever:

A.      compete with Company or any of its Affiliates (as defined below) in the Business (as defined below) within any geographic area in which Company and its Affiliates do Business (the "<u>Area</u>"), or perform any advisory or consulting services for, or directly or indirectly, own, manage, operate, finance, join, control, or participate in the ownership, management, operation, finance or control of, or be connected with, in any manner, any entity, business enterprise or operation engaged in design, manufacture, marketing, sale, licensing or research and development relating to the Business or related to those products, technologies, developments, inventions, improvements, or technical information associated with the Business; or

B.      solicit, sell to, divert, serve, contact, allow yourself to continue to be contacted and approached by, or accept consulting business from any client of Company or its Affiliates who you or anyone else affiliated with Company or its Affiliates handled, serviced or solicited during the twelve (12) month period immediately preceding your termination as an employee of Company, or

Initial                                                                                                                                 Company

Confidentiality and Non Competition Agreement
September 30, 2008
Page 3 of 6

from any active prospects of Company or its Affiliates that are handled, serviced or solicited by Company or its Affiliates during the twelve (12) month period immediately preceding your termination as an employee of Company; or

    C.    induce, attempt to influence, advise or encourage any client, customer, vendor, employee or representative of Company to terminate his, her or its relationship with Company; or

    D.    interfere with any of Company's contracts or relationships with any client or supplier.

Nothing in this Paragraph 2 shall prevent you from (1) working in the industry in a role which would not compete, directly or indirectly, with the Business or (2) acquiring an equity interest of less than five percent (5%) in a corporation whose shares are listed on a national securities exchange or regularly quoted in the over-the-counter market.

Furthermore, Company agrees that the only entities that will be considered competitors under the terms of this Agreement are the NIR and/or discrete divisions of the following entities, (including any of their successors or assigns):

1) FOSS

2) Perten Instruments

3) Bruker Optics

4) Buchi Laboratory Equipment

For the purposes of this Paragraph 2 the following terms shall have the meanings set forth below:

"Business" shall mean the design, development, manufacturing, marketing, distribution, sale and/or licensing of industrial and/or agricultural control instruments, monitors, or processes and/or any similar or related products, inventions or improvements, which employ NIR or discrete technology, and/or any similar or related products, inventions or improvements which employ discrete testing technology or any other detection systems either developed or acquired by Company.

"Affiliate" shall mean, with respect to any person or entity, any other person or entity, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with, such first mentioned person or entity. As used in this definition of Affiliate, the term *"control"* (including *"controlled by"*, or *"under common control with"*) means the possession, directly or indirectly, of the power to direct or cause the direction of the

Initial                                                      Company

management and policies of a person or entity, whether through ownership of voting securities, as trustee, by contract, or otherwise.

  E. In exchange for this covenant not to compete, Company agrees to pay you severance in an amount equal to four (4) months of your base salary, excluding all benefits, commissions, incentives, bonuses and expenses, of any kind. Severance will be paid over a period of one (1) year from the date upon which your employment with Company is terminated and paid in equal, quarterly installments.

  3. **Disclosure of Prior Agreements**. You represent that you have disclosed to Company any agreement, still in effect, which imposes any restrictions on you, which agreements, if any, are listed on Exhibit A attached hereto and made a part hereof. You represent that, except for those restrictions specifically disclosed on Exhibit A, you are not subject to any restrictions arising from any previous employment.

  4. **Non-Use of Third Party Confidential Information or Trade Secrets**. You further represent that you have not disclosed and shall not disclose to Company and have not used and shall not use on Company's behalf any trade secrets or other confidential and proprietary information belonging to a third party, without consent from that third party.

