# **EXHIBIT 6**



10240 Old Columbia Road
Columbia, MD 21045
www.unityscientific.com

September 24, 2008

Robert Gajewski
2728 Leonard Lane
North Aurora, IL 60542

Dear Robert:

I am writing to offer you a position as Industry Manager with Unity Scientific, LLC. This position involves providing application development and other technical support to customers and support to sales personnel, both on and off site, and assisting with other related tasks as needed. This position requires execution of a Confidentiality and Non-Competition Agreement, a copy of which is attached and may require a significant amount of travel.

The salary for this position is $69,000.00 per year. In addition to the base salary, you qualify for a performance-based incentive bonus of 0.3% of all Unity invoiced sales. As we develop sales strategies in conjunction with Westco Scientific Instruments, Inc., you may qualify for additional incentive bonuses based on Westco sales. In addition, other benefits available through Unity Scientific, LLC include:

    (a)    Group Health Insurance: Unity will offer a group health insurance plan. Unity will covers 100% of employee's premium and makes dependent coverage available at employee's cost.
    (b)    401(k) Plan with matching
    (c)    Short-term Disability Coverage at employee's cost
    (d)    Paid vacation based on term of service

Should you accept this position, you will be credited for your years of service with Unity Scientific, Inc. for purposes of eligibility for Unity Scientific, LLC's benefit programs and paid vacation and any accrued but unused vacation days from 2008 will carry over. Your date of hire with Unity Scientific. Inc. was 06/02/04

This offer of employment will remain open for 10 days from the date of this letter. If you accept the terms of this offer, please sign and return a copy of this letter before the expiration of that time.

I am looking forward to your positive response. .

Kind regards,

_____
Joseph Platano
Unity Scientific, LLC

Accepted by,

_____
Robert Gajewski

## CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

This Confidentiality and Non-Competition Agreement (this "Agreement") is made as of the 25 day of September, 2008 by and between UNITY SCIENTIFIC, LLC, a Maryland Limited Liability Company ("Company") and Robert Grajewski, a resident of Illinois ("you").

## WITNESSETH:

**WHEREAS**, you are currently or hereafter will be seeking employment from Company;

**WHEREAS**, during the course of your employment by Company, you have or will have access to certain confidential and proprietary information of Company and Company's clients;

**WHEREAS**, Company's and its clients' confidential and proprietary information is highly valuable and its disclosure would cause serious or irreparable harm to Company and its clients; and

**WHEREAS**, you agree to protect confidential and proprietary information of Company and its clients on the terms and conditions set forth herein.

**WHEREAS**, you understand that employment with Company is contingent upon execution of this Confidentiality and Non-Competition Agreement.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, you and Company covenant and agree as follows:

1. **Confidential Information.**

    A. Definition. "Confidential Information" means all confidential and proprietary information of Company and its clients, whether or not such information is protected by statute, common law, proprietary rights, or otherwise, and including, without limitation: names, addresses, contact persons, purchasing histories and prices, credit standing and other information relating to Company's clients or prospective clients and their personnel; current, past, potential or prospective prices, costs, profits, markets, products, and innovations; business expansion plans, including business development; internal practices and procedures; trade secrets; technologies, developments, inventions or improvements; and any other information relating to the business of Company or its clients, including, without limitation, information related to detection systems operating in the range from Ultra Violet through Infra Red, and/or any similar or related products, inventions or improvements which employ discrete testing technology or any other detection systems either developed or acquired by Company. Notwithstanding the foregoing, Confidential Information shall not include information that is generally known to the public; provided, however, that such general knowledge was not obtained by your act or omission.

    B. Disclosure of Company's Confidential Information. As an employee of Company, you will learn and will have access to Confidential Information. To the extent such Confidential Information is owned by Company, you acknowledge and agree that Company developed this

_____
Initial

_____
Company

Confidential Information at great expense, it is proprietary to Company and it is and shall remain the exclusive property of Company. You further acknowledge and agree that the Confidential Information is highly valuable and proprietary to Company and that the disclosure of any such Confidential Information to third parties or the otherwise unauthorized use of the Confidential Information by you would cause Company serious or irreparable harm. Accordingly, you agree not to, without the express, written consent of Company, either while engaged by Company as an employee or after such engagement, disclose, copy, make any use of, or remove from Company's premises the Confidential Information except as required in the performance of your duties and responsibilities to Company. Upon your termination as an employee of Company, you shall immediately deliver to Company any Confidential Information and all copies thereof, whether in hard copy, computerized or other form, which you have in your possession or control.

