UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BLUE SUN SCIENTIFIC, LLC; THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD; ARNOLD EILERT; MICHELLE GAJEWSKI; ROBERT GAJEWSKI; RACHAEL GLENISTER; GREGORY ISRAELSON; IRVIN LUCAS; and PHILIP OSSOWSKI, <br><br> Defendants. | Civil Action No. 4:21-cv-10572-TSH |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE A REPLY BRIEF**

This Court should deny Plaintiff KPM Analytics North America Corporation's ("KPM") August 6, 2021 motion seeking leave to file yet another, post-discovery brief in this case. KPM's motion should be denied for several reasons:

**First**, the Court's May 19 (and July 16), 2021 Orders (ECF Nos. 44 and 66) were clear that, post-discovery, KPM was to file one supplemental brief on July 23, 2021 and Defendants were to file their respective supplemental briefs on July 30, 2021.[1] Nothing in the Court's orders allowed for "reply" briefs or any additional briefing. Further, the spirit of this Court's orders was that this supplemental briefing was to address any points from discovery which either supported or weighed against the injunction KPM seeks. KPM had ample opportunity in its July 23 brief (and voluminous attachments and declarations) to raise any facts from that discovery it

---

[1] This was on top of the initial brief KPM filed in April, when its injunction motion was filed.

thought supported its motion for a preliminary injunction. It now seeks to add additional points in a "reply" brief (and 61 additional pages of so-called "supporting" materials), all of which were fully available to it post discovery. This is prejudicial to Defendants.[2]

**Second**, KPM pushes the envelope to a breaking point by not only attaching its nearly 10 page proposed reply brief, but *two additional* declarations, including a second one from Eric Olson (whose initial one was filed with KPM's July 23 supplemental brief). Paragraphs 3-4 of Mr. Olson's second declaration attempt to discredit Mr. Gajewski's (and Mr. Lucas') deposition testimony that the application notes Blue Sun published were created in an effort to sell UCal licenses to Blue Sun. Mr. Olson's declaration should not be allowed into the record. KPM knew from the depositions (and the July 16, 2021 hearing) that this was why Mr. Gajewski created the application notes, yet it did not include any argument in its July 23 submissions that Mr. Olson now wants to submit. Second, Mr. Olson's self-serving, after the fact assertion—that KPM supposedly would not have sold UCal licenses to Blue Sun—has no corroborating support and KPM offers no evidence that this supposed "policy" was known to Mr. Gajewski when he created the notes at KPM in early 2020. Olson himself did not even join KPM until August 2020.[3] Similarly, the Zacharakis declaration should be denied filing because it simply attaches

---

[2] KPM's motion for leave argues that it should be permitted yet another brief because Defendants Glenister and Eilert submitted affidavits with their supplemental brief, but KPM had not been permitted to depose them. This is a bright red herring because nothing in KPM's proposed reply brief addresses in any material way the facts in either Eilert or Glenister's affidavits. KPM also argues that the Defendants miscite cases and facts in their briefing, as a rationale for its reply. Defendants disagree with that assertion, and the court certainly can make its own determination without any further briefing from KPM.

[3] Olson's untimely second declaration also seeks to discredit Mr. Gajewski's testimony—that he sold UCal licenses to two other companies in the same way he tried with Blue Sun. Olson argues that these other companies differ from Blue Sun because neither sells the exact same "monochromator" device as KPM. However, Olson omits that both of these companies still sell devices in the same or similar markets and are considered KPM competitors. Had Olson

deposition testimony and produced documents which she could have submitted with KPM's July 23 brief.

**Third**, KPM attempts to use a "reply" brief as a vehicle to submit additional evidence it claims supports an injunction. Olson's second declaration attaches recent email communications between Mr. Eilert and a long-standing relationship (of his) seeking repair work on a very old drawer-type Unity device. KPM falsely asserts that this shows ongoing wrongful conduct by Mr. Eilert (and the Defendants generally), in diverting a "KPM customer" away from KPM. Not so. First, as KPM knows, Mr. Eilert is under no duty to KPM whatsoever, including the fact that there is no enforceable non-compete agreement in place. Mr. Eilert certainly is not required to ignore customers that initiate contact with him. Second, this email correspondence shows something very different. It shows that this customer is not "confused" and knows exactly what she is looking for: Mr. Eilert's help. She is not looking for "KPM." In fact, she also addresses the email to Mr. Eilert's personal address on the chance he no longer works at KPM—which is the case here.[4] This email exchange, and the way KPM characterizes it (and others like it), is a perfect example of why these "customers" and information about them, is not a protectable trade secret here. Mr. Eilert (like Mr. Gajewski) is, at heart, a repair technician. Over decades, they both have developed relationships with these customers that transcend the company they may happen to work for at any given time. When these customers reach out for service, they call *the*

---

included these assertions in his first declaration, the Defendants could have explained this in their supplemental brief, rather than being forced to respond to them by way of this Opposition.

[4] KPM also misleadingly suggests that Mr. Eilert has no previous relationship with the University in question. To the contrary, and as KPM omits, Mr. Eilert has a more than 30 year relationship with the referral source, Dr. Wehling, which long precedes his time at KPM. Indeed, Eilert and Wehling earned their Ph.D. degrees under the same professor at Kansas State University.

