UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION, | ) ) ) ) | CIVIL ACTION NO. 4:21-10572-TSH |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| BLUE SUN SCIENTIFIC, LLC, THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD., ARNOLD EILERT, ROBERT GAJEWSKI, RACHAEL GLENISTER, and IRVIN LUCAS, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER AND MEMORANDUM ON DEFENDANTS' MOTION FOR CLARIFICATION (Docket No. 105) AND PLAINTIFF'S MOTION FOR CONTEMPT (Docket No. 109)**

**December 17, 2021**

**HILLMAN, D.J.**

In August 2021, the Court preliminarily enjoined defendants Blue Sun Scientific, LLC ("Blue Sun"), The Innovative Technologies Group & Co., Ltd. ("ITG"), Irvin Lucas, Rachael Glenister, Arnold Eilert, and Robert Gajewski from, *inter alia*, selling Phoenix-branded near-infrared analyzers to any "party" to whom any defendant previously sold a near-infrared analyzer manufactured by plaintiff KPM Analytics North America Corporation ("KPM"). Now, the defendants move for clarification of the order, asserting that the term "party" is unclear.

The plaintiff opposes the motion. The plaintiff also moves the Court to find Blue Sun and Lucas in contempt of the preliminary injunction order for selling a Phoenix-banded near-infrared analyzer to a division of the United States Department of Agriculture ("USDA") because, as is

undisputed, the defendants previously sold KPM near-infrared analyzers to other divisions of the USDA. The plaintiff also requests that the Court order Glenister, Eilert, Gajewski, and ITG to show cause as to why they too should not be held in contempt of the injunction. For the following reasons, the Court ***grants in part*** the defendants' motion for clarification and ***denies*** the plaintiff's motion for contempt.

## Background

ITG was founded in 1997 to design and manufacture near-infrared instruments. In 2001, Unity Scientific, Inc. (Unity) was founded to provide sales and customer support to ITG's design and manufacturing business. ITG partially owned Unity. Unity came to own patents for a near-infrared analyzer, branded as the SpectraStar analyzer. In 2008, ITG sold its stake in Unity, including the SpectraStar patents, to Westco Scientific, Inc. ("Westco"). Through several corporate transactions, Westco became KPM in 2015. Also in 2015, ITG launched its own near-infrared analyzer, the M5. In 2018, Lucas, then an employee at KPM, met with ITG to discuss opening a sales and servicing arm for ITG's analyzers. ITG incorporated Blue Sun to do so, and several KPM employees left KPM to join Blue Sun. The M5 analyzer was rebranded as the Phoenix analyzer.

In April 2021, KPM brought the instant action against Blue Sun, ITG, and several of its former employees who had moved to Blue Sun, alleging, *inter alia*, misappropriation of trade secrets, and breach of the employees' confidentiality agreements. After limited, expedited discovery, the Court granted KPM's request for a preliminary injunction. In so doing, the Court found that Blue Sun had improperly leveraged confidential KPM information, including the identity of certain employees at KPM client companies, the timing of KPM clients' needs for

servicing or replacement of analyzers, and the prices KPM charged its clients. Accordingly, as part of the preliminary injunction, the Court ordered that:

> Defendants are prohibited for the duration of this Action from offering to sell or selling any Phoenix Near-Infrared analyzer product to any party for which any Defendant has previously offered to provide or provided or offered to sell or sold any services or products related to any Near Infra-Red analyzer manufactured or sold by KPM or its predecessors in interest, including but not limited to analyzers manufactured or sold by Unity Scientific or Process Sensors Corporation from July 2, 2018 to the present.

In other words, the Court ordered that the defendants not sell their Phoenix analyzers to any "party" to whom the defendants previously sold or offered to sell a KPM analyzer.

The parties' cross-motions now before the Court stem from Blue Sun's sale of a Phoenix analyzer to a division of the USDA. A vice president at KPM avers that in September 2021, a USDA representative contacted KPM about purchasing a SpectraStar analyzer or similar machine. Similarly, Lucas, Blue Sun's President, avers that in September 2021, a contracting officer at the USDA's Range Sheep Production Efficiency Research Forest Inventory and Analysis Unit ("RSPER-FIA"), headquartered in Dubois, Idaho, contacted Blue Sun about submitting a bid for the sale of a near-infrared analyzer. RSPER-FIA is a division of the Agricultural Research Center, which is an agency of the USDA.

The defendants previously sold KPM near-infrared analyzers to other divisions of the USDA's Agricultural Research Center -- for example, the Forage and Range Research Service in Logan, Utah and the Soft Wheat Quality Lab in Wooster, Ohio -- but not to RSPER-FIA in Dubois, Idaho. Both KPM and Blue Sun submitted bids for the RSPER-FIA contract, and Blue Sun won. In October 2021, however, RSPER-FIA informed Blue Sun that it had concerns over Blue Sun's ability to deliver on the contract due to this preliminary injunction.

