UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BLUE SUN SCIENTIFIC, LLC; THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD; ARNOLD EILERT; MICHELLE GAJEWSKI; ROBERT GAJEWSKI; RACHAEL GLENISTER; GREGORY ISRAELSON; IRVIN LUCAS; and PHILIP OSSOWSKI,<br><br>Defendants. | Civil Action No. 4:21-cv-10572-LTS<br><br>Leave to file under seal<br><br>allowed August 19, 2022 (ECF No. 143) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT INNOVATIVE TECHNOLOGIES GROUP & CO., LTD'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR HEARING**

Defendant The Innovative Technologies Group & Co., Ltd ("ITG"), by and through its undersigned counsel, hereby files this Memorandum of Law in Support of its Motion for Summary Judgment and Request for Hearing pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 7.1.

A.  INTRODUCTION

Since the outset of this litigation, Plaintiff KPM Analytics North America Corporation ("KPM") has strategically elided basic corporate differences between ITG and Defendant Blue Sun Scientific, LLC ("Blue Sun") in an attempt to attribute the alleged wrongdoings of Blue Sun to ITG, Blue Sun's parent company and a long-standing competitor in the NIR analyzer market long before Blue Sun was created. Indeed, although KPM carefully avoids these facts in its Verified Complaint and other pleadings, ITG was the original designer and manufacturer of the

Spectrastar machine line which is now at the center of this litigation, and ITG developed and later sold the Unity NIR Analyzer business that KPM eventually purchased in 2015. Far from being a recent started up created to disrupt KPM's NIR analyzer business, ITG in many ways has been the progenitor of KPM's NIR business line.

While KPM's allegations in this case have shifted during the course of discovery, those allegations, and the legal claims to which they attach, all stem not from any actions taken by ITG, but from the Individual Defendants' former employment at KPM. With the prior dismissal by this Court of its noncompete claims, KPM's core claims now relate to alleged misappropriation and misuse of information regarding KPM's NIR customers and maintenance cycles the Individual Defendants allegedly received while at KPM. That information, to the extent it was ever a "trade secret" of KPM, is now several years old and obsolete, and cannot as a matter of law be a trade secret today.

It is undisputed in this case, however, that ITG was not party to any confidentiality agreements with KPM, was not aware of any such agreements the Individual Defendants executed with KPM and has not used any alleged confidential information in its manufacture of NIR analyzers. There is thus no independent basis to hold ITG liable to KPM for the trade secret claims in Counts I and II of KPM's Verified Complaint, the tortious interference with contract claim in Count VII, the conversion claim in Count IX and the violation of M.G.L. c. 93A, §11 in Count X. For these reasons, ITG is entitled to summary judgment on these counts.

Nowhere in KPM's complaint does KPM plead, let alone try to justify, a claim that this Court should disregard the corporate form and hold ITG liable for Blue Sun's alleged actions, and for that reason alone, ITG should not have to respond to such a legal theory. But even if this Court were to allow KPM to make such an argument in response to the present motion, a veil piercing

2

claim against ITG for the alleged tortious acts of Blue Sun fails as a matter of law.  It is well-established law in Massachusetts that parent and subsidiary corporations are regarded as separate and distinct entities such that the liability of a subsidiary corporation will not be imputed to the parent.  The mere ownership by one corporation of a controlling interest or of all the stock of another corporation does not, of itself, make the shareholding corporation liable for the debts or acts of the corporation in which it holds the stock.  Here, although ITG is the member of Blue Sun, a Maryland limited liability corporation, that fact cannot under Massachusetts law entitle KPM to pierce the corporate veil between the two entities.

