UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

—————————————————————

KPM ANALYTICS NORTH AMERICA                )
CORPORATION,                               )
                                           )
           *Plaintiff,*                    )
                                           )
    v.                                     )
                                           )   Civil Action No. 4:21-CV-10572-LTS
BLUE SUN SCIENTIFIC, LLC, THE              )
INNOVATIVE TECHNOLOGIES GROUP              )   Leave to file under seal
& CO., LTD., ARNOLD EILERT,                )   allowed September 16, 2022 (ECF No. 154)
MICHELLE GAJEWSKI, ROBERT                  )
GAJEWSKI, RACHAEL GLENISTER,               )
GREGORY ISRAELSON, IRVIN LUCAS,            )
AND PHILIP OSSOWSKI                        )
                                           )
           *Defendants.*                   )
—————————————————————                      )

**PLAINTIFF KPM ANALYTICS NORTH AMERICA CORPORATION'S
OPPOSITION TO DEFENDANT, THE INNOVATIVE TECHNOLOGY GROUP & CO.,
LTD.'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff KPM Analytics North America Corporation ("KPM") respectfully submits this

Memorandum in Opposition to Defendant The Innovative Technologies Group & Co., Ltd.'s

("ITG's") Motion for Summary Judgment and corresponding Memorandum in Support

(hereinafter collectively referred to as the "Motion"). ITG's Motion wrongly attempts to ignore

the prior findings of this Court in preliminarily enjoining ITG, along with the other defendants,

from continuing to injure KPM. Contrary to ITG's suggestions, KPM does not seek to hold ITG

liable only vicariously for the actions of its wholly owned subsidiary and sales arm Blue Sun

Scientific, LLC ("Blue Sun") and the actions of the former KPM employees who now work for

Blue Sun. Rather, as this Court has found and subsequent discovery has now further solidified,

ITG is directly liable for ITG itself misusing, and benefiting from the misuse of, KPM's technical

and customer related trade secrets and confidential information. ITG is also directly liable for

tortiously interfering with the Individual Defendants' confidentiality and non-disclosure agreements with KPM and for ITG's own unfair and deceptive trade practices in violation of M.G.L. Chapter 93A. Any need to pierce ITG's corporate veil to recover damages is only of secondary importance; however, based upon the discovery record, KPM expects veil piercing to be an available remedy if needed.

ITG, therefore, has failed to establish the lack of a genuine dispute of material fact as to its direct or secondary liabilities to KPM. Summary judgment is inappropriate. The Court should deny ITG's motion and allow KPM to proceed to try its case against all defendants.

## STATEMENT OF MATERIAL FACTS[1]

### I.     ITG Fails To Address This Court's Prior Factual Findings.

ITG's Motion ignores the factual findings previously made by the Court in granting a preliminary injunction against all of the defendants including, in part, ITG. (*Compare* Motion at 4-9 *with* Doc. No. 93.) The Court's findings establish that the tortious conduct of all of the defendants has been undertaken to sell ITG's Near Infra-Red ("NIR") analyzer product the M5, rebranded in 2019 as the "Blue Sun Phoenix" in order to provide increased profits for ITG at KPM's expense. *See* Doc. No. 93 at 2-11. The Court's previous findings include:

In April 2018, while still employed by KPM and focused on selling KPM's Unity SpectraStar line of NIR analyzers, defendant Irvin Lucas[2] approached Robert Wilt the CEO and

---

[1] KPM notes that ITG failed to file or serve a separate Statement of Facts as required by Local Rule 56.1.

[2] Although not disclosed by defendants in discovery, KPM has been informed by the U.S. Probation Department that Lucas has recently pled guilty to conspiracy to commit bribery of a public official in the United States District Court for the Northern District of Illinois and is currently scheduled to be sentenced sometime after October 28, 2022. (Declaration of Scott Magee, "Magee Decl.," filed herewith, Ex. 1, Docket Report printed on Sept. 19, 2022.) *See also, USA v. Dyson et al.*, 1:21-CR-00705-2 (N.D. Ill.) ECF No. 60.

