UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION, | ) ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) ) Civil Action No. 4:21-CV-10572-LTS |
| BLUE SUN SCIENTIFIC, LLC, THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD., ARNOLD EILERT, MICHELLE GAJEWSKI, ROBERT GAJEWSKI, RACHAEL GLENISTER, GREGORY ISRAELSON, IRVIN LUCAS, AND PHILIP OSSOWSKI | ) ) Leave to file under seal ) allowed September 16, 2022 (ECF No. 155) ) ) ) ) ) ) |
| *Defendants.* | ) ) |

**PLAINTIFF KPM ANALYTICS NORTH AMERICA CORPORATION'S
OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE OR MODIFY THE
<u>PRELIMINARY INJUNCTION</u>**

Plaintiff KPM Analytics North America Corporation ("KPM") respectfully submits this Memorandum in Opposition to Defendants' Motion to Dissolve or Modify The Preliminary Injunction. This Motion is Defendants' fourth attempt to have the Court reconsider, revise, reinterpret or modify the carefully considered, well supported, and relatively narrow Preliminary Injunction Order entered against them. *See* Doc. Nos. 93-94, 98, 104, 114, and 148. That Order primarily limits defendants Blue Sun Scientific LLC ("Blue Sun") and the remaining Individual Defendants from providing, offering or selling any goods or services related to KPM's near infrared ("NIR") products, and limits all of the Defendants from offering to sell or selling their own NIR products to any KPM customers with which the defendants previously dealt while they worked for KPM. Doc. No. 94. Defendants remain free to offer to sell and sell any NIR goods and services to all other customers or potential customers throughout the world.

Yet, now as trial approaches, Defendants are back before the Court once again asking it to reconsider its Order. Defendants do so without, for the most part, even discussing the Court's prior factual findings, and Defendants fail to establish "significant changes" in those established circumstances as required by First Circuit precedent applying Fed. R. Civ. P. 60(b)(5). They also ignore many of the inculpatory admissions they have now made in the subsequent fact depositions, which only further support the Court's prior findings of KPM's likelihood of success at trial and the irreparable harm it suffers from the Defendants' tortious actions. Defendants instead ask the Court to reconsider based solely upon a handful of soundbites primarily from KPM's witnesses, who, as the Court recently noted, are prohibited by the Protective Order from knowing most details of Defendants' actions or the full impact those actions have had on KPM's customers. *See* Doc. No. 141.

By failing to address the detailed underlying circumstances, let alone establish that they have "significantly changed," Defendants fail to carry their burden. The Court should deny this Motion and allow the parties to proceed to trial where the fact finder may consider the entire record. Far from leading to a cessation of the current Preliminary Injunction, KPM expects to prove at trial and show in post-trial motions that it is entitled to have the injunction made permanent.

## STATEMENT OF RELEVANT FACTS

### I.   Defendants Fail To Address This Court's Detailed Factual Findings In Ordering The Preliminary Injunction.

Defendants' Motion contains no statement of facts, but only a "Background" section consisting of two paragraphs. (Motion at 2-3.) The first paragraph notes the Court's order dismissing KPM's non-compete and non-solicitation contractual counts but omits noting that KPM's claims enforcing the non-disclosure and confidentiality provisions remain in the case. (*See id.*) Defendants' additional Background paragraph consists of two erroneous assertions. First,

Defendants accuse KPM of "pivoting" away from the technical trade secrets the Defendants admit to having misused here (KPM's calibration software, calibration data libraries, technical reports and documents, *etc.*) and only asserting now Defendants' misuse of customer communications and data. (*See id.* at 3.) As noted immediately below, Defendants' misuse of KPM's technical confidential trade secrets to misrepresent the measurement capabilities of their competing products and provide services to KPM customers remain, along with the misuse of the customer communications and resulting customer confusion, important parts of KPM's case.

Second, Defendants erroneously claim the Court's Preliminary Injunction rests on KPM's Affidavit of Eric Olson dated 7/23/21 and claim they did not have the opportunity to cross-examine Mr. Olson. (*See id.*) In truth, the Court's Preliminary Injunction Order and Memorandum cites the Olson Affidavit only once, (Doc. No. 93 at 9), otherwise citing to the extensive expedited discovery undertaken by the parties, (*see generally id.*). Moreover, Defendants not only deposed Mr. Olson as part of that expedited discovery, but have now done so again, never putting his affidavit before him.

