**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> BLUE SUN SCIENTIFIC, LLC; THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD; ARNOLD EILERT; MICHELLE GAJEWSKI; ROBERT GAJEWSKI; RACHAEL GLENISTER; GREGORY ISRAELSON; IRVIN LUCAS; and PHILIP OSSOWSKI, <br><br> Defendants. | Civil Action No. 4:21-cv-10572-LTS |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION
TO DISSOLVE OR MODIFY THE PRELIMINARY INJUNCTION**

William L. Prickett (BBO #555341)
wprickett@seyfarth.com
Dawn Mertineit (BBO # 669988)
dmertineit@seyfarth.com
Dallin R. Wilson (BBO #676662)
drwilson@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Tel: (617) 946-4800
Fax: (617) 946-4801

*Counsel for Defendants Arnold Eilert,
Robert Gajewski, Rachael Glenister, and
Irvin Lucas*

George F. Ritchie (admitted *pro hac vice*)
gritchie@gfrlaw.com
Royal Craig (admitted *pro hac vice*)
rcraig@gfrlaw.com
Lauren E. Lake (admitted *pro hac vice*)
llake@gfrlaw.com
GORDON FEINBLATT LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
Tel: (410) 576-4000

*Counsel for Defendants Blue Sun
Scientific, LLC and The Innovative
Technologies Group & Co. Ltd.*

Despite accusing Defendants of again seeking to relitigate the Court's August 23, 2021 Order (ECF No. 94, as amended, ECF No. 120, the "Order"), it is KPM that focuses its opposition brief ( "Opposition" or "Opp.") entirely on events that occurred four or more years ago. KPM does not even attempt to respond to many of Defendants' core arguments, including KPM's fatal admission that the Defendants, and in particular the Individual Defendants, no longer have access to any KPM trade secrets. Whether KPM is owed money damages based on years' old conduct is irrelevant. The salient question is whether, today—over a year since the Order was entered and after the completion of more fulsome discovery—KPM still can satisfy the criteria necessary for maintaining a preliminary injunction. It cannot.

### A. Defendants Have Demonstrated Changed Circumstances Since the Order Was Entered Over a Year Ago.

KPM first argues that Defendants' motion should be denied because they have failed to demonstrate a significant change in circumstances since the Order was entered in August 2021. (Opp., at 8-10). But Defendants have demonstrated ample, significant changes over the past 13 months that justify modifying or vacating the Order. First, the passage of time alone has been significant. KPM required the Individual Defendants to sign one year non-competes when KPM hired them, evidencing that even KPM expected them to be able to compete one year after leaving KPM. KPM does not even respond to that fact in the Opposition. Nor do they contest that in the very cases they relied upon in moving for the injunction the courts limited the injunctions in those cases to one year. (ECF 149, at 16). Indeed, the Order itself recognized that the injunction may be modified before the conclusion of the case. *See* ECF No. 94, at 4 (the Order shall be effective until the resolution of this case "or such time as this Court issues a subsequent order revising or ending the . . . Order.").

But the passage of more than a year is not the only significant change since the Order

1

issued. The parties have now completed full discovery focused on KPM's claim that Defendants misappropriated "customer information." And that discovery has been enlightening. Indeed, while KPM repeatedly attempts to dismiss the sworn deposition testimony of its witnesses as mere "soundbites," it conspicuously does not contest that its witnesses made the admissions cited in Defendants' motion. Specifically, KPM does not dispute that its witnesses admitted: (1) the Individual Defendants did not take or improperly access *any* customer lists after the termination of their employment; (2) the Individual Defendants *currently* possess *no KPM trade secrets*[1]; (3) customer information can be obtained directly from the customer and customers regularly shop price quotes to competitors to get the best deal; (4) KPM's recommended service intervals are not confidential; and (5) KPM changed its pricing and marketing strategies after the Order was entered (and well after the Individual Defendants left KPM's employ). None of that evidence was before the Court when it entered the Order.[2] Additionally, KPM sent a letter to all of its "active customers" after the Order was entered to inform the customers of this lawsuit, and that the Defendants have no affiliation with KPM. Those letters, along with the emails cited in Defendants' motion (sent by KPM to customers implying that Blue Sun is likely to go out of business as a result of this lawsuit), make it impossible for any customer confusion to exist today. Those changes are certainly significant when considering whether KPM can continue to show a likelihood of success on the merits of its trade secret misappropriation claims, or whether any threat of irreparable harm

---

[1] KPM attempts to justify these deposition admissions on the grounds that its witnesses do not have access to information produced under the parties' protective order. But KPM's lawyers have access to everything, and just like KPM's witnesses, they too were unable to point to any KPM trade secrets in the Opposition to which the Defendants still have access or possession. That is because Defendants have none.

