UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil No. 21-10572-LTS |
| BLUE SUN SCIENTIFIC, LLC, THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD, ARNOLD EILERT, MICHELLE GAJEWSKI, ROBERT GAJEWSKI, RACHAEL GLENISTER, GREGORY ISRAELSON, IRVIN LUCAS, AND PHILIP OSSOWSKI | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON DEFENDANTS' MOTION
TO DISSOLVE OR MODIFY THE PRELIMINARY
INJUNCTION (DOC. NO. 148) AND INNOVATIVE TECHNOLOGIES
GROUP & CO., LTD'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 144)

February 16, 2023

SOROKIN, J.

Defendants move to dissolve the preliminary injunction previously entered in this case by Judge Hillman (Doc. No. 94, as amended, Doc. No. 120),[1] pursuant to Federal Rule of Civil Procedure 65(b)(5). "[R]elief under Rule 60(b) is extraordinary in nature and . . . motions

---

[1] Citations to "Doc. No. __ at __" reference items appearing on the court's electronic docketing system, and pincites are to the page numbers in the ECF header.

invoking that rule should be granted sparingly." Giroux v. Fed. Nat. Mortg. Ass'n, 810 F.3d 103, 106 (1st Cir. 2016) (quoting Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002)). To obtain Rule 60(b) relief, Defendants bear the burden to show a "significant change either in factual conditions or in law." Agostini v. Felton, 521 U.S. 203, 215 (1997); see also Mahoney v. Wells Fargo Bank, N.A., No. CV 18-11593-MBB, 2021 WL 1178377, at *19 (D. Mass. Mar. 29, 2021) ("Defendant needs 'to show that it is no longer equitable that the judgment should have prospective application, *and* that there has been the kind of significant change in circumstances that the Rule requires.'" (emphasis in original) (quoting Dr. Jose S. Belaval, Inc. v. Perez-Perdomo, 465 F.3d 33, 38 (1st Cir. 2006))). Defendants have not met this burden. Certainly, more than one year has elapsed since Judge Hillman issued the preliminary injunction, Doc. Nos. 94, 120, but the mere passage of time is not itself a "substantial change" undermining the basis for issuing the injunction.[2] The witness statements and other evidence obtained during discovery to which Defendants point, see, e.g., Doc. No. 161 at 3, do not rise to the level of showing a "significant change" in the circumstances underlying the injunction. At most, Defendants have demonstrated a basis to move this case expeditiously to trial. The Motion to Dissolve or Modify the Preliminary Injunction (Doc. No. 148) is DENIED.

The Court turns next to the Motion for Summary Judgment filed by one of the defendants, The Innovative Technologies Group & Co., Ltd. (ITG), Doc. No. 144, which argues that there is no independent basis to hold ITG liable for any of the remaining claims against it.

---

[2] Defendants argue that the passage of time is significant because the Individual Defendants' non-competition agreements were limited to one year. Doc. No. 161 at 2. However, Judge Hillman's injunction is based in part on a likelihood of success on misappropriation of trade secrets and other claims that have no time limitation. Doc. No. 120 at 2.

See Doc. No. 145-9 at 2. Neither ITG's subsidiary Blue Sun Scientific, LLC (Blue Sun) nor the Individual Defendants move for summary judgment.

Drawing all reasonable inferences in favor of the nonmoving party KPM, as the law requires, see Block Island Fishing, Inc. v. Rogers, 844 F.3d 358, 360 (1st Cir. 2016), ITG's Motion must be denied. A central question in the claims against ITG is whether ITG had knowledge of Blue Sun's employees' contractual obligations to KPM and/or that ITG was benefiting from Blue Sun's alleged use of KPM's trade secrets. See, e.g., Optos, Inc. v. Topcon Med. Sys., Inc., 777 F. Supp. 2d 217, 240 (D. Mass. 2011) (stating that "an individual who breaches contractual duties to obtain trade secrets has used improper means," and "[a] party who knowingly benefits from the breacher's trade secret bounty is also liable" (first citing Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1165 (1st Cir. 1994); and then citing Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., 407 N.E.2d 319, 323–24 (Mass. 1980))); Holmes Products Corp. v. Dana Lighting, Inc., 958 F.Supp. 27, 31 (D. Mass. 1997) (stating the required elements of a claim for tortious interference with contractual relations as (1) a contract existed between plaintiff and a third-party, (2) defendants "knowingly induced [the third party] to breach that contract," (3) "that defendants' interference, in addition to being intentional, was improper in motive or means" and (4) that the plaintiff "was harmed by defendants' action" (citing United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 21 (Mass. 1990))); Doc. No. 145-9 at 10–11 (seeking summary judgment on the tortious interference with contractual relations claim on the basis of the president and CEO of ITG's alleged lack of knowledge of the Blue Sun employee Individual Defendants' employment contracts with KPM or any alleged taking of confidential information by the Individual Defendants); Doc. No. 160 at 2–3 (describing multiple ways in which knowledge (or lack thereof) is central to the claims at issue in

this Motion for Summary Judgment). There is a constellation of facts from which a jury could draw the reasonable inference that ITG had knowledge of Blue Sun's employees' contractual duties and/or that ITG was benefiting from Blue Sun's alleged use of KPM's trade secrets. These facts include:

- Robert Wilt, the President and CEO of ITG, is the Manager of Blue Sun. Doc. No. 158-4 at 3. Wilt's wife Cathy Wilt is an employee only of ITG but provides accounting services for Blue Sun and pays Blue Sun's bills. Id. at 10. She has signing authority on Blue Sun bank accounts. Id. ITG controls Blue Sun's accounts and pays Blue Sun's salespeople for the sales they make. Doc. No. 158-2 at 20–21; Doc. No. 158-5 at 2. ITG and Blue Sun prepare consolidated financial statements and joint tax returns. Doc. No. 158-6 at 21.

