**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION, | ) <br> ) <br> ) <br> ) |
| KPM, | ) <br> ) <br> ) |
| v. | ) <br> ) <br> ) |
| BLUE SUN SCIENTIFIC, LLC; THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD; ARNOLD EILERT; MICHELLE GAJEWSKI; ROBERT GAJEWSKI; RACHAEL GLENISTER; GREGORY ISRAELSON; IRVIN LUCAS; and PHILIP OSSOWSKI, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 4:21-cv-10572-MRG |
| Defendants. | ) <br> ) <br> ) |

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

Pursuant to the Rule 51 of the Federal Rules of Civil Procedure and the Court's April 12, 2023 Order Setting Case for Trial (the "Scheduling Order," ECF No. 179), Defendants Blue Sun Scientific ("Blue Sun"), The Innovative Technologies Group & Co., LTD ("ITG"), Arnold Eilert, Robert Gajewski, Rachael Glenister, and Irvin Lucas (Eilert, Gajewski, Glenister, and Lucas, collectively the "Individual Defendants") submit the following proposed jury instructions. Defendants expressly reserve and do no waive the right to amend or supplement their proposed jury instructions as a result of the Court's rulings on motions *in limine,* if the need arises at trial, or if the evidence develops other than as reasonably anticipated.

Respectfully submitted,

ARNOLD EILERT, ROBERT GAJEWSKI,
RACHAEL GLENISTER, AND IRVIN
LUCAS

_____
William L. Prickett (BBO #555341)
wprickett@seyfarth.com
Dawn Mertineit (BBO # 669988)
dmertineit@seyfarth.com
Dallin R. Wilson (BBO #676662)
drwilson@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Tel: (617) 946-4800
Fax: (617) 946-4801

**Blue Sun Scientific, LLC and The
Innovative Technologies Group & Co.,
Ltd.**

*/s/ George R. Ritchie*
George R. Ritchie (*pro hac vice*)
Royal Craig (*pro hac vice*)
Lauren Lake *(pro hac vice*)
Gordon Feinblatt, LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
Fax: (410) 576-4246

Christopher R. O'Hara (BBO# 548611)
Maria T. Davis (BBO# 675447)
Todd & Weld, LLP
One Federal Street
Boston, MA 02110
Tel: (617) 720-2626
Fax: (617) 227-5777
cohara@toddweld.com
mdavis@toddweld.com

2

Dated: April 25, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 26, 2023.

_____

Dallin R. Wilson

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 1[1]

### DEFEND TRADE SECRETS ACT

KPM claims that each of the Defendants misappropriated a trade secret belonging to KPM.

To prove its claim, KPM must prove the following facts by a preponderance of the evidence:

    1.     KPM owns a valid trade secret; and

    2.     That trade secret relates to a product or service used in, or intended for use in, interstate or foreign commerce, that KPM calls [name of trade secret(s)]; and

    3.     At least one of the Defendants misappropriated that trade secret.

KPM claims it owns [name of trade secret(s)].  To prove that KPM owns [name of trade secret], it must prove that [name of trade secret] is its property.

A "trade secret" may take many forms, including all forms and types of financial, business, scientific, technical, economic, or engineering information.  A trade secret may include patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes.  A trade secret may be tangible or intangible.  A trade secret does not have to stored, complied, or memorized.  But if it is, it does not have to be stored, compiled, or memorialized in any particular manner, such as physically, electronically, graphically, photographically, or in writing.

To qualify as a trade secret, KPM must prove the following by a preponderance of the evidence:

    1.     [Name of trade secret] is not generally known to another person who can obtain economic value from the disclosure or use of the information;

---

[1] 11th Circuit Civil Pattern Jury Instructions, § 11.1 – Misappropriation of a Trade Secret.

2.      Another person cannot readily discover [name of trade secret] through proper means;

3.      [Name of trade secret] derives independent economic value, actual or potential, from not being known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information; and

4.      KPM has taken reasonable steps to keep [name of trade secret] secret.

Under the federal statute that defines a "trade secret," information that is generally known in the field or is readily ascertainable by proper means by those skilled in the art at the time of the alleged misappropriation cannot qualify as a trade secret.   There is no fixed standard for determining what is "readily ascertainable by proper means." For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it will be readily ascertainable by proper means.[2]

KPM claims that the Defendants acquired, disclosed, or used [name of trade secrets] without the right to do so.  This is called "misappropriation."

For KPM to prove that the Defendants misappropriated [name of trade secret], KPM must prove the following by a preponderance of the evidence with respect to each Defendant:

1.      The Defendant acquired, disclosed, or used [name of trade secret] without KPM's express or implied consent; and

2.      The Defendant knew or should have known that [name of trade secret]

---

[2] Template Civil Jury Instructions Under the Defend Trade Secrets Act, 33 Intell. Prop. & Tech. L.J. 16, 20, 33 NO. 7; 18 U.S.C. § 1839(3)(B).

     a.      was derived from or through a third person who used improper means to acquire the trade secret;

     b.      was acquired under circumstances giving a rise to a duty to maintain the secrecy of [name of trade secret] or limit the use of [name of trade secret]; or

     c.      was derived from or through a third person who was under a duty to maintain the secrecy of or limit the use of [name of trade secret].

"Improper means" may include theft, bribery, misrepresentation, breach or inducement of a duty to maintain secrecy, and espionage through electronic or other means.

Each act of acquiring, disclosing, or using [name of trade secret] may constitute a separate act of misappropriation.

If KPM has not proved its claim for misappropriation of trade secrets, your verdict must be for the Defendants on this claim, and you do not consider damages.

If KPM has proved its claim for misappropriation of trade secrets, you must decide the issue of damages.

To the extent that it is not duplicative (that is, double counting), you may award the amount:

     a.      of KPM's actual damages suffered as a result of the Defendants' misappropriation of [name of trade secret]; and

     b.      Each Defendants' unjust enrichment that is a result of their misappropriation of [name of trade secret], even if that amount is more than the actual damages suffered by KPM.

To decide the dollar amount of any actual losses sustained by KPM, first determine the dollar value of the injury caused by the misappropriation. Then subtract from that amount KPM's reasonable expenses that it would have incurred had the misappropriation not occurred.

6

To decide the dollar amount of any unjust enrichment to any Defendant, first determine the dollar value of that Defendant's actual benefit from the misappropriation.  Then subtract from that amount that Defendant's reasonable expenses associated with the benefit it received.

7

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 2[3]

## MISAPPROPRIATION OF TRADE SECRETS UNDER MUTSA

In this case, KPM contends that its UCal software, calibration datasets, and customer information constitutes a trade secret that has been misappropriated by the Defendants, to KPM's damage. You, the jury, as the trier of facts, must determine whether KPM has proven its case of trade secret misappropriation by a preponderance of the evidence in accordance with the instructions that I will now give you.

A trade secret may consist of any formula, pattern, device, or compilation of information that is used in one's business and that gives one an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound; a process of manufacturing, treating, or preserving materials; a pattern for a machine or other device; or even a list of customers. A trade secret may consist of scientific, technical, merchandising, production, or management information, or it may consist of a design, process, procedure, formula, invention, or improvement, so long as it is kept secret and gives one an advantage or potential advantage over competitors. In sum, a trade secret is any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret (not publicly available) to afford an actual or potential economic advantage over others.

In order to prevail on its claim of trade secret misappropriation, KPM must prove by a preponderance of the evidence that:

1.   KPM's [software/calibration datasets/customer information] is a trade secret;

2.   KPM has taken reasonable steps to preserve the secrecy of its [software/calibration datasets/customer information]; and

---

[3] Massachusetts Superior Court Civil Practice Jury Instructions, Volume II, § 15.4

3.      Any, some, or all of the Defendants acquired and used the trade secret by improper means or through breach of its duty of confidentiality.

I will now instruct you in more detail about the elements of the trade secret misappropriation claim and the factors that you may consider as you weigh the evidence you have heard in this case.

**(a) Existence of Trade Secret**

In determining whether KPM has established that its [software/calibration datasets/customer information] is a trade secret, you may give consideration to the following factors:

- the extent to which the [software/calibration datasets/customer information] is known outside of the business;

- the extent to which it is known by employees and others involved in the business;

- the extent of measures taken by the employer to guard the secrecy of the [software/calibration datasets/customer information];

- the value of the [software/calibration datasets/customer information] to the employer and to its competitors;

- the amount of effort or money expended by the employer in developing the [software/calibration datasets/customer information]; and

- the ease or difficulty with which the [software/calibration datasets/customer information] could be properly acquired or duplicated by others.

In considering these factors, you should not necessarily give more weight to any one of them, but should evaluate the evidence as a whole, keeping in mind that the essential characteristic of a trade secret is secrecy and that the secret or confidential nature of the information must be established in order to qualify for trade secret protection.

10098817.3 58144/146507  4/25/23

A discharged employee, without the use of a list belonging to his or her former employer, may solicit the latter's customers.[4] Remembered information as to the plaintiff's prices, the frequency of service, and the specific needs and business habits of particular customers was not confidential.[5]

In addition, one who learns another's trade secret from a third person without notice that it is secret and that the third person's disclosure is a breach of his duty to the other, or who learns the secret through a mistake without notice of the secrecy and the mistake, (a) is not liable to the other for a disclosure or use of the secret prior to receipt of such notice.[6]

**(b) Reasonable Steps to Preserve Secrecy**

The law requires that one who possesses a trade secret must take reasonable steps to preserve its secrecy. The law requires only reasonable precautions, not heroic measures. In determining whether KPM has taken reasonable precautions to protect the secrecy of its [software/calibration datasets/customer information], you should give consideration to the following factors:

1. the existence or absence of an express agreement restricting disclosure;

2. the nature and extent of security precautions taken by KPM to prevent acquisition of the information by unauthorized third parties;

3. the circumstances under which the information was disclosed to any employee to the extent that these circumstances give rise to a reasonable inference that further disclosure, without the consent of KPM, was prohibited;

4. the degree to which the information has been placed in the public domain or rendered readily ascertainable by third parties through issued patents or unrestricted product marketing; and

---

[4] *Am. Window Cleaning Co. of Springfield v. Cohen*, 343 Mass. 195, 199 (1961) (citing *Padover v. Axelson*, 268 Mass. 148 (1929); *May v. Angoff*, 272 Mass. 317, 320 (1930); *Woolley's Laundry, Inc. v. Silva*, 304 Mass. 383, 389 (1939))

[5] *Am. Window Cleaning Co. of Springfield v. Cohen*, 343 Mass. 195, 199 (1961) (citing *Padover v. Axelson*, 268 Mass. 148, 151 (1929); *DiAngeles v. Scauzillo*, 287 Mass. 291, 298–99 (1934); Restatement 2d: Agency, § 396).

[6] *Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co.*, 381 Mass. 1, 8 n.6 (1980) (quoting Restatement of Torts § 758 (1939)).

5.      the relationship between and conduct of KPM and the Defendants in this action.

You may consider, for example, whether KPM required its supervisory, technical, and research personnel to sign nondisclosure agreements, and whether KPM's employees were on notice that detailed technical, research, and scientific information regarding its products and machinery and methods for manufacturing its products, such as blueprints, were regarded as secret and confidential and not to be disclosed outside of the business except under appropriate circumstances.

You may also consider whether security precautions were taken by KPM, including limited access to the public and requirements that visitors be logged in and out, escorted by KPM's personnel, and not permitted into areas where the trade secrets were available. You may also consider whether KPM restricted the access of information it regarded as confidential or a trade secret to those employees with a need to know the information in order to perform their job.

Keep in mind, however, that the law does not require the possessor of a trade secret to take heroic measures to preserve its secrecy. So long as the entity entitled to a trade secret takes all proper and reasonable steps under the circumstances to keep its secret, it has met the requirements of the law, even though an unscrupulous person has managed to obtain possession of the information sought to be protected.

**(c)  Employee Obligation Not to Use or Disclose Trade Secrets**

An employee who acquires trade secrets of his or her employer has a duty to maintain that information in confidence and may not use it or disclose it. The obligation to maintain the confidentiality of employer trade secrets arises out of the employer-employee relationship and does not expire upon termination of employment even in the absence of a written nondisclosure agreement.

Thus, although an employee may carry away and use general skill or knowledge acquired during the course of his employment, he or she is not permitted to use or disclose a trade secret that he acquired during his employment. For example, an employee who learned of a secret manufacturing technique may not disclose that technique to a new employer because he has a continuing duty to maintain in confidence secret information that he learned by reason of his former employment.

However, if an employee brings extensive experience to a job when he enters it, the employer has a heavy burden of isolating specific trade secrets from the skill and knowledge gained from the employee's previous business activity.[7]

### (d)  Damages

#### (1)  Lost Profits

If KPM has proven its claim of misappropriation of a trade secret, then it is your duty to determine KPM's damages. The burden is on KPM to prove damages by a preponderance of the evidence. Damages are the amount of money that will reasonably and fairly compensate KPM for any injury that you find was caused by the Defendants' misappropriation of KPM's trade secret. KPM must present evidence that the misappropriation of its [software/calibration datasets/customer information] by the Defendants caused it to lose sales and corresponding profits. You, the jury, must determine the amount of lost profits that KPM has proved it has sustained as a result of the defendant's misappropriation of KPM's [software/calibration datasets/customer information].

---

[7] *Kroeger v. Stop & Shop Companies, Inc.*, 13 Mass. App. Ct. 310, 326 (1982); *Dynamics Research Corp. v. Analytic Sciences Corp.*, 9 Mass. App. Ct. 254, 268 (1980).

### (2) **Defendants' Profits**

If KPM has proven its claim for misappropriation of a trade secret, then it is your duty to determine KPM's damages. The burden is on KPM to prove damages by a preponderance of the evidence. KPM is entitled to recover all gains achieved by the Defendants attributable to the misuse of KPM's trade secret.

It is KPM's burden to prove, by a preponderance of evidence, the amount of revenue that the Defendants made by sales of products made possible by the misappropriation of KPM's trade secrets. KPM must prove with sufficient certainty that its lost profits were due to the Defendants' sales to KPM's customers.[8] The burden is then upon the Defendants to present evidence of any costs or expenses, if any, that ought properly to be deducted from its revenue in order to establish the defendant's profits attributable to the misappropriation of KPM's [software/calibration datasets/customer information]. The burden is also on the Defendants to prove the portion of its profit, if any, that is attributable to factors other than the misappropriation of the trade secret.

---

[8] *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 181 (1979); *see also Robert B. Vance & Assoc., Inc. v. Baronet Corp.*, 487 F. Supp. 790, 800 (N.D. Ga. 1979) (involving misappropriation of customer lists and indicating that, although the preferred measure of damages was the plaintiffs' lost profits, in the absence of proof thereof, the proper measure was the profits gained by the defendant in the use of the lists, measuring such value by looking to the benefits, advantages, or profits gained by the defendant in the use of the customer lists rather than any loss suffered by the plaintiffs; thus, the defendant would be liable to the plaintiffs in the amount of profits gained by virtue of its sales to customers which were on the plaintiffs' misappropriated lists).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 3[9]

### BREACH OF CONTRACT

KPM claims that the Individual Defendants breached a contract by using or disclosing KPM's confidential information and not returning KPM property after the end of the Individual Defendants' employment. The Court previously ruled that the non-competition provisions of Ms. Glenister's and Mr. Lucas's employment agreements are unenforceable, and you should not consider any of the non-competition or non-solicitation provisions in any of the Individual Defendants' employment agreements when determining whether any of the Individual Defendants breached an agreement with KPM.

Mr. Eilert and Mr. Gajewski claim that KPM breached a contract by failing to pay them severance payments as consideration for their compliance with the non-competition provisions in their employment agreements.

A contract exists when two people or companies agree to bind themselves by promises they make to each other. To prove a breach of contract, the plaintiff must prove that three things are more likely true than not true:

1. There was a valid contract with the terms that the plaintiff alleges;

2. The defendant(s) violated the contract or in other words, breached the contract; and

3. The plaintiff suffered damages because of the defendant's breach.

I will now explain these elements in more detail.

### (a) Existence of Contract

First, the plaintiff must show that the plaintiff and the defendant had a contract by proving that each of the following three things is more likely true than not true**:**

---

[9] Massachusetts Superior Court Model Jury Instructions, Contract Claims.

- one person/company made an offer to the other person/company;

- the other person/company accepted the offer; and

- each person/company gave up money or something of value, or promised to give up money or something of value. The law refers to this exchange of value as "consideration."

**(b) Breach.**

First, the plaintiff must prove that the defendant breached – in other words, violated – the contract. The defendant breached the contract if they failed to comply with one or more essential terms of the contract. In order to make this determination, you will have to refer to the terms of the parties' contract as expressed in their offer and acceptance.

**(c) Damages.**

If the defendant breached the contract, the plaintiff must prove the amount of damages resulting from that breach. By instructing you on damages, I am not suggesting that any party has or has not suffered damages.

The purpose of contract damages is to award the plaintiff the benefit of the contractual bargain. You must determine an amount that will compensate the plaintiff for the loss of that bargain. You should ask: "Would the plaintiff have benefited if the defendant had fully performed the contract?"  If so, you should award money damages to compensate the plaintiff for the value of the contract benefits that the plaintiff lost because of the defendant's breach. Contract damages do not, however, include emotional distress. Also, you may not award damages for the purpose of rewarding the plaintiff or punishing the defendant.

As with the other elements of the claim, the plaintiff must prove that the defendant's conduct more likely than not caused the damages. You should not award damages for any harm that the plaintiff or someone other than the defendant caused.

**(1)  Interest and Taxes**

You must not consider any interest upon your damages award. The court will calculate interest on any award. In addition, you may not consider federal or state income taxes, because any damages in this case may or may not be subject to taxation. Someone else will have to address any tax considerations depending on what you decide. In other words, just follow my instructions on what issues to consider. If you go beyond what I have outlined, your verdict may well have consequences that you did not intend.

**(2)  How to Estimate Contract Damages.**

I'll conclude with a few general instructions about the damages that I have mentioned in this case.

First, some damages are difficult to prove with certainty. Sometimes you have little evidence to work with. But you can still award full and fair compensation, if the evidence allows you to determine damages in a reasonable way. The important thing is that you cannot determine damages by guessing. You must base your decision on fair and reasonable conclusions based on the evidence. If you decide to award damages, the amount of damages you award is up to your judgment as jurors.

Second, the law allows the lawyers to suggest an amount of damages in their closing arguments, but you should understand that any suggestions the lawyers make are not evidence and do not set any sort of standard or floor or ceiling for the amount of damages—it is up to you to evaluate the damages, based on the evidence and your own judgment.

Finally, once you have calculated damages, you should add each of these types of damages to arrive at a total award. The total sum must not exceed fair compensation for the entire injury. You must avoid duplication or double counting of any elements of damages. When you have

determined the amount of damages, using the instructions I have just given, you should write down an amount both in numbers and in words.

If you find that any of the Individual Defendants breached their contract with KPM, but that KPM did not prove by a preponderance of the evidence that it suffered any damage, you must award KPM $1.00 as nominal damages.[10]

---

[10] *Flynn v. A.K. Peters, Ltd.*, 377 F.3d 13, 23 (1st Cir. 2004).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 4

### GOOD FAITH AND FAIR DEALING

In Massachusetts, there is an implied covenant of good faith and fair dealing between the parties to any contract. The implied covenant of good faith and fair dealing means that neither party may do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

In order for KPM to prevail on this claim, you must first have found that there existed a binding contract between KPM and the Individual Defendants.[11] If you find that there was a binding contract between the parties, you must decide whether the Defendants violated that contract by failing to act in good faith in connection with that contract.

The scope of the implied covenant of good faith and fair dealing is only as broad as the contract that governs the particular relationship.[12] There is no requirement that bad faith be shown; instead, KPM has the burden of proving a lack of good faith. The lack of good faith can be inferred from the totality of the circumstances.[13]

If there is no evidence to show that Individual Defendants dealt with KPM dishonestly, in bad faith, or otherwise failed to act in good faith towards KPM in execution of their contract, you may not find for KPM on its claim for breach of the implied covenant of good faith and fair dealing.

---

[11] *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (applying Massachusetts law); *Hutchins v. Zoll Med. Corp.*, 430 F. Supp. 2d 24, 34 (D. Mass. 2006) (applying Massachusetts law); *Petricca v. City of Gardner*, 429 F. Supp. 2d 216, 224 (D. Mass. 2006) (absent evidence of contractual relationship between parties, claim for breach of covenant of good faith and fair dealing failed as matter of law).

[12] *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 570 (2010); *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367 (2005); *see also MacKenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 493 (1st Cir. 2013) ("implied covenant of good faith cannot create rights and duties not otherwise provided for in the existing contractual relationship"); *Young v. Wells Fargo Bank*, 717 F.3d 224, 238 (1st Cir. 2013) (same).

[13] *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 570 (2010) (citing *Nile v. Nile*, 432 Mass. 390, 398-99 (2000)); *see also A.L. Prime Energy Consultant, Inc. v. MBTA*, 479 Mass. 419, 434 (2018) (citing *Robert & Ardis James Found. v. Myers*, 474 Mass. 181, 189 (2016)) (stating that lack of good faith can be inferred).

Additionally, the mere fact that a contract is breached does not mean that the implied covenant of good faith and fair dealing was necessarily violated.

10098817.3  58144/146507  4/25/23

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 5

### DUTY OF LOYALTY

KPM claims that the Individual Defendants breached a duty of loyalty to KPM. To prove this claim, KPM must prove by a preponderance of the evidence that:

1.      The Individual Defendants owed a duty of loyalty to KPM;

2.      that the Individual Defendants breached that duty;

3.      that KPM suffered damages; and

4.      that the Individual Defendants' breach proximately caused those damages to KPM.[14]

Under Massachusetts law, only certain employees owe their employers a fiduciary duty of loyalty.[15] The types of employees who owe their employers a duty of loyalty are managers, executives, officers, and those entrusted with confidential information or who otherwise hold a position of trust and confidence.[16] Rank-and-file employees, in contrast, do not owe a duty of loyalty to their employers.[17] The fact that an employer trusted an employee to perform his or her job duties with accuracy and honesty is not enough to give rise to a duty of loyalty.[18]

An employee who owes his or her employer a duty of loyalty must protect the interests of his or her employer.[19] However, an at-will employee may properly plan to go into competition

---

[14] *Hanover Ins. Co. v. Sutton*, 46 Mass. App. Ct. 153, 164 (1989); *Estate of Moulton v. Puopolo*, 467 Mass. 478, 492-93 (2014) ("[t]o establish a breach of fiduciary duty, there must be a duty owed to the plaintiff by the defendant and injury to the plaintiff proximately caused by the breach").

[15] *Parham v. Wendy's Co.,* 2015 U.S. Dist. LEXIS 33531, at *16-17 (D. Mass. Mar. 17, 2015).

[16] *Id.*; *Chelsea Indus.. Inc. v. Gaffney*, 389 Mass. 1, 11 (1983); *see also Integrated Pharms., Inc. v. Chatterjee*, 2011 Mass. Super. LEXIS 99, at *1-2 (Mass. Super Ct. June 16, 2011) (dismissing claim for breach of duty of loyalty where defendant could not be considered as having a position of trust and confidence).

[17] *Parham*, 2015 U.S. Dist. LEXIS 33531, at *16-17.

[18] *Parham*, 2015 U.S. Dist. LEXIS 33531, at *16-17.

[19] *Chelsea Indus.. Inc. v. Gaffney*, 389 Mass. 1, 10 (1983).

with his or her employer and may take active steps to do so while still employed.[20] Such an employee has no general duty to disclose his or her plans to the employer and generally may secretly join other employees in the endeavor without violating any duty to the employer.[21]

Under Massachusetts law, if an employer wishes to restrict the post-employment competitive activities of a key employee, it may seek that goal through a non-competition agreement.[22] The Court previously determined that the non-competition provisions of Ms. Glenister and Mr. Lucas's employment agreements were not enforceable, and therefore you should not consider those non-competition provisions, or the similar provisions in Mr. Gajewski and Mr. Eilert's employment agreements, when determining whether any of them owed a duty of loyalty to KPM. In addition, although an employee may not use or disclose confidential information acquired from a former employer, the employee may carry away and use the general skill or knowledge acquired during the course of his or her employment.[23]

---

[20] *Id*.

[21] *Id*.

[22] *Id*.

[23] *Eastern Marble Products Corp. v. Roman Marble, Inc.*, 372 Mass. 835, 841-42 (1977); *see also EMC Corp. v. Clesle*, 2016 Mass. Super. LEXIS 124, at *6 (Mass. Super. Ct. May 13, 2016) ("[a]n employer may prevent his employee, upon termination of his employment, from using, for his own advantage or that of a rival and to the harm of his employer, confidential information gained by him during his employment; but he may not prevent the employee from using the skill and general knowledge acquired or improved through his employment") (quoting *Abramson v. Blackman*, 340 Mass. 714, 715-16 (1960)).

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 6

### CONVERSION

KPM claims that Defendants intentionally kept KPM's property, namely trade secrets and confidential information, without the right to do so. We call this a "conversion" claim. To prove this claim, KPM must show that, more likely than not, the following four things are true:

1.     KPM owned the property.

2.     Defendants intentionally acted to own or control the property.

3.     Defendants had no right to possess the property at the time

4.     Defendants' actions harmed KPM.

### (a)  Ownership And Control

First, KPM must prove that it owned and/or had the right to possess the property.  KPM does not have to own the property, but must prove that it had the right to immediate possession of the property.

### (b)  Intentional Act of Ownership or Control

Second, KPM must prove that the Defendants intentionally acted to own or control the trade secrets and confidential information. This requires showing that the Defendants acted intentionally. "Intentional" is defined as "[d]one with the aim of carrying out the act."[24]  An honest mistake is no excuse if someone acts intentionally to control an object.[25]   However, mere carelessness is not enough. The Defendants' intentional actions must control the property or act in

---

[24] INTENTIONAL, Black's Law Dictionary (11th ed. 2019).

[25] *Row v. Home Sav. Bank*, 306 Mass. 522, 525 (1940) ("It is no defense to an action for conversion that a defendant who exercised dominion over the goods did so in good faith, reasonably being mistaken in thinking the facts to be such as would give him a legal right to the goods. [citations omitted] The exercise of due care does not excuse a conversion.").

some other way that is seriously inconsistent with KPM's rights. It is not enough just to use the property, even without permission.

If the Defendants had lawful possession of the property, then KPM must prove that it reasonably demanded that the Defendants return the property and that the Defendants refused to return it. The refusal to return the property upon reasonable demand is seriously inconsistent with KPM's rights.[26]

For instance, if I intentionally destroy, steal, alter, sell, lease or throw something out, I have acted to own or control that property. The same is true if I refuse to give up the property upon reasonable demand by the owner. However, if I am just a little late in returning chairs that I rented from a rental company, I might have violated my rental contract, but I have not committed conversion, because I did not act in a way that is seriously inconsistent with the company's ownership rights.[27]

To decide whether the Defendants' use was seriously inconsistent with KPM's rights, you should consider the following questions:

- How much control did the Defendants exercise over the property?

- For how long did the Defendants exercise that control?

- Did the Defendants intend to make a claim that conflicted with KPM's right of control?

- Did the Defendants act honestly or they have a bad intention?

- How much did the Defendants interfere with KPM's right to control the property?

- How long did that interference last?

---

[26] *Waxman v. Waxman*, 84 Mass. App. Ct. 314, 321 (2013) (Affirming summary judgment for the plaintiff where "refusal to return [the plaintiff's vehicle] after a valid demand resulted in the car's conversion").

[27] *See Spooner*, 133 Mass. at 275 (taking a circuitous route to return a horse was not inconsistent with the plaintiff's ownership).

- How much expense and inconvenience did KPM suffer?[28]

Your answers to these questions should help you decide whether the Defendants acted to control or own the property in a way that was seriously inconsistent with KPM's rights to possess or own the property.[29]

**(c)   The Defendants' Right to Possession**

Third, KPM must prove that the Defendants had no right to possess the property at the time. If the Defendants do not own this property, KPM must still show that Defendants had no right to immediate possession of it.[30]

**(d)   Harm**

Finally, KPM must prove that the Defendants' acts caused it to suffer harm. If the harm would have occurred anyway, then the Defendants did not cause KPM to suffer harm.

**(e)   Damages**

If KPM has proven all four things I mentioned, then you should award money damages to KPM. By instructing you on damages, I am not suggesting that any party has, or has not suffered damages.

---

[28] *Cahaly,* 68 Mass App. Ct. at 680 n. 18, citing Restatement (Second) of Torts, § 222A(2) (1965).

[29] *See*, *e.g.*, *Prime Bus. Co. v. Drinkwater*, 350 Mass. 642, 645 (1966) (conversion occurred when defendant sold a bulldozer that was subject to a perfected security interest); *Cahaly,* 68 Mass App. Ct. at 679-680 (upholding summary judgment for the plaintiff where the defendant's violations of contractual restrictions upon the duration and use of funds "seriously violated the right of the plaintiffs to control their" funds and were "sufficiently serious to amount to conversion"). It does not matter that the defendant originally came into possession of the property lawfully, if he later converts the property. *See Waxman v. Waxman*, 84 Mass. App. Ct. 314, 321 (2013).

[30] *Mazeikis v. Sidlauskas*, 346 Mass. 539, 544 (1963) ("To show conversion of the furniture, Mazeikis must establish that at the time of his demands for the furniture, he had an immediate right to its possession."). *See Mass. Lubricant Corp. v. Socony-Vacuum Oil Co*., 305 Mass. 269, 272 (1940) ("The plaintiff showed that it had complete ownership of its property which, in the absence of any evidence tending to prove the contrary, carried with it the right to present possession.").

The Defendants must pay money damages for all the harm that flowed from their actions. The purpose of damages is to compensate KPM for the harm that the conversion caused. You may not award damages for the purpose of rewarding KPM or punishing the Defendants. As with the other elements of its claim, KPM must prove that the Defendants' conduct more likely than not caused the damages. You should not award damages for any harm that KPM or someone other than the Defendants caused.

10098817.3 58144/146507 4/25/23

## DEFENDANTS' PROPOSED JURY INSTRUCTION NO. 7

## ALTER EGO

KPM claims that ITG is liable as the alter ego of Blue Sun.  Ordinarily, a parent entity and subsidiary entity are regarded as separate and distinct entities such that the liability of a subsidiary entity will not be imputed to the parent.[31]  There are only two narrow exceptions to this rule:

(1) when there is active and pervasive control of the related business entities by the parent, with fraudulent or harmful consequences from the inter-corporate relationship; or

(2) when there is confused intermingling of activity between the parent and related entity, and ambiguity in relation to the parent, about the manner and capacity in which the two corporations and their representatives were acting.[32]

As "control in and of itself is not sufficient to disregard the corporate entity," you should consider the following twelve factors:

(1) common ownership;

(2) pervasive control;

(3) confused intermingling of business assets;

(4) thin capitalization;

(5) nonobservance of corporate formalities;

(6) absence of corporate records;

(7) no payment of dividends;

(8) insolvency at the time of the litigated transaction;

(9) siphoning away of corporation's funds by dominant shareholder;

(10) nonfunctioning of officers and directors;

(11) use of the corporation for transactions of the dominant shareholders; and

---

[31] *Devlin v. WSI Corp.*, 833 F. Supp. 69 (D. Mass. 1993).

[32] *TechTarget, Inc. v. Spark Design, LLC*, 746 F. Supp. 2d 353 (D. Mass. 2010).

(12) use of the corporation in promoting fraud.

In order to find liability, you must conclude after evaluating these factors that the parent corporation directed and controlled the subsidiary and used it for an improper purpose such as fraud as to the corporate form and its effects upon a creditor.[33] The factors are weighed, not counted.[34]

---

[33] *Id.*

[34] *George Hyman Constr. Co. v. Gateman*, 16 F. Supp.2d 129, 158 (D. Mass. 1998).

10098817.3 58144/146507 4/25/23