## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| BLUE SUN SCIENTIFIC, LLC; THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD; ARNOLD EILERT; MICHELLE GAJEWSKI; ROBERT GAJEWSKI; RACHAEL GLENISTER; GREGORY ISRAELSON; IRVIN LUCAS; and PHILIP OSSOWSKI, | ) ) ) ) ) ) ) ) ) | Civil Action No. 4:21-cv-10572-MRG |
| Defendants. | ) ) ) | |

## DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE OF TRADE SECRETS NOT ALLEGED WITH PARTICULARITY OR SUPPORTED BY EVIDENCE PRODUCED IN DISCOVERY

Pursuant to Federal Rules of Evidence 402 and 403, and Mass. Gen. Laws c. 93, § 42D, Defendants Blue Sun Scientific, LLC ("Blue Sun"), The Innovative Technologies Group & Co., LTD ("ITG"), Arnold Eilert, Robert Gajewski, Rachael Glenister, and Irvin Lucas (Eilert, Gajewski, Glenister, and Lucas, collectively, the "Individual Defendants") move *in limine* to preclude Plaintiff KPM Analytics North America Corporation ("KPM") from offering any evidence of so-called KPM "trade secrets" that KPM has not identified with the requisite particularity or disclosed how each Defendant allegedly misappropriated those trade secrets. Alternatively, Defendants move that KPM be ordered, in advance of trial, to identify each particular trade secret at issue in this case, along with each Defendant KPM alleges misappropriated each trade secret, and how the misappropriation occurred. To date, KPM has

simply offered generic categories of documents and, on the eve of trial, Defendants still are not able to determine which specific trade secrets each is accused of misappropriating.

## BACKGROUND

KPM commenced this action in April 2021 against the Defendants and three other since-dismissed former KPM employees.  ECF No. 1.  Among other claims, KPM alleges that all Defendants misappropriated certain KPM trade secrets, which were described in the Complaint as KPM's "datasets, software tools, technical knowledge and customer information." *Id.* at ¶¶ 89, 99.  Notably, KPM did not describe *which* "datasets, software tools, technical knowledge and customer information" KPM claims to be a trade secret, or *which* of the Defendants misappropriated those trade secrets.

On April 21, 2023, KPM provided a draft of the parties' joint pretrial memorandum, in which KPM identified the trade secrets it alleges were misappropriated by Defendants as:

> KPM's documents and data concerning research and development activities, data sets and calibration data, source code, proprietary software, technical specifications, marketing plans and strategies, pricing and costing policies, customer lists and information, and accounts and non-public financial information[.]

After the Defendants noted that KPM had still not identified its trade secrets with the requisite particularity, on April 24, 2023, KPM sent a revised draft of the pretrial memo that amended the description of KPM's trade secrets as follows:

> KPM's proprietary software, calibration data, and competitively sensitive customer information are trade secrets belonging to KPM.  KPM's proprietary software includes the UCAL software, specifically UCAL version 3 and 4, used to formulate and depict the data for application notes and to formulate and make calibration adjustments for customers. The calibration data includes the data Defendants used with customers and the data used to create the application notes that were then used by the Defendants.  With respect to customer information, the trade secrets include: customer names and contact information; details of customers' account(s) with KPM/Unity and use of NIR systems (including SpectraStars); identity and timing of purchases and preventative maintenance services; pricing (both historical and contemplated) for instruments, consumables, instrument repair, and preventative

maintenance service; and in depth knowledge of specific strengths and weaknesses, customer needs, and customers' stated and anticipated future needs.

(Pretrial Memo, at 22).

KPM's description does not identify what specific "calibration data . . . Defendants used with customers," and does not identify what data was used to create "application notes that were then used by the Defendants." Moreover, other than lumping all Defendants in together, KPM does not identify which of the Defendants misappropriated any of the aforementioned trade secrets, or even how Defendants misappropriated any of the enumerated categories of "customer information." For the reasons stated below, KPM should be required to identify which specific "calibration data" and "customer information" it alleges that each specific Defendant misappropriated, and how it was misappropriated, and if KPM cannot, it should be precluded from offering any evidence of trade secret misappropriation at trial.

## ARGUMENT

The Massachusetts Uniform Trade Secrets Act requires that a plaintiff "alleging trade secrets misappropriation . . .  state with reasonable particularity the circumstances thereof, including the nature of the trade secrets and the basis for their protection.." *See also Sutra, Inc. v. Iceland Exp., EHF*, 2008 WL 2705580, at *3 (D. Mass. July 10, 2008) ("It is hornbook law that the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret."). The reason for the requirement is simple: a defendant is entitled to know precisely which information the plaintiff claims to be a trade secret, and how the defendant is alleged to have misappropriated that information. *See DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007) ("[I]t is difficult, if not impossible, for the defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated"); *Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) ("at

3

the very least, a defendant is entitled to know the bases for plaintiff's charges against it.  The burden is on the plaintiff to specify those charges, not upon the defendant to guess at what they are[.]").

KPM has failed to identify its purported trade secrets with the requisite particularity and has also failed to state which of the four Individual Defendants and two corporate defendants have misappropriated those trade secrets.  This information is critical to each Defendants' defense in the case.  For example, KPM broadly claims that *each* Defendant misappropriated "KPM's proprietary software."  But KPM has admitted that Ms. Glenister and Mr. Lucas did not even have access to KPM's software source code, nor has it presented *any* evidence that any of the Defendants ever accessed or used the source code.  [CITE].  It remains unclear to the Defendants whether KPM continues to allege that each of them misappropriated KPM's source code, and if KPM is no longer alleging that, how then any of the Defendants, much less all of them, misappropriated "KPM's proprietary software."

Likewise, KPM now claims that the Defendants have misappropriated the "calibration data . . . Defendants used with customers" and the data used to create the application notes that were then used by the Defendants."  But this overbroad, circular description of "calibration data" falls far short of the requisite particularity a plaintiff is required to allege.  For example, KPM fails to identify *which* calibration data it alleges "Defendants used with customers," nor does KPM identify *which* customers Defendants used the data with.  This has been a common theme in this litigation and KPM has gone to great lengths to avoid identifying which *specific customers* it claims that Defendants used misappropriated trade secrets to obtain a particular sale from.[1]

---

[1] Even KPM's expert did not attempt to do any type of customer-by-customer analysis of profits generated by Blue Sun in an effort to identify any specific sales that KPM would have obtained but for the Defendants alleged misappropriation.  Had he done so, he would have

KPM also fails to identify which of the Defendants misappropriated "calibration data." The Individual Defendants cannot be lumped together in that regard; they are separate parties, had different job responsibility at KPM, and KPM admits that they had access to different levels of information. Indeed, Ms. Glenister and Mr. Lucas worked in sales and had no access to "calibration data," nor has KPM offered even an iota of evidence that they ever misappropriated any "calibration data." KPM tacitly acknowledges the different roles played by the Individual Defendants when it writes that "Blue Sun, and in particular Irvin Lucas and Robert Gajewski, misappropriated and misused KPM's proprietary, confidential and trade secret calibration data libraries and UCAL calibration software to generate Application Notes showing the capabilities of KPM's SpectraStar analyzers." (Joint Pretrial Memo, at 5-6). Each of the Defendants is entitled to know exactly what trade secrets KPM alleges that they misappropriated, and how exactly it was misappropriated.

The same goes for so-called "customer information." On the eve of trial, KPM still has made no effort to identify *which* customers' information was allegedly misappropriated by Defendants. Instead, KPM posits that because the Individual Defendants had "access" to "customer information," they must have misappropriated *every single KPM customer's* information. This too is improper and prejudicial to the Individual Defendants, as they still do no know, two years into this litigation, which customer's information each is alleged to have

---

discovered that Blue Sun has only sold NIR analyzers to *one customer* that replaced a Unity/KPM-manufactured SpectraStar analyzer with a Blue Sun Phoenix analyzer. Instead, KPM's expert opines that KPM is entitled to the profits from every sale Blue Sun has made to a customer whose address is also found in KPM's customer database. And then he goes even further, opining that KPM is somehow entitled to every cent of profit Blue Sun has generated, even sales to non-KPM customers.

misappropriated, how that misappropriation occurred, and how that misappropriation caused KPM any harm.

**<u>CONCLUSION</u>**

At this stage of this litigation, KPM should be able to identify each specific instance where the Defendants misappropriated "software," "calibration data," and "customer information."  And they should be able to identify each specific customer whose information was misappropriated, and each customer who Defendants "used data with."  KPM's failure to do so prejudices each Defendant's ability to adequately prepare its defense and therefore KPM should be ordered to state with particularity—including identifying each customer Defendants used data with or whose information Defendants misappropriated—each specific trade secret it alleges was misappropriated and each specific Defendant that misappropriated those trade secrets.  If KPM cannot do so, it should be precluded from offering any evidence of alleged trade secret misappropriation.

<table>
<tr>
<td valign="top">

ARNOLD EILERT, ROBERT GAJEWSKI, RACHAEL GLENISTER, and IRVIN LUCAS,

<u>/s/ Dallin R. Wilson</u>
William L. Prickett (BBO# 555341)
Dallin R. Wilson (BBO# 676662)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Tel: (617) 946-4800
Fax: (617) 946-4801
wprickett@seyfarth.com
drwilson@seyfarth.com

</td>
<td valign="top">

BLUE SUN SCIENTIFIC, LLC and THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD,

<u>/s/ George R. Ritchie</u>
George R. Ritchie (pro hac vice)
Royal Craig (pro hac vice)
Lauren Lake (pro hac vice)
Gordon Feinblatt, LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202

Christopher R. O'Hara (BBO# 548611)
Maria T. Davis (BBO# 675447)
Todd & Weld, LLP
One Federal Street
Boston, MA 02110
Tel: (617) 720-2626
cohara@toddweld.com
mdavis@toddweld.com

</td>
</tr>
</table>

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 26, 2023.

_____
Dallin R. Wilson