UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION,<br>          *Plaintiff.*<br><br>     V.<br><br>BLUE SUN SCIENTIFIC, LLC, THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD., ARNOLD EILERT, MICHELLE GAJEWSKI, ROBERT GAJEWSKI, RACHAEL GLENISTER, GREGORY ISRAELSON, IRVIN LUCAS, AND PHILIP OSSOWSKI,<br><br>          *Defendants.* | Civil Action No. 21-10572-MRG |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE OF TRADE SECRETS NOT ALLEGED WITH PARTICULARITY OR SUPPORTED BY EVIDENCE PRODUCED IN DISCOVERY**

## I.     Introduction.

Plaintiff KPM Analytics North America Corporation ("KPM"), respectfully submits this Memorandum in Opposition to Defendants' Motion *in Limine* to Preclude Plaintiff from Introducing Evidence of Trade Secrets Not alleged with Particularity or Supported by Evidence Produced in Discovery (the "Motion"). The Motion incorrectly cites to language in Plaintiff's Pretrial Memorandum, alleging it to be the first and only instance when KPM articulated which of its trade secrets have been misappropriated by Defendants.[1] This is simply not true and misleads

---

[1] In fact, despite Defendants' insinuation that KPM only updated its description of its trade secrets in the Pretrial Memorandum based on remarks made by Defendants, the language included in the final Pretrial Memorandum mirrored the identified KPM's trade secrets in KPM's Supplemental Answer to Interrogatory No. 8, which was served on the Defendants on June 7, 2022.

the Court. Plaintiff's trade secrets have been identified to and enumerated for the Defendants no fewer than three separate times throughout the course of this litigation, including: (1) by KPM at its July 2021 Fed. R. Civ. P. 30(b)(6) deposition (excerpts attached hereto as Exhibit 1), (2) by this Court in its Order and Memorandum on Plaintiff's Motion for Preliminary Injunction (the "Preliminary Injunction Order and Memo") (ECF No. 93), and (3) following more extensive discovery into Defendants' surreptitious actions, KPM provided a supplemental detailed list together with extensive cites to the documentary and testimonial record in Plaintiff's Supplemental Answer to Interrogatory No. 8, served on Defendants' on June 7, 2022 (attached hereto as Exhibit 2). Defendants, therefore, have had plenty of notice and have litigated this case with that full knowledge.

Moreover, the Defendants' Motion appears to be an untimely Motion for Summary Judgment. The Court should not allow Defendants to effectively have a "do-over" after forgoing the filing of a Motion for Summary Judgment on this issue. Presumably, Defendants did not file for Summary Judgment on this issue because they knew it would have been an unsuccessful Motion, considering the vast evidence in the record describing and identifying the trade secrets that have been misappropriated from KPM by the Defendants. Having let the dispositive motion deadline pass on this issue, Defendants may not ignore vast swaths of the record to try and avoid trial on their misappropriation.

## II. KPM's Trade Secrets Have Been Defined.

KPM acknowledges its obligation to "**adequately** identif[y] the specific trade secrets that are at issue" in order for it to assert a "cognizable trade secret claim." *Iconics, Inc. v. Massaro*, 266 F.Supp. 3d 449, 455 (D. Mass. 2017) (citing, *Sutra, Inc. v. Iceland Exp.*, No. 04-11360-DPW, 2008 WL 2705580, at *4 (D. Mass. 2008)) (emphasis added). Defendants' argument that KPM is required to identify **exactly** what data was used, when, and by whom in order to satisfy its

2

obligation to identify the trade secrets that have been misappropriated is not supported by Massachusetts law.[2]

The *DeRubeis v. Witten Techs., Inc*. District of Georgia decision cited by Defendants defined "reasonable particularity" to mean the party asserting its trade secrets were misappropriated must provide "a sufficient description of the trade secrets it believes to be at issue in th[e] case so that (1) [Defendants] are put on notice of the nature of [the trade secrets at issue]; and (2) [Defendants] can discern the relevancy of any requested discovery on Plaintiffs' trade secrets." 244 F.R.D. 676, 681 (N. D. Ga. 2007). The decision does <u>not</u> support Defendants' position that KPM must identify exactly what trade secret was used by which defendants and exactly how it was misappropriated. Such a high level of precision in identifying a trade secret that has been misappropriated is not necessary to satisfy the requirement in Massachusetts, which is to **adequately** identify the trade secret. *Iconics, Inc*., 266 F.Supp. 3d at 455 (D. Mass. 2017). Rather, the level of specificity needed in order to articulate a plaintiff's alleged trade secret misappropriation is to define the trade secret "both with technical specificity and 'with clarity that can be understood by a lay person.'" *Id.* (finding at Summary Judgment that the plaintiff had "described its alleged data intake trade secret with enough particularity for a reasonable jury to identify whether it has a valid trade secret of this kind, by providing an analogy to a concept that a layperson could understand), citing *Staffbridge, Inc. v. Gary D. Nelson Assoc., Inc*., No. 024912BLS, 2004 WL 1429935, at *4 (Mass. Super. Ct. 2004).

As stated in *Alnylam Pharms., Inc. v. Dicerna, Alnylam*, "'Reasonable particularity' for these purposes simply means a description of the trade secrets at issue that is sufficient to put a

---

[2] Eschewing Massachusetts law, Defendants rely instead on decisions from Georgia and New York.

defendant on notice of the nature of plaintiff's claims and to enable the defendant to determine the relevancy of any requested discovery." No. MICV20154126, 2016 WL 4063565 (Mass. Super. Apr. 6, 2016). KPM's trade secrets that have been misappropriated by the Defendants have been adequately identified in at least three separate instances throughout the course of this litigation.

In KPM's Fed. R. Civ. P. 30(b)(6) deposition, KPM representative Eric Olson testified in great detail regarding the specific trade secrets that KPM, at the time, understood the Defendants to have misappropriated as alleged in the Complaint.[3] KPM defined the term "datasets" as used in paragraph 99 of the Complaint as, technical information used during the development of the calibration, statistical data that is collected on or through the Spectrastar, the operation and use of the algorithm or equation that the Spectrastar utilizes to perform its functions, any documentation generated from the Spectrastar's processes, any reports generated from testing the Spectrastar (including its hardware and software), the work product of the account managers, technicians, application specialists, chemometricians, and scientists and any data tied to calibrations, including calibration metrics for specific products. (KPM 30(b)(6) Depo. 32:4-34:6). In response to this answer, Defense counsel acknowledged, "That's quite a long list" further exemplifying the detail provided by KPM. (KPM 30(b)(6) Depo. 34:7 (July 7, 2021)).

KPM's representative additionally defined the term "software tools" in paragraph 99 of the Complaint, stating "[a]s part of our business, we have applications that we develop, particularly in this would be UScan or UCalibrate or ULock…these are our main applications that we run with our system. We have several scripts, VB code, Excel-driven VB manipulations, Excel sheets for service and maintenance." *Id*., at 34:18-25. In addition, KPM's representative testified, based on

---

[3] For context, the July 7, 2021 deposition of KPM was taken pursuant to the Court's order granting the Plaintiff's Motion for Expedited Discovery (ECF 44). KPM's knowledge at the time was limited to the evidence it had in its possession.

4

what KPM knew at the time that the Complaint was filed in April 2021, as to which trade secrets were misappropriated by each of Mr. Gajewski, Ms. Glenister, Mr. Eilert, and Mr. Lucas (*Id.*, at 38:6-39:14, 104:17-105:6, 186:17-187:9, 192:16-194:2, 205:10-206:8). Therefore, it is untrue for the Defendants to assert that KPM has been "grouping" the Individual Defendants together when it describes which of its trade secrets were misappropriated, and further to assert that it does not understand what the terms used in paragraph 99 of the Complaint mean as KPM's explained those terms. Notably, Defendants never sought to compel.

Next, the Court certainly understood, and further enumerated for the Defendants, which KPM trade secrets are at issue in the Court's Preliminary Injunction Order and Memo (ECF 93). Page 15 of the Preliminary Injunction Order and Memo identified KPM's technical trade secrets as the UCAL software. (ECF 93). The Preliminary Injunction Order and Memo goes on to define KPM's non-technical trade secrets as knowing who the "respective [customer] employee responsible for arranging PM or NIR servicing [is], when [the customer's] analyzers were due for servicing or replacement, the prices that KPM had charged [customers] for past servicing, the [customers'] prior relationship with the Individual Defendants or their faith in Gajewski and Eilert's expertise on older KPM analyzers, and how to convert a [customers'] repository of collected data into other manufacturers' platforms." ECF 93 at 16. The Court additionally identifies "client names, past purchasing and pricing information, and analyzer replacement and repair needs and timing" as KPM trade secrets. ECF 93 at 16. Therefore, as of August 23, 2021, Defendants knew, or at the very least should have known, which of KPM's trade secrets KPM was alleging were misappropriated by Defendants.

Finally, on June 7, 2022, KPM supplemented its Answer to Interrogatory No. 8, which asks:

**Interrogatory No. 8**

Identify with reasonable particularity each trade secret allegedly misappropriated by the Defendants and each Defendant's role in that alleged misappropriation. Include in your answer 1) the date you claim any such trade secret was created, the identity of the person or person(s) you claim created each trade secret, 2) the steps you undertook to protect the confidentiality of each such trade secret, and 3) the date or date(s) on which you claim each trade secret was misappropriated and/or used without permission.

Exhibit 2. KPM Answered this Interrogatory and identified the following trade secrets that have been misappropriated by the Defendants:

> [S]oftware and related calibration data…and competitive information concerning customers. The calibration data includes the data Defendants used with customers and the data used to create the application notes that were used by the Defendants. The UCAL software is the software, specifically UCAL ver. 3 and/or 4, used to formulate and depict the data for the application notes and to formulate calibrations and make calibration adjustments for customers. With respect to customer information, the trade secrets and confidential information include customer names, contact information, details of their account with KPM/Unity and use of NIR systems (including Spectrastars), identity and timing of purchases and PM service, and pricing (both historical and contemplated) for instruments, consumables, instrument repair, and PM Service, in depth knowledge of specific strengths and weaknesses, customer needs, and customers' stated and anticipated future needs.

Exhibit 2. KPM then additionally identified more than 120 documents under Fed. R. Civ. P. R. 33(d) and cited to nine (9) depositions that had been taken during the course of discovery in support of its response to Interrogatory No. 8. Exhibit 2. The Defendants never complained or moved to compel for a more definite answer to Interrogatory No. 8 after supplementation. They also never filed a summary judgment motion on the basis that KPM failed to adequately identify the misappropriated trade secrets. If the Defendants genuinely believed that KPM had not adequately identified the trade secrets misappropriated by Defendants, summary judgment, and only summary judgment, was the proper vehicle to ask this Court to rule accordingly. Now is the time for the jury to decide. For Defendants to assert that KPM has not identified which of its trade secrets have been misappropriated by which of the Defendants at this stage in the litigation is misleading to the Court, and disingenuous.

**III.   KPM has Identified Which of its Customers the Defendants have Lured or Attempted to Lure Away from KPM.**

Contrary to Defendants' contention, KPM has not "gone to great lengths to avoid identifying which specific customers it claims the Defendants used misappropriated trade secrets to obtain a particular sale from." *See* ECF 190 at page 4.  KPM has explicitly listed its customers that it alleges the Defendants' lured away from KPM in its definition of the phrase "Known KPM Customer" that was included in every Request for Documents served on Defendants in early 2022. *See, e.g.* Request for Documents to Arnold Eilert, attached hereto as Exhibit 3, p. 2.  This list identifies 42 specific KPM's customers that it alleges the Defendants used misappropriated information to lure them away from KPM to Blue Sun and ITG.  Therefore, the Defendants are well aware of the customers that KPM alleges they lured away from KPM to Blue Sun/ITG.

**IV.   Conclusion**

For the above stated reasons, Defendants' Motion in Limine to preclude Plaintiff from introducing evidence of trade secrets not alleged with particularity or supported by evidence produced in discovery should be denied.

**Date:** April 27, 2023

Respectfully submitted,

KPM Analytics North America Corporation,

By its attorneys,

*/s/ Paige K. Zacharakis*
John T. Gutkoski (BBO No. 567182)
Kevin R. Mosier (BBO No. 703739)
Sunstein LLP
100 High Street
Boston, MA 02110
Phone: (617) 443-9292
jgutkoski@sunsteinlaw.com
kmosier@sunsteinlaw.com

**AND**

Scott R. Magee (BBO No. 664067)
Paige Zacharakis (BBO No. 699108)
Morse, Barnes-Brown & Pendleton, P.C.
480 Totten Pond Road, 4th Floor
Waltham, MA 02451
Phone: (781) 622-5930
Fax: (781) 622-5933
smagee@morse.law
pzacharakis@morse.law

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April 2023, a true and correct copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Paige K. Zacharakis*
Paige K. Zacharakis