## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

KPM ANALYTICS NORTH AMERICA
CORPORATION,

        *Plaintiff.*

    V.

BLUE SUN SCIENTIFIC, LLC, THE
INNOVATIVE TECHNOLOGIES GROUP &
CO., LTD., ARNOLD EILERT, MICHELLE
GAJEWSKI, ROBERT GAJEWSKI,
RACHAEL GLENISTER, GREGORY
ISRAELSON, IRVIN LUCAS, AND PHILIP
OSSOWSKI,

        *Defendants.*

Civil Action No. 21-cv-10572-MRG

## KPM ANALYTICS NORTH AMERICA CORPORATION'S PROPOSED
## FINAL JURY INSTRUCTIONS

## **TABLE OF CONTENTS**

1.   Duties of the Jury .................................................................................................... 1

2.   Evaluating Evidence .................................................................................................. 2

3.   Direct and Circumstantial Evidence ........................................................................ 4

4.   Adverse Inference Concerning Loss of Emails and Thumb Drive ........................... 6

5.   Knowledge of a Company Defendant ....................................................................... 6

6.   Willful Blindness ...................................................................................................... 7

7.   Burden of Proof ........................................................................................................ 7

8.   The Nature of the Action and the Parties ................................................................. 8

9.   Trade Secret Misappropriation (Counts I and II) ................................................... 10

10.   Breach of Contract (Count III) .............................................................................. 20

11.   Violation of the Covenant of Good Faith and Fair Dealing (Count IV) ................. 23

12.   Breach of the Duty of Loyalty (Count V) .............................................................. 23

13.   Contract Damages Generally (Counts III-V) ......................................................... 25

14.   Tortious Interference with Contractual Relations (Count VII) ............................... 26

15.   Unfair and Deceptive Trade Practices (Chapter 93A) (Count X) ........................... 30

16.   Damages for Deceptive and Unfair Trade Practices ............................................... 33

17.   Deliberations and Verdict....................................................................................... 34

18.   Unanimous Verdict ................................................................................................ 34

19.   Duty to Deliberate ................................................................................................. 35

20.   Social Media.......................................................................................................... 35

## 1.  Duties of the Jury[1]

Members of the jury, you've heard the evidence and closing arguments.  I will instruct you on the law now. You will then begin your deliberations and apply the law to the facts as you find them.  As you deliberate, you will have these instructions in written form. But even though you will have them in the jury room with you, you should nevertheless listen very carefully to all of the instructions as I give them to you now.

The first part of my instructions concerns general rules in defining the duties of the jury. I want to explain to you these general rules.  It is your duty to find the facts from all of the evidence in the case.  I will describe the law to you, and you must apply the law to the facts as you find them.  You must follow the law as I describe it, whether or not you personally agree with the wisdom of the law.  This instruction is a fundamental part of our system of government by law rather than by the individual views of the judge and jury.  It is your duty as jurors to decide the case fairly and impartially, regardless of any personal likes or dislikes, opinions, prejudices, biases, or sympathy for one party or another.  You must make your decision based solely on the evidence before you and according to the law.

You must follow all of my instructions. They are all equally important.  The lawyers are allowed to comment both on the evidence and on the rules of law in their opening and closing statements.  But if what they have said about the evidence differs from your memory, let your collective memory control.  If what they have said about the law seems to differ in any way from my instructions, you must be guided only by my instructions.

You must not read into these instructions or into anything that I may have said or done during the course of the trial any suggestion from me as to the verdict you should return.

---

[1] This instruction is drawn from the Court's charge to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023) and *Crane Security Tech., Inc. v Rolling Optics AB,* No. 1:14-cv-12428-LTS, D.N. 484 at 64, (D. Mass. May 9, 2018).

Whatever opinion I might have as to what your verdict should be is utterly irrelevant.  The verdict is yours, and yours alone, to render as the finders of the facts. While I intend to be as helpful as I can in providing you with the knowledge of the law that you will require to render an intelligent and informed verdict, the law commits this case to your sole determination as the judges of the facts.

Plaintiff, you will recall, is the name we give to the person or entity who brings a lawsuit.  The plaintiff in this case is KPM Analytics North America Corporation.  We refer to the party sued as the defendant.  In this case, there are six defendants: Blue Sun Scientific, LLC, The Innovative Technologies Group & Co., Ltd., Arnold Eilert, Robert Gajewski, Rachael Glenister, and Irvin Lucas.  You should consider this case as a dispute between parties of equal standing in the community, of equal worth and equally entitled to a fair trial.  All persons, including companies, stand equal before the law and are to be treated as equals.

It is the weight and persuasiveness of the evidence, rather than the mere number of witnesses or documents, that matters.  In determining whether any fact at issue in this case has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses regardless of who may have called them, and you may consider all exhibits received in evidence regardless of who may have produced them.

### 2.  Evaluating Evidence[2]

Before I turn to the applicable principles of law, let me first briefly remind you what is and is not evidence in this civil case.  Evidence is presented at trial in one of three ways:

First, evidence is presented through the sworn testimony of witnesses on both direct and cross-examination; second, evidence is presented through documents that are identified by a witness and admitted as exhibits during the trial; and third, evidence is presented by

---

[2] *Id.*

stipulation, that is, by agreement between the parties that certain facts are true and need not be independently proven as such at trial.

Certain things are not evidence and should have no influence on your verdict. One, arguments and statements by lawyers, as I've cautioned several times, are not evidence. What the lawyers have said over the course of the trial you may find helpful, even persuasive, but the facts are to be determined from your own evaluation of the testimony of the witnesses and exhibits and from any reasonable inferences that you choose to draw from the facts as you find them.

Two, questions to the witnesses are not evidence and may only be considered in the sense that they give context or meaning to a witness' answers. A question and an answer together is evidence but a question without an answer is not evidence.

Three, objections to questions are not evidence.

Attorneys have a duty to their clients to object when they believe that a question is improper under the rules of evidence. You should not be influenced by the fact that an objection was made. If I sustained the objection, you should ignore the lawyer's question and any assertion of fact that it might have contained. If I overruled the objection, you should treat the witness' answer like any other.

Four, testimony that I excluded, struck, or which I instructed you to disregard is not evidence. If you heard an answer to the question before my ruling sustaining an objection, you are to disregard it. That answer is not evidence. You should also ignore editorial comments made by the attorneys during their presentations, particularly those intended to characterize the testimony of witnesses. Whether or not a witness' testimony was believable on any particular point is a determination that only you can make.

Finally, anything you may have seen or heard outside of the courtroom during the course of this trial is not evidence.

### 3.  Direct and Circumstantial Evidence[3]

There are two kinds of evidence:  Direct and circumstantial.

Let me again address what is evidence and the forms it can take. Direct evidence is direct proof of a fact such as testimony of a witness that the witness saw or did something. Circumstantial evidence is indirect evidence. That is proof of a fact or facts from which you could draw a reasonable inference that another fact exists even though it has not been proven directly. You all have experience in your everyday life drawing inferences based upon circumstantial evidence.  For instance, imagine it was sunny when you arrived here this morning, but just now someone walked into the courtroom wearing a wet raincoat and carrying a dripping umbrella.  Without any words being spoken and without looking outside for yourself, you might draw the reasonable inference that it is now raining outside.  In other words, the facts of the wet raincoat and dripping umbrella would be circumstantial evidence that it is raining. You are entitled to consider both direct and circumstantial evidence.  Neither type of evidence is considered superior or inferior to the other.  The law permits you to give equal weight to both.  It is for you to decide how much weight to give any piece of evidence.

A lot evidence received in this case was offered through witness testimony.  As the jury, you are the sole judges of the credibility of the witnesses.  You do not have to accept the testimony of any witness if you find the witness not credible.  In deciding what the facts are, you must determine what testimony you believe and what testimony you do not believe.  To do this, you must look at all the evidence, drawing upon your common sense and personal experience.  You may choose to believe everything a witness said, only part of it, or none of it.

In deciding whether to believe a witness' testimony, you may consider a number of factors, such as the witness' conduct and demeanor while testifying, the witness' apparent

---

[3] This instruction is drawn from the Court's charge to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023).

fairness or any bias he or she may have displayed, any interest you discern that the witness may have in the outcome of the case, any prejudice the witness may have shown, the witness' opportunity to see, hear or know the things about which he or she testified, the reasonableness of the events that the witness related to you in light of the other evidence which you believe, the quality of the witness' memory, and any other facts or circumstances disclosed by the evidence that tend to corroborate or contradict the witness' version of the events.

You have heard testimony from a person described as expert on certain issues in this case. A witness who has special knowledge, experience or training on a particular topic may testify and state an opinion concerning such matters. The expert witnesses you heard from this case were Neil Zoltowski and William Kennedy. Expert witness testimony is allowed in order to help the jurors understand certain issues, but, as with any other evidence, you may accept or reject an expert's testimony in whole or in part. In weighing expert testimony you should consider the factors that generally bear upon the credibility of witnesses, the expert's education and experience, the soundness of the reasons for the opinions given, and any other evidence in this case that you find is pertinent. You also should evaluate the basis for the opinion and the extent to which the expert's education and experience support the opinion.

If the opinion given by any expert relied on facts that you find were not proven, then you must disregard the opinion to the extent that it relied on such facts. Remember that you alone decide how much of a witness' testimony to believe and how much weight it should be given. You should not accept a witness' testimony merely because he is an expert, nor should you substitute it for your own reason, judgment and common sense. Remember that you alone determine the facts in this case.

A number of documents have been received into evidence, which you will have with you in the jury room. You decide the weight, if any, to give to each document. That is, you may credit all of a document, a portion of a document, or none of a document. In evaluating

the believability of the statements or assertions in a document, you should consider all of the surrounding circumstances. Among other factors, you may consider the author of the document, the believability of the author, when the document was created, the purposes for which the document was created, whether the document was created in anticipation of litigation, whether the statements in the documents are contradicted by anything else, and/or whether the statements in the document are reasonable or unreasonable, probable or improbable in light of all the other evidence in the case.

Now I want to turn to the principles of law that govern the specific claims and defenses made in this case.

### 4.   Adverse Inference Concerning Loss of Emails and Thumb Drive[4]

You have heard testimony in this case concerning the loss of Blue Sun emails and the loss of a Lexar thumb drive possessed by Robert Gajewski.

You may infer that if the Blue Sun emails and Lexar thumb drive had been produced in Court, they would have been unfavorable to the defendants. You may give any such inference whatever force or effect you think appropriate under all of the facts and circumstances.

### 5.   Knowledge of a Company Defendant[5]

The defendant Blue Sun Scientific is a limited liability company and the defendant ITG is a corporation.

Limited liability companies and corporations are artificial persons created by law that have the same rights as a natural person to do business, to make contracts, and to own property. When considering what a company party knew, keep in mind that a company can only acquire

---

[4] *KPM Analytics N. Am. Corp. v. Blue Sun Scientific LLC*, No 21-10572-MRG, ECF No. 93 (D. Mass. Aug. 23, 2023) (describing the loss of the Blue Sun emails and ruling that "[t]he Court will impose a modest adverse inference against Blue Sun due to its spoliation of evidence.").

[5] Adapted from Massachusetts Superior Court Civil Practice Jury Instructions (MCLE), Volume II, § 12.4.5 (3d ed. 2014, rev 2016), charge to jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023).

knowledge or a state of mind through its people—its controlling principals, employees, and agents. A company is therefore charged with the knowledge of all facts that those people knew or should have known, while they were acting in the course of their jobs, and within the scope of their particular authority for that corporation. You are to decide what in your judgment the defendant, as a business entity, knew or should have known about the facts giving rise to the plaintiff's claims.

### 6. Willful Blindness[6]

A defendant cannot claim lack of knowledge as a defense to a plaintiff's legal claim(s) if it purposefully avoided learning of certain facts or circumstances giving rise to the plaintiff's claim(s). We call this "willful blindness." A defendant is willfully blind to the existence of the facts or circumstances giving rise to the plaintiff's claim(s) if it knew or should have known or believed that there was a high probability that the fact(s) or circumstance(s) existed and deliberately avoided learning of or confirming their existence.

### 7. Burden of Proof[7]

KPM claims that all of the defendants have misappropriated its trade secrets, that the Individual Defendants breached contractual duties owed to KPM, that Blue Sun and ITG tortiously interfered with KPM's contractual relationships with its employees and engaged in unfair and deceptive trade practices, and that KPM suffered damage as a result of the defendants' conduct.

KPM has the burden of proving every disputed element of its claims by a preponderance of the evidence. To establish something by a preponderance of the evidence is

---

[6] Adapted from *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766-68 (2011).

[7] Adapted from *U.S. Sees. & Exch. Comm'n v. Nothern,* No. 05-cv-10983-NMG, ECF No. 266, at 83-84 (June 22, 2009), and charges to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023) and *Koninklijke PhilipsN.V. v. ZollMed. Corp.,* No. 10-cv-11041-NMG, ECF No. 553 (Dec. 17, 2013).

to prove that it is more likely true than not true.  It means that such evidence, when considered and compared with the evidence opposed to it, has more convincing force and produces in your mind the belief that what is sought to be proved is more likely true than not true.

To put it differently, if you were to put the plaintiff's and the defendants' evidence on the opposite sides of a scale, the party with the burden of proof would have to make those scales tip slightly toward its side.

If you conclude that the party with the burden of proof has failed to establish an element of its case by a preponderance of the evidence, you must decide against it on that issue. In determining whether any fact in issue has been proved by a preponderance of the evidence in this case, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits in evidence, regardless of who may have produced them.

The burden of proof has not been carried if, after considering all of the evidence, you find that you must speculate, guess or imagine that one or more of the necessary facts is true. But the rule does not require proof to an absolute certainty.  Although the burden is on the party bringing the claim to prove its contentions by a preponderance of the evidence, this rule does not, of course, require proof to an absolute certainty, nor is proof beyond a reasonable doubt or by clear and convincing evidence required. You may have heard the phrase "proof beyond a reasonable doubt" which comes from criminal cases.  That burden does not apply in civil cases like this one, and you should, therefore, put that standard out of your mind.  As to all of the issues in this case, the standard for defining the burden of proof is the "preponderance of the evidence" standard.

### 8. The Nature of the Action and the Parties[8]

I will first give you a summary of each side's contentions in this case and then provide

---

[8] Adapted from charges to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023) and *Koninklijke Philips N.V. v. Zoll Med. Corp.*, No. 10-cv-11041-NMG, ECF No. 553 (Dec. 17, 2013).

you with detailed instructions on the law that you are to apply to decide whether the parties have satisfied their burden of proof as to their respective contentions.

The plaintiff in this case, KPM first alleges that the defendants misappropriated information that KPM maintains as trade secrets in violation of the federal Defend Trade Secrets Act and the Massachusetts Uniform Trade Secret Act.  KPM next alleges that the Individual Defendants breached their contractual duties to KPM related to the non-disclosure of confidential information by failing to keep the information confidential and by disclosing it to and using it for the benefit of Blue Sun, ITG, and other third parties.  In breaching their contractual non-disclosure agreements, KPM further claims that the Individual Defendants breached both the duty of loyalty and the duty of good faith and fair dealing owed to KPM. Next, KPM alleges that Blue Sun and ITG tortiously interfered with KPM's contractual relationships by virtue of Blue Sun's and ITG's knowledge of and disregard for the Individual Defendants' contractual duties owed to KPM.  Last, KPM alleges that Blue Sun and ITG committed unfair and deceptive trade practices in violation of Massachusetts General Law Chapter 93A by misappropriating, misusing, and disclosing KPM's trade secrets and confidential information, by misusing those trade secrets and confidential information to misrepresent the capabilities of the ITG/Blue Sun analyzers, by using current and former KPM employees to divert customers and their service and sales opportunities away from KPM to Blue Sun, and by tortuously interfering with KPM's contracts with its prior employees, all using deceptive and unfair means.  The defendants deny these allegations.

KPM alleges that it suffered damages as a result of the defendants' conduct. The defendants deny that KPM suffered damages as a result of their actions.

### 9.   Trade Secret Misappropriation (Counts I and II)[9]

KPM has two claims for trade secret misappropriation under two different laws.  Count I is for misappropriation of trade secrets under the United States federal law called the Defend Trade Secrets Act.  Count II is for misappropriation of trade secrets under Massachusetts Uniform Trade Secret Act.  KPM claims the following as trade secrets: documents and data concerning its SpectraStar Near-Infrared or "NIR" analyzers, research and development details and activities, KPM's personnel, data sets and calibration data, proprietary UCAL software, technical specifications, technical and business forms and checklists, marketing plans and strategies, pricing and costing policies and plans, customer contacts and relationship information, customer information regarding their use of and needs for their SpectraStar analyzers, and accounts and nonpublic financial information.

I instruct you that the law for Count I under the federal law and Count II under the Massachusetts law are virtually identical. The only difference, which I will explain further, is that for the federal claim of misappropriation of trade secret (Count I), KPM must prove by a preponderance of the evidence that the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. But first I will instruct you on elements that are the same between these counts.

In order to prevail on its claim of trade secret misappropriation under either or both Count I and Count II, KPM must prove by a preponderance of the evidence that:

1.   KPM has trade secrets;

2.   KPM has taken reasonable steps to preserve the secrecy of its trade secrets; and

---

[9] Adapted from Mass. Superior Court Civ. Practice Jury Instruction § 15.4.2, charges to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023) and *CardiAQ Valve Techs., Inc. v. Neovasc Inc.,* Civ. A. No. 14-cv-12405-ADB, ECF No. 488 (D. Mass. May 18, 2016), 18 U.S.C. § 1836, *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, No. 4:21-CV-10572-TSH, 2021 WL 6275214, at *7 (D. Mass. Aug 21, 2021).

3. The defendants acquired or used the trade secret through improper means.

I will now instruct you in more detail about each of the elements of the trade secret misappropriation claims (which apply equally to Count I and Count II) and the factors that you may consider as you weigh the evidence you have heard in this case.

### a. Trade Secrets Definition[10]

To help you determine whether KPM has established that it possesses trade secrets, I will first provide you with the definition of a trade secret.

A "trade secret" is information that a business keeps confidential from others outside the business, and has value to the business. The term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, software, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

1. The owner of the trade secret has taken reasonable measures to keep such information secret; and

2. The information derives independent economic value, actual or potential, from

---

[10] Adapted from Mass. Superior Court Civ. Practice Jury Instruction §§ 15.4.1, 15.4.3, 18U.S.C. § 1839(3), charges to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023) and *CardiAQ Valve Techs., Inc. v. Neovasc Inc.,* Civ. A. No. 14-cv-12405-ADB, ECF No. 488 (D. Mass. May 18, 2016); *Jet Spray Cooler, Inc. v. Crampton,* 361 Mass. 835, 840 (1972) ("However, the fact that no list or paper was taken does not prevent the former employee from being enjoined if the information which he gained through his employment and retained in his memory is confidential in nature."); *Picker Int'l Corp. v. Imaging Equip. Servs.,* 931 F. Supp. 18, 38 (D. Mass. 1995) ("Generally, a compilation of information which is used in a business can be a trade secret….A compilation of public information is protected if that information is, as a result of a business' efforts, combined in a unique way") (internal citations omitted), 18 U.S.C. § 1836, *USM Corp. v. Marson Fastener Corp.,* 379 Mass. 90, 100 (1979), *Optos, Inc. v. TopconMed. Sys., Inc.,* 777 F. Supp. 2d217, 239 (D. Mass. 2011), and *Materials Dev. Corp. v. Atl. Advanced Metals, Inc*., No. EQ. 30837, 1971 WL 16675, at *1 (Mass. Super. Nov. 11, 1971).

not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

You can consider six factors in determining whether the information is a confidential trade secret:

1. The extent to which the information is known outside KPM;

2. The extent to which the information is known by employees and others involved in the business;

3. The extent of measures taken by KPM to guard the secrecy of the information;

4. The value of the information to KPM and to its competitors;

5. The amount of effort or money expended by the employer in developing the information;

6. The ease or difficulty with which the information could be properly acquired or duplicated by others.

A trade secret may consist of any information or compilation of information that is used in one's business and that gives one an opportunity to obtain an advantage over competitors who do not know or use it.  It may be financial, business, or economic information, including plans, compilations, methods, or a list of customers or other customer-specific information.  A trade secret may consist of production or management information, or it may consist of a process, procedure, or improvement. A trade secret can be tangible or intangible, and does not have to be stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.  A trade secret method or technique may also consist of the know-how acquired by the trade secret owner in developing that method or

technique.[11]

A method that is the combination and adaptation of old principles to new purposes does not prevent the process from being a trade secret if the process as distilled accomplishes a result which gives the holder a competitive advantage due to his own ingenuity, research and development.[12] In addition, a method or technique that is "easy" can also be a trade secret. Take, for example, a shoe-making business, where the owner develops a machine for sticking together two pieces of material. He does not let competitors or customers see the machine; the only people who have access are his employees. Although no one else has developed this machine, it is simple, and when the employees use it, they understand how it works.  But the fact that the machine might be easy for those employees to duplicate when they leave does not mean that such a machine loses trade secret status.[13] What is important in this situation is that there were reasonable steps to preserve the secrecy of the machine, as I will describe in more detail below. [14]

A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret.[15]

The fact that information or analysis forming a trade secret may be reproduced through proper means from other sources does not mean that the information or analysis cannot constitute a trade secret.  In fact, it is possible that two separate entities have a trade secret in the same information, so long as those entities otherwise maintain the information as a trade

---

[11] UNIF. TRADE SECRETS ACT §1, cmt. (The words "method, technique" are intended to include the concept of "know-how"); Milgrim on Trade Secrets § 1.09(3)).

[12] *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 169, 385 N.E.2d 1349, 1356 (1979).

[13] *Junker v. Plummer*, 320 Mass. 76, 80, 67 N.E.2d 667, 669 (1946).

[14] *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 169, 385 N.E.2d 1349, 1356 (1979); *Junker v. Plummer*, 320 Mass. 76, 80, 67 N.E.2d 667, 669 (1946).

[15] *Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 449, 454 (D. Mass. 2017) (citing *Sutra, Inc. v. Iceland Exp.*, No. CIV.A. 04-11360-DPW, 2008 WL 2705580, at *4 (D. Mass. July 10, 2008);

secret, based on the elements I will describe more below.

Where employees are on notice that their work may involve access to trade secrets, trade secret documents do not necessarily have to be labeled "confidential" or "secret" in order for protections to be considered reasonable.

In sum, a trade secret is any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret (not publicly available) to afford an actual or potential economic advantage over others.

### b.  Reasonable Steps to Preserve Secrecy[16]

The law requires that one who possesses a trade secret must take reasonable steps to preserve its secrecy. The law requires only reasonable precautions, not heroic measures.  In determining whether KPM has taken reasonable precautions to protect the secrecy of its trade secrets, you should give consideration to the following factors:

1.  the existence or absence of confidentiality agreements;

2.  the nature and extent of security precautions taken by KPM to prevent acquisition of the information by unauthorized third parties;

3.  the circumstances under which the information was disclosed to any employee to the extent that these circumstances give rise to a reasonable inference that further disclosure, without the consent of KPM, was prohibited;

4.  the degree to which the information has been placed in the public domain or rendered readily ascertainable by third parties through issued patents or

---

[16] Adapted from Mass. Superior Court Civ. Practice Jury Instruction § 15.4.4, charges to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023) and *CardiAQ Valve Techs., Inc. v. Neovasc Inc.,* Civ. A. No. 14-cv-12405-ADB, ECF No. 488 (D. Mass. May 18, 2016), *TouchPoint Sols., Inc. v. Eastman Kodak Co.,* 345 F. Supp. 2d 23, 30 (D. Mass. 2004), 18 U.S.C. § 1836, *USMCorp. v. Marson Fastener Corp.,* 379 Mass. 90, 100 (1979).

unrestricted product marketing.[17]

You may consider, for example, whether KPM had confidentiality policies, whether KPM required its employees to sign nondisclosure agreements, and whether KPM's employees were on notice that documents and information regarding its operations and products were regarded as secret and confidential and not to be disclosed outside of the business except under appropriate circumstances. You may also consider any other precaution that KPM took to protect its trade secret information.

Keep in mind, however, that the law does not require the possessor of a trade secret to take heroic measures to preserve its secrecy. The standard is reasonableness, not perfection. So long as the entity entitled to a trade secret takes proper and reasonable steps under the circumstances to keep their secret, they have met the requirements of the law, even though an unscrupulous person has managed to obtain possession of the information sought to be protected. To the extent that there are documents that comprise or contain the alleged trade secret, do not necessarily have to be labeled "confidential" or "secret" in order for protections to be considered reasonable.

### c. Misappropriation of a Trade Secret[18]

To prevail on its claim for misappropriation, KPM must prove that any of the defendants engaged in at least one instance of misappropriation of an alleged trade secret. KPM must prove by a preponderance of the evidence that any or all of the defendants engaged in one of the following:

KPM can establish misappropriation by showing that any of the defendants acquired

---

[17] *Allstate Ins. Co. v. Fougere*, No. CV 16-11652-JGC, 2019 WL 4776986, at *23 (D. Mass. Sept. 30, 2019).

[18] Adapted from Mass. Superior Court Civ. Practice Jury Instruction § 15.4.5, charges to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023) and *CardiAQ Valve Techs., Inc. v. Neovasc Inc.,* Civ. A. No. 14-cv-12405-ADB, ECF No. 488 (D. Mass. May 18, 2016), 18 U.S.C. § 1836, *Simplivity Corp. v. Hofdahl*, No. SUCV20161541BLS1, 2016 WL 4080369, at *6 (Mass. Super. June 24, 2016).

KPM's alleged trade secrets with the knowledge or reason to know that the alleged trade secrets were acquired by improper means.

KPM can also establish misappropriation by showing that any of the defendants used improper means to acquire knowledge of the alleged trade secrets and used the alleged trade secrets without the express or implied consent of KPM.

KPM can also establish misappropriation by showing that any of the defendants disclosed or used the alleged trade secret without the express or implied consent of KPM, and at the time of the disclosure or use, the defendants knew or had reason to know that: (a) knowledge of the trade secret was derived from or through a person who had used improper means to acquire the trade secret, (b) knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret, or (c) knowledge of the trade secret was derived from or through someone who owed KPM a duty to maintain the secrecy of the trade secret.

The law also states that an individual who breaches contractual duties to obtain a trade secret, such as where the individual is bound not to disclose confidential information by a contractual agreement, has used improper means to acquire the trade secret.[19]  A party that knowingly benefits from the trade secret misappropriation of another is also liable for trade secret misappropriation.[20]  The law further states that a former employee who has retained documents, in violation of contractual duties to return them to the former employer, is using "improper means" of acquiring the trade secret.[21]  Thus, an example of improper means

---

[19] *FrontRunner HC, Inc. v. Waveland RCM*, LLC, No. CV 20-10230-DJC, 2020 WL 7321161, at *11 (D. Mass. Dec. 11, 2020); *Optos, Inc. v Topcon Med. Sys., Inc.*, 777 F. Supp. 2d 217, 240 (D. Mass. 2011).

[20] *Optos, Inc. v Topcon Med. Sys., Inc.*, 777 F. Supp. 2d 217, 240 (D. Mass. 2011); *KPM Analytics N. Am. Corp. v. Blue Sun Scientific LLC*, No 21-10572-MRG, ECF No. 165  (D. Mass. Feb. 16, 2023).

[21] *Bos. Sci. Corp. v. Lee*, No. CIV.A. 13-13156-DJC, 2014 WL 1946687, at *5 (D. Mass. May 14, 2014).

includes a breach of a duty to maintain secrecy with respect to the trade secret.

A person who acquires trade secrets of his or her former employer has a duty to maintain that information in confidence and may not use them or disclose them.  The obligation to maintain the confidentiality of a former employer's trade secrets does not expire upon termination of employment, even in the absence of a written nondisclosure agreement.

Thus, although a person may carry away and use general skill or knowledge acquired during the course of his or her employment, he or she is not permitted to then use or disclose a trade secret that he or she acquired during his or her employment. Thus, a person who learned of a particular trade secret or other confidential information[22] may not disclose that trade secret or confidential information to a new employer if he or she has a continuing duty to maintain in confidence the information learned from the former employment. By way of example in a different context, think of an employee who knew generally about an industry but who had no knowledge of how to build a specialized machine for that industry until he started a job where he learned how to build the special machine.  This employee can leave the job and use his general knowledge about the industry, but he cannot use or disclose his specialized knowledge that was acquired solely by reason of his employment.[23]

### d.  Interstate Commerce

As I explained, the elements of the state and federal claims are the same in almost every way.  However, if you find that any of the defendants misappropriated KPM's trade secrets, you should also determine one additional fact required by the federal claim.

Federal misappropriation requires that the trade secret be related to a product or service

---

[22] *EMC Corp. v. Breen*, No. SUCV201204477BLS2, 2013 WL 1907460, at *2 (Mass. Super. Feb. 25, 2013).
[23] *Junker v. Plummer*, 320 Mass. 76 (1946); *EMC Corp. v. Breen*, No. SUCV201204477BLS2, 2013 WL 1907460, at *2 (Mass. Super. Feb. 25, 2013).

used in interstate commerce or intended to be used interstate commerce.[24] This means that KPM's alleged trade secrets are used or intended to be used in business across state lines or internationally.[25]  For example, information about a consultant who lives in New Jersey and is being considered for a position within Massachusetts is information to be used in interstate commerce.

### e.   Trade Secret Damages[26]

Proof of damage is not required for this claim, however you should award KPM damages for any quantifiable damages caused by the misappropriation of its trade secrets. Damages can include both the actual loss suffered by KPM caused by the misappropriation, known as lost profits, and the unjust enrichment received by Defendants caused by misappropriation that is not already taken into account in computing KPM's actual loss.

Under lost profits, you should award KPM an amount equal to any profits that it would have made if there was no trade secret misappropriation.  To determine lost profits you first ask: How much money would KPM have received if there was no trade secret misappropriation?  Then you subtract the direct expenses that KPM would have had to spend to receive that money.  The result is lost profits.  Please note that you do not deduct anything for overhead or fixed expenses. You may consider KPM's past earnings, general economic conditions, and the competitive conditions in the business at the time.  You may also consider any other circumstances that help you determine, with reasonable certainty, how much profit KPM lost because of the misappropriation.

Unjust enrichment occurs when one party obtains value or a benefit that should have been obtained by another.  Unjust enrichment is measured in the profits that the defendants

---

[24] 18 U.S.C. § 1836(b)(1).
[25] *Id.*
[26] Adapted from 18 U.S.C. § 1836(b)(3)(B), M.G.L. ch. 93 § 42B, *Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215 (1st Cir. 2005), Mass. Superior Court Civ. Practice Jury Instruction § 12.4.

earned from the misappropriation of the plaintiff's trade secret(s).  Improperly obtaining a head start in the marketplace from misappropriating another's trade secret(s) is a form of unjust enrichment.[27] To establish that a misappropriated trade secret gave a defendant a head start, plaintiff must proffer evidence (1) that the alleged misappropriation gave the defendant a head start in the marketplace and (2) that the head start helped to bring about certain earnings over the following months or years.[28] To decide the dollar amount of any unjust enrichment for any defendant, first determine the dollar value of that defendant's actual benefit from the misappropriation. Then subtract from that amount that defendant's reasonable expenses associated with the benefit it received to arrive at the defendant's profit earned from the misappropriation.

It is enough if the evidence shows the amount of lost profits or unjust enrichment in general terms, because the law recognizes that precise calculation of lost profits and/or unjust enrichment is often impossible.

### f.   Willful and Malicious Misappropriation[29]

If you find that any defendant misappropriated KPM's trade secrets, you must then also decide whether the defendant's misappropriation of KPM's trade secrets was willful and malicious.

Conduct is "willful" if done with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.  Conduct can also be "willful" if it was done with a reckless disregard for the consequences of the conduct.

---

[27] See *BioPoint, Inc. v. Andrew Dickhaut & Catapult Staffing, LLC*, 20-10118-RGS, 2023 WL 3071422, at *6 (D. Mass. April 25, 2023)

[28] *Id.*; *Alifax Holding Spa v. Alcor Sci. Inc.*, 2021 WL 3911258, at *1 (D.R.I. Sept. 1, 2021).

[29] Adapted from 18 U.S.C. § 1836(b)(3)(C), M.G.L. ch. 93 § 42B, *Mattel, Inc. v. MGA Entertainment, Inc.*, 801 F. Supp. 950, 953 (C.D. Cal. 2011); *Bladeroom Grp. Ltd. v. Emerson Electric Co.*, No. 5:15-cv-01370-EJD, 2019 WL 1117538, *1 (N.D. Cal. Mar. 11, 2011).

Conduct is "malicious" if done with an intent to cause injury or was done with a willful and knowing disregard for the rights of others. Someone acts with knowing disregard when he or she is aware of the probable consequences of their conduct and deliberately fails to avoid those consequences.

### 10. Breach of Contract[30] (Count III)

KPM alleges that the Individual Defendants breached their contractual non-disclosure duties owed to KPM by using, attempting to use, or disclosing to KPM's trade secrets (Count III).

A breach of contract is a failure to comply with one or more material, or significant, terms of the contract.  In order to succeed in the claim of breach of contract, KPM must prove each of the following elements by a preponderance of the evidence:

1.  That the Individual Defendants breached the non-disclosure duties with respect to their use of or disclosure of KPM's trade secrets and/or confidential information.

2.  KPM suffered damages as a result of the Individual Defendants' breach or breaches of those duties.

### a.  The Meaning of Contracts[31]

With respect to the meaning of terms in a contract, unless otherwise expressly defined in the contract, you should give all words their ordinary and commonly understood meaning.

---

[30] Adapted from Mass. Superior Court Civ. Practice Jury Instructions § 14.1 and charge to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023).

[31] *See, e.g.*, *City of Springfield v. Dep't of Telecomms. & Cable*, 457 Mass. 562, 568 (2010); *Kravetz v. Merchants Distrib., Inc.*, 387 Mass. 457, 460 (1982); *Rosenfield v. U.S. Trust Co.*, 290 Mass. 210 (1935).

### b.  Breach Generally[32]

KPM must prove that the Individual Defendants breached—in other words, violated—their contracts.  The Individual Defendants breached their contracts if they failed to comply with one or more essential terms of their contracts.  In order to make this determination, you will have to refer to the terms of their contracts.

Additionally, a party that has breached a material term of a contract may not enforce that same contract against another party, because a material breach of contract by one party excuses the other party from performance as matter of law.[33]  A "material breach" of a contract occurs when the breach concerns an essential feature of the contract.[34]

### c.  Breach of a Non-Disclosure Agreement

To prove breach of a non-disclosure duty in a contract or an agreement, KPM must prove each of the following by a preponderance of the evidence:

1.  Any or all of the contracts between KPM and the Individual Defendants required the respective Individual Defendants to maintain KPM's information as confidential; and,

2.  Any or all of the Individual Defendants violated one of the actions that were prohibited by their respective contracts' non-disclosure provisions.

### i.  Confidential and/or Proprietary Information

First you must determine whether the information that KPM alleges is the subject of the breach was, in fact, confidential.  Confidential and/or proprietary information is construed

---

[32] Adapted from Mass. Superior Court Civ. Practice Jury Instructions §§ 14.9, 14.9.1, 14.9.2.; and Mass. Superior Court Model Jury Instructions, Contract Claims, Mar. 1, 2021, https://www.mass.gov/guides/superior-court-model-jury-instructions#-civil-instructions-.

[33] *Hastings Assocs., Inc. v. Loc. 369 Bldg. Fund, Inc.,* 675 N.E.2d 403, 411 (Mass. App. Ct. 1997); *Ward v. Am. Mut. Liability Ins. Co*., 15 Mass. App. Ct. 98, 100 (1983) ("It is well established that a material breach by one party excuses the other party from further performance under the contract.").

[34] *G4S Technology LLC v. Massachusetts Technology Park Corporation*, 479 Mass. 721, 99 N.E.3d 728 (2018).

broadly and includes any and all information that has or could have commercial value or other utility to KPM and of which the unauthorized disclosure could be detrimental or adverse to KPM's interests.  For information to be protected as confidential, you must find that the information is kept confidential.[35]

Information can be a trade secret, or it can be confidential information, or it can be both.

As with trade secrets, you should consider these same six factors to determine whether information is confidential:

1. The extent to which the information is known outside KPM;

2. The extent to which the information is known by employees and others involved in the business;

3. The extent of measures taken by KPM to guard the secrecy of the information;

4. The value of the information to KPM and to its competitors;

5. The amount of effort or money expended by the employer in developing the information;

6. The ease or difficulty with which the information could be properly acquired or duplicated by others.[36]

### ii. Breach

If you find that the information KPM claims is confidential is in fact confidential, you must then consider whether KPM has proved by a preponderance of the evidence that the Individual Defendants did something with the confidential information that violated the non-disclosure provisions of their contracts. You must refer to the terms of the contracts and apply the facts.

---

[35] *Dynamics Rsch. Corp. v. Analytic Scis. Corp.*, 9 Mass. App. Ct. 254, 278 (1980).
[36] *Jet Spray Cooler, Inc. v. Crampton*, 282 N.E.2d 921, 925 (Mass. 1972)

### 11. Violation of the Covenant of Good Faith and Fair Dealing (Count IV)[37]

KPM claims that the defendants violated their obligation of good faith and fair dealing by breaching their respective contracts with KPM, by misappropriating KPM's trade secrets, and/or by using and/or disclosing KPM's confidential information. Every party to a contract must act in good faith and deal fairly with the other party in matters governed by the contract. Neither party may do anything that will have the effect of destroying or injuring the other party's right to receive the contract's benefits. The parties have that obligation automatically even if the contract does not mention it. The Individual Defendants have breached their respective contracts if they violated this obligation.

For example, suppose that two companies have a contract that requires one company to obtain the other's approval before performing the contract. The second company breaches its duty to act in good faith and deal fairly if it unreasonably refuses to grant approval without any legitimate reason, just to force the first company to make additional payments that the contract never required.

This obligation of good faith and fair dealing does not, however, extend to matters outside the contract's scope. Nor does it create rights and duties beyond what the contract itself provides.

### 12. Breach of the Duty of Loyalty (Count V)[38]

KPM claims that the Individual Defendants breached a duty of loyalty owed to KPM by disclosing KPM's confidential information and/or trade secrets to a competitor with that

---

[37] Mass. Superior Court Civ. Practice Jury Instruction § 14.9.
[38] Adapted from Mass. Superior Court Civ. Practice Jury Instruction §§ 12.2, 12.3, charge to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023), *UBS Fin. Servs., Inc. v. Aliberti*, 483 Mass. 396, 406 (2019), *Doe v. Harbor Schools*, 446 Mass. 245, 252 (2006), *Estate of Moulton v. Puopolo*, 467 Mass. 478, 492 (2014), *MAZ Partners LP v. Shear*, 265 F. Supp. 3d 109, 116 (D. Mass. 2017), *Chelsea Indus., Inc. v. Gaffney*, 389 Mass. 1, 11 (1983).

unauthorized use and disclosure causing harm to KPM.  The duty of loyalty requires a person or entity to act with honesty, fairness, and loyalty toward another person or entity.  In other words, the duty of loyalty requires one person to act in the other person or entity's best interests and not out of self-interest.  Parties in certain kinds of relationships have a fiduciary relationship as a matter of law.  But a fiduciary relationship may also arise in other situations where one person or entity puts their trust and confidence in, and is dependent upon, the other person or entity's judgment, honesty, and integrity.

To prevail on this claim, KPM must prove following three things by a preponderance of the evidence:

1. KPM had a special relationship with any or all of the Individual Defendants that created a duty of loyalty;

2. Any or all of the Individual Defendants violated that duty; and

3. KPM suffered harm or loss as a result.

I will now explain each of these items in more detail.

KPM must first prove that any or all of the Individual Defendants had a duty to act in KPM's best interest because they had a special relationship of trust.  To prove this, KPM must show that:

1. KPM put its trust and confidence in any or all of the Individual Defendants' judgment, honesty, and integrity;

2. Any or all of the Individual Defendants knew that KPM was relying on the Individual Defendant(s) and accepted KPM's trust and confidence.

You should consider all of the circumstances surrounding the relationship to decide whether KPM and the Individual Defendant(s) had the type of special relationship that gives rise to a duty of loyalty.

Second, KPM must prove that any or all of the Individual Defendants violated their duty of loyalty.  A breach of the duty of loyalty may occur by taking some action or through an intentional failure to act.  KPM does not have to show corruption, dishonesty, or bad faith to prove that the Individual Defendant(s) breached his or her duty.  The duty of loyalty is not breached by a mistake of judgment if the Individual Defendant(s) reasonably believed in good faith that her or his actions were loyal to KPM's best interests.

Finally, if any or all of the Individual Defendants breached their duty of loyalty, KPM must then prove that the breach caused it loss or harm.  We often refer to this loss or harm as damages.  In order for you to award damages, KPM must prove by a preponderance of the evidence that:

1. KPM lost benefits, legal rights, money or suffered some other financial harm without receiving equivalent value in return; and

2. The Individual Defendant(s)' breach was a substantial contributing factor in bringing about that loss. That means that the Individual Defendant(s)' breach of duty must have made a difference in the result.  It does not matter whether other causes also contributed to KPM's loss as long as the Individual Defendant(s)' breach was a substantial factor in producing the injuries.

### 13. Contract Damages Generally (Counts III-V)[39]

If any of the Individual Defendants breached their contracts, KPM must prove that KPM suffered damages from that breach.  By instructing you on damages, I am not suggesting that I think damages should be awarded.  As with the other elements of the breach claims, KPM

---

[39] *Id.*; *Don v. Soo Hoo*, 75 Mass. App. Ct. 80, 85 (2009) (plaintiffs have burden of proving damages with reasonable certainty, not with mathematical precision); *White Spot Constr. Co. v. Jetspray Cooler, Inc.*, 344 Mass. 632, 635 (1962) (defining general damages); *First Penn. Mortgage Trust v. Dorchester Sav. Bank*, 395 Mass. 614 (1985) (defining consequential damages).

must prove that the Individual Defendants' conduct more likely than not caused the damages. You should not award damages on these claims for any harm that KPM or someone other than the Individual Defendants caused.

The purpose of contract damages is to award KPM the benefit of the contractual bargain. You must determine an amount that will compensate KPM for the loss of that bargain. You should ask: "Would KPM have benefited if the defendants had fully performed the contract?" If so, you should award money damages to compensate KPM for the value of the contract benefits that KPM lost because of the breach of contract. However, you may not award damages for the purpose of rewarding KPM or punishing the defendants.

Sometimes there is an element of uncertainty in proving one or more area of damages. Uncertainty does not necessarily prevent you from awarding full and fair compensation. KPM is not required to prove the amount of damages with mathematical precision. It is often the case that the amount of a loss cannot be exactly calculated after the fact based on events that did not occur. You can make a reasonable estimate of losses based on the evidence as a whole. On the other hand, you may not determine KPM's damages by speculation or guesswork. You may award damages if the evidence allows you to draw fair and reasonable conclusions about the extent of the damages. We leave the amount of damages to your judgment, sometimes upon meager evidence.

### 14. Tortious Interference with Contractual Relations (Count VII)[40]

KPM alleges that Blue Sun and/or ITG tortiously interfered with KPM's contractual relationships with the Individual Defendants. To prove this claim, KPM must show that the following five things are true:

> 1. KPM had a contractual relationship with a third party, in other words, someone other than Blue Sun or ITG;

---

[40] Mass. Superior Court Civ. Practice Jury Instruction § 12.4.

2. Blue Sun and/or ITG knew about the contractual relationship;

3. Blue Sun and/or ITG intentionally caused the third-party to break that contract;

4. Blue Sun and/or ITG had an improper motive or used an improper method in interfering with the contract; and

5. Blue Sun and/or ITG's actions caused KPM to suffer economic harm.

I will now explain each of these things to you.

### a. Contract with Third Party[41]

First, KPM must prove that it had a contract with a third-party. It must also prove that the contract was in effect when Blue Sun and/or ITG acted.

### b. Knowledge of Contract and of Interference[42]

Second, KPM must prove that Blue Sun and/or ITG knew that a contract existed between KPM and the third party, and also knew that Blue Sun and/or ITG was interfering with performance of that contract. KPM may do this by direct evidence or by indirect evidence.

KPM does not have to prove that Blue Sun and/or ITG knew about the specific contract(s). Nor does KPM have to prove that Blue Sun and/or ITG knew the precise, formal terms of the contract(s); it is enough to show that Blue Sun and/or ITG knew certain facts that, when added together, gave Blue Sun and/or ITG knowledge of the contract(s). Willful blindness to the existence of the specific contract(s) is also not a valid defense. Blue Sun and/or ITG were willfully blind to the existence of the contract(s) if they believed that there was a high probability that the contract(s) existed and deliberately avoided learning of or confirming their existence.

---

[41] *Id.*
[42] *Id.*

Also, Blue Sun and/or ITG can be liable even if they mistakenly thought the agreement between KPM and a third-party was not binding when in fact it was binding. Ignorance of the law is no excuse.

### c.  Intent to Interfere[43]

Third, KPM must prove that Blue Sun and/or ITG intentionally caused the third-party to break the contract. On this issue of intent, KPM does not have to prove that Blue Sun and/or ITG acted out of hostility or wanted to harm KPM, as long as Blue Sun and/or ITG intended to cause the third-party to break the contract. When I say that Blue Sun and/or ITG caused the third-party to break the contract, I mean that, because of Blue Sun and/or ITG's actions, the third-party violated the contract or did not perform the third-party's obligations under the contract.

### d.  Improper Motive or Method[44]

Fourth, KPM must prove that Blue Sun and/or ITG either acted with an improper motive or used an improper method. KPM must prove at least one of these two things, but does not have to prove both improper motive and improper method. KPM must prove more than just ordinary business competition or using lawful methods to pursue legitimate financial goals.

### e.  Economic Harm[45]

Finally, KPM must prove that Blue Sun and/or ITG's interference with the contract caused KPM to suffer economic harm.

### f.  Damages for Intentional Interference[46]

If KPM proves all five things I have just described, it must prove the amount of damages

---

[43] *Id.*; *Crane Security Tech., Inc. v Rolling Optics AB,* No. 1:14-cv-12428-LTS, D.N. 484 at 74-75, (D. Mass. May 9, 2018)

[44] *Id.*

[45] *Id.*

[46] *Id.*

resulting from the interference.

The purpose of damages is to compensate KPM for the harm resulting from the interference. You may not award damages for the purpose of rewarding KPM or punishing Blue Sun and/or ITG. As with the other elements of its claim, KPM must prove by a preponderance of the evidence that Blue Sun and/or ITG's conduct caused the damages. You should not award damages for any harm that KPM or someone other than Blue Sun and/or ITG caused.

You should consider several types of damages. You should award damages for any out-of-pocket loss that Blue Sun and/or ITG's interference caused KPM to suffer. For instance, you should award KPM damages to cover any money spent to reduce the harm it suffered, to recover business lost because of Blue Sun and/or ITG's conduct, or to determine the amount of KPM's losses.

Next, KPM is entitled to damages for any lost profits. To determine lost profits you first ask: How much money would KPM have received if Blue Sun and/or ITG had not caused the third-party to breach the contract? Then you subtract the direct expenses that KPM would have had to spend to receive that money. The result is lost profits. Please note that you do not deduct anything for overhead or fixed expenses.

You should award KPM an amount equal to any profits that it would have made if Blue Sun and/or ITG had not interfered with the contract. You may consider KPM's past earnings, general economic conditions, and the competitive conditions in the business at the time. You may also consider any other circumstances that help you determine, with reasonable certainty, how much profit KPM lost because of Blue Sun and/or ITG's actions. It is enough if the evidence shows the amount of lost profits in general terms, because the law recognizes that precise calculation of lost profits is often impossible.

As an alternative to lost profits, KPM may recover the profits that Blue Sun and/or ITG

made as a result of the interference, known as unjust enrichment.  KPM may not recover both. KPM is entitled to recover whichever amount is greater—KPM's lost profits or Blue Sun and/or ITG's profits.

### 15. Unfair and Deceptive Trade Practices (Chapter 93A) (Count X)[47]

KPM alleges that Blue Sun and ITG engaged in unfair and deceptive trade practices. For its claim of deceptive or unfair trade practices, KPM must prove, by a preponderance of the evidence, that Blue Sun or ITG committed an unfair or deceptive act or practice.  In other words, if Blue Sun's and ITG's conduct was such that a reasonable businessperson would find it reprehensible, you may find that such conduct constitutes behavior that is unfair or deceptive. Focus on the nature of the conduct that the complaint is about and the purpose and effect of that conduct. Keep in mind that even sophisticated businesspersons must deal with each other fairly.

An employer can be held vicariously liable for the actions of its employees under Chapter 93A when the employee's acts are done in service of or for the benefit of the company and fall within the scope of his or her employment.[48]  This is true even if the employer is not specifically aware of its employees' unfair or deceptive acts.[49]

### a. Deceptive[50]

A "deceptive" act or practice is simply one that has the capacity to deceive.  An act or

---

[47] Adapted from Mass. Superior Court Civ. Practice Jury Instruction §§ 16.3, 16.4.1, 16.7.13, charge to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023).

[48] *BioPoint, Inc. v. Andrew Dickhaut & Catapult Staffing, LLC*, 20-10118-RGS, 2023 WL 3071422, at *8 (D. Mass. April 25, 2023); *Dias v. Brigham Med. Ass'n, Inc.*, 438 Mass. 317, 319-320 (2002); *Wang Labs., Inc. v. Bus. Incentives, Inc.*, 398 Mass. 854, 859 (1986).

[49] *BioPoint, Inc. v. Andrew Dickhaut & Catapult Staffing, LLC*, 20-10118-RGS, 2023 WL 3071422, at *8 (D. Mass. April 25, 2023); *Kansallis Fin. Ltd. v. Fern*, 421 Mass. 659, 672 (1996).

[50] Adapted from Mass. Superior Court Civ. Practice Jury Instruction § 16.4.2, charges to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023) and *CardiAQ Valve Technologies, Inc. v. Neovasc Inc.,* Civ. A. No. 14-cv-12405-ADB, ECF No. 488 (D. Mass. May 18, 2016).

practice is deceptive if it could reasonably cause a person to act differently from the way he or she would act if he or she knew the truth about the matter.  It includes any communication made with the intent to deceive another person. However, an intent to deceive is not always necessary.  A negligent or careless misrepresentation of fact, the truth of which was reasonably capable of ascertainment, may also be a deceptive act or practice.

### b.  Unfair[51]

There is no rigid definition of what constitutes an unfair trade practice.  The existence of unfair trade practices must be determined from the circumstances of each case.  Relevant to this case, both misappropriation of trade secrets and tortious interference with contractual relationships can each individually constitute an unfair practice in violation of Chapter 93A.

To help you determine whether an act or practice is "unfair," ask yourself these three questions:

First, does it fall within some established concept of unfairness? For something to be unfair, it does not need to violate some other law or a government regulation; however, whether or not it does is something you may consider. Not every illegal act is unfair. A material misrepresentation falls within an established basis of unfairness.

Second, ask yourself whether Blue Sun's or ITG's acts or practices were immoral, unethical, oppressive, unscrupulous, or otherwise unconscionable. That obviously involves

---

[51] Adapted from Mass. Superior Court Civ. Practice Jury Instruction § 16.4.3, charges to the jury in *Benchmark Techs. Inc. v. Yuqiang (Richard) Tu, et al*, No. 22-10227-LTS, ECF No. 207 (D. Mass. Feb. 10, 2023) and *CardiAQ Valve Technologies, Inc. v. Neovasc Inc.,* Civ. A. No. 14-cv-12405-ADB, ECF No. 488 (D. Mass. May 18, 2016), *Mass. Eye & Ear Infirmary v. OLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005) ("Under Massachusetts law, misappropriation of trade secrets alone can constitute a violation of Chapter 93A."); Order Denying Motion to Dissolve Preliminary Injunction and Motion for Summary Judgment, *KPM Analytics N. Am. Corp. v. Blue Sun Scientific LLC*, No 21-10572-MRG, ECF No. 165 (D. Mass. Feb. 16, 2023) ("The outcome of the misappropriation and tortious interference claims, or the factfinder's resolution of the disputed issues of fact related to those claims, could potentially support a successful Chapter 93A…claim."); *BioPoint, Inc. v. Andrew Dickhaut & Catapult Staffing, LLC*, 20-10118-RGS, 2023 WL 3071422, at *6 (D. Mass. April 25, 2023).

making a moral judgment about the ethics of the marketplace. You, the jury, are the collective conscience of the community. Use your common sense. Consider Blue Sun's and ITG's conduct in light of all the circumstances, keeping in mind that you must decide this question in the context of the commercial marketplace.

Third, consider whether Blue Sun's or ITG's acts or practices would cause substantial injury to competitors or other businesspersons.

### c.   Causation[52]

If Blue Sun or ITG engaged in an unfair method of competition or used an unfair or deceptive act or practice, you must then determine whether KPM suffered any loss of money or property as a result of Blue Sun's or ITG's actions. Loss of money or property need not be quantifiable in dollars so long as the unfair or deceptive conduct had some adverse effect upon KPM. A risk of future actual loss constitutes an "adverse effect".[53]

If you decide that there was a causal connection between Blue Sun's or ITG's unfair or deceptive acts or practices and a loss to KPM, you must next determine whether the loss was a foreseeable result of Blue Sun's or ITG's conduct. That is, even though a particular loss may have been caused by a particular act, the law treats that loss as being compensable only if the loss was reasonably foreseeable or, said another way, was a reasonably expected result of the act.

### d.   Willful or Knowing[54]

If Blue Sun's and/or ITG's actions were unfair or deceptive, then you must go on to decide whether Blue Sun and/or ITG willfully or knowingly committed that unfair or deceptive

---

[52] Mass. Superior Court Civ. Practice Jury Instruction §§ 16.5.2, 16.5.4; *A2Z Dental, LLC v. Miri Trading, LLC*, 494 F. Supp. 3d 30, 33 (D. Mass. 20202); *Jet Line Servs., Inc. v. Am. Emps. Ins. Co.,* 404 Mass. 706, 718 (Mass. 1989)).

[53] *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.,* 89 F.3d 5, 15 (1st Cir, 1996).

[54] Mass. Superior Court Civ. Practice Jury Instruction §§ 16.7.4, 16.7.5, 16.7.6; *Jet Line Servs., Inc. v. Am. Emps. Ins. Co*., 404 Mass. 706, 718, 537 N.E.2d 107, 115 (1989)

act or practice.  KPM has the burden of proving, by a preponderance of the evidence, that Blue Sun or ITG had a subjectively culpable state of mind. "Willful" or "knowing" requires something more than mere negligence.

An unfair or deceptive statement is willful if the speaker represents a fact to be true without knowing whether it is true or not and with reckless disregard for whether it is true or not. An unfair or deceptive statement is knowing if the speaker represents a fact to be true while knowing that it is not true.

An unfair or deceptive act or practice is willful if the person intends to commit an unfair or deceptive act. An unfair or deceptive act is knowing if the person, whatever his or her intent, knows that by doing so he or she is committing an unfair or deceptive act.

A corporation is charged with the knowledge of all facts that its employees knew or should have known, while they were acting in the course of their jobs, and within the scope of their particular authorities for that corporation.

### 16. Damages for Deceptive and Unfair Trade Practices[55]

If Blue Sun or ITG used deceptive or unfair trade acts or practices, KPM has a right to be compensated for any loss of money or property it suffered as a result of Blue Sun's or ITG's actions.  What you must decide is what amount of money will fully and fairly compensate KPM for the losses that KPM sustained as a result of Blue Sun's or ITG's deceptive and unfair actions. You may award KPM damages for the profits it has lost, or the unjust enrichment to Blue Sun or ITG  earned by reason of Blue Sun's or ITG's deceptive and unfair actions.

Even if you find that KPM did not suffer quantifiable damages, you may find that KPM suffered an "adverse effect" such that Blue Sun's or ITG's unfair or deceptive practices had

---

[55] Mass. Superior Court Civ. Practice Jury Instruction § 16.6.3; *A2Z Dental, LLC v. Miri Trading, LLC*, 494 F. Supp. 3d 30, 33 (D. Mass. 20202); *Jet Line Servs., Inc. v. Am. Emps. Ins. Co.,* 404 Mass. 706, 718 (Mass. 1989)).

the effect of causing a loss of money or property.

### 17. Deliberations and Verdict[56]

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish by explaining some things about your deliberations in the jury room and your possible verdicts.

Each of you must consider the case for yourself, but you do so only after considering all of the evidence, after discussing it fully with the other jurors, and after listening to the views of your fellow jurors. Do not be afraid to change your opinion, if, after hearing the opinions of your fellow jurors, you are convinced that your initial conclusion was wrong. But do not come to a decision simply because other jurors insist that it is right, nor surrender an honest belief about the weight and effect of the evidence simply for the expedience of reaching a verdict.

### 18. Unanimous Verdict[57]

As you will appreciate, this case has taken a great deal of time and effort on the part of the court, the parties, and the attorneys involved. There is no reason to think that the case could have been better tried or that another jury than you would be better qualified to decide it. It is important, therefore, that you reach your verdict if you can do so conscientiously.

Your verdict must be unanimous as to each of the special questions I am going to ask you to answer. And the answers will be recorded on the verdict slip, the official copy which is in the back of this book of instructions that I will be giving your foreperson. The fact that one of you is foreperson does not give that person special status in your deliberations. You are all equal.

---

[56] Final Jury Instructions, *Exergen Corp. v. KAZ USA, Inc.*, Civ. No. 13-cv-10628- RGS, ECF No. 375 (D. Mass. Jan. 22, 2016).

[57] Final Jury Instructions, *Exergen Corp. v. KAZ USA, Inc.*, Civ. No. 13-cv-10628- RGS, ECF No. 375 (D. Mass. Jan. 22, 2016); Charge to the Jury, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS, ECF No. 473 (D. Mass. May 8, 2018).

### 19. Duty to Deliberate[58]

Your first order of business will be to select a foreperson. The foreperson will have the same voice and the same vote as the other deliberating jurors. The foreperson will be moderating the discussion, and the important thing is to ensure that every juror has a full and fair opportunity to be heard by his or her fellow jurors on any material issue in the case.

As foreperson, if there should be questions that arise during the deliberations, you will write them out for me. We must have them in writing so that they are in the record. You will also fill out and sign the official verdict slip, which will be at the back of the book.

The lawyers have the exhibits in order for you, so we are going to start the process of moving those up to the jury room with you. I will then send up the book of instructions with the official verdict slip, and you are now free to begin your deliberations.

### 20. Social Media[59]

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, a cell phone, smart phone, iPhone, tablet, or computer, the internet, any text or instant messaging service, any internet chat room, blog, or website such as Facebook, Instagram, Snapchat, LinkedIn, YouTube, Twitter, Reddit, or TikTok, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

---

[58] Final Jury Instructions, *Exergen Corp. v. KAZ USA, Inc*., Civ. No. 13-cv-10628- RGS (D. Mass. Jan. 22, 2016), ECF No. 375; Charge to the Jury, *Crane Security Techs., Inc. v. Rolling Optics AB*, Civ. A. No. 14-12428-LTS, ECF No. 473 (D. Mass. May 8, 2018).
[59] Adapted from Final Jury Instructions, *Amgen, Inc. v. Hospira, Inc*., Civ. A. No. 15-cv-0839- RGA, ECF No. 323 (D. Del. Sept. 22, 2017).

**Date:** May 11, 2023

Respectfully submitted,

**KPM ANALYTICS NORTH AMERICA CORPORATION**

By its attorneys,

*/s/ Kevin R. Mosier*
John T. Gutkoski (BBO# 567182)
Kevin R. Mosier (BBO# 703739)
SUNSTEIN LLP
100 High Street
Boston, MA 02110
Tel: (617) 443-9292
jgutkoski@sunsteinlaw.com
kmosier@sunsteinlaw.com

Scott R. Magee (BBO# 664067)
Paige K. Zacharakis (BBO# 699108)
MORSE, BARNES-BROWN, AND PENDLETON, P.C.
480 Totten Pond Road, 4th Floor
Waltham, MA 02451
Tel: (781) 622-5930
smagee@morse.law
pzacharakis@morse.law

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May 2023, a true and exact copy of the foregoing was served on all counsel of record through the Court's ECF system.

/s/ Kevin R. Mosier