UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION,<br>*Plaintiff.*<br><br>V.<br><br>BLUE SUN SCIENTIFIC, LLC, THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD., ARNOLD EILERT, MICHELLE GAJEWSKI, ROBERT GAJEWSKI, RACHAEL GLENISTER, GREGORY ISRAELSON, IRVIN LUCAS, AND PHILIP OSSOWSKI,<br><br>*Defendants.* | Civil Action No. 21-cv-10572-MRG |

**KPM ANALYTICS NORTH AMERICA CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR ENTRY OF A PERMANENT INJUNCTION**

Plaintiff, KPM Analytics North America Corporation ("KPM"), by and through its counsel, hereby requests that the Court make permanent its current Preliminary Injunction Order, ECF 94, as updated ECF 120, against each of the Entity Defendants, Blue Sun Scientific LLC ("Blue Sun") and The Innovative Technologies Group & Co., Ltd. ("ITG"), and against each of the Individual Defendants: Arnold Eilert, Robert Gajewski, Rachael Glenister, and Irvin Lucas.

I.   **PROCEDURAL BACKGROUND AND THE LAW OF THE CASE**

Early on in this case, after being afforded only an initial look at the first evidence of misconduct by the defendants, this Court found that KPM had established a likelihood of success on the merits of its claims of trade secret misappropriation, breaches of contract, tortious interference and unfair and deceptive trade practices. ECF 93. It held that a Preliminary Injunction was necessary and essential to protect KPM from suffering serious and ongoing,

1

irreparable harm from defendants' misconduct. ECF 93.  The Court maintained that holding, repeatedly rejecting at least four separate attempts by defendants to eliminate its Preliminary Injunction Order. *See* ECF 98, 105, 120, 148, 164, and 165.

Now, after a detailed and extensive two-week trial, and after viewing the entirety of the evidence that was still available after defendants' spoliation, the Jury has concurred with the Court's initial and ongoing assessments. ECF 230. In its Verdict, the Jury found all defendants liable to KPM and awarded KPM virtually all of the damages it had requested. *Id.* The Jury found Blue Sun and all of the Individual Defendants liable for misappropriation of trade secrets under federal and Massachusetts state law. *Id.* It found that the Individual Defendants had all breached their employment contracts' duties of disclosure, and covenants of good faith and fair dealing. *Id.* It found that the Entity Defendants had tortiously interfered with those contracts and overall competed unfairly with KPM, willfully and knowingly. *Id.*

In short, the Court and the Jury have recognized the defendants are liable for extensive and ongoing misconduct against KPM. Misconduct that, as discussed below, is irreparable and likely to continue for years to come. As this record establishes, the only way to attempt to address that irreparable harm to KPM is to make the Court's balanced, fair, and limited Preliminary Injunction permanent.

## II.     ARGUMENT

KPM is entitled to a permanent injunction upon a showing "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest will not be disserved by a permanent injunction." *Esso Standard Oil Co. v. Lopez-Freytes*, 522 F.3d 136, 148 (1st Cir. 2008); *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 390 (2006). In considering whether a plaintiff has met these standards, courts within the First Circuit routinely look to

prior orders already entered in the case. *See CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008) (the court's earlier findings in support of a temporary restraining order combined with plaintiff's success on the merits was adequate basis for issuance of permanent injunction).

"[A]n 'injunction is not unreasonable merely because it is permanent' or indefinite in duration." *Picker Int'l Corp. v. Imaging Equip. Servs., Inc.*, 931 F. Supp. 18, 45 (D. Mass. 1995) (citing *Curtiss–Wright Corp. v. Edel–Brown Tool & Die, Co.*, 381 Mass. 1, 4–5, 407 N.E.2d 319, 323–24 (1980)), *aff'd sub nom. Picker Int'l Inc. v. Leavitt*, 94 F.3d 640 (1st Cir. 1996). "The plaintiff is entitled to have its trade secrets protected at least until others in the trade are likely, through legitimate business procedures, to have become aware of these secrets." *Analogic Corp. v. Data Translation, Inc.*, 371 Mass. 643, 649, 358 N.E.2d 804, 808 (1976). The scope of an injunction should not be restricted to the specifically identified trade secret itself because "[t]rade secret protection…extends not only to the misappropriated trade secret itself but also to materials 'substantially derived' from that trade secret." *Gen. Elec. Co. v. Sung*, 843 F. Supp. 776, 778 (D. Mass. 1994) (citing *USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334, 351, 467 N.E.2d 1271, 1284 (1984)). An injunction that specifically enforces a contract between the parties is appropriate and sufficiently precise. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 14 (1st Cir. 2000).

Based on the Jury's Verdict and the evidence presented during trial, KPM has established the requirements for a permanent injunction. Moreover, the egregiousness of the defendants' willful and/or knowing misconduct, the defendants' repeated attempts to eliminate the Court's Preliminary Injunction, the defendants' repeated violations of that Preliminary Injunction, and the long product life of the parties' near infra-red analyzer businesses, collectively show the particular necessity for a permanent injunction in this case.

### A. KPM Has Suffered and Will Continue to Suffer Irreparable Harm for Which There is No Adequate Remedy at Law.

#### 1. Blue Sun's and the Individual Defendants' misappropriation of KPM's trade secrets caused KPM irreparable harm for which there is no adequate remedy at law.

After a detailed and lengthy trial, the Jury found that defendant Blue Sun and all four Individual Defendants had misappropriated KPM's trade secrets (and in the case of all but Glenister, multiple categories of KPM trade secrets) protected under both the federal Defend Trade Secrets Act and the Massachusetts Uniform Trade Secrets Act causing KPM damages. ECF 230 at 1-3. This established misappropriation of KPM's trade secrets caused irreparable harm to KPM as a matter of law. *Id.*; *See Allstate Ins. Co. v. Fougere*, 581 F. Supp. 3d 307, 318 (D. Mass. 2022) (applying the irreparable harm standard while issuing a permanent injunction for misuse of confidential and trade secret information). "'[A]s a general rule,' the wrongful use of trade secret information by a competitor 'triggers a finding of irreparable harm.'" *Id.* (quoting *Aspect Software, Inc. v. Barnett*, 787 F. Supp. 2d 118, 130 (D. Mass. 2011); *Optos, Inc. v. Topcon Med. Sys., Inc.*, 777 F. Supp. 2d 217, 241 (D. Mass. 2011) (misappropriation of trade secrets creates a presumption of irreparable harm); *TouchPoint Sols., Inc. v. Eastman Kodak Co.*, 345 F. Supp. 2d 23, 32 (D. Mass. 2004) ("The loss of a trade secret is generally found to constitute irreparable harm….That is in recognition of the fact that, 'once the trade secret is lost, it is gone forever.'") (internal citations omitted).

If defendants are permitted to use the UCAL software, calibration datasets, or customer information trade secrets, KPM would suffer irreparable harm. *See Allstate Ins. Co.*, 581 F. Supp. 3d at 318. Because defendants are precluded by law from misappropriating and misusing these trade secrets, it is proper and necessary to enjoin them from such misconduct. *See* M.G.L. c. 93 § 42, 42A; 18 U.S.C. § 1839; *Hillsborough Inv. Corp. v. Sec. & Exch. Comm'n*, 276 F.2d 665, 667–68 (1st Cir. 1960) (quoting *National Labor Relations Board v. Express Pub. Co.*, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930 (1941) ("A federal court has broad power to restrain acts

4

which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past.").

Further, an injunction to protect the established categories of KPM's trade secrets is appropriate because any use of this information would violate the Individual Defendants' ongoing contractual duties, as discussed below. Therefore, an injunction that enforces those confidentiality provisions in order to prevent further misuse of KPM's trade secrets and confidential information is appropriate. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 14 (1st Cir. 2000) (granting injunctive relief to prevent future breach of contract with language that "specifically enforces the contract").

      **2.    The Entity Defendants' interference with KPM's employment contracts and the Individual Defendants' breach of those contracts caused KPM irreparable harm for which there is no adequate remedy at law.**

The Jury also expressly found that each of the four Individual Defendants breached their Non-Disclosure Agreements and the Covenant of Good Faith and Fair Dealing in their employment contracts with KPM causing KPM damages. ECF 230 at 3-6. The Jury separately found that both of the Entity Defendants had tortiously interfered with those contracts causing KPM extensive damages. *Id.* at 6-7.

The Individual Defendants' breach of their contracts with KPM, as encouraged and facilitated by the Entity Defendants, caused KPM irreparable harm for which there is no remedy at law if a permanent injunction does not issue. This is true, first and foremost, as a matter of contract. In their contracts with KPM, each of the Individual Defendants expressly agreed that any breach of their Non-Disclosure obligations would cause KPM serious and irreparable harm and that such harm would entitle KPM to injunctive relief:

> Page 3: "Whereas, Company's and its clients' confidential and proprietary information is highly valuable and its ***disclosure would cause serious or irreparable harm to Company and its clients***;"

> Page 4: "You further acknowledge and agree that the Confidential Information is highly valuable and proprietary to Company and that the disclosure of any such Confidential Information to third parties or the otherwise ***unauthorized use of the Confidential Information by you would cause Company serious or irreparable harm***."
>
> Page 6: "You recognize that your ***breach of this Agreement*** may give rise to irreparable injury to Company and/or its Affiliates ***inadequately compensable in damages and, accordingly, agree that Company may seek and obtain and that you will consent to injunctive relief granted by a court of law against such breach or threatened breach***, in addition to any other legal remedies which may be available, including the recovery of monetary damages from you."

Tr. Ex. 349 (Lucas – emphasis supplied); *see also* Tr. Exs. 346 (Eilert), 351 (Glenister) and 353 (Gajewski). Under Massachusetts law, such agreements are enforced with injunctions. *See Washington Tr. Advisors, Inc. v. Arnold*, No. CV 22-11847-PBS, 2022 WL 17630520, at *7 (D. Mass. Dec. 13, 2022) (finding the irreparable harm element met based upon an "irreparable harm clause" in employment contract, which Massachusetts courts "generally enforce[]").

In addition, because the Jury determined that the Individual Defendants each repeatedly breached the non-disclosure terms of their contractual agreements, and both Entity Defendants interfered with those contracts, those breaches and interferences constitute irreparable harm as a matter of law. *See Allstate Ins. Co.*, 581 F. Supp. 3d at 318 (finding irreparable harm for a permanent injunction based, in part, on the defendant's contractual agreement that "misuse of Allstate's confidential information would cause Allstate irreparable harm"); *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 14 (1st Cir. 2000) (finding no abuse of discretion in the scope of a permanent injunction that "specifically enforces the contract" signed by the parties).

### 3. The Entity Defendants' Chapter 93A violations caused KPM irreparable harm for which there is no adequate remedy at law.

The Jury expressly found that both Entity Defendants Blue Sun and ITG engaged in competition, and attempts at competition, "using unfair or deceptive acts or unfair methods of

6

competition in the conduct of trade or commerce." ECF 230 at 7. The Jury further expressly found that both Blue Sun and ITG did so "willfully or knowingly." *Id.*

These violations of Chapter 93A by the Entity Defendants entitle KPM to a permanent injunction against both of them. Under Chapter 93A, injunctive relief is available if the "unfair method of competition, act or practice may have the effect of causing such loss of money or property." M.G.L. c. 93A § 11. The statute also provides that "the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper." *Id.* As the Supreme Judicial Court has made clear, "to succeed in its request for injunctive relief, [a plaintiff] need not already have suffered loss of money or property due to [a defendant's] alleged unfair and deceptive conduct" for an injunction to be warranted, *Warner-Lambert Co. v. Execuquest Corp.*, 427 Mass. 46, 48 (1998), although the Jury awarded KPM damages here for its losses to date.

KPM is entitled to an injunction based on the 93A violations because the Jury determined that Blue Sun's trade secret misappropriation and Blue Sun's and ITG's tortious interference with the Individual Defendants' contracts were unfair or deceptive trade practices. ECF 230 at 7. *See Warner-Lambert Co.*, 427 Mass. at 48; *see also Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 15 (1st Cir. 1996) (finding injunctive relief available under 93A on showing of "demonstrated risk of future actual loss").

      **4.**      **The nature of the Parties' near infra-red analyzer business established at trial further proves there is no adequate remedy at law for defendants' violations.**

At trial, all parties agreed that the near infra-red analyzers sold by the parties have a life span of many years, often lasting 15-20 years before needing to be replaced. *See, e.g.,* Day 8, Tr. 100:11-13. All parties also agreed that preserving relationships with customers over that period through annual maintenance servicing is the most likely method in the industry of securing future and additional analyzer sales – the so-called "service to sale" model. *See, e.g.,*

7

Day 3, Tr. at 46:5 – 50:11; Day 4, at 13:22 – 17:18, 26:7 – 28:6; Day 5, Tr. at 51:24 – 52:25 (referencing Tr. Ex. 10); Day 6, Tr. at 60:11 – 65:1 (referencing Tr. Ex. 11 and Tr. Ex. 323); Day 7,Tr. 42:3 – 44:2 (referencing Tr. Ex. 14); Tr. Exs. 17, 46, 59, 65, 102, 106, 118, 122, 124, 324, 326, 329, 331, 443, 446, and 740.

As a result, KPM does not know now and will not know fully just how much the defendants' wrongdoing will harm KPM. While the Jury's award of damages and any enhancements by this Court will address the past harms suffered and sales lost, KPM may be rejected by customers months or years from now as a result of the confusion caused by defendants and the necessity for this lawsuit.

Moreover, defendants have shown no remorse for their actions. Rather than admit their misdeeds early on in the case and attempt to compete fairly, defendants forced the case to trial before conceding all of their many lies and deceptions on the stand in front of the Jury. In the meantime, they sought the limitation, "clarification," or outright removal of the Preliminary Injunction at every turn. *See* ECF 98, 105, 120, 148, 164, and 165.

The extensive timeline of these analyzer products, defendants' past misconduct, and defendants' repeated attempts to resume that misconduct, all support the necessity a permanent injunction to protect KPM from irreparable harm.

**5.     Defendants' violations of this Court's Preliminary Injunction further establishes their irreparable harm to KPM for which there is no adequate remedy at law.**

Beyond the evidence heard by the Jury, this Court has the additional evidence before it that the defendants *violated the Preliminary Injunction* based on the uncontested admissions of defendants at trial. They did so not once, but repeatedly, with multiple customers. Their violations provide an additional basis for a finding of Chapter 93A liability and multiple damages, *Auto Placement Center, Inc. v. Clemmey's, Inc.*, 2001 WL 881685, *1 (Mass. App. Ct. Aug. 6, 2001) (Rule 1:28 Decision) (finding a violation of an injunction constituted a

violation of Chapter 93A, § 11), and also further support the necessity of a permanent order from this Court prohibiting any further violations. The Preliminary Injunction entered, both originally and as modified, states in relevant part:

> Defendants are prohibited for the duration of this Action from offering to sell or selling any Phoenix Near-Infrared analyzer product to any party for which any Defendant has previously offered to provide or provided or offered to sell or sold any services or products related to any Near Infra-Red analyzer manufactured or sold by KPM or its predecessors in interest, including but not limited to analyzers manufactured or sold by Unity Scientific or Process Sensors Corporation from July 2, 2018 to the present.

ECF No. 94, ¶ 6 (entered August 23, 2021); ECF No. 120, ¶ 6 (entered December 17, 2021).

Defendants violated this paragraph of the injunction by selling Phoenix Analyzers to R&R Machine. Prior to the lawsuit being filed, KPM had sold a SpectraStar analyzer to R&R Machine and Glenister was the KPM employee responsible for the sale. Day 6, Tr. 51:9-20; Trial Ex. 162, 383. Thus, R&R was a "party for which any Defendant has previously offered to provide or provided or offered to sell or sold any services or products related to any Near Infra-Red analyzer manufactured or sold by KPM," making it a prohibited customer for defendants. *See* ECF No. 120, ¶ 6. Nonetheless, the undisputed evidence at trial shows that Blue Sun then sold multiple Phoenix NIR analyzers (and other products) to R&R Machine after the injunction was entered – on February 11, 2022 (Trial Ex. 474), March 18, 2022, and August 3, 2022, (Trial Ex. 475); Day 6, Tr. 51:24-52:15; 113:18-114:3.[1] Blue Sun and Glenister sold more than one "Phoenix Near-Infrared analyzer product" to R&R, a prohibited customer, after the injunction was ordered, and did so repeatedly.

Blue Sun also violated the injunction by selling to Idahoan. Idahoan was a customer of KPM and its business unit Process Sensors Corporation. Day 4, Tr. 23:18-24; Day 6, Tr. 111:3-

---

[1] Blue Sun and ITG cannot legitimately claim that they did not violate the injunction on the specious argument that sales to R&R were for resale as an "OEM Sale." Tr. Ex. 474. First, Glenister admitted they were sales of Phoenix analyzers to R&R. Day 6, Tr. 113:18-114:3. Second, the injunction prohibits the sale of any "Phoenix Near-Infrared analyzer product" to R&R without regard to what use R&R would put it.

10. KPM's Unity business unit also offered to sell a Spectrastar to Idahoan and provided them with a loaner Spectrastar analyzer as a trial, but eventually purchased a Phoenix from Blue Sun. Day 5, Tr. 158:9-16; Day 6, Tr. 111:17-21. Glenister was the defendant who offered to sell a SpectraStar analyzer to Idahoan in 2019 and provided Idahoan the loaner model from KPM. Declaration of Eric Olson ¶ 4; Tr. Ex. 9; Day 5, Tr. 136:17-137:1 (Lucas testifying that Idahoan had obtained spectral data on a SpectraStar analyzer prior to a March 16, 2020 email to Lucas at Blue Sun and Glenister at KPM). Thus, Idahoan was a prohibited customer because it was a "party for which any Defendant [Glenister] has previously offered to provide or provided or offered to sell or sold any services or products related to any Near Infra-Red analyzer manufactured or sold by KPM." By subsequently making ITG/Blue Sun Phoenix analyzer sales to Idahoan on January 26, 2022 (Tr. Ex. 474) and June 2, 2022 (Tr. Ex. 475), defendants violated the preliminary injunction. *See also* Day 6, Tr. 53:16-24. Both violations show that defendants cannot be trusted to simply act fairly and compete responsibly without harming KPM in the absence of a Court order requiring them to do so.

Taken together, the Jury's Verdict, the pervasiveness of defendants' misconduct, the nature of the parties' long-term business, and defendants' previous contempts of the Preliminary Injunction, all establish ongoing irreparable harm to KPM separate and apart from the Jury's award of damages for defendants' previous actions. That ongoing threat of actual, irreparable harm, requires the imposition of a permanent injunction.

### B. The Balance of Hardships and the Public Interest Both Weigh Heavily in Favor of Entering a Permanent Injunction

The balance of the hardships and the public interest both strongly support a permanent injunction under the remarkable facts – repeated lies, false email accounts, spoliation of evidence, unreturned hard drives and files, confusion of customers, subterfuge, false Application Notes, etc. – of this case. All three categories of KPM's trade secrets and confidential information belong to KPM. As a matter of law, defendants can suffer no harm

from being permanently enjoined from using or disclosing information to which they have no legal right. *See Optos, Inc.*, 777 F. Supp. 2d at 243 (no harm to defendant enjoined from using trade secrets); *Bos. Sci. Corp. v. Lee*, No. CIV.A. 13-13156-DJC, 2014 WL 1946687, at *6 (D. Mass. May 14, 2014) (defendant would suffer no harm if ordered not to disclose trade secret and confidential information).

While KPM, as the Jury found, has already been damaged in the amount of millions of dollars by defendants' wrongdoing, defendants in contrast will suffer little to no harm from the restrictions of the Preliminary Injunction being made permanent. As both Blue Sun's Lucas and ITG's Wilt made clear – defendants asserted throughout trial that their business is not focused on KPM or KPM's markets but rather on competing with another competitor FOSS and doing so in the forage (animal feed) markets.  Day 5 Tr. 125:8 – 126:6, 128:3 – 129:7, 143:2 – 143:16; Day 8 Tr. 75:6 – 76:19, 105:25 – 106:20. Furthermore, while not submitted the Jury at trial because the existence of the Preliminary Injunction was excluded, Blue Sun and Lucas testified at deposition that the Preliminary Injunction has not prevented defendants from selling near infra-red analyzers, that Blue Sun only had to turn down one customer inquiry, and that Blue Sun has never lost a sale to KPM. Deposition of 30(b)(6) Blue Sun/Lucas, 4/27/22, at pp.17-21, and 33 (excerpts attached as Ex. A to Decl. of Kevin Mosier filed herewith).

The public interest also favors a permanent injunction because Massachusetts "has a clear public policy in favor of strong protections of trade secrets." *Allstate Ins. Co.*, 581 F. Supp. 3d at 320; Optos, Inc. at 242 (D. Mass. 2011); *Aspect Software, Inc.*, 787 F. Supp. 2d at 131; *FrontRunner HC, Inc. v. Waveland RCM, LLC*, No. CV 20-10230-DJC, 2020 WL 7321161, at *13 (D. Mass. Dec. 11, 2020); *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 166 (1979) (identifying public policy in favor of protecting trade secrets dating to 1868).

In addition, each of the Individual Defendants acted in clear violation of their contracts with KPM, and did so with the support and encouragement of the Entity Defendants for the economic benefit of the Entity Defendants and their unfair, direct competition with KPM. It is "in society's best interest to recognize and enforce agreements which were voluntarily entered into and accepted." *Shipley Co. v. Kozlowski*, 926 F. Supp. 28, 30 (D. Mass. 1996). *See also, e.g., Advanced Micro Devices, Inc.*, 2013 WL 10944934, at *13 (balance of equities weighs in plaintiff's favor where the relief sought "does little more than enjoin Defendants from engaging in activities from which they are already contractually barred"); *see Corp. Techs., Inc. v. Harnett*, 943 F. Supp. 2d 233, 245 (D. Mass.) (enforcement of non-disclosure agreement is "consonant with the public interest"), *aff'd*, 731 F.3d 6 (1st Cir. 2013); *Inner-Tite Corp. v. Brozowski*, No. 20100156, 2010 WL 3038330, at *21 (Mass. Super. Apr. 14, 2010) ("With no adequate remedy at law, greater harm would befall [plaintiff] if the Agreement were not enforced than will result to [defendant] from the injunction"); Tr. Exs. 346, 349, 351 and 353 (irreparable harm clauses in contracts).

Lastly, there is a recognized public policy of commercial morality, which all of the defendants repeatedly, deceptively, and systematically violated when they engaged in their misappropriation, tortious interference and unfair methods of competition and unfair or deceptive acts or practices. The public interest will be served by ensuring that defendants do not engage in further behavior of this kind. *Gen. Elec. Co.*, 843 F. Supp. at 778 (citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481 (1974)).

### C. KPM's Proposed Permanent Injunction is Reasonable in Duration and Scope

KPM's proposed permanent injunction is reasonable in scope and duration as it seeks to protect only what the Jury already found to be the three categories of KPM's protectable trade secrets and confidential information. "The plaintiff is entitled to have its trade secrets protected at least until others in the trade are likely, through legitimate business procedures, to

have become aware of these secrets." *Analogic Corp.*, 371 Mass. at 649. "[A]n 'injunction is not unreasonable merely because it is permanent' or indefinite in duration." *Picker Int'l Corp.*, 931 F. Supp. at 45; *accord Specialized Tech. Res., Inc. v. JPS Elastomerics Corp.*, 80 Mass. App. Ct. 841, 848, 957 N.E.2d 1116, 1122 (2011) ("A permanent injunction against use of a trade secret manufacturing process 'is not unreasonable merely because it is permanent'") (quoting Curtiss–Wright Corp. v. Edel–Brown Tool & Die Co., 381 Mass. 1, 10, 407 N.E.2d 319 (1980)).

Injunctions that require the enjoined party to comply with the law or with their own contract previously entered into are reasonable. *See Ross-Simons of Warwick, Inc.*, 217 F.3d at 14. As explained below, each provision of the injunction, which is tied to one of the five trade secrets, is reasonable in scope and seeks to restrain no more than permitted by the law and the facts already decided in this case. *See Gen. Elec. Co. v. Sung*, 843 F. Supp. at 778 ("[T]rade secret protection…extends not only to the misappropriated trade secret itself but also to materials 'substantially derived' from that trade secret").

KPM's proposed Permanent Injunction Order merely seeks to make permanent the same restrictions this Court already established in its Preliminary Injunction. *See* ECF 94 and 120. Defendants are free to compete selling their own products in the near infra-red business, as long as they make no use of KPM's UCAL or calibration datasets. They can pursue any customers other than those that they did business with, or sought to do business with, while at KPM. Given their egregious behavior, repeated lies, and confusion of those customers, that limited restrictive field is more than fair and just.

### III. CONCLUSION

For all of the above reasons, KPM respectfully requests that the Court enter a permanent injunction as set forth in the proposed order filed with this Memorandum.

Date:  June 21, 2023                     Respectfully submitted,

**KPM ANALYTICS NORTH AMERICA CORPORATION**

By its attorneys,

*/s/ John T. Gutkoski*
John T. Gutkoski (BBO# 567182)
Kevin R. Mosier (BBO# 703739)
SUNSTEIN LLP
100 High Street
Boston, MA 02110
Tel: (617) 443-9292
jgutkoski@sunsteinlaw.com
kmosier@sunsteinlaw.com

Scott R. Magee (BBO# 664067)
Paige K. Zacharakis (BBO# 699108)
MORSE, BARNES-BROWN, AND PENDLETON, P.C.
480 Totten Pond Road, 4th Floor
Waltham, MA 02451
Tel: (781) 622-5930
smagee@morse.law
pzacharakis@morse.law

**Local Rule 7.1 Certification**

The undersigned counsel met and conferred with opposing counsel concerning the relief sought in this Motion via email on June 21, 2023.

*/s/ John T. Gutkoski*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of June 2023, a true and exact copy of the foregoing was served on all counsel of record through the Court's ECF system.

/s/ *John T. Gutkoski*