  5. **Development of Intellectual Property**. You agree that you will communicate to Company promptly and fully all inventions, creations, designs, writings, discoveries or improvements (the "Developed Property") conceived or reduced to practice by you, either alone or jointly with others, during the period of your employment by Company. You further agree that all Developed Property shall be considered works made for hire and thereby owned by Company; provided, however, that in the event that, by operation of law, a Developed Property cannot be considered a work made for hire, you agree to assign any and all right, title and interest you may have in the Developed Property to Company. In connection with such assignment you will assist Company or its nominees at any time and in any proper way in both securing protection for the Developed Property and preventing and defending infringement related to the Developed Property. Such assistance shall include, without limitation, (1) the execution of any documentation necessary to evidence Company's full rights in the Developed Property, (2) testimony, at Company's expense, evidencing the ownership of the Developed Property by Company and (3) execute a durable power of attorney appointing Company as your attorney-in-fact, to survive your incapacity or death, for the purpose of performing all acts necessary to further the prosecution and/or defense of intellectual property protection.

  6. **Remedies**. You recognize that your breach of this Agreement may give rise to irreparable injury to Company inadequately compensable in damages and, accordingly, agree that Company may seek and obtain and that you will consent to injunctive relief granted by a court of law against such breach or threatened breach, in addition to any other legal remedies which may be available, including the recovery of monetary damages from you. In any action successfully brought by Company against you to enforce the rights of Company under this Agreement, Company

_____                 _____
Initial                                                Company

shall also be entitled to recover from you its reasonable attorneys' fees and costs of the action, and the post-employment period of the restriction shall be deemed to commence upon the entry of the court's order for relief.

**7.     Reformation and Reasonableness of Terms.** In the event that the provisions of this Agreement should ever be deemed to exceed the time or geographic limitations or any other limitations permitted by applicable laws, then such provisions shall be deemed reformed to the maximum time or geographic limitations permitted by applicable law. You specifically acknowledge and agree that the foregoing restrictions are reasonable and necessary to protect the legitimate interests of Company to ensure that you do not engage in unfair competition with Company.

**8.     Miscellaneous.**

   A.     **Severability.** The invalidity or unenforceability of any provision of this Agreement shall not in any way affect the validity or enforceability of the remainder of any such provision or the remaining provisions of this Agreement. The parties intend that any such provision shall be severed from this Agreement and that this Agreement shall be construed in all respects as if such invalid or unenforceable provision had never been a part of this Agreement and shall be enforced to the fullest extent permitted by applicable law.

   B.     **Amendment.** This Agreement may not be altered or modified except by a writing signed by Company and you. No waiver of compliance with any provision or condition hereof, and no consent provided for herein shall be effective unless evidenced by an instrument in writing duly executed by the party against whom such waiver or consent is sought to be enforced.

   C.     **Assignment.** This Agreement shall be binding upon and inure to the benefit of your heirs, executors and administrators, and to the successors and assigns of Company. You may not assign or delegate any of your rights or obligations hereunder without the prior written consent of Company; any attempted assignment in violation of this Agreement shall be null and void.

   D.     **Governing Law.** This Agreement shall be governed in accordance with the laws of the State of Connecticut without regard to the conflicts of laws provisions of such state. You consent to the jurisdiction of the courts of the State of Connecticut.

   E.     **Counterparts.** This Agreement may be executed in one or more counterparts and all such counterparts shall constitute one and the same instrument.

   F.     **Heading.** The various headings in this Agreement are inserted for convenience only and are not part of this Agreement.

   G.     **No Implied Waivers.** Failure of either party to insist upon strict compliance with any part of this Agreement shall not be considered a waiver of such compliance and shall not

Initial                                                                                         Company

prevent either party from subsequently insisting upon strict compliance or from exercising its, his or her rights hereunder with respect to any past, present or future instances of non-compliance.

   H. <u>Employment Contingent Upon Execution</u>.  You acknowledge that you understand that your employment with Company is contingent upon your agreement to the terms of this Agreement as evidenced by your execution of same.

   **IN WITNESS WHEREOF**, the parties have made this Agreement effective as of the day and year first above written.

**UNITY SCIENTIFIC, LLC,**         **EMPLOYEE**

By: _____

Its  member   Date

NAME Arnold Eilert Date 09/30/08
ADDRESS 405 High St.
CITY, STATE ZIP Wauconda, IL 60084

Initial                       Company