  C. <u>Disclosure of Client's Confidential Information</u>. As an employee of Company, you will also learn and will have access to Confidential Information belonging to Company's clients. You agree not to, without the express, written consent of Company, either while engaged by Company or thereafter, disclose, copy, make any use of, or remove from Company's premises Confidential Information of Company's clients except as may be required in the performance of your duties and responsibilities as an employee of Company.

  **2.** **<u>Non-Compete and Non-Solicitation</u>**. Company has developed and has acquired, at considerable expense, relationships with, and knowledge about, clients and prospective clients, which are very valuable to Company. You have or may have substantial contact with many of these clients and prospective clients. Therefore, to protect the value of Company's business, you agree not to, directly or indirectly, for a period of one (1) year from the date upon which your employment with Company is terminated for any reason and by either party, as the case may be, in any capacity whatsoever:

  A. compete with Company or any of its Affiliates (as defined below) in the Business (as defined below) within any geographic area in which Company and its Affiliates do Business (the "<u>Area</u>"), or perform any advisory or consulting services for, or directly or indirectly, own, manage, operate, finance, join, control, or participate in the ownership, management, operation, finance or control of, or be connected with, in any manner, any entity, business enterprise or operation engaged in design, manufacture, marketing, sale, licensing or research and development relating to the Business or related to those products, technologies, developments, inventions, improvements, or technical information associated with the Business; or

  B. solicit, sell to, divert, serve, contact, allow yourself to continue to be contacted and approached by, or accept consulting business from any client of Company or its Affiliates who you or anyone else affiliated with Company or its Affiliates handled, serviced or solicited during the twelve (12) month period immediately preceding your termination as an employee of Company, or from any active prospects of Company or its Affiliates that are handled, serviced or solicited by Company or its Affiliates during the twelve (12) month period immediately preceding your termination as an employee of Company; or

Initial                                               Company

  C. induce, attempt to influence, advise or encourage any client, customer, vendor, employee or representative of Company to terminate his, her or its relationship with Company; or

  D. interfere with any of Company's contracts or relationships with any client or supplier.

  Nothing in this Paragraph 2 shall prevent you from (1) working in the industry in a role which would not compete, directly or indirectly, with the Business or (2) acquiring an equity interest of less than five percent (5%) in a corporation whose shares are listed on a national securities exchange or regularly quoted in the over-the-counter market.

  Furthermore, Company agrees that the only entities that will be considered competitors under the terms of this Agreement are the NIR and/or discrete divisions of the following entities, (including any of their successors or assigns):

  1) FOSS

  2) Perten Instruments

  3) Bruker Optics

  4) Buchi Laboratory Equipment

  For the purposes of this Paragraph 2 the following terms shall have the meanings set forth below:

  "Business" shall mean the design, development, manufacturing, marketing, distribution, sale and/or licensing of industrial and/or agricultural control instruments, monitors, or processes and/or any similar or related products, inventions or improvements, which employ NIR or discrete technology, and/or any similar or related products, inventions or improvements which employ discrete testing technology or any other detection systems either developed or acquired by Company.

  "Affiliate" shall mean, with respect to any person or entity, any other person or entity, directly or indirectly, through one or more intermediaries, controlling, controlled by, or under common control with, such first mentioned person or entity. As used in this definition of Affiliate, the term *"control"* (including *"controlled by"*, or *"under common control with"*) means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person or entity, whether through ownership of voting securities, as trustee, by contract, or otherwise.

  E. In exchange for this covenant not to compete, Company agrees to pay you severance in an amount equal to four (4) months of your base salary, excluding all benefits,

_____
Initial

_____
Company

commissions, incentives, bonuses and expenses, of any kind. Severance will be paid over a period of one (1) year from the date upon which your employment with Company is terminated and paid in equal, quarterly installments.

   3.   **Disclosure of Prior Agreements.**  You represent that you have disclosed to Company any agreement, still in effect, which imposes any restrictions on you, which agreements, if any, are listed on Exhibit A attached hereto and made a part hereof.  You represent that, except for those restrictions specifically disclosed on Exhibit A, you are not subject to any restrictions arising from any previous employment.

   4.   **Non-Use of Third Party Confidential Information or Trade Secrets.**  You further represent that you have not disclosed and shall not disclose to Company and have not used and shall not use on Company's behalf any trade secrets or other confidential and proprietary information belonging to a third party, without consent from that third party.

   5.   **Development of Intellectual Property.**  You agree that you will communicate to Company promptly and fully all inventions, creations, designs, writings, discoveries or improvements (the "Developed Property") conceived or reduced to practice by you, either alone or jointly with others, during the period of your employment by Company.  You further agree that all Developed Property shall be considered works made for hire and thereby owned by Company; provided, however, that in the event that, by operation of law, a Developed Property cannot be considered a work made for hire, you agree to assign any and all right, title and interest you may have in the Developed Property to Company.  In connection with such assignment you will assist Company or its nominees at any time and in any proper way in both securing protection for the Developed Property and preventing and defending infringement related to the Developed Property.  Such assistance shall include, without limitation, (1) the execution of any documentation necessary to evidence Company's full rights in the Developed Property, (2) testimony, at Company's expense, evidencing the ownership of the Developed Property by Company and (3) execute a durable power of attorney appointing Company as your attorney-in-fact, to survive your incapacity or death, for the purpose of performing all acts necessary to further the prosecution and/or defense of intellectual property protection.

   6.   **Remedies.**  You recognize that your breach of this Agreement may give rise to irreparable injury to Company inadequately compensable in damages and, accordingly, agree that Company may seek and obtain and that you will consent to injunctive relief granted by a court of law against such breach or threatened breach, in addition to any other legal remedies which may be available, including the recovery of monetary damages from you.  In any action successfully brought by Company against you to enforce the rights of Company under this Agreement, Company shall also be entitled to recover from you its reasonable attorneys' fees and costs of the action, and the post-employment period of the restriction shall be deemed to commence upon the entry of the court's order for relief.

   7.   **Reformation and Reasonableness of Terms.**  In the event that the provisions of this Agreement should ever be deemed to exceed the time or geographic limitations or any other

_____                                                                                                          _____
Initial                                                                                                          Company

limitations permitted by applicable laws, then such provisions shall be deemed reformed to the maximum time or geographic limitations permitted by applicable law. You specifically acknowledge and agree that the foregoing restrictions are reasonable and necessary to protect the legitimate interests of Company to ensure that you do not engage in unfair competition with Company.

8. **Miscellaneous.**

   A. <u>Severability</u>. The invalidity or unenforceability of any provision of this Agreement shall not in any way affect the validity or enforceability of the remainder of any such provision or the remaining provisions of this Agreement. The parties intend that any such provision shall be severed from this Agreement and that this Agreement shall be construed in all respects as if such invalid or unenforceable provision had never been a part of this Agreement and shall be enforced to the fullest extent permitted by applicable law.

   B. <u>Amendment</u>. This Agreement may not be altered or modified except by a writing signed by Company and you. No waiver of compliance with any provision or condition hereof, and no consent provided for herein shall be effective unless evidenced by an instrument in writing duly executed by the party against whom such waiver or consent is sought to be enforced.

   C. <u>Assignment</u>. This Agreement shall be binding upon and inure to the benefit of your heirs, executors and administrators, and to the successors and assigns of Company. You may not assign or delegate any of your rights or obligations hereunder without the prior written consent of Company; any attempted assignment in violation of this Agreement shall be null and void.

   D. <u>Governing Law</u>. This Agreement shall be governed in accordance with the laws of the State of Connecticut without regard to the conflicts of laws provisions of such state. You consent to the jurisdiction of the courts of the State of Connecticut.

   E. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts and all such counterparts shall constitute one and the same instrument.

   F. <u>Heading</u>. The various headings in this Agreement are inserted for convenience only and are not part of this Agreement.

   G. <u>No Implied Waivers</u>. Failure of either party to insist upon strict compliance with any part of this Agreement shall not be considered a waiver of such compliance and shall not prevent either party from subsequently insisting upon strict compliance or from exercising its, his or her rights hereunder with respect to any past, present or future instances of non-compliance.

   H. <u>Employment Contingent Upon Execution</u>. You acknowledge that you understand that your employment with Company is contingent upon your agreement to the terms of this Agreement as evidenced by your execution of same.

Initial _____                                                                                   Company _____

Confidentiality and Non Competition Agreement
September __, 2008
Page 6 of 6

    **IN WITNESS WHEREOF**, the parties have made this Agreement effective as of the day and year first above written.

**UNITY SCIENTIFIC, LLC,**           **EMPLOYEE**

By: ___[signature]___           ___[signature]___

Its _member_    Date _10/27/08_        NAME      Date
                                                           ADDRESS
                                                           CITY, STATE ZIP

___                                                            ___
Initial                                                             Company

prevent either party from subsequently insisting upon strict compliance or from exercising its, his or her rights hereunder with respect to any past, present or future instances of non-compliance.

      H.    **Employment Contingent Upon Execution**. You acknowledge that you understand that your employment with Company is contingent upon your agreement to the terms of this Agreement as evidenced by your execution of same.

      **IN WITNESS WHEREOF**, the parties have made this Agreement effective as of the day and year first above written.

**UNITY SCIENTIFIC, LLC,**　　　　　　　　　　　**EMPLOYEE**

By:_____　　　　　　　_[signature]_   10/3/08

Its      Date　　　　　　　　　　　　　　NAME      Date
　　　　　　　　　　　　　　　　　　　　　　　　ADDRESS
　　　　　　　　　　　　　　　　　　　　　　　　CITY, STATE ZIP

Initial　　　　　　　　　　　　　　　　　　　　　　　　　　　Company



**Unity Scientific**
113 Cedar St. S-3
Milford, MA 01757

TEL (203) 740-2999
FAX (203) 740-2955

January 31, 2019

Robert Gajewski
2728 Leonard Lane
North Aurora, IL 60542

Re: End of Employment and Cobra Information

Dear Rob:

It is with sincere regret that I must send you this document upon your resignation.

Unity Scientific would like to acknowledge the invaluable services that you have provided to the companies throughout the past fifteen years. It is much appreciated.

The last day of your employment will be Friday, February 1, 2019. You will receive full pay for your services as of that day.

There is a balance of 216 hours of PTO time which will be included in your 02/14/19 pay.

You will have full coverage on your Medical and Dental benefits through February 1, 2019. Cobra documents (Medical and Dental) will be mailed after 02/01/19 directly from our Insurance broker Telamon Insurance. Your Life, STD, LTD and AD&D policies will be cancelled as of your last day of employment, 02/01/19. You can discuss a Life insurance policy directly with the company's broker – Telamon Insurance. Please let me know if you need any contact details.

Enclosed are separation paperwork for the KPM Analytics 401K plan managed by Empowerment Retirement; employment withdrawal request, rollover forms and other distributions.

Please return all Company property and information in your possession no later than Friday, February 11, 2019. This includes, but is not limited to: equipment, software, accessories, supplies, manuals, brochures, marketing materials customer lists, files etc. to my attention at 113 Cedar St. S-3 Milford, MA 01757. You will not need to return your credit card, phone and laptop as communicated with Brian Davies. These items will be returned per the terms of the Consulting Agreement you will have with KPM Analytics North America.

You are reminded that all trade secrets, business plans and procedures, client contact list and other confidential information of KPM Analytics North America are proprietary and may not be used by you in any way per the Confidentiality and Non-Competition Agreement signed on September 25, 2008





**Unity Scientific**
113 Cedar St. S-3
Milford, MA 01757

TEL (203) 740-2999
FAX (203) 740-2955

On behalf of everyone at Unity and PSC, we wish you well in your future endeavors.

Sincerely,

Bernadette Marcello
Head of Human Resources / Accounting Manager

**Managers Approval:**

_____     2/11/19
Brian Davies     President                  Date

**Acknowledgement and receipt of attachments:**

_____     1/31/19
Robert Gajewski                             Date

_____     2/5/19
Bernadette Marcello CFO / Corporate Controller    Date



   

All KPM Analytics companies

5/7/2019

Rob Gajewski
2728 Leonard Lane
North Aurora, IL 60542
rgajewski@unityscientific.com

Dear Rob:

Welcome to the Process Sensors, Unity Scientific, Chopin and AMS team. All part of the KPM Analytics North America Company. Please consider this letter a formal offer of employment as Business Development Director working under the management of Ron Geis, President of KPM Analytics North America.

Your official date of hire will be 5/13/2019.

If accepted, your <u>annual</u> salary will be $120,000 paid bi-weekly.

After 6 months probationary period you will be eligible for an annual incentive bonus targeted at 20% of your annual salary based on Unity's performance, the first year being prorated.

KPM Analytics North America provides paid time off for vacation to all active full-time employees. Paid vacation is provided in accordance to the company schedule. You will receive 20 days your first year. It will be pro-rated your first year based off your date of hire.

You will also receive a comprehensive package of employee benefits including but not limited to 13 paid holidays per year, 401K with company contribution, health, dental and life insurance. You will be eligible for these benefits after a 30-day probationary period. I will e-mail you the new hire documents describing policies and benefits upon acceptance. If you have any questions on the benefit package you can e-mail me at bmarcello@processsensors.com

We feel that you have the experience and background to quickly contribute in a significant way

Sincerely,

Bernadette Marcello
Head of Human Resources


Accepted by: _____          4/11/19
Rob Gajewski                                                          Date



  

*All KPM Analytics companies*

# Business Development Director

KPM Analytics seeks qualified candidates for a Business Development Director supporting our global application, sales and new business development for Unity Scientific. The ideal candidate will be motivated to provide outstanding customer training and support to help our business grow. KPM Analytics offers training and the opportunity for career growth. We will train the right person.

## About KPM Analytics

The operating companies that make up KPM Analytics have come together because of their industry-leading application expertise in the food, agriculture and environmental sectors. Recognized by customers for deep application knowledge and superior support, the companies stand as a strategic group with a common passion: providing solutions and solving our customer's most challenging problems. Through this united approach, our customers big and small will be better served with a broader, more robust offering of scientific instrumentation supported by a global network. Unity Scientific, Process Sensors, AMS, and Chopin Technologies, are part of KPM Analytics.

## Duties and Responsibilities:

- Provide our customers with application development, instrument support, and basic trouble shooting.
- Provide installation and training to customers, distributors and regional sales teams.
- Provide pre-sales support to sales team by performing calibration and method development.
- Travel 75% of time, this position will be home based.
- Deliver compelling information and demonstration of product offerings to prospective customers.
- Engage and set up meetings with potential customers.
- Attend networking events and conference; building relations that will create new business opportunities.
- Conduct ongoing market analysis; identify challenges and opportunities for growth.
- Identify business needs and working environments of prospective customers to successfully solution.
- Work closely with product management and development on new product opportunities
- Develop and implement sales strategies aligned to goals and targets.
- Participate in executive meetings and set forth plans to achieve sales growth, marketing objectives.
- Generate and present detailed proposals to the client, either personally or with the assistance of Technical colleagues.
- Work closely with the sales team in new business capture efforts including solution/offer development, contract negotiation and closing.
- Responsible for delivering and exceeding sales quotas/goals for Unity.



  

*All KPM Analytics companies*

**Experience:**

- Experience with analytical instrumentation is required
- Knowledge of cereal chemistry is a strong plus

**Education:**

University Bachelor of Science Degree or higher

Traits/Skills required:

- Communication; Identifies and presents information or data that will have a strong effect on others. Selects language and examples tailored to the level and experience of the audience.
- Results oriented; Exerts unusual effort over time to achieve a goal.
- Critical thinking; Makes systematic comparison of two or more alternatives. Notices discrepancies and inconsistencies in available information. Approaches a complex task or problem by breaking it down.
- Teamwork; Listens and responds constructively to other's ideas. Offers support for others' ideas and proposals. Shares his/her expertise with others
- Competent with MS Office; Outlook, Word, Excel, PowerPoint. Familiarity with CRM a plus.

**Benefits:**

Benefits package include competitive salaries and other benefits. KPM Analytics North America is an Equal Opportunity Employer.











# Our People



*All KPM Analytics companies*

# Employee Handbook

KPM Analytics North America
Revision - July 22, 2019



113 Cedar Street, Milford, MA 01757 USA

Disciplinary action may include a verbal warning, written warning, suspension with or without pay, and/or discharge. The appropriate disciplinary action imposed will be determined by the corporation. The corporation does not guarantee that one form of action will necessarily precede another.

The following may result in disciplinary action, up to and including discharge: violation of the corporation's policies or safety rules; insubordination; unauthorized or illegal possession, use or sale of alcohol or controlled substances on work premises or during working hours, while engaged in corporation activities or in corporation vehicles; unauthorized possession, use or sale of weapons, firearms or explosives on work premises; theft or dishonesty; inappropriate physical contact; harassment; discrimination or retaliation; performing outside work or use of corporation property, equipment or facilities in connection with outside work while on corporation time; poor attendance or poor performance. These examples are not all inclusive. We emphasize that discharge decisions will be based on an assessment of all relevant factors.

Nothing in this policy is designed to limit an employee's rights under Section 7 of the National Labor Relations Act. Nothing in this policy is designed to modify our employment-at-will policy.

1.7   Code of Business (Conduct and Ethics)

The corporation will conduct its business honestly and ethically wherever we operate in the world. We will constantly improve the quality of our services, products and operations and will create a reputation for honesty, fairness, respect, responsibility, integrity, trust and sound business judgment. No illegal or unethical conduct on the part of management and employees or affiliates is in the company's best interest. KPM Analytics will not compromise its principles for short-term advantage. The ethical performance of this company is the sum of the ethics of the men and women who work here. Thus, we are all expected to adhere to high standards of personal integrity.

We establish and support high, uncompromising personal standards by behaving honestly, openly and ethically with our customers, suppliers and employees. We are sensitive to and respect the personal safety, the environment, our community needs and recognize the contributions of all our employees.

• Management and employees of the company must never permit their personal interests to conflict, or appear to conflict, with the interests of the company, its customers or affiliates.

• Management and employees will often come into contact with or have possession of, proprietary, confidential or business-sensitive information and must take appropriate steps to assure that such information is strictly safeguarded. This information—whether



it is on behalf of our company or any of our customers or affiliates—could include strategic business plans, operating results, marketing strategies, customer lists, personnel records, upcoming acquisitions and divestitures, new investments, and manufacturing costs, processes and methods. Proprietary, confidential and sensitive business information about this company, other companies, individuals and entities should be treated with sensitivity and discretion and only be disseminated on a need-to-know basis.

- Management and employees will seek to report all information accurately and honestly, and as otherwise required by applicable reporting requirements.

- Management and employees agree to disclose unethical, dishonest, fraudulent and illegal behavior, or the violation of company policies and procedures, directly to management.

- Management and employees will obey all Equal Employment Opportunity laws and act with respect and responsibility towards others in all of their dealings

Violation of this Code of Ethics can result in discipline, including possible termination. The degree of discipline relates in part to whether there was a voluntary disclosure of any ethical violation and whether or not the violator cooperated in any subsequent investigation.

Acknowledging outstanding performance helps to put values into action. By following KPM's high standards of business practices, ambitious goals are set, and benchmarks are reached.

**Section 2 – Company Policies and Procedures**

2.1   Dress Code

The Company maintains a business casual environment. The dress code policy is designed to help us all provide a consistent professional appearance to our customers and colleagues. When corporate makes an appearance to our facilities, it's the employee's responsibility to dress appropriately. (Jeans, low cut shirts, yoga pants, tank tops, flip flops are not acceptable attire in the workplace) KPM Analytics will provide proper attire for sale expositions as well as aprons/coveralls, and safety gear if your job description requires working with equipment. The goal is to be sure that we maintain a positive presence at all times.



2.5   Workplace Search

Employees and employers share a relationship based on trust and mutual respect. The Company reserves the right to conduct personal searches consistent with state law, and to inspect any packages, parcels, purses, handbags, briefcases, lunch boxes or any other possessions or articles carried to and from the corporation's property.  In addition, the corporation reserves the right to search any employee's office, desk, files, locker, equipment or any other area or article on our premises.  In this regard, it should be noted that all offices, desks, files, lockers, equipment, etc. are the property of the corporation, and are issued for the use of employees only during their employment. Inspection may be conducted at any time at the discretion of the corporation.

Persons entering the premises who refuse to cooperate in an inspection conducted pursuant to this policy may not be permitted to enter the premises.  Employees working on or entering or leaving the premises who refuse to cooperate in an inspection, as well as employees who after the inspection are believed to be in possession of stolen property or illegal substances, will be subject to disciplinary action, up to and including termination, if upon investigation they are found to be in violation of the corporation's security procedures or any other corporation rules and regulations.

2.6   Confidential Information

 Protecting our corporation's information is the responsibility of every employee. Personal employee information, corporation's confidential business or proprietary business matters are not to be shared with anyone who is not employed with us such as friends, family members, members of the media, or other business entities.

Confidential information does not include information pertaining to the terms and conditions of an employee's employment.

The information contained therein is not to be divulged to persons outside the Company. Disclosure of confidential information will result in termination of employment.

2.7   Verification of Employment

All requests for written or oral verification for a current or former employee must be escalated to Human Resources. No other manager or employee is authorized to release another colleague's information. If you receive a request, please forward it to Human Resources.



2.8  Open Door

The company takes employee suggestions, concerns and problems seriously. We value each employee and strive to provide a positive work experience. Employees are encouraged to bring any workplace suggestions, concerns or issues they may have or know about to their manager or human resources. We hope that we can satisfactorily resolve all matters in a timely fashion.

2.9  Non-Compete Agreement

A non-compete agreement is an agreement between the employer and the employee that prohibits a former individual from working for a competitor. Following separation from employment and for a period of one (1) year, the former employee will not, directly or indirectly, work for an organization that may be considered KPM Analytics competition. Violation of this agreement may be subject to fines and/or prison.

2.10 Performance Reviews

Employees will receive performance reviews, the frequency of which may vary depending upon your length of service, job position, past performance, changes in job duties or recurring performance problems.

Your performance evaluations may review factors such as the quality and quantity of the work you perform, your knowledge of the job, your initiative, your ability to collaborate and adherence to our company core values.  The performance evaluation will document progress and areas for improvement.  After your review, you will be required to sign the evaluation report to acknowledge that it has been presented to you and discussed with you by your supervisor, and that you are aware of its contents. In addition, if you are in a managerial role, you are expected to conduct performance reviews for those you directly supervise.

2.11 Separation of Employment

In the event that an employee decides to leave the organization voluntarily, it is encouraged to give a written two (2) week notice to their direct report. After receiving notice, a brief exit interview will be scheduled. Employees who resign are entitled to receive accrued/unused paid time off (PTO).

Under certain circumstances, the company has the authority to terminate an employee involuntary with or without cause or reasoning at any time during employment. Employees who are terminated or laid off are entitled to receive accrued/unused paid time off (PTO) on the date of discharge.



113 Cedar Street, Milford, MA 01757 USA

An employee who has endorsed a 'non-compete' agreement, please comply to section 2.9.

Applicable documentation will be provided to you before and/or upon your last day of employment.

The possession of company property, such as keys, badges, computers, cell phones, credit cards, and any other company assets must be returned at the end of your employment. Failure to do so, may result in legal action.

2.12 Meal Break

*Massachusetts*

The law in Massachusetts states that an employer must provide a thirty (30) minute meal break during each work shift that lasts more than six hours. This one half-hour meal break is unpaid. In addition, Massachusetts' law does not require employers to provide any rest breaks.

*California*

The law in California states that if you work over 5 hours in a day, you are entitled to a meal break of at least thirty (30) minutes that must start before the end of the fifth hour of your shift. But you may agree with your boss to waive this meal period provided you do not work more than 6 hours in the workday.

*New Jersey*

New Jersey labor laws require employers to provide employees under the age of eighteen (18) with a thirty (30) minute break after five (5) consecutive hours of work. New Jersey does not require employers to provide breaks, including lunch breaks, for workers eighteen (18) years old or older.

*Florida*

Meals and Breaks. Florida labor laws require employers to grant a meal period of at least thirty (30) minutes to employees under the age of eighteen (18) who work for more than 4 hours continuously. ... The federal rule does not require an employer to provide either a meal (lunch) period or breaks.