*person* they know and trust, and do not care whether they work for KPM, Blue Sun or anyone else.  At bottom, KPM's arguments are based on the fact that these customers historically purchased at least one KPM (or Unity) device.  But the critical point KPM misses is that the customers now *own* those machines, and they can request service on those machines from anyone they like.  They are under no contractual or other obligation to obtain service only from KPM.  KPM desperately wants to wrap these relationships in a "KMP customer" blanket, but the facts here are different and do not support KPM's wish.[5]

**Fourth**, and finally, KPM uses its proposed reply to take yet another bite at the spoliation-of-evidence apple.  Because KPM cannot challenge Blue Sun's good faith migration of its email system (and that neither Blue Sun nor ITG was "on notice" at that time of an impending lawsuit), it describes an elaborate search by its counsel for any emails from "greg gregory" or "greg@bluesunscientific.com" accounts.  *See* Prop. Reply at 6; Prop. Zacharakis Decl. at ¶¶ 5-11.  It does so to try to get the court to infer that Blue Sun deliberately allowed such emails to be destroyed.  But KPM ignores the most likely (and accurate) inference:  That no such additional emails using that address were ever sent.  In any event, KPM does not cite (and

---

[5] In this regard, KPM incorrectly takes Defendants to task (Prop. Reply at 5-6) for allegedly misrepresenting the *Optos, Inc.*, *American Window Cleaning*, and *New England Overall* cases.   Far from it.  The Individual Defendants do not even cite *Optos, Inc.* in their brief and the Entity Defendants did not rely on it at all.  Further, in the *Am. Window Cleaning* case, the court found that, of the 51 "regular customers" and several "irregular customers" the defendant solicited at his new employer based on memory, all but one were lawful (because the information was remembered) and only one was deemed over line, resulting in a whopping damage award of under $600.  *See Am. Window Cleaning Co. of Springfield v. Cohen*, 343 Mass. 195, 201 (1961).  In *New England Overall Co. v. Woltmann*, 343 Mass. 69, 77 (1961), the court granted the injunction only because the defendants took with them confidential information far beyond what could be remembered in one's head, and misleadingly sold similar merchandise at "cut prices" that tended to harm the plaintiff's reputation.  The Defendants here have done nothing of this sort.  *New England Overall* does not stand for the proposition that a former employee can be enjoined from competing by using remembered information.

Defendants are not aware of) any case where a court entered a preliminary injunction based on a "spoliation of evidence" argument.[6]

At bottom, KPM wants an injunction barring competition that can only be barred under valid and enforceable non-compete agreements. Because those are absent here, the proposed injunction should be denied. In addition, the "harm" which KPM repeatedly characterizes as "ongoing," is in fact based on historical actions and is quantifiable. Thus, to the extent there was any "wrongdoing" by any Defendant (which Defendants deny), it is not "ongoing" and does not constitute "irreparable" harm. KPM's silence on that point in its proposed reply is telling.

**WHEREFORE**, for all the foregoing reasons, KPM's motion seeking leave to file a reply brief should be denied.

---

[6] KPM also tries to cast doubt (Prop. Reply at 6) on the fact that Blue Sun was able to recover and produce the lost emails to and from the accounts used by Mr. Gajewski and Mr. Eilert. But what cannot be disputed is that Mr. Gajewski produced over 5,700 pages of documents, mostly consisting of communications with customers from his Blue Sun account. Indeed, almost all of the documents KPM relies on in their supplemental brief (and proposed reply brief) were produced by Mr. Gajewski.

Dated: August 9, 2021

| | |
|---|---|
| BLUE SUN SCIENTIFIC, LLC and THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD. | ARNOLD EILERT, ROBERT GAJEWSKI, RACHAEL GLENISTER, and IRVIN LUCAS, |
| | */s/ William L. Prickett* |
| Christopher R. O'Hara (BBO #548611) <br> chara@toddweld.com <br> Maria T. Davis (BBO # 675447) <br> mdavis@toddweld.com <br> TODD & WELD LLP <br> One Federal Street, 27th Floor <br> Boston, MA 02110 <br> Tel: (617) 720-2626 | William L. Prickett (BBO #555341) <br> wprickett@seyfarth.com <br> Dallin R. Wilson (BBO #676662) <br> drwilson@seyfarth.com <br> Michael A. Kippins (BBO #688613) <br> mkippins@seyfarth.com <br> SEYFARTH SHAW LLP <br> Two Seaport Lane, Suite 300 <br> Boston, MA 02210-2028 <br> Tel: (617) 946-4800 |
| */s/ Royal Craig* <br> George F. Ritchie (Pro Hac Vice) <br> gritchie@gfrlaw.com <br> Royal Craig (Pro Hac Vice) <br> rcraig@gfrlaw.com <br> James D. Handley (Por Hac Vice) <br> jhandley@gfrlaw.com <br> GORDON FEINBLATT LLC <br> 1001 Fleet Street, Suite 700 <br> Baltimore, MD 2102 <br> Tel: (410) 576-4000 | |

## CERTIFICATE OF SERVICE

I hereby certify that, on August 9, 2021, this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing. Paper copies will be sent to those indicated as non-registered participants.

                                                                     */s/ Dallin R. Wilson*
                                                                     Dallin R. Wilson