The defendants argue that the injunction was not meant to prohibit sales to the entire USDA. KPM, in contrast, contends that the term "party" in the injunction refers to the entire

3

USDA, not an agency like the Agricultural Research Service, or a division of an agency, like RSPER-FIA. Consequently, KPM asserts that Blue Sun and Lucas are in contempt of the preliminary injunction order, and that the other defendants may be as well.

The defendants posit that this disagreement over the injunction's meaning will arise in other contexts too. For example, according to Lucas, a company called Grain Craft is the largest independent flour miller in the United States, with thirteen mills spread across the country, each of which has its own purchasing authority. However, the defendants sold KPM analyzers to only three of those mills -- in Blackfoot, Idaho; Portland, Oregon; and Wichita, Kansas. The defendants contend that the preliminary injunction covers only those three mills, and not the others. Lucas avers that, like Grain Craft, many of KPM's customers with whom the defendants have previously dealt have various units with independent purchasing authority.

## Discussion

### 1. Motion for Contempt

Because KPM's motion for contempt turns on whether the preliminary injunction order is clear and unambiguous as applied to Blue Sun's sale to RSPER-FIA, the Court will address that motion first. "A district court may issue a civil contempt order if the moving party establishes by clear and convincing evidence that the alleged contemnor violated the order despite clear and unambiguous notice of the order and the ability to comply with it." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 426 (1st Cir. 2015). "The question is not whether the order is clearly worded as a general matter; instead, . . . the words of the court's order [must] have clearly and unambiguously forbidden *the precise conduct on which the contempt allegation is based*." *United States v. Saccoccia*, 433 F.3d 19, 28 (1st Cir. 2005) (emphasis in original). Because the "judicial contempt power is a potent weapon," *Int'l Longshoremen's Ass'n v. Philadelphia Marine Trade*

4

*Ass'n*, 389 U.S. 64, 76 (1967), ambiguities in a court's order "must be read in a light favorable to the person charged with contempt," *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991). The moving party bears the burden of establishing contempt. *See Saccoccia*, 433 F.3d at 30.

KPM offers no convincing explanation for why the term "party" in the order clearly and unambiguously refers to the USDA, and not a division of the USDA with independent purchasing power. The term "party" is commonly defined as, *inter alia*, "[a] person or group involved in an enterprise," *The American Heritage College Dictionary* 997 (3d ed. 1997), or "[o]ne who takes part in a transaction," *Black's Law Dictionary* 1231 (9th ed. 2009). In context, the order's reference to any "party" could mean the "person or group," not the parent organization, to whom the defendants previously sold KPM near-infrared analyzer products or services. Resolving ambiguities in the defendants' favor, *see Kemp*, 947 F.2d at 16, an order of civil contempt is not warranted.[1]

## 2. Motion for Clarification

"Clarifications of orders previously issued . . . add certainty to an implicated party's efforts to comply with the order and provide a fair warning as to what future conduct may be found contemptuous." *N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). "It is undoubtedly proper for a district court to issue an order clarifying the scope of an injunction in order to facilitate compliance with the order and to prevent 'unwitting contempt.'" *Paramount Pictures Corp. v. Carol Pub. Group, Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) (citing *Regal Knitwear Co. v. Nat'l Labor Relationship Bd.*, 324 U.S. 9, 1 (1945)).

---

[1] For the same reason, the Court also declines to order ITG, Glenister, Eilert, and Gajewski to produce documents or show cause as to why they too should not be held in contempt. Moreover, KPM's passing suggestion that the defendants likely used confidential KPM information to underbid KPM for the RSPER-FIA contract is unavailing, especially given the public nature of such contracts.

As relevant here, the preliminary injunction was meant to prohibit the defendants from improperly diverting KPM customers to Blue Sun.  The injunction accomplishes this goal by prohibiting the defendants from using confidential KPM information and improperly leveraging their prior KPM relationships.  Prohibiting the defendants from selling Phoenix near-infrared analyzers to a division of a larger organization is inconsistent with that goal where, as seems to be the case with RSPER-FIA, the division of the larger organization has independent authority over purchasing and no prior connection to the defendants.  The preliminary injunction was not meant to prevent the defendants from competing fairly in the market.  Adopting KPM's interpretation of the term "party" would do so.

Accordingly, the following will be added to Paragraph 6 of the injunction to clarify the injunction's intended scope: "If any organization includes multiple individual divisions, sites, or locations that make independent buying decisions, each division, site, or location is deemed a separate party under this Paragraph.  A division, site, or location makes independent buying decisions if the division, site, or location has the authority to determine which near-infrared analyzer to purchase without input from other divisions, sites, or locations within the organization.  A division, site, or location does not make independent buying decisions if the division, site, or location was referred to the defendants by a person to whom the defendants previously sold or offered to sell services or products related to any Near Infra-Red analyzer manufactured or sold by KPM or its predecessors in interest."

## Conclusion

For the reasons stated, the defendant's motion for clarification is ***granted in part***, and the plaintiff's motion for contempt is ***denied***.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN
DISTRICT JUDGE**