      The two very narrow exceptions Massachusetts recognizes to allow veil-piercing between two companies do not apply here.  First, as demonstrated below, there is no active and pervasive control of Blue Sun by ITG to justify such a claim.  Blue Sun is an independent sales and distribution business, with full authority to hire and fire employees, pursue its sales strategy and set its own pricing.  Importantly for purposes of this case, none of the Individual Defendants work (or have ever worked) for ITG, and none of the Individual Defendants have any management or other role at ITG through which ITG exercises control over Blue Sun.  Equally, it is undisputed that there is no intermingling of activity between Blue Sun and ITG, or any ambiguity about the manner and capacity in which the two corporations and their representatives were acting.  ITG designs and manufactures the NIR analyzer machines, and sells them to Blue Sun.  Blue Sun in turn sells the machines to its customers, and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  The companies maintain arms-length transactions with respect to these machine sales.  KPM, which has brought this case as a tort plaintiff, is not a creditor of ITG, and cannot utilize a judicially-created remedy of equity utilized to protect creditors.  Accordingly, ITG is entitled to summary judgment on all remaining counts against it in KPM's Verified Complaint.

3

B.  FACTUAL BACKGROUND

1.  ITG Created Unity Scientific And Designed and Manufactured NIR Analyzers for Unity Prior to KPM's Acquisition of Unity in 2015.

ITG was formed by Robert Wilt, George Toth and Patrick Wilt on June 5, 1997 to design and manufacture analytical instruments using near infrared (NIR) spectroscopy. *See* Deposition of ITG's representative Robert Wilt dated July 8, 2021 ("Wilt 2021 Depo.), attached as Ex. 1, at 13:6-14. ITG was created primarily as an original equipment manufacturer ("OEM") to sell its machines to other companies but not directly to customers. Wilt 2021 Depo. at 17:1-10. In 2001, Messrs. Wilt and Toth, along with Doug Evans, co-founded Unity Scientific, Inc. ("Unity") to add sales and customer support to ITG's design and manufacturing capability. Wilt 2021 Depo. 2021 at 14:1-18. ITG designed and patented the original Unity SpectraStarTM NIR Analyzer. *See* Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (ECF 80) at 2. Initially, ITG partially owned Unity and manufactured NIR spectroscopes under contract for Unity. Wilt 2021 Depo. at 19:1–15.

In 2008, ITG sold its ownership interest in Unity and the Patents to Westco Scientific, Inc. Wilt 2021 Depo. at 19:20–23. ITG continued to provide NIR analyzers, parts, and services to Unity after the sale. *See* the Deposition of Blue Scientific representative Irvin Lucas dated July 6, 2021 ("Lucas 2021 Depo.") attached as Ex. 2, at 57:21–58:4. ██████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████ attached hereto as Ex. 3 at 110:4–8. In its Verified Complaint and elsewhere in this litigation, KPM purports to provide the Court with a chronology of its SpectraStar NIR analyzers. See *e.g.* Compl. at ¶ 22. Plaintiff, however, fails to note that all Unity NIR analyzers preceding the SpectraStar XL in 2014 were wholly designed and

included components manufactured by ITG. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ITG began manufacturing its own M5 NIR spectrometer in 2015. Wilt 2021 Depo. at 20:4–24. Having designed, patented, and manufactured the Unity SpectraStar NIR Analyzers in whole or in part, Mr. Wilt and ITG are intimately familiar with their hardware and operation and are under no direct non-compete or confidentiality obligations to KPM.

2. <u>ITG Was Not Aware of the Individual Defendants' Employment Agreements.</u>

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Mr. Wilt agreed, and around July 2, 2018, ITG formed Blue Sun. *Id.* at 57:13–18. Mr. Lucas left his employment with KPM and became President of Blue Sun. *Id.* at 18:7–9, 61:23. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

After starting at Blue Sun, Mr. Lucas began recruiting other employees to work with him, including Rachel Glenister (left KPM on July 20, 2020), Dr. Arnold Eilert (left KPM on December 31, 2020), and Philip Ossowski (left KPM on January 29, 2021), and as consultants Gregory Israelson (left KPM on March 12, 2021) and Mr. Gajewski (terminated from KPM on April 5, 2021). Lucas Depo. at 56:5–8, 108:8–14, 110:16–11:24, 119:7–22, 131:6–32:6, 149:13–22, 225:10–12. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉



████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████

3. <u>ITG and Blue Sun Are Separate Corporate Entities with Separate Management and Maintain an Arms-Length Relationship with Respect to the Sale of Spectrometers.</u>

Mr. Wilt is the President and CEO of ITG, a Maryland corporation. Wilt 2021 at 11:9-25. He has executive duties at ITG, and is also involved in engineering work on the company's product lines. *Id.* ITG currently has six full-time employees, and four part-time employees involved in company functions from purchasing and procurement, manufacturing, accounting and managing the company's machine shop. Wilt 2021 Depo. at 12:2-19. Mr. Wilt, Dave Bush and Lou Faustini sit on ITG's board of directors. Wilt 2021 at 16:6-17. No individual employed by Blue Sun is on the ITG board.

Blue Sun is a Maryland limited liability company. *See* Verified Complaint (ECF 1) at ¶4.[1] Mr. Wilt has no personal interest in Blue Sun. Wi1t 2021 Depo. at 15:22-16:1. ITG is the sole LLC member of Blue Sun. Wilt 2021 Depo. at 15:22-16:5. While Mr. Wilt is the manager of Blue Sun from the LLC side, he delegates all responsibility in running Blue Sun to Mr. Lucas. Wilt. 2021 Depo. at 16:6-8; 31:5-16; Wilt 2022 Depo. at 124:1-125:2. Blue Sun and ITG have no common employees. Wilt 2021 Depo. at 30:21-31:4.

---

[1] Although Blue Sun and ITG share a common corporate mailing address, Blue Sun's employees are spread across the country and operate from their respective home addresses. Mr. Lucas is located in Los Angelos, Mr. Gajewski is located in Illinois, Dr. Eilert is located in Illinois, and Ms. Glenister is located in Colorado. *See* Verified Complaint (ECF 1) at ¶¶s6-11.

6

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████[2]

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ ████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[2] ITG manufactures other products besides spectrometers, including glue detection and spark emission module products. Wilt. 2022 Depo. at 39:21-40:9. Blue Sun also sells non NIR analyzer products for manufactures other than ITG. *See* Second Deposition of Blue Sun ("Lucas 2022 Depo."), attached as Ex. 6 at 124:24-125:8.

████████████████████████████████████████
███████████████

7



4. <u>KPM's Claims Against ITG Are Legally and Factually Untethered Its Claims Against Blue Sun.</u>

KPM's claims against all Defendants have shifted during the course of this litigation. KPM initially focused its accusations on alleged misappropriating "spectral data" and calibration information that is stored on customers' machines, arguing that Defendants somehow were unfairly competing with KPM using this data and confusing KPM's customers. KPM also pursued breach of contract claims against the Individual Defendants for breach of noncompete clauses in the individuals' KPM employment contracts. Those claims quickly were shown to be legally and factually unsupportable, including the Court's finding that the non-competes were overbroad and unenforceable. KPM then pivoted, and its KPM's claims now appear focused on allegations that the Individual Defendants have misappropriated KPM "customer lists" and information regarding the periodic nature of customer preventative maintenance visits. As was made clear during the second deposition of KPM's corporate representative Mr. Olson, KPM has staked the entirety of their claims against ITG based upon ITG's ownership of Blue Sun:

    Q.    Does KPM contend that ITG took any activities to interfere, directly interfere in the sale of Spectrastar machines?

9641187.1 58144/146507 8/19/22

Mr. Gutkoski:  Objection to the form of the questions.

A. With the contention that ITG and Blue Sun are an almost singular entity.

*See* Second Deposition of KPM's Representative Mr. Olson, dated April 26, 2022 ("Olson 2022 Depo."), attached as Ex. 8, at 16:1-17:14.  When asked to elaborate, Mr. Olson cited the fact that ITG and Blue Sun share a "common facility" in Maryland, "the same ownership", and the fact that ITG provides hardware to Blue Sun.  Mr. Olson conceded KPM was not aware of any other basis for its claims against ITG.  *Id.*

C. LEGAL STANDARD

Summary judgments are appropriate in those cases where there is no genuine dispute as to a material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).  In ruling on a motion for summary judgment, the Court must decide whether a rational trier of fact, taking into account only *admissible* evidence, could find for the non-moving party.  If the fact-finder could not conclude that the non-moving party sustained its burden of proof, disposition by summary judgment is appropriate. *Matsushita,* 475 U.S. at 587 (1986) ; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

D. ARGUMENT

1. There is No Evidence That ITG Independently Committed Any Tort Against KPM.

Absent some viable theory of vicarious liability (which is nonexistent here), each of the counts remaining against ITG requires some independent action by ITG as a basis for liability.  *See e.g.*, *Incase Inc. v. Timex Corp.,* 488 F.3d 46, 52 (1st Cir. 2007)(to establish a claim for misappropriation of trade secrets under either statute, a plaintiff must show that: (1) the

information at issue qualifies as a trade secret, (2) it "took reasonable steps to preserve the secrecy of the information," and (3) "the defendant used improper means, in breach of a confidential relationship, to acquire and use the trade secret." The DTSA also requires that the trade secret be "used in, or intended for use in, interstate or foreign commerce."); *Harrison v. NetCentric Corp.*, 433 Mass. 465, 476 (2001)(Under Massachusetts law, a claim for tortious interference with contractual relations requires a plaintiff to show that: "(1) he had a contract with a third party; (2) the defendant knowingly interfered with that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions;"); *Blake v. Professional Coin Grading Service*, 898 F. Supp. 2d 365, 386 (D. Mass. 2012)("plaintiff must show that "[1] one person exercised dominion over the personal property of another, [2] without right, and [3] thereby deprived the rightful owner of its use and enjoyment."); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985).

KPM has adduced no evidence that would support a finding of liability on any of these counts against ITG for any action ITG took on its own. With respect to the trade secret counts, KPM cannot show that any ITG employee misappropriated KPM's trade secrets, including the customer lists or knowledge with respect to service intervals that now form the core of KPM's complaints in this matter. None of the individuals who allegedly took such information are employed by ITG, nor is there any evidence that any ITG employee took such information themselves.

With respect to KPM's tortious interference with contract claims, ███████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████

9641187.1 58144/146507 8/19/22

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ These same undisputed facts demonstrate that ITG is entitled to summary judgment with respect to KPM's conversion claim, since KPM cannot demonstrate that ITG converted any trade secrets or other property of KPM.  Finally, for the same reasons, with respect to the KPM's claim under M.G.L. c. 93A, §11, KPM cannot demonstrate any actions by ITG that would give rise to liability under this statute.

      2.      <u>Although KPM Has Not Pled a Claim for Piercing the Corporate Veil, Even if it Had, Such a Claim Fails as a Matter of Law.</u>

KPM has not pled a veil-piercing or alter ego claim against ITG and should not now be allowed after the conclusion of discovery to do so.  *See* Verified Complaint at ¶1 (alleging that ITG is Blue Sun's "parent" and thereafter defining Blue as both ITG and Blue).

Even if KPM had pursued such a theory of liability against ITG, it would fail as a matter of law.  It is well-settled law in Massachusetts that parent and subsidiary corporations ordinarily are regarded as separate and distinct entities such that the liability of a subsidiary corporation will not be imputed to the parent.  *Devlin v. WSI Corp.*, 833 F. Supp. 69 (D. Mass. 1993)(under Massachusetts law, parent corporation and its subsidiary are separate corporate entities); 13 Fletcher Cyc. Corp. § 6222 (Application of rules to parent and subsidiary corporations)(generally, a shareholder is not liable for the debts or acts of the corporation, in the absence of statute or agreement, and exactly the same rule applies where the shareholder is a corporation.).  Importantly, in this context, courts in Massachusetts and elsewhere have been clear that the mere ownership by one corporation of a controlling interest or of all the stock of another corporation does not, of itself, make the shareholding corporation liable for the debts or acts of the corporation in which it holds the stock.  *Devlin*, 833 F. Supp. 69 at 72; see also *FMC Fin. Corp. v. Murphree*, 632 F.2d 413,

421, 422 (5th Cir. 1980); *Krivo Indus. Supply Co. v. National Distillers & Chem. Corp.*, 483 F.2d 1098, 1102-07 (5th Cir. 1973), modified per curiam, 490 F.2d 916 (5th Cir. 1974)("the principle of limited liability remains a dominant characteristic of American corporation law. Ordinarily, a creditor has recourse only against the corporate entity incurring the liability, not against parent corporations, stockholders, or other parties connected with the entity.").

Massachusetts recognizes only two narrow exceptions to this rule: (1) when there is active and pervasive control of the related business entities by the parent, with fraudulent or harmful consequences from the inter-corporate relationship; or (2) when there is confused intermingling of activity between the parent and related entity, and ambiguity in relation to the parent, about the manner and capacity in which the two corporations and their representatives were acting. *TechTarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353 (D. Mass. 2010).

Emphasizing that "control in and of itself is not sufficient to disregard the corporate entity," Massachusetts has developed have endorsed a twelve factor approach, which include the following: (1) common ownership; (2) pervasive control; (9) siphoning away of corporation's funds by dominant shareholder; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.[4] In order to pierce the corporate veil, a court must conclude after evaluating these factors that the parent corporation directed and controlled the subsidiary and used it for an improper purpose such as fraud as to the corporate form and its effects upon a creditor. *Id.* The factors are weighed, not counted. *George Hyman Constr. Co. v. Gateman*, 16 F. Supp.2d 129, 158 (D. Mass. 1998).

---

[4] The other factors identified by the TechTarget court are (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; 10) nonfunctioning of officers and directors.  746 F. Supp.2d 353, 356.  While KPM has not identified any factor in its pleading to justify veil-piercing, these factors are particularly far afield here.

12

The facts in the present case do not support any effort by KPM to pierce the corporate veil between ITG and Blue Sun and hold ITG liable for the alleged tortious actions of Blue Sun.  First, while ITG is the member of the Blue Sun LLC, that fact alone cannot support veil-piercing.  *See Devlin*, 833 F. Supp. 69, 74 (parent corporation may be liable for the acts of its subsidiary only if the parent dominates the subsidiary in a pervasive manner that necessitates treating the dominant corporation as an agent of the principal"); *Berger v. Columbia Broadcasting Sys., Inc.,* 453 F.2d 991, 994 (5th Cir.), *cert. denied*, 409 U.S. 848, 93 S.Ct. 54, 34 L.Ed.2d 89 (1972)(ownership of a controlling interest in a corporation entitles the controlling stockholder to exercise the normal incidents of stock ownership, such as the right to choose directors and set general policies, without forfeiting the protection of limited liability);  *Baker v. Raymond Intern., Inc.,* 656 F.2d 173, 180 (5th Cir.1981), *cert. denied,* 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982)(collecting cases).



9641187.1 58144/146507 8/19/22

These facts demonstrate exactly what Mr. Wilt had in mind when Blue Sun was formed: an independent, self-sufficient sale and distribution company. Courts that have weighed the sufficiency of evidence have found pervasive control of a subsidiary by a parent only in extreme situations that bear no resemblance to the present case. *See e.g.*, *St. Paul Ins Co. v. Talladega Nursing Home, Inc.*, 606 F.2d 631, 635 (5th Cir. 1979)(a controlling stockholder uses a closed corporation as his personal business conduit, he may be held responsible for the debts of his "alter ego".); *FMC Fin. Corp.*, 632 F.2d 413, 432 (5th Cir. 1980)(If the corporation is employed to perpetrate a fraud upon a creditor, he may impose liability on its stockholders). Importantly, KPM is not a creditor of ITG, and there is no allegation (nor could there be) that KPM is confused as to the difference between Blue Sun and ITG. ITG has been in the NIR analyzer market for decades.

There is no evidence that ITG is siphoning off Blue Sun funds, thus factor number 9 is not met. With respect to factor 11 (use of the corporation for transactions of the dominant shareholders), both Blue and ITG benefit from the sales transactions that Blue Sun makes to NIR analyzer customers. There is no evidence that ITG uses Blue Sun for its exclusive benefit, or that such transactions are an abuse of the corporate form and perpetrate a fraud upon KPM. *See TechTarget*, 746 F. Supp.2d 353, 357 (TechTarget has not and cannot allege that it was deceived or misled about Spark Design's corporate posture at time it entered into contract).

Factor 12 (use of the corporation in promoting fraud) is inapplicable for similar reasons – KPM is not a creditor of ITG. The rationale for including factor 12 in the veil-piercing analysis is to protect creditors of the subsidiary corporation from frauds committed by the parent corporation through the abuse of the corporate form. *See e.g.*, *Dewitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 686 (A parent corporation may be held liable for the debts of a subsidiary if the parent fails to observe the formalities of separate incorporation, including adequate

14

capitalization of the subsidiary).  As a competitor of ITG's, rather than a customer, KPM cannot take advantage of a judicially-created remedy of equity designed to protect a company's creditors. *See Andretti Sports Marketing La., LLC v. Nola Motorsports Host Committee, Inc.*, 147 F. Supp. 3d 537, 561 (E.D. La. 2015)("the purpose behind the 'piercing the corporate veil' and 'alter ego' doctrines is to protect a creditor in his dealings with a shareholder who fails to distinguish, in transactions, between the corporation and his identity as a shareholder.").  *See also In re Flint* also, *In re RCS Engineered Prods. Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996) ("[A]n alter ego claim is not itself a cause of action.  Rather, it is a doctrine which fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his or her own personal business . . .").

In short, KPM has neither pled nor identified any facts in discovery that would allow it to pierce the corporate veil that exists between Blue and ITG.

E.   CONCLUSION

For all of the foregoing reasons, this Court should grant summary to ITG with respect to KPM's claims against ITG under Count I (Defendant Trade Secrets Act), Count II (Misappropriation of Trade Secrets), Count VII (Tortious Interference with Contract), Count VIII (Conversion) and Count X (Violation of M.G.L. c. 93A, §11).

REQUEST FOR ORAL ARGUMENT

Defendant The Innovative Technologies Group & Co., Ltd hereby requests oral argument on this motion.

|  |  |
|---|---|
|  | BLUE SUN SCIENTIFIC, LLC, and THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD, |
| Dated:  August 19, 2022 | /s/ Maria T. Davis_____<br>Christopher R. O'Hara (BBO# 548611)<br>cohara@toddweld.com<br>Maria T. Davis (BBO# 6754477)<br>mdavis@toddweld.comg<br>Todd & Weld, LLP<br>One Federal Street<br>Boston, MA 02110 |
|  | /s/ George F. Ritchie_____<br>George F. Ritchie*, #22408 (Pro Hac Vice)<br>Royal Craig*, Fed. Bar #24546<br>GORDON FEINBLATT LLC<br>1001 Fleet Street, Suite 700<br>Baltimore, MD 21202<br>Tel/Fax: (410) 576-4131<br>gritchie@gfrlaw.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 19, 2022, this document was sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                             */s/George F. Ritchie*
                                             George F. Ritchie

9641187.1 58144/146507 8/19/22