2

sole owner of ITG about forming a sales arm for ITG to sell ITG's NIR analyzer, then called the M5. *Id.* at 2-3. Wilt agreed, and in July 2018 formed Blue Sun as a subsidiary of ITG and he and Lucas rebranded the M5 as the Blue Sun Phoenix. *Id.* Lucas immediately began recruiting coworkers at KPM to move to Blue Sun, but Lucas did not resign and leave the employ of KPM until almost a year later in May 2019. *Id.* at 3. Lucas recruited his KPM coworkers, including the other remaining Individual Defendants in this case, Robert Gajewski, Arnold Eilert, and Rachael Glenister. *Id.* at 2-11.

While Gajewski was an employee (and briefly a contractor) of KPM from 2019-2021, he and Lucas arranged for Gajewski to perform about 140 separate preventative maintenance ("PM") annual servicing on KPM SpectraStar NIR analyzers for KPM customers, but did so on behalf of Blue Sun, diverting those customers to Blue Sun, and for which Blue Sun charged the customers and collected the service revenues. *Id.* at 3-4. They did so, at least some of the time, by undercutting KPM's prices, which they knew as employees of KPM and through the exchange of KPM invoices and related documents. *Id.* at 3-5. Gajewski's work for KPM's customers while he was still employed at KPM, but done on behalf of Blue Sun, included performing calibration services, software training, and database conversions, all of which involved Gajewski utilizing KPM's proprietary UCAL calibration software to which he had access as a KPM employee. *Id.* at 5-6.

While still employed by KPM, Gajewski also used KPM's UCAL software and KPM's extensive proprietary calibration libraries to generate false technical details in Application Notes to misrepresent the capabilities of the Phoenix/M5 NIR analyzer products that compete with KPM's SpectraStar analyzers. *Id.* at 6. Gajewski provided these "false application notes" to Lucas who had then posted them on the Blue Sun website to market the alleged precision of the Phoenix/M5 analyzers for over a year, up until KPM brought this lawsuit. *Id.* "Before and after his

termination from KPM, Gajewski leveraged the customers he transferred from KPM to Blue Sun over the past two years for PM to try and sell Phoenix[/M5] analyzers." *Id.* at 7.

Lucas similarly recruited defendant Glenister to Blue Sun, and she worked to move KPM SpectraStar and PM customers to Blue Sun, both before she left her employment with KPM and after. *Id.* at 7-8. She arranged for Blue Sun to provide several KPM customers PM services for their SpectraStar machines and then provide them price quotes to sell them replacement Phoenix/M5 analyzers. *Id.* Lucas also recruited defendant Eilert to Blue Sun who provided PM and technical services to KPM customers after he joined Blue Sun, and evidence suggests also before he left KPM, utilizing his personal and falsely-named Blue Sun email accounts, resulting in customer confusion over who Eilert worked for and which company was performing their NIR services. *Id.* at 8-10. These actions by Lucas, Glenister and Eilert were in violation of their non-disclosure of confidential information agreements as employees of KPM, which ITG avoided asking about when it established Blue Sun, hired Lucas and had him hire the other defendants. *Id.* at 10-11.

Other than reaffirming its efforts to willfully ignore the confidentiality obligations that the Individual Defendants owed to KPM, ITG does not address any of these factual findings previously made by this Court based on the evidence adduced at the time or the factual admissions by defendants and other record evidence that the Court cited. (*See* Motion at 4-9.) ITG makes no effort to explain why these actions by itself, Blue Sun, and the Individual Defendants do not, at the very least, create a genuine dispute of material fact over ITG's liability, given that the actions were ultimately directed to, and otherwise involved, efforts to sell ITG's M5 analyzer it had rebranded as the Phoenix. (*See id.*)

4

## II.      Subsequent Discovery Has Confirmed ITG's Direct Involvement In, Benefit From, And Thus Liability For The Tortious Conduct Against KPM.

Discovery in this case, both prior to and after the Court issued (and repeatedly refused to drop) its preliminary injunction against the defendants, has only further confirmed that ITG controls Blue Sun and that all of Blue Sun's and the Individual Defendants' illegal efforts have been on behalf of the interests of ITG: ███████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████

         ███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

4867-3550-9810, v. 5

7

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████

## **ARGUMENT**

### I.     **ITG Cannot Meet the Exacting Summary Judgment Standard**

In its Summary Judgment Motion, ITG ignores most of the above detailed material facts and fails to carry its heavy burden. With so many issues of material fact that are in genuine dispute, ITG is not entitled to judgment as a matter of law. *Wofse v. Horn*, 523 F.Supp.3d 122, 131 (D. Mass. Mar. 2, 2021) (stating, "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' a court cannot grant a motion for summary judgment." citing, *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)); *Scholz v. Delp*, 473 Mass. 242, 249 (2015)*; Winbrook Comm. Servs., Inc. v. U.S. Liability Insur. Co.*, 89 Mass. App. Ct. 550, 551 (2016) (holding that the lower court erred in granting a motion for summary judgment where genuine issues of material fact existed). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. *Scholz*, 473 Mass. at 249; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (stating, "[o]f course, a party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion…which it believes demonstrate the absence of a genuine issue of material fact).  Moreover, courts must "resolve any conflicts in the summary judgment materials, and [ ] make all logically permissible inferences, in the [non-moving party's] favor." *Willitts v. Roman Catholic Archbishop of Boston*, 411 Mass. 202, 203 (1991); *Wofse*, 523 F.Supp.3d. at 131 (articulating, "[i]n reviewing the evidence, the Court must 'draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" citing, *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000)). The moving party may not rely on mere conclusory assertions regarding the nonmoving party's lack of evidence. *See Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 715 (1991); *see also*, *ICONIC S, Inc. v. Massaro*, 192 F.Supp.3d 254, 267 (D. Mass. 2016) (finding a "conclusory argument – made without citation to legal authority or the factual record in defendants' original brief – is not sufficient to support a summary judgment motion").

## II.   ITG Directly Benefited From The Trade Secret Misappropriation And Therefore Is Liable.

KPM has asserted claims of misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §1836(b)(1) ("DTSA") (Count I), M. G. L. c. 93, § 42 ("MUTSA"), and common law misappropriation of trade secrets (Count II).  ITG attempts to use its creation of its wholly owned LLC, Blue Sun, and the fact that the individuals who misappropriated and misused KPM's confidential information are employees of Blue Sun, and not directly of ITG, to insulate ITG from liability. Doc. No. 145 at 10.

However, "a third party who knowingly benefits from a trade secret which a person in a confidential relationship obtained from the plaintiff is liable to the plaintiff for the misappropriation of that trade secret." *Data General Corp. v. Grumman Systems Support Corp*., 795 F. Supp. 501, 507 (D. Mass. 1992)) (citing *Curtis-Wright Corp. v. Edel-Brown Tool & Die*

*Co.*, 381 Mass. 1, 407 N.E. 2d 319, 322 n.2 (1980)); *ARK National Holdings, LLC v. We Campaign, LLC*, Civil Action No. 21-10893-RGS, 2021 WL 5918682, *5 (D. Mass. Dec. 15, 2021) (applying *Data General* to both the DTSA and MTUSA). Moreover, in this very case, the Court already explained that "the plain text of both statutes implies that a defendant can be liable for inducing a third party to disclose confidential information in breach of a confidential relationship." *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, No. 4:21-CV-10572-TSH, 2021 WL 2982866, at *14 (D. Mass. July 15, 2021).   In *Data General Corp.*, the court denied defendant's summary judgment motion where plaintiff asserted that "its trade secrets were wrongfully retained by former employees…in violation of their duties of confidentiality to [plaintiff, and defendant] knew that the contents of the software were trade secrets, and that [defendant] knowingly benefited from the wrongful conduct by acquiring, possessing, and using [the software]."

As detailed above from this Court's prior findings, and the detailed factual record developed through discovery of defendants' own admissions, the record here shows: ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  Having received the benefits of these

illegal, tortious actions of misappropriation and misuse, ITG is directly liable. See, e.g., *Data General*, 795 F. Supp. at 507.  This too is true with respect to the more recently-enacted DTSA. *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, No. 4:21-CV-10572-TSH, 2021 WL 2982866, at *14 (D. Mass. July 15, 2021) (citing *Curtiss-Wright* in the DTSA analysis and explaining  "a corporation which received and used a competitor's trade secrets from a third party could be liable for misappropriation under state law even though the corporation had no confidential relationship with the competitor, so long as the information claimed to be a trade secret was in fact secret and the corporation who received it had notice that the third party had disclosed it in violation of a legal duty to keep it secret").

### III.    ITG Cannot Escape Liability Through Willful Blindness.

As the Massachusetts Supreme Judicial Court stated in the *Curtiss-Wright Corp.* decision, "[a] defendant cannot insulate himself by studious ignorance of pertinent warning facts." 381 Mass. at 6. In *Optos, Inc. v. Topcon Medical Systems, Inc.*, 777 F.Supp. 2d 217, 240, this court, citing *Curtiss-Wright Corp.*, put is as follows: "A party who knowingly benefits from the breacher's trade secret bounty is also liable."

Under the law, ITG cannot escape liability for the tortious conduct of Blue Sun and the Individual Defendants by establishing Blue Sun, providing no oversight over its activities, and, even worse, deliberately avoiding any knowledge about its activities or their legal impropriety.

████████████████████████████████████████████████

████████████████████████████████████████████.  ITG is responsible for doing so and liable for all of the illegal actions Blue Sun, Lucas and the other Individual Defendants have employed

for ITG's benefit despite ██████████████████████████████████████████

████████████████████████████.

### IV.   ITG Also Cannot Use Willful Blindness To Escape The Genuine Issues of Material Fact Concerning Its Liability Under KPM's Additional Causes Of Action.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████

        The requisite elements of tortious interference with contractual relations are (1) a contract existed between plaintiff and a third-party, (2) defendants "knowingly induced [the third party] to breach that contract", (3) "that defendants' interference, in addition to being intentional, was improper in motive or means" and (4) that the plaintiff "was harmed by defendants' action." *Holmes Products Corp. v. Dana Lighting, Inc*., 958 F.Supp. 27, 31 (D. Mass. 1997) (citing *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 812, 551 N.E.2d 20 (1990)).  The only element that ITG appears to attack is element (2), that they did not *know* that they were inducing KPM employees to leave KPM and instead work for Blue Sun and taking along with them KPM's customer and servicing knowledge.  However, "[i]n a tortious interference action, a plaintiff is not required to prove that the defendant had perfect knowledge of the terms and conditions of the

12

contracts in issue…[i]t is enough that the defendant who interfered have knowledge of the existence of the contract, which itself may suffice to imply malice." *Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741, 775 (S.D. NY 1990) (internal citations and quotation marks omitted). For example, in the *Legal Technology Group, Inc. v. Mukerji* decision, the D.C. District, relying on the Restatement (Second) of Torts § 766 cmt. i. (regarding intentional interference with contractual relations) which specifically states that "it is not necessary that the actor appreciate the legal significance of the facts giving rise to the contractual duty", denied the defendant's motion for summary judgement finding there was a genuine dispute of material fact as to whether the defendant "had the requisite knowledge" of the plaintiff's contract with its ex-employee, despite the defendant taking "affirmative steps to ascertain" if the ex-employee's restrictive covenant applied and was advised that it did not. No. 17-631 (RBW), 2019 WL 9143477, at *15 (D. D.C. 2019).

Here, there is at least a genuine dispute of material fact as to ███████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████    *See Don King Productions,* 742 F. Supp. at 775; *see also*, *Legal Technology Group, Inc.*, 2019 WL 9143477, at *15. ███████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████    *See id.*

ITG's Motion should also be denied as to KPM's unfair and deceptive business practices cause of action pursuant to Chapter 93A. Summary judgment is inappropriate "[i]n cases where motive, intent, or other state of mind are questions at issue." *Flesner v. Tech. Commc'ns Corp.*, 410 Mass. 805 (1991). For this reason, "the SJC has held that motions for summary judgment in c. 93A . . . cases should almost always be denied." *Prevosk v. Quincy Mut. Fire Ins. Co.*, 1995 Mass. Super. Lexis 736, 6 (1995) (citing *Wheatley v. Am. Tel. & Tel. Co.*, 418 Mass. 394, 400 n.9 (1994), and *Noyes v. Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 725-726 (1979)).

Moreover, when analyzing a Chapter 93A claim, a court must undertake an extensive review of the case's individual circumstances, in order to determine "[w]hether a given practice is unfair or deceptive." *Noyes v. Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 726 (1979) (citing *Commonwealth v. DeCotis*, 366 Mass. 234, 242 (1974) and *Schubach v. Household Fin. Corp.*, 375 Mass. 133, 137 (1978)).  "The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 396 N.E.2d 149, 153 (1979); *see also PMP Associates, Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 321 N.E.2d 915, 917 (1975) (holding that actions which would fall under M. G. L. c. 93A are ones that are "immoral, unethical, oppressive or unscrupulous.").

Here, summary judgment is inappropriate taking account of the extensive record of prior findings by this Court and the discovery record detailed above. ITG was the ultimate beneficiary of all the actions by Blue Sun and the Individual Defendants, ████████████████████ ████████████████████████ Any failure of knowledge by ITG regarding the actions of Blue Sun, Lucas and the others was solely due to willful and wanton disregard by ITG and its

sole owner Wilt. They cannot escape from liability by assigning the unscrupulous details to others and then willfully ignoring those actions.

V.     **To The Extent ITG Can Argue It Is Not Directly Liable, Recovery Against ITG Should Be Permitted Indirectly Given The Close Corporate Connections Between ITG And Blue Sun.**

For the reasons explained above, ITG has direct liability on the claims against it and KPM does not need to rely on a veil piercing theory to establish ITG's direct liability. Nevertheless, there is sufficient evidence in the record from which a jury could reasonably conclude that veil piercing is appropriate and that ITG should be liable for Blue Sun's conduct as its alter ego both because (a) the two companies engaged in sufficient confused intermingling and (b) ITG exercised sufficient control over Blue Sun for tortious purposes to justify holding ITG liable for Blue Sun's conduct. *See*, *Hewitt v. Bay State Gas Co.*, 63 Mass. App. Ct. 1121, 2005 WL 1514343, at *2 (Mass. App. 2005) (articulating "[i]n order to pierce the corporate veil, courts have focused on whether one corporation exercises (1) pervasive control…*or* (2) there is a confused intermingling of two corporations engaged in a common enterprise"). (internal quotation marks omitted) (emphasis added).

a.     **A Reasonable Jury Could Conclude that ITG and Blue Sun Engaged in Sufficient Confused Intermingling to Hold ITG Liable for Blue Sun's Conduct.**

"Corporate formalities [] may be disregarded 'when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise *with substantial disregard of the separate nature of the corporate entities,* or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.'" *Scott v. NG U.S. 1, Inc.*, 450 Mass. 760, 767 (2008), quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968) (emphasis in original).  There is considerable evidence showing a confused intermingling of ITG and Blue Sun from which a jury could conclude that the acts of

Blue Sun should be attributed to ITG through a veil piercing or alter ego theory.  Internally, ITG

and Blue Sun repeatedly blurred the lines between the two companies.  ███████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

*Zimmerman v. Puccio*, 613 F.3d 60, 74 & n. 19 (1st Cir. 2010) (piercing the veil where

companies "used employees interchangeably" and "at least one person who worked at various

times for [one of the affiliates], received the bank statements and paid the bills of one of those

companies while he was not an employee of that company, but was instead on the payroll of a

different [affiliated] entity").  ████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████  ██████████████████████

---

[3] Massachusetts Courts have recognized that filing joint tax returns and combining financials can
support veil piercing based on a confused intermingling theory.  *Cf. Supply Chain Assocs., LLC
v. ACT Elecs., Inc.*, No. MICV200802214, 2012 WL 2381908, *10 (Mass. Super. Ct. Mar. 29,
2012) (refusing to find confused intermingling where, unlike here, the entities meticulously filed
separate tax returns and did not combine their financial records).  Furthermore, Courts in
Maryland, where Blue Sun and ITG are located, do view the filing of joint tax returns as one

16

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

Externally, ITG and Blue Sun also confusingly and purposefully blurred the lines between ITG and Blue Sun.  Most prominently, they repeatedly held out Blue Sun as the manufacturer of the original Unity SpectraStar NIR Analyzer, when in fact it was ITG. Although Defendants now argue in their motion that "ITG designed and patented the original Unity SpectraStarTM NIR Analyzer," Mem. at 4, Defendants told the outside world, and particularly prospective customers, that it was Blue Sun that did so. Blue Sun's website stated as of August 5, 2020 and October 23, 2020, that "Blue Sun is the original instrument designer for many respected instrumentation brands including NIR companies Unity Scientific and Process Sensors Corp."  (Magee Decl., Ex. 23, KPM0002543; Magee Decl., Ex. 24, website snapshot as of October 23, 2020).  ████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████    ██████████

██████████████████████████████████████████████████████

---

factor in favor of treating a parent and subsidiary as the same.  *Thomas v. Bet Sound-Stage Restaurant/BrettCo, Inc.*, 61 F.Supp.2d 448, 465 (D. Md. 1999).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Zimmerman*, 613 F.3d at 74.

This confused intermingling has a direct nexus to the defendants' alleged wrongdoing. The obvious purpose of falsely promoting Blue Sun, and not ITG, as the original manufacturer of the SpectraStar machines was to make ITG money, ██████████████████████████████████

██████████████████████████████████████████████████████████

██████████████ to whom Blue Sun and ITG were lying, and to generate revenue for ITG when Blue Sun serviced SpectraStar analyzers for customers of KPM that were wrongfully siphoned off by Blue Sun and ITG for the reasons explained above. *See* Section II, *supra*.

**b.  A Reasonable Jury Could Conclude that ITG Pervasively Controlled Blue Sun for an Injurious Purpose to Hold ITG Liable for Blue Sun's Conduct.**

There is significant evidence that ITG exercises pervasive control over Blue Sun and in doing so has caused injurious consequences to KPM.  "A veil may be pierced where the parent exercises 'some form of pervasive control' of the activities of the subsidiary '*and* there is some fraudulent or injurious consequence of the intercorporate relationship.'" *Scott*, 450 Mass. at 767, quoting *My Bread Baking Co.,* 353 Mass. at 619 (emphasis in original). ████████████████████

███████████████████████████████████████████████████████

18



This sort of control and Blue Sun's dependence on ITG is exactly the sort of control the First Circuit has deemed sufficiently pervasive to warrant veil piercing. *Zimmerman*, 613 F.3d at 64 (piercing the corporate veil where the entity making the misrepresentations "worked exclusively" for the parties against whom liability was being sought).

As with the confused intermingling, the control exercised by ITG over Blue Sun was done for the purpose of engaging in conduct that was tortious. The entire purpose of establishing Blue Sun was to compete in the NIR marketplace and pursue customers who used a KPM SpectraStar analyzers that ITG/Blue Sun's staff knew so well to move their business to ITG/Blue Sun. Because ITG had sold the SpectraStar business to KPM, Doc. No. 93 at 3, and because it knew that the employees nominally hired by Blue Sun, beginning with Robert Wilt luring Irvin Lucas away from KPM, a reasonable jury could easily conclude that Blue Sun was purposefully established to

19

benefit ITG through Blue Sun's use of trade secrets, customer information, and other proprietary information obtained from KPM.

**VI.     Conclusion.**

For the above-stated reasons, ITG's Motion for Summary Judgment should be denied.

Respectfully submitted,

KPM Analytics North America Corporation,

By its attorneys,

*/s/ John T. Gutkoski*
John T. Gutkoski (BBO No. 567182)
Cesari & McKenna LLP
One Liberty Square, Suite 310
Boston, MA 02109
Phone: (617) 951-2500
JTG@c-m.com

**AND**

Scott R. Magee (BBO No. 664067)
Paige Zacharakis (BBO No. 699108)
Morse, Barnes-Brown & Pendleton, P.C.
480 Totten Pond Road, 4th Floor
Waltham, MA 02451
Phone: (781) 622-5930
Fax: (781) 622-5933
smagee@morse.law
pzacharakis@morse.law

September 19, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of September, 2022, a true and correct copy of the foregoing document was filed in redacted form through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), with an unredacted version served to counsel of record via electronic mail.

*/s/ Scott R. Magee*       
Scott R. Magee

21

4867-3550-9810, v. 5