A review of the Court's prior findings in issuing its Preliminary Injunction Order establish that in April 2018, while still employed by KPM and focused on selling KPM's Unity SpectraStar line of NIR analyzers, defendant Irvin Lucas[1] approached Robert Wilt the CEO and sole owner of defendant The Innovative Technologies Group & Co. Ltd. ("ITG") about forming a sales arm for ITG to sell ITG's NIR analyzer then called the M5. Doc. No. 93 at 2-3. Wilt agreed, and in July 2018 formed Blue Sun as a subsidiary of ITG and he and Lucas rebranded the M5 as the Blue Sun

---

[1] Although not disclosed by defendants in discovery, KPM has been informed by the U.S. Probation Department that Lucas has recently pled guilty to conspiracy to commit bribery of a public official in the United States District Court for the Northern District of Illinois and is currently scheduled to be sentenced sometime after October 28, 2022. (Declaration of Scott Magee, "Magee Decl.," filed herewith, Ex.1.)

Phoenix. *Id.* Lucas immediately began recruiting coworkers at KPM to move to Blue Sun, but Lucas did not resign and leave the employ of KPM until almost a year later in May 2019. *Id.* at 3. Lucas's recruited coworkers include the other remaining Individual Defendants in this case Robert Gajewski, Arnold Eilert, and Rachel Glenister. *Id.* at 2-11.

While Gajewski was an employee (and briefly a contractor) of KPM from 2019-2021, he and Lucas arranged for Gajewski to perform about 140 separate preventative maintenance ("PM") annual servicings on KPM NIR SpectraStar NIR analyzers for KPM customers, but did so on behalf of Blue Sun, diverting those customers to Blue Sun, and for which Blue Sun charged the customers and collected the service revenues. *Id.* at 3-4. They did so, at least some of the time, by undercutting KPM's prices, which they knew as employees of KPM and through the exchange of KPM invoices and related documents. *Id.* at 3-5. Gajewski's work for KPM's customers while he was still employed at KPM, but done on behalf of Blue Sun, included performing calibration services, software training, and database conversions, all of which involved Gajewski utilizing KPM's proprietary UCAL calibration software to which he had access as a KPM employee. *Id.* at 5-6.

While still employed by KPM, Gajewski also used KPM's UCAL software and KPM's extensive proprietary calibration libraries to generate false technical details in detailed Application Notes to misrepresent the capabilities of the M5/Phoenix NIR analyzer products that compete with KPM's SpectraStar analyzers. *Id.* at 6. Gajewski provided these "false application notes" to Lucas who had them posted on the Blue Sun website to market the alleged precision of the M5/Phoenix analyzers for over a year up until KPM brought this lawsuit. *Id.* "Before and after his termination from KPM, Gajewski leveraged the customers he transferred from KPM to Blue Sun over the past two years for PM to try and sell [M5/]Phoenix analyzers." *Id.* at 7.

4

Lucas similarly recruited defendant Glenister to Blue Sun, and she worked to move KPM SpectraStar and PM customers to Blue Sun, both before she left her employment with KPM and after. *Id.* at 7-8. She arranged for Blue Sun to provide several of them PM services and then provided them price quotes to sell them replacement M5/Phoenix analyzers. *Id.* Lucas also recruited defendant Eilert to Blue Sun who provided PM and technical services to KPM customers after he joined Blue Sun, and evidence suggests also before he left KPM, utilizing his personal and falsely-named Blue Sun email accounts resulting in customer confusion over who Eilert worked for and which company was performing their NIR services. *Id.* at 8-10. These actions by Lucas, Glenister and Eilert violated their non-disclosure of confidential information agreements as employees of KPM, which ITG avoided asking about when it established Blue Sun, hired Lucas and had him hire the other defendants. *Id.* at 10-11. These actions also establish a strong likelihood that KPM will succeed at trial in proving Defendants misappropriated and misused KPM's technical and customer/business-related trade secrets and confidential information in a series of unfair and deceptive business practices in violation of Chapter 93A. *Id.* at 13-21.

## II. Defendants Also Ignore Much Of The Subsequent Discovery Record That Confirms The Court's Prior Findings.

Discovery in this case, both prior to and after the Court issued its Preliminary Injunction, has only further confirmed that:

6

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████

    While performing annual PM, additional servicing, and calibration adjustments for customers generates a moderate amount of revenue, the real significance of this activity is to maintain the customer relationship over the extended lifetime of the NIR products to best position a manufacturer to sell the next unit or multiple units.  (*See* Doc. No. 75, Declaration of Eric Olson, at para. 15.)  Indeed, the Court found that Gajewski repeatedly leveraged the service customers he transferred from KPM to Blue Sun to try and sell them new M5/Phoenix analyzers. Doc. No. 93 at 7. ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

   ██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

## **ARGUMENT**

**I.      Defendants Have Failed To Satisfy Their Burden As Required By Rule 60(b)(5).**

Defendants ignore the high burden they face in asking this Court, now for the fourth time, to modify or eliminate its Preliminary Injunction Order. Defendants suggest that they need only show that its application is generally no longer equitable. (Motion at 4.) That is not the law. Defendants face a much higher burden; one they have not met. "A court may modify the preliminary injunction if Defendant can demonstrate that there has been a 'significant change' in the circumstances such that 'it is no longer equitable that the judgment should have prospective application.' Fed. R. Civ. P. 60(b)(5). A change in operative fact may

serve as a basis for vacating a preliminary injunction." *Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10, 16 (1st Cir. 2008); *see also Agostini v. Felton*, 521 U.S. 203, 215 (1997) ('it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction ... can show a significant change either in factual conditions or in the law.' (quotation marks and citation omitted))."

Defendants are not permitted to simply reargue their views on equity. "Under Rule 60(b)(5), defendant needs 'to show that "it is no longer equitable that the judgment should have prospective application," *and* that there has been the kind of "significant change" in circumstances that the Rule requires.'" *Mahoney v. Wells Fargo Bank, N.A.*, No. CV 18-11593-MBB, 2021 WL 1178377, at *19 (D. Mass. Mar. 29, 2021) (quoting, *Dr. José S. Belaval, Inc. v. Peréz-Perdomo*, 465 F.3d 33, 38 (1st Cir. 2006) (emphasis in original); *see Concilio de Salud Integral de Loiza*, 551 F.3d at 16. "Motions invoking Rule 60(b) are granted sparingly." *Id*. (citing, *Giroux v. Fed. Nat'l Mortg. Ass'n*, 810 F.3d 103, 106 (1st Cir. 2016) (internal quotation marks omitted)).

Yet, they are simply once again rearguing their views on certain equities as in all Defendants' Motion attempts. As detailed below, Defendants do not identify "significant changes" in circumstances have occurred. They do not consider the totality of the circumstances as previously found by the Court on any issue or identify any error made or that a change has occurred. They, in fact, present very little evidence from the now completed discovery record about Defendants' actions, the injunction, or how it has or has not impacted Defendants. (*See* Motion at 3-20.) On each point they raise, Defendants point to a few soundbites of testimony, primarily from KPM's witnesses who are precluded by the Protective Order in this case from knowing the full scope of Defendants' tortious actions with customers and with KPM's confidential information.

(*See id.*) From these soundbites, Defendants effectively ask the Court to reconsider the entirety of its previous findings regarding KPM's likelihood of success and the balance of hardships. (*See id.*)

Such an approach fails by definition to satisfy Rule 60(b)(5). What another Court in this District said elsewhere applies equally here: "defendant does not argue a significant change in circumstances. Rather, it relies on the absence of a reasonable likelihood of success and the balance of the equities. Even accepting and considering the equities asserted by defendant as true, they do not, in this court's discretion, rise to the level of a significant change in circumstances." *Mahoney*, 2021 WL 1178377, at \*20 (keeping the injunction in place and stating that it planned to give the parties a limited discovery period so a prompt trial could be scheduled).

There have been no changes in circumstances, and certainly no significant ones. Defendants identify none. Having misused KPM's trade secrets and confidential information to begin unfairly and deceptively converting KPM's long term customer relationships to ITG and Blue Sun, Defendants seek to return to that tortiously harmful conduct while this case proceeds though trial and potentially any appeal. The Court should, once again, deny Defendants' Motion.

II.     **Concerning KPM's Continuing Likelihood Of Success On The Merits, Defendants Ignore Their Theft Of Technical Trade Secrets, Fail To Show Any Significant Changes Regarding The Misused Customer Information, And Offer No Argument At All Regarding KPM's Additional Causes Of Action.**

  a.   **Defendants Do Not Claim Any Significant Changes Regarding Their Theft And Misuse Of KPM's Software, Databases and Technical Knowledge.**

In issuing the Preliminary Injunction, the Court expressly found that KPM had "demonstrated a likelihood of success on the merits based upon Defendants' disclosure and use of its technical and non-technical trade secrets." Doc. No. 93 at 15. As the Court found, and as noted above, Defendants' misuse of the technical trade secrets in creating the fraudulent Application Notes, adjusting and transferring calibrations for customers, and use of technical checklists and other materials has all been *admitted* by Defendants. *Id.* Their silence in their Motion on these

points, therefore, is perhaps unsurprising. But those findings and admissions alone justify the continued application of the Preliminary Injunction, as no "significant changes" are argued let alone proven.

> **b.  Defendants Simply Recycle Their Arguments About KPM's Customer Information Previously Rejected By The Court.**

Defendants do make arguments concerning three types of KPM's "non-technical" or customer information. (Motion at 4-7.) None establish any "significant change" in circumstances from what the Court has previously found.

First, they set up a strawman argument that Defendants did not improperly access KPM's central depository where customer lists are maintained. (*Id.* at 4.) Defendants did not have to do so because, as the Court found, they improperly redirected customer inquiries and PM scheduling from their KPM email accounts to Blue Sun and fraudulent email accounts established with Blue Sun so they could service those customers and divert those relationships to Blue Sun *while the Individual Defendants were still employed at KPM as well as afterwards*. *See* Doc. No. 93 at 5-9, 16-18. This is not a case where an employee sneaks out the door with a list and moves to a competitor, but rather one with much more nefarious conduct of actively diverting customers, servicing those customers, and stealing the related revenues while still taking paychecks from KPM.

Second, Defendants reargue one of their positions previously rejected by the Court, namely that customer purchasing, pricing and service scheduling should not be considered trade secrets because it could be recalled from the Individual Defendants' memories or obtained from the customers themselves, citing the *Oxford Global* decision. (Motion, at 5.) The Court expressly distinguished the minimal type of information addressed in *Oxford Global* from the details misappropriated here: "Unlike in *Oxford,* the record confirms that Defendants are not operating on

4872-6331-8836, v. 2

memory alone: Gajewski sent Lucas a copy of KPM's 2018 invoice to LambWeston when he advised Lucas what prices to offer Lamb Weston for Blue Sun to perform LambWeston's 2019 maintenance."  Doc. No. 93 at 17. The Court went on to expressly find "that the KPM client information used by Defendants was confidential." *Id.* It also found that given the number of KPM customers and the number of NIR analyzers at those customers, "it would be difficult for [KPM's] competitors to duplicate or acquire that information for each analyzer." *Id.* at 17-18. Defendants do not address these findings but reargue from snippets of testimony from KPM's witnesses that each separate customer might have been able to provide some information, and that competitors try to learn what they can about each other at trade shows. (Motion at 5-6.) None of that testimony is different from what Defendants unsuccessfully argued before, and none of it addresses the Court's express findings about the extent of the details misused by Defendants here relaying to multiple customers and over 140 different analyzers. (*See id.*) Nothing has changed.

Lastly, Defendants cite to the SJC decision in *American Window Cleaning Co. of Springfield v. Cohen,* 343 Mass. 195, 199 (1961) for the proposition that remembered pricing and related information is not confidential. (Motion at 6-7.) Defendants' legal citation, however, does not change this Court's express prior findings that these Defendants were not working just from their memories, and that they misappropriated and misused KPM's confidential information under the *Jet Spray* test. Doc. No. 93 at 17-18. Indeed, *American Window* has been called into question by the SJC's more recent *Jet Spray* decision relied on here by Massachusetts Courts.  *See Fidelity Brokerage Services, LLC v. Callinan*, 1884CV02098BLS1, 2019 WL 1576097, *5 n.6 (stating that the decisions cited by the defendants in support of their argument that client names and contact information are not trade secrets when they can be recalled from memory "cite and rely upon the SJC's decision in *American Window Cleaning Co. of Springfield, Mass. v. Cohen*, 343 Mass. 195

12

(1961), which was impliedly, if not expressly, called into question by the SJC's more recent decision in *Jet Spray Cooler*, 361 Mass. at 840.").

          **c.**   **Defendants Do Not Address The Court's Enjoining Their Breach Of Nondisclosure And Confidentiality Contractual Obligations, Interference With Those Contracts, Or Violations Of Chapter 93A.**

As with the technical trade secret aspects of the case, Defendants' Motion is also silent on the Court's express findings that KPM has shown a likelihood of success in proving the breach of the nondisclosure and confidentiality portions of the Individual Defendants' contracts with KPM, the interference of those contracts by ITG and Blue Sun, and their collective unfair and deceptive trade practices. (*Compare* Motion at 4-7 *with* Doc. No. 93 at 18-21.)  Given the Court's findings of multiple grounds to support its Preliminary Injunction Order, Defendants' inability to address those grounds necessitates the denial of the Motion.

**III.**    **Defendants Establish No Significant Changes In The Irreparable Harm The Court Found Exists To KPM, Which Is Ongoing And Merits A Permanent Injunction After A Full Trial.**

In granting the Preliminary Injunction, the Court expressly found that "[T]he record shows that Defendants' actions to divert KPM customers are ongoing, suggesting a high possibility of future harm, and that they have caused customer confusion and alarm, which likely affects KPM's goodwill." Doc. No. 93 at 22. Lo and behold, resuming their improper diversion practices is exactly what Defendants seek with their Motion.

Defendants assert no "significant change" in circumstances, but rather make a legal argument citing cases where courts found little danger of additional or ongoing harm. (*See* Motion at 7-10.) Here, the Court expressly found "a high possibility of future harm." Doc. No. 93 at 22.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ Having misappropriated KPM's customer relationships and misused KPM's

technical data and software to misrepresent the capabilities of their competing M5/Phoenix analyzer, Defendants seek to take advantage of that long product lifespan. Lifting the Injunction now would allow Defendants to endure only a one-year disruption in dealing with these customers. Indeed, Defendants' request now is likely motivated by the fact that Defendants spent the early part of 2021 providing PM and other services to KPM customers. Most of those annual services have now expired and Defendants are looking to provide this year's installments, from which they expect to gain further business selling further service and more valuable analyzers. This is just the conduct the Court foresaw and enjoined. Allowing Defendants to resume their misconduct now would render the Preliminary Injunction and its protection of KPM from irreparable harm null and void.

Defendants provide four enhancements to this renewed legal argument against the Court's finding of irreparable harm to KPM. First, they repeat the argument from the likelihood of success portion of their brief that they should be free to use information in their memories or develop from harvesting it from the customers themselves. (Motion at 10-11 and 15-16.) However, as discussed above, the Court found that Defendants are not operating purely from memory and the breadth of customers and related details are such that they exceed simple details permitted under prior, and now questioned, caselaw. *See* Doc. No. 93 at 17-18. Defendants offer no new evidence to the contrary that all of the KPM pricing, servicing schedules, maintenance needs, *etc.* for every customer and every KPM analyzer unit are within the Individual Defendants' memories. (*See* Motion at 10-11.) They also offer no proof from customer communications prior to the Injunction, from the industry, or from their experience that all of the details for KPM's products and related servicing of those products could be gleaned from each customer. (*See id.* at 15-16.)

14

Defendants next claim that KPM pricing information and strategic marketing information is obsolete. (*Id.* at 11-12.) Defendants claim obsolescence based upon three soundbites from KPM's Olson noting that – KPM did make some changes to its list pricing in 2022, has added some product offerings, and hired a new director of global service. (*Id.* at 12.) Defendants offer no evidence connecting these three data points to any of the KPM customers they are enjoined from contacting, to any of the KPM legacy analyzers they own, or to the relevance on KPM's particular pricing and service relationships with those particular customers and products. (*See id.*) Defendants' assumption of obsolescence, therefore, is unsupported, unfounded and erroneous.

Lastly, Defendants argue that the Court's findings of customer confusion were based on hearsay from KPM's Vice President Olson and an email from one customer, Disney, that Defendants try now to reinterpret. (Motion at 13 and n. 9.) Defendants ignore the multiple emails in the discovery record they have produced from multiple customers in which Defendants were oblique and often directly misleading about whether they were still employed by Blue Sun, what Blue Sun was, whether it was or was not affiliated with KPM, and whether KPM was or was not still offering analyzer services. (*See, e.g.,* Magee Decl., Ex. 34.) These emails show a pattern of sowing customer confusion to aid ITG's and Blue Sun's businesses at the expense of harming KPM's goodwill. (*See id.*) Defendants certainly were not "transparent" with customers as they now claim. (*See* Motion at 13-14.) Moreover, KPM has not and in is no position to "clear up" customer confusion as Defendants' posit. (*See id.*) Defendants are only aware of Defendants' poisoning of their relationship with those customers whose correspondence was also copied back to KPM via older email addresses for the Individual Defendants. KPM has not seen the vast majority of the correspondence with the customers cited above and does not know the details of much of Defendants' nefarious conduct due to the limits of the Protective Order in this case and

Defendants having produced such correspondence as Attorney's Eyes Only. *See* Doc No. 141. KPM remains unable to fully assess, let alone rectify, the damage to its goodwill caused by Defendants.

### IV. Defendants Establish No Significant Changes In The Balance Of Hardships, And No Harm To Defendants Or To Customers.

The Court expressly held that allowing the Individual Defendants to continue stealing KPM customers during the pendency of this case would result in serious hardship to KPM while enjoining Blue Sun from selling its M5/Phoenix competing product only to those same KPM customers would not result in severe hardship to Defendants. Doc. 93 at 23. Defendants notably do not offer any affirmative evidence of any hardship to them from the continuance of the Injunction. (*See* Motion at 17-19.) They provide no financials, no claim of lost business, no assertion of obstructed relationships. (*See id.*) They supply only three additional soundbites from internal KPM correspondence where KPM employees *speculate* about the case, KPM's only needed litigation budget, and what might or might not lead Defendants to seek a reasonable resolution here. (*See id.*) None of this speculation about KPM constitutes affirmative evidence about Blue Sun or any of the Defendants and none establishes any "significant change" in the balance of hardships.

Indeed, Defendants are likely unable to claim that the injunction has harmed, or would continue to harm them, given their admission in this case. █████████████████████

16

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ Given these stark admissions, Blue Sun seems unable to claim any actual hardship, let alone any balance in its favor.[2]

**V.     Conclusion.**

For the above-stated reasons, Defendants' motion should be denied and the Court should proceed to schedule a full trial on the merits.

---

[2] Defendants' admissions also belie its final argument that customers have been harmed by being unable to have Defendants service their KPM analyzers. (*See* Motion at 19-20.) Defendants offer no comprehensive evidence of customer harm or dissatisfaction that Defendants have received, but again offer three soundbites from emails produced in discovery by KPM. (*Id.*) In any event, none of the three support Defendants' claim of hardship for customers. ████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████

17

Respectfully submitted,

KPM Analytics North America Corporation,

By its attorneys,

*/s/ John T. Gutkoski*
John T. Gutkoski (BBO No. 567182)
Cesari & McKenna LLP
One Liberty Square, Suite 310
Boston, MA 02109
Phone: (617) 951-2500
JTG@c-m.com

**AND**

Scott R. Magee (BBO No. 664067)
Paige Zacharakis (BBO No. 699108)
Morse, Barnes-Brown & Pendleton, P.C.
480 Totten Pond Road, 4th Floor
Waltham, MA 02451
Phone: (781) 622-5930
Fax: (781) 622-5933
smagee@morse.law
September 19, 2022          pzacharakis@morse.law

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of September, 2022, a true and correct copy of the foregoing document was filed in redacted form through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), with an unredacted version served to counsel of record via electronic mail.

*/s/ Scott R. Magee*
Scott R. Magee

4872-6331-8836, v. 2