[2] KPM suggests that Mr. Olson's eleventh-hour affidavit was not particularly important and that Defendants deposed him after expedited discovery, "never putting his affidavit before him." (Opp. at 3). That is plainly wrong. *See* Olson Tr., 127:9-14 ("Q. And, Mr. Olson, do you recognize the document that is on the screen right now? A. Yes. Q. And it's the Affidavit that you submitted in support of KPM's motion for preliminary injunction? A. Yes."); 127:15-154:19 (27 pages of deposition testimony regarding Mr. Olson's affidavit).

exists today.

### B. KPM's Failure To Address Many Of Defendants Other Arguments Is Equally Telling.

Apart from the fact that Defendants are not shown to have any KPM trade secrets or left with any customer lists or other similar information, KPM ignores other points too. For example, KPM does not even attempt to rebut that:

- The presumption of irreparable harm should not be presumed where there is no evidence that the Defendants will disclose KPM's trade secrets to third parties. (ECF 149, at 7-9).

- Injunctions should be narrowly drawn to avoid imposing a restrictive covenant where enjoining the disclosure of trade secrets would provide sufficient protection to the plaintiff. (*Id.*, at 9).

- By now, Defendants would have been able to develop their own customer information without the benefit of any KPM trade secrets that were allegedly misappropriated, thereby requiring the Order to be vacated. (*Id.*, at 15-17).

KPM's silence on these issues speaks volumes.

### C. KPM's Reference To Events From Several Years Ago Is Not A Basis To Maintain The Order Indefinitely.

KPM's Opposition rehashes the Court's preliminary findings from August 2021, based on a limited record. KPM focuses on Defendants' alleged wrongdoing from years ago, while the Individual Defendants were still employed at KPM. *See, e.g.,* Opp. at 3-4, 8 (identifying allegations occurring while Messrs. Lucas and Gajewski were "still employed at KPM"); 11 ("*while the Individual Defendants were still employed at KPM as well as afterwards*") (emphasis in original). From KPM's view, based on conduct from 2017 to early 2021, the Order should be enforced in perpetuity, relieving KPM from having to compete against Blue Sun forever.

But missing from the Opposition is any evidence from the past year, since the Order issued, demonstrating that Defendants still have access to any confidential information, or that there is any threat that Defendants can (or are even able to) use that information in the future, absent an

injunction.³  Once more, KPM does not even attempt to rebut the argument that injunctions are not intended to remedy past harm, but are instead designed to prevent future irreparable harm.  (ECF 149, at 10 (citing *Corporate Techs., Inc. v. Harnett*, 943 F. Supp. 2d 240, 247 (D. Mass. 2013)).  Instead, KPM submits that discovery after the Order was entered confirmed the Court's preliminary findings.  (Opp., at 5-8).  But even a cursory review of those "facts" (accompanied by opaque references to its counsel's affidavit) show that nothing new or relevant was unearthed by KPM after the Order was entered.

### D. The Court's Prior Findings On "Remembered Information" Must Be Revisited In Light Of KPM's Subsequent Admissions.

Having conceded that the Individual Defendants did not take any confidential information with them after their departures from KPM, and that they no longer possess any KPM trade secrets, KPM is left to posit that the Court previously rejected Defendants' argument that "remembered information," maintained solely in the Individual Defendants' heads, cannot be a trade secret.  (Opp., at 11-13).  But the Court previously found that Defendants were "working with much more client information" than mere customer identities while Mr. Gajewski was still employed by KPM.  (ECF 93, at 17).  But even if Messrs. Lucas and Gajewski were working with customer information that Gajewski had access to because he was still employed by KPM, none of the Individual Defendants work at KPM anymore, and therefore it can no longer be said that Defendants have any KPM information other than what is in their memories about customer identities and preferences.  Indeed, KPM admits as much, incredibly suggesting that—years after working for KPM—the Individual Defendants somehow have been able to memorize *all* information regarding

---

³ KPM accused Defendants of using confidential pricing information in October 2021 when it moved for contempt against Blue Sun and Mr. Lucas. (ECF No. 109).  In denying the motion, the Court properly found that "KPM's passing suggestion that the defendant likely used confidential KPM information to underbid KPM is unavailing." (ECF No. 119, at 5).

pricing, servicing schedules, maintenance needs, and every KPM analyzer unit for *every KPM customer*. (Opp., at 14). While flattering to the Individual Defendants' powers of recall, there is nothing in the record that comes close to suggesting that they remember every single detail about every KPM customer and KPM unit. But either way, what they do remember from years ago is not a trade secret today, and cannot support a *de facto* non-compete.

### E. The Order Is Far More Harmful to Blue Sun Than KPM Describes.

Lastly, KPM suggests there has been no change in the balance of hardships. (Opp., at 16-17). But that too is wrong, particularly in light of KPM's admission that Defendants no longer possess any information they can disclose to cause KPM future harm. And the Order is far more harmful to Blue Sun than KPM lets on. KPM suggests that the Order is limited to only KPM customers, and therefore Blue Sun can pursue any other customers in the world. But that ignores a critical characteristic about the NIR industry: that many customers own multiple units from different manufacturers.

As the Order is worded, Defendants are enjoined from soliciting or servicing any KPM customer that they worked with at KPM, regardless of how many KPM units that customer has. Thus, a hypothetical customer with one KPM unit, but hundreds of units from other manufacturers (FOSS, Perkin Elmer, etc), would still be off limits to Defendants, notwithstanding that nobody would consider that customer to be exclusively a "KPM customer." But such customers are not hypothetical; indeed, they are common within the industry. For example, ADM has approximately 1,000 instruments, of which a small fraction were manufactured by KPM. (Affidavit of Irvin Lucas, ("Lucas Aff."), ¶ 2). Therefore, Defendants are enjoined from soliciting ADM to replace any of its hundreds of non-KPM instruments with Blue Sun instruments. Likewise, Ingredion, an oft-cited customer in this litigation, has only a handful of KPM instruments, but many more from other brands. (*Id.*, ¶ 3). These are just two examples of many customers throughout the world that

Defendants are enjoined from selling to, even though KPM-manufactured instruments make up a marginal number of the total instruments used by the customer. Thus, Defendants are not simply enjoined from replacing KPM instruments, they are enjoined from replacing thousands of other instruments manufactured by other competitors. (*Id.*, ¶ 5). When considered through that lens, the harm to Blue Sun caused by the Order far outweighs the non-existent harm to KPM.

## **CONCLUSION**

For these reasons, and those stated in Defendants' opening brief, the Order should be dissolved or modified.

Dated:  September 26, 2022            Respectfully submitted,

*/s/ Dallin R. Wilson*
William L. Prickett (BBO #555341)
wprickett@seyfarth.com
Dawn Mertineit (BBO # 669988)
dmertineit@seyfarth.com
Dallin R. Wilson (BBO #676662)
drwilson@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Tel: (617) 946-4800
Fax: (617) 946-4801

*Counsel for Defendants Arnold Eilert, Rachael Glenister, Irvin Lucas and Robert Gajewski*

George F. Ritchie (admitted *pro hac vice*)
gritchie@gfrlaw.com
Royal Craig (admitted *pro hac vice*)
rcraig@gfrlaw.com
Lauren E. Lake (admitted *pro hac vice*)
llake@gfrlaw.com
GORDON FEINBLATT LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
Tel: (410) 576-4000

*Counsel for Defendants Blue Sun Scientific, LLC and The Innovative Technologies Group & Co. Ltd.*

## **CERTIFICATE OF SERVICE**

I certify that on September 26, 2022, a copy of the foregoing was served via the Court's ECF system upon all counsel of record. Paper copies will be sent to those indicated as non-registered participants.

*/s/ Dallin R. Wilson*
Dallin R. Wilson