- ITG approves Blue Sun's sales literature, and ITG's counsel provides advice for both ITG and Blue Sun on their sales materials. Doc. No. 158-2 at 16–17.

- Wilt hired Irvin Lucas as President of Blue Sun. Id. at 17–18. Wilt formed Blue Sun in July 2018 at Lucas's urging, and Lucas became president of Blue Sun in late July 2018. Doc. No. 145-11 at 2, 5. Lucas continued to work for KPM for almost a year, until May 2019, before resigning from KPM. See Doc. No. 145-11 at 8. Lucas reports directly to Wilt. Doc. No. 158-2 at 18. Blue Sun then hired only employees who are former employees of KPM. Doc. No. 158-6 at 4. ITG and Wilt interviewed at least some of Blue Sun's sales and marketing personnel before Blue Sun hired them. Doc. No. 158-2 at 21.

- Once Blue Sun started to sell the M5/Phoenix product, ITG abandoned its independent sales of the M5 analyzer and now sells 100% of its M5/Phoenix product through Blue Sun. Doc. No. 158-8 at 3; Doc. No. 158-2 at 9. ITG receives 65% of the revenue from each M5/Phoenix product that Blue Sun sells. Doc. No. 158-2 at 6–7. The overwhelming

- majority of ITG's revenues and business efforts is related to the manufacture and sale of the M5/Phoenix platform. Id. at 5.

- ITG knew Blue Sun was transitioning some KPM customers to Blue Sun. For example, Rob Gajewski, a KPM employee who was recruited to Blue Sun, wrote to Wilt and ITG's purchasing specialist at their ITG emails, copying Lucas and Doug Evans of Blue Sun at their Blue Sun emails, about "one main way we are transitioning SpectraStar customers into Blue Sun/ITG customers." Doc. No. 158-22 at 3.

Of course, these facts arise in the context of business developing and selling complicated devices.[3] For purposes of ITG's motion for summary judgment, KPM has established the foregoing facts which permit a jury to draw the reasonable inference that ITG possessed the requisite knowledge required for liability on the various claims asserted against it by KPM. A reasonable jury could draw such inferences regardless of ITG's and Wilt's assertions (relied on heavily by ITG in their Motion papers) that Wilt never asked Lucas or other Blue Sun employees or potential employees about restrictions from or contractual obligations to KPM, Doc. No. 158-2 at 18, that Wilt did not know about any such restrictions or obligations, Doc. No. 145-10 at 16, and that ITG had a hands-off, arms-length relationship with Blue Sun, Doc. No. 145-9 at 5–8. The permissibility of the inferences regarding ITG's knowledge is enough at this stage to defeat

---

[3] ITG contends that the absence of evidence showing disclosure or use by ITG of any trade secrets entitles it to summary judgment. This argument fails for two reasons. First, case law suggests that "an individual who breaches contractual duties to obtain trade secrets has used improper means" and [a] party who knowingly benefits from the breacher's trade secret bounty is also liable." Optos, Inc. v. Topcon Med. Sys., Inc., 777 F. Supp. 2d 217, 240 (D. Mass. 2011) (citing Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1165 (1st Cir. 1994); Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., 407 N.E.2d 319, 323–24 (Mass. 1980)). A reasonable jury could infer from the facts presented that ITG "knowingly benefitted" in this way. Second, drawing all reasonable inferences in KPM's favor, the evidence of ITG's participation in the affairs of Blue Sun summarized in the text may support a finding of use.

the Motion for Summary Judgment as to all of the claims remaining against ITG.[4] For these reasons, ITG's Motion for Summary Judgment (Doc. No. 144) is DENIED. Trial of this matter will commence on Monday May 1, 2023 at 9:00 a.m. in Courtroom 13 of the Moakley United States Courthouse in Boston. A separate pretrial order will issue scheduling the filing of jury instructions.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

[4] "A successful Chapter 93A § 11 claim . . . has three elements: (1) the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice; (2) a loss of money or property was suffered; and (3) the defendant's unfair or deceptive method, act or practice caused the loss suffered." Anoush Cab, Inc. v. Uber Techs., Inc., 8 F.4th 1, 16 (1st Cir. 2021) (citing Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 17 N.E.3d 1066, 1074–75 (Mass. 2014)). Unfair acts are defined broadly to include acts that are "(1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) cause[] substantial injury to [consumers,] competitors or other business people." Tomasella v. Nestle USA, Inc., 962 F.3d 60, 79 (1st Cir. 2020) (alterations in original) (internal quotation marks omitted) (quoting Heller Fin. v. Ins. Co. of N. Am., 573 N.E.2d 8, 12–13 (Mass. 1991)). The outcome of the misappropriation and tortious interference claims, or the factfinder's resolution of the disputed issues of fact related to those claims, could potentially support a successful Chapter 93A Section 11 claim against ITG. See, e.g., Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (citing Jillian's Billiard Club of Am., Inc. v. Beloff Billiards, Inc., 619 N.E.2d 635 (Mass. App. Ct. 1993)) ("Under Massachusetts law, misappropriation of trade secrets alone can constitute a violation . . . ."). Therefore, ITG is not entitled to judgment as a matter of law on the Chapter 93A claim.