## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION,<br><br>     *Plaintiff.*<br><br>  V.<br><br>BLUE SUN SCIENTIFIC, LLC, THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD., ARNOLD EILERT, MICHELLE GAJEWSKI, ROBERT GAJEWSKI, RACHAEL GLENISTER, GREGORY ISRAELSON, IRVIN LUCAS, AND PHILIP OSSOWSKI,<br><br>    *Defendants.* | Civil Action No. 21-10572-MRG |

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff, KPM Analytics North America Corporation ("KPM"), by and through its counsel, hereby moves the Court for an award of attorneys' fees and costs against each of the Entity Defendants, Blue Sun Scientific LLC ("Blue Sun") and The Innovative Technologies Group & Co., Ltd. ("ITG"), and against each of the Individual Defendants, Arnold Eilert, Robert Gajewski, Rachael Glenister, and Irvin Lucas.

### I.  INTRODUCTION

KPM is entitled to recover its attorneys' fees and costs from each of the defendants based upon the Jury's Verdict, ECF No. 230. Specifically, KPM is entitled to recover fees and costs from the Entity Defendants arising out of their willful and knowing violations of M.G.L. c. 93A § 11 ("Chapter 93A"), and from the Individual Defendants arising out of their breaches of contract and misappropriation of KPM's trade secrets in violation of those same contracts. KPM seeks an award of $3,612,967 in attorneys' fees and $314,167 in costs incurred through May 31, 2023. A

breakdown of the fees and costs incurred by KPM is set forth in the Declarations of John Gutkoski and Scott Magee, attached here as Exhibits A and B.  Because, as discussed below, fees and costs incurred in preparing and filing post-trial motions and briefing are recoverable, KPM will seek to supplement this Motion with updated totals reflecting the additional attorneys' fees and costs incurred through June 21, 2023.

Following a 10-day trial on the merits, the Jury returned its Verdict on May 17, 2023 finding that Blue Sun misappropriated KPM's trade secrets and that the Entity Defendants tortiously interfered with KPM's contractual relationships and committed unfair and deceptive trade practices, willfully and knowingly, in violation of Chapter 93A.  *See* ECF No. 230 (Jury Verdict).  Pursuant to Chapter 93A, a prevailing plaintiff – which KPM is here – "**shall**, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action."  M.G.L. c. 93A § 11 (emphasis provided).  The Jury also found that the Individual Defendants misappropriated KPM's trade secrets and breached their respective employment contracts with KPM.  *See* ECF No. 230. The express terms of each of the Individual Defendants' contracts contain a clear and unambiguous fee shifting provision that entitles KPM to recover its attorneys' fees and costs for their, now adjudicated, breaches:  "**In any action successfully brought by [KPM] against you…, [KPM] shall also be entitled to recover from you its reasonable attorneys' fees and costs of the action.**"  Trial Exhibit ("Tr. Ex.") 158 at 4 (Glenister contract) (emphasis provided); *see also* Tr. Ex. 346 (Eilert contract) (same); Tr. Ex. 349 (Lucas contract) (same); Tr. Ex. 353 (Gajewski contract) (same).  There is no dispute that each of the Individual Defendants knew of this provision, understood its meaning, and voluntarily agreed to it.  *See, e.g.*, Trial Tr. at 4-152:1-3 (Lucas

testimony), 6-31:19-24 (Glenister testimony), 6-119:1-6-120:1 (Gajewski testimony), 7-139:11-7-141:15 (Eilert testimony).

The requested attorneys' fees and costs award reflects reasonable attorneys' fees and costs for cases of this nature. The hourly rates invoiced by KPM's attorneys are lower than those found reasonable in comparable cases and prevailing market rates, the work that KPM's attorneys performed was necessary and appropriate, and that work was all relevant to proving the violations of Chapter 93A and breaches of contract. Importantly, all claims against the defendants, including the Chapter 93A and breach of contract claims, arose out of the same set of operative facts concerning the misappropriation of KPM's trade secrets and unlawful use of and disclosure of KPM's confidential information.

## II.     ARGUMENT

The Jury's finding that the Entity Defendants willfully and knowingly violated Chapter 93A automatically entitles KPM to its "reasonable attorneys' fees and costs" from each of the Entity Defendants as a matter of law. M.G.L. c. 93A § 11 (a prevailing plaintiff "shall" be entitled to its reasonable fees and costs). The Jury's finding that the Individual Defendants breached their contracts also automatically entitles KPM to "its reasonable attorneys' fees and costs" from each of the Individual Defendants pursuant to their respective employment contracts. *See Preferred Mut. Ins. Co. v. Gamache*, 426 Mass. 93, 95 (1997) (award of fees and costs is appropriate when there is "an agreement between the parties" that permits recovery of fees and costs by the prevailing party); *Judge Rotenberg Educ. Ctr., Inc. v. Comm'r of the Dept. of Mental Retardation*, 424 Mass. 430, 468 (1997) (award of fees and costs is appropriate when "a valid contract of stipulation provides for costs" to the prevailing party).

When determining whether an award of attorneys' fees and costs is reasonable in amount, the Court considers the nature of the case and the issues presented, the time and labor required to litigate the case, the amount of damages involved, the result obtained, the experience and ability of the attorneys, the usual price charged for similar services by other attorneys in the same practice area, and the amount of attorneys' fees and costs awarded in similar cases. *E.g.*, *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 430-31 (2005); *Arthur D. Little Int'l v. Dooyang Corp.*, 995 F. Supp. 217, 221 (D. Mass. 1998) *aff'd*, 147 F.3d 47 (1st Cir. 1998). No single issue is dispositive, and a factor-by-factor analysis is not required. *Star Fin. Servs., Inc. v. AASTAR Mortgage Corp.*, 89 F.3d 5, 16 (1st Cir. 1996); *Berman v. Linnane*, 434 Mass. 301, 303 (2001). This "less structured, more flexible approach" is favored over a lodestar approach for awarding fees pursuant to Chapter 93A. *RFF Fam. P'ship, LP v. Link Dev., LLC*, No. CIV.A. 14-10065-NMG, 2015 WL 1472253, at *2 (D. Mass. Mar. 31, 2015). While the damages involved in the litigation is a relevant consideration, the reasonable total of a requested fees and costs award is *not limited* by the amount of actual damages awarded at trial. *See Twin Fires*, 445 Mass. at 430-31 (reasonable fees and costs may greatly exceed the amount of actual damages); *Benchmark Techs., Inc. v. Yuqiang Tu*, No. 22-10227-LTS, 2023 WL 3727913, at *3 (D. Mass. May 30, 2023) (awarding nearly $1 million in fees and costs despite no monetary damages); *Specialized Tech. Res., Inc. v. JPS Elastomerics Corp.*, 28 Mass. L. Rptr. 163, 2011 WL 1366584, at *16, (Mass. Super. Ct. Feb. 8, 2011), *aff'd*, 957 N.E. 2d 1116 (Mass. App. Ct. 2011) (awarding over $5 million in fees and costs where damages amounted to just over $1 million, trebled to just over $3.2 million).

**A.     This Case Involved Numerous Complex Issues of Law and Fact That Required Intensive Time and Labor to Litigate.**

### 1. *Background*

This was a complex case involving multiple defendants, an array of meritorious claims, and complicated technology that KPM and its counsel worked hard to simplify for the Jury and the Court. At the center of this case are KPM's trade secrets and its confidential information concerning the near-infrared ("NIR") analyzer industry and spectroscopy, which is a scientific technique that measures the diffraction of light through a given substance to help determine the composition of that substance. NIR analyzers perform spectrographic analysis of the substances that comprise many common household products, for example the amount of moisture, oil, or protein found in flour, agricultural ingredients, chocolate, and processed foods. KPM's NIR analyzers, known as the SpectraStar, utilize proprietary technologies and trade secrets, which are based on mathematical models that allow the user to measure the contents of sample material and integrate the observed results with calibration data. Building calibration data is a complex process that is completed by chemometricians who are trained to extract information from chemical systems using data collection techniques and tools like signal processing, pattern recognition, mathematical modeling, and statistical analysis.

Trade secret cases like this one typically require significant time and effort, resulting in higher fees and costs compared to non-intellectual property cases. The specific trade secrets that KPM successfully asserted fall into three categories: (1) calibration data sets developed by KPM; (2) KPM's proprietary UCal calibration software; and (3) KPM's detailed customer information. Litigating this case required extensive time and effort spent to analyze and present a concise and coherent explanation of the technical details of NIR spectroscopy, KPM's calibration data sets, and KPM's proprietary UCal calibration software to the Court and the jury. *See Iconics, Inc. v.*

*Massaro,* 266 F. Supp. 3d 449, 456 (D. Mass. 2017) (explaining that it is difficult to describe complex scientific concepts in litigation); *Contour Design, Inc. v. Chance Mold Steel Co.,* No. 09-CV-451-JL, 2012 WL 893416, at *2 (D.N.H. Mar. 15, 2012) (explaining that significant attorneys' fees and costs award was appropriate after a 6-day trial involving "complex…trade secrets…embodied in sophisticated technology").

### 2.   *The Complaint, Early Motion Practice, and the Preliminary Injunction*

KPM learned that the defendants were misappropriating and misusing its confidential information and trade secrets in early 2021.  ECF No. 1 (Verified Complaint) at ¶ 41; Trial Tr. at 3-88:11-16.  It had become suspicious that many of its former employees had been hired by ITG's subsidiary Blue Sun and discovered certain emails and customer communications accidentally copied to KPM indicating that the Individual Defendants (and other initially named defendants), together with the Entity Defendants, were likely misusing and disclosing KPM's trade secrets and confidential information in order to engage in direct competition with KPM.  ECF No. 1 (Verified Complaint) at ¶ 41; Trial Tr. at 3-88:17-3-89:4.  KPM eventually found, among other things, that the Individual Defendants were using and disclosing KPM's trade secrets and confidential information in direct violation of their employment agreements, and doing so with the knowledge and encouragement of the Entity Defendants.  ECF No. 1 at ¶¶ 42-86.  It found that this activity occurred both *during* and after the time that Individual Defendants were employed at KPM.  *See id.*

To discover all of this, KPM had to engage in a detailed internal investigation, with the assistance of counsel, that required "a few hundred" hours of work.  *Id.* at ¶¶ 42-86; Trial Tr. at 4-29:19-21.  KPM initially found emails in its internal system evidencing unlawful conduct on behalf of the defendants and former employees, including the use of fake aliases such as "Rob Roberts"

and "Don Donaldson" to hide the defendants' acts.  *See, e.g.*, Trial Tr. at 3-89:5-21, 3-92:4-8. KPM then discovered application notes in the files possessed by Robert Gajewski and on Blue Sun's website, which are tools used to showcase the different calibrations and the calibration capability of NIR analyzers.  Trial Tr. at 3-126:1-8, 3-124:4-7.  KPM's application notes include data tables and graphic calibration plots that are generated using KPM's proprietary UCal calibration software.  Trial Tr. at 3-124:11-3-125:23.

Blue Sun's website claimed that "[a]ll samples were run on a Phoenix series NIR analyzer and calibrations were developed using Alligator calibration software" (Tr. Ex. 485), however that was not true.  The data tables and graphs contained in application notes are fingerprints of the calibration models and the data used to create them.  Tr. Ex. 131 (application notes comparison); Trial Tr. at 3-134:14-23.  KPM performed detailed, technical comparisons of Blue Sun's purported application notes and KPM's application notes to discover that the two sets of application notes were the same and could not have been created using different calibration software.  Tr. Ex. 131; Trial Tr. at 3-133:13-20 ("The plots, as compared, were created in the exact same fashion as UCal 4…. It was an identical way that UCal 4 would create those plots."), 3-134:24-135:2 ("Q. Was there any way to have created the graphs that were in the Blue Sun application note[s] without using the data set[s] from Mr. Gajewski's computer as interpreted by UCal 4? A. There is not."). Robert Gajewski and Irvin Lucas later admitted at trial that Blue Sun's application notes were created using KPM data and its proprietary UCal software, and Blue Sun's statements to the contrary were lies.  Trial Tr. 127:25-6-128-2 (Gajewski: "Q. None of the data or measurements were from a Phoenix analyzer? A. That is correct."), 4-68:3-4 (Lucas: "Q. [Gajewski] produced all of [the application notes] using KPM's UCal software? A. Yes.").

KPM eventually brought suit and sought a preliminary injunction to stop the misappropriation of its trade secrets and the misuse of its confidential information. On April 5, 2021, KPM filed its complaint in this Court asserting misappropriation of trade secrets, conversion, and unjust enrichment against all defendants, breach of contract, breach of the duty of loyalty, and breach of the covenant of good faith and fair dealing against the Individual Defendants, and tortious interference with contractual relationships and unfair and deceptive trade practices under Chapter 93A against the Entity Defendants. ECF No. 1. Each of these claims arose out of the same set of operative facts, namely the unlawful use and disclosure of KPM's confidential information and trade secrets. Thus, while most but not all of KPM's claims were eventually presented to the Jury, all the work undertaken by KPM and its counsel is properly includable in its reasonable attorneys' fees and costs. *See Haddad Motor Grp., Inc. v. Karp, Ackerman, Skabowski & Hogan, P.C.,* 603 F.3d 1, 10 (1st Cir. 2010) (no apportionment necessary where 93A and non-93A claims "arise from a single chain of events"); *Incase, Inc. v. Timex Corp.*, 421 F. Supp. 2d 226, 244 (D. Mass. 2006), *aff'd*, 488 F.3d 46 (1st Cir. 2007) (no need to apportion fees and costs between claims when the "the chapter 93A claim and accompanying…claims are largely based on identical facts"); *Twin Fires Inv.,* 445 Mass. at 430 (same).

KPM moved for a preliminary injunction and alternatively requested expedited discovery to obtain additional facts to support its motion for a preliminary injunction. ECF Nos. 7 (motion for preliminary injunction), 8 (motion for emergency expedited discovery). Defendants then challenged KPM's motion for expedited discovery and filed their cross-motion to stay discovery. ECF Nos. 9 (KPM's memorandum in support of its motions for preliminary injunction and emergency expedited discovery), 37 (the defendants' opposition to KPM's motion for emergency expedited discovery), 38 (the defendants' cross-motion for stay of discovery), 39 (KPM's

opposition to defendants' cross-motion for stay of discovery).  On May 18, 2021, the Court held a hearing on these motions, after which it granted-in-part KPM's motion for expedited discovery and denied the defendants' requested stay.  ECF Nos. 41 (clerk's notes on hearing), 44 (order on discovery motions).  The Court ordered the parties to exchange discovery requests and conduct depositions, and set a deadline for supplementation of the preliminary injunction briefing.  ECF No. 44 at 3.

Each of the defendants then *separately* moved to dismiss KPM's complaint on May 13, 2021, which was opposed by KPM.  ECF Nos. 20-21 (Entity Defendants motion to dismiss and memorandum in support), 23-24 (Eilert motion to dismiss and memorandum in support), 27-28 (Gajewski motion to dismiss and memorandum in support), 29-30 (Glenister motion to dismiss and memorandum in support), 33-34 (Lucas motion to dismiss and memorandum in support), 50-51 (KPM's oppositions to the defendants' motions to dismiss), 60-61 (the defendants' replies in support of their motions to dismiss).  On June 21, 2021, the Court held a hearing on the defendants' many motions to dismiss.  ECF No. 62 (clerk's notes on hearing).  The Court later issued its order granting-in-part and denying-in-part the defendants' motions.  ECF No. 64 (order and memorandum on defendants' motions to dismiss).  In its order, the Court dismissed only the unjust enrichment claims (against all defendants aside from Irvin Lucas) and the conversion claim against Arnold Eilert.  *See id.* at 70-71 (appendix summarizing order).[1]  All other claims against the Entity Defendants and Individual Defendants moved forward in this case.  *See id.*; *see also, e.g., Crossfit, Inc. v. Mustapha*, No. CV 13-11498-FDS, 2016 WL 3527197, at *5 (D. Mass. June 23, 2016) (awarding fees to plaintiff for responding to defendants' substantive motions).

---

[1] The Court also dismissed the breach of non-competition claims against all defendants, and dismissed certain additional former KPM employee defendants from the case due to the state of information available to KPM at the time of filing its complaint.  *See id.*

The defendants later filed their respective answers to KPM's complaint, which included counterclaims alleging a failure to pay severance to Arnold Eilert and Robert Gajewski. ECF Nos. 77 (Individual Defendants' answer and counterclaims), 91 (Entity Defendants' answer).  KPM filed its answer to Arnold Eilert and Robert Gajewski's counterclaims on August 19, 2021. ECF No. 92.

Defendants then repeatedly required the parties to litigate issues relating to the preliminary injunction because, rather than acknowledge the unlawful acts that were ultimately admitted to at trial and attempt to resolve the matter amicably, defendants repeatedly sought to escape from (and eventually violated)[2] the preliminary injunction.  *See Advanced Sys. Consultants Ltd. v. Eng'g Plan. & Mgmt., Inc.*, 899 F. Supp. 832, 832 (D. Mass. 1995) ("[T]he target of an unfair or deceptive act or practice who incurs legal expenses in obtaining and defending injunctive relief to safeguard itself against economic loss is entitled to invoke the attorneys' fees provision of Chapter 93A."). Initially, the Court granted KPM's request for a preliminary injunction after holding a hearing and reviewing the parties' supplemental briefing based upon the three months of expedited discovery the Court ordered.  ECF Nos. 93-94 (Order and Memorandum Entering Preliminary Injunction), 65 (Clerk's Notes on July 16, 2021 Motion Hearing), 75 (KPM Supplemental Brief and Revised Proposed Order), 82 (Entity Defendants' Opposition), 83 (Individual Defendants' Opposition). The defendants then filed a frivolous and unsuccessful motion for clarification that reargued the preliminary injunction a second time by asking for reconsideration on the issue.  *See* ECF Nos. 98 (the defendants motion for clarification); 101 (KPM's opposition), 104 (order denying motion).

Soon after, KPM learned that the defendants had potentially violated the preliminary

---

[2] At trial, evidence was presented that the defendants violated the preliminary injunction via sales efforts to R&R Machine and Idahoan.  *See* ECF No. 253 (KPM's memorandum in support of its motion to enter damages under Chapter 93A).

injunction and moved for contempt.  *See* ECF Nos. 109-110 (KPM's Motion for Contempt and Memorandum in Support).  The defendants again sought "clarification" in a veiled attempt to re-litigate the preliminary injunction.  *See* ECF Nos. 114 (the defendants' Opposition), 117 (KPM Reply).  The Court then issued a new order affirming and updating the preliminary injunction. ECF Nos. 119-120 (orders on motions and updated preliminary injunction).

The amount of time, effort, and expense incurred by KPM to identify the pertinent facts, draft its complaint, successfully oppose the defendants' motions to dismiss, engage in expedited discovery, set forth sufficient facts and evidence to prevail and obtain the preliminary injunction, and then repeatedly oppose defendants' unending attempts to escape from the injunction was mountainous.  The results achieved – near complete denial of the motions to dismiss and the entry of and repeated reaffirmation of the preliminary injunction – illustrates that the work of KPM's counsel was highly skilled, effective, and necessary to enforce KPM's rights and protect its intellectual property.  *See Advanced Sys. Consultants,* 899 F. Supp. at 832.

### 3.   *Discovery, Summary Judgment, and Trial*

The parties engaged in extensive fact and expert discovery on the issues of liability and damages over the course of many months, which included tens of thousands documents necessarily reviewed by KPM attorneys and 75 interrogatory and document request responses required of KPM.  The parties also took 21 total depositions with over a hundred deposition exhibits in this case.  As seen at trial, much of the evidence establishing liability came from the defendants' own emails.  This required hundreds of hours of work to parse through thousands of emails, some of which used false aliases that took time an effort to uncover.  Only as a result of discovery did KPM learn the full details of the defendants' unlawful conduct.

This effort was obstructed by the defendants' spoliation of evidence, because Blue Sun "lost" countless emails that would have undoubtedly comprised critical evidence in this case. *See* ECF No. 93 (describing the loss of emails and ruling that "[t]he Court will impose a modest adverse inference against Blue Sun due to its spoliation of evidence."). KPM also incurred additional costs in defending against the Entity Defendants' unsuccessful and frivolous motion to compel discovery. *See* ECF Nos. 134-135 (Entity Defendants' motion to compel and memorandum in support); 140 (KPM opposition to motion to compel); 141 (order denying motion to compel). After chiding the defendants both for actually having the information they claimed not to have and for indiscriminately marking documents as "Attorney's Eye Only", thus limiting what KPM's witnesses had access to and could testify about, the Court explained that "[t]here simply is no basis for compelling further discovery or extending the period of fact discovery." ECF No. 141. Alongside the time and expense necessary to oppose this motion, KPM frequently incurred costs related to preparing for depositions of KPM's current and former employees taken by the defendants, none of whom were called by the defendants to testify at trial and many of whom the defendants were seemingly unprepared or underprepared to depose.

KPM also successfully opposed the defendants' motions for summary judgment and to dissolve the preliminary injunction. ECF Nos. 144-145 (ITG's motion for summary judgment and memorandum in support), 148-149 (the defendants' motion to dissolve the preliminary injunction and memorandum in support), 146-157 (KPM's oppositions), 160 (ITG's reply in support of its motion for summary judgment), 161 (the defendants' reply in support of their motion to dissolve the preliminary injunction). The Court denied ITG's motion for summary judgment in its entirety, and likewise denied the defendants' motion dissolve the preliminary injunction, which was the defendants' fourth attempt to escape from the preliminary injunction. ECF No. 165 (Order

denying summary judgment and motion to dissolve preliminary injunction).  *See Crossfit*, 2016 WL 3527197, at *5 (awarding fees to plaintiff for responding to defendants' substantive motions); *Advanced Sys. Consultants*, 899 F. Supp. at 832 (awarding fees to plaintiff under Chapter 93A for "obtaining and defending injunctive relief").

In preparing for trial, and aside from all of the work relating to trial witnesses, trial exhibits, and trial strategy, KPM had to draft and file its Trial Brief (ECF No. 184), which included proposed *voir dire* questions (ECF No. 185-1), proposed jury instructions (ECF No. 185-2), and its proposed verdict form (ECF No. 185-3).  KPM filed three motions *in limine* and opposed the defendants' six motions *in limine*.  ECF Nos. 194-199 (KPM's motions *in limine*, proposed orders, and memoranda in support), 201-206 (KPM's oppositions to the defendants' six motions *in limine*). The parties also worked together to draft and file the Joint Pretrial Memorandum (ECF No. 180), which required the parties to meet and confer to attempt to resolve disputes concerning proposed trial exhibits and deposition testimony designations.

Trial in this case proceeded over the course of 10 days, from May 3, 2023 to May 16, 2023, on seven counts including three separate categories of trade secrets.  The parties presented the testimony of nine live witnesses and two witnesses by deposition.  Supplemental briefing was required during trial on issues relating to trial evidence and jury instructions.  *See* ECF Nos. 218 (KPM supplemental brief in opposition to motion *in limine*), 220 (KPM proposed supplemental jury instruction), 227 (KPM supplemental brief concerning willful and malicious trade secret misappropriation).  Ultimately, on May 17, 2023, the Jury returned its Verdict finding that Blue Sun and the Individual Defendants all misappropriated KPM's trade secrets, that both of the Entity Defendants tortiously interfered with KPM's contractual relationships and committed unfair and deceptive trade practices, willfully and knowingly, in violation of Chapter 93A, and that the

13

Individual Defendants each breached their respective contractual obligations owed to KPM. *See* ECF No. 230. The Jury awarded KPM approximately $4.9 million in damages, which, when adjusted to avoid double counting, comprises a $3.4 million damages award to KPM – nearly all of what KPM asked to jury to award. *See id.*; Trial Tr. at 10-53:25 (requesting $3,426,792 in damages). In short, KPM proved its case.

The length, complexity, and result of the trial, coupled with all of the labor and required motion practice leading up to trial, support awarding KPM the full amount of attorneys' fees and costs requested. *See Twin Fires*, 445 Mass. at 430-31 (time and labor required to litigate the case and results obtained are important factors in assessing reasonableness); *Arthur D. Little*, 995 F. Supp. at 221 (same).

**B.     KPM Achieved a Near-Complete Victory on its Claims and Was Awarded Nearly the Full Amount of Requested Damages.**

This case resulted in, essentially, a complete victory for KPM. The Court denied the defendants' motions for summary judgment and repeatedly refused to dissolve the preliminary injunction. ECF No. 165; *Crossfit*, 2016 WL 3527197, at *5 (awarding fees to plaintiff for responding to defendants' substantive motions); *Advanced Sys. Consultants*, 899 F. Supp. at 832 (awarding fees to plaintiff under Chapter 93A for "obtaining and defending injunctive relief"). The jury found that the Individual Defendants and Blue Sun misappropriated KPM's trade secrets, that the Entity Defendants tortiously interfered with KPM's contractual relationships and committed unfair and deceptive trade practices, willfully and knowingly, in violation of Chapter 93A, and that the Individual Defendants misappropriated KPM's trade secrets and breached the terms of their respective employment contracts with KPM. ECF No. 230. At trial, KPM asked for approximately $3.4 million in damages. Trial Tr. at 10-53:25 (requesting $3,426,792 in damages). The jury awarded KPM nearly all of the $3,426,792 it asked for. *See* ECF No. 230.

14

This near total victory supports the reasonableness of KPM's requested fees and costs award.  *See Twin Fires*, 445 Mass. at 430-31 (result obtained is important factor in assessing reasonableness of requested fees and costs); *Arthur D. Little*, 995 F. Supp. at 221 (same).

**C.      KPM's Attorneys are Experienced, Skilled Attorneys Who Charged Reasonable Hourly Rates.**

As explained in the Declarations of John Gutkoski and Scott Magee, filed contemporaneously herewith, KPM's counsel are experienced and highly capable attorneys who litigated this case in an efficient and effective manner.  *See* Gutkoski Decl., Magee Decl.  Sunstein LLP ("Sunstein") is a leading intellectual property law and litigation firm in Massachusetts, and Morse, Barnes-Brown, and Pendleton, P.C. ("Morse") is a leading complex litigation firm in the Commonwealth.  The four primary attorneys who worked on this case are John Gutkoski – a partner whose rate charged to KPM was $650-675 per hour between 2021-2023, Scott Magee – a partner whose rate charged to KPM was $495-555 per hour between 2021-2023, Paige Zacharakis – a sixth year associate whose rate charged to KPM was $330-370 per hour between 2021-2023, and Kevin Mosier – a fifth year associate whose rate charged to KPM was $505 per hour in 2023.  Throughout the case, additional work was performed by other attorneys on an as-needed basis.  A chart listing each attorney who worked on the case follows below:

| Name and Position | Firm | Billing Rate |
|---|---|---|
| John Gutkoski, Partner | Sunstein | $650-675/hour |
| Scott Magee, Partner | Morse | $495-555/hour |
| Paige Zacharakis, Associate | Morse | $330-370/hour |
| Kevin Mosier, Associate | Sunstein | $505/hour |
| Jacqueline Salwa, Associate | Sunstein | $435/hour |
| Katherine Soule, Associate | Sunstein | $505/hour |
| Bryan Harrison, Associate | Sunstein | $605/hour |
| Joseph Marrow, Partner | Morse | $620/hour |
| Matthew Mitchell, Partner | Morse | $545/hour |

| Omar Wadhwa, Partner | Cesari and McKenna, LLP[3] | $500/hour |
| Matthew McCloskey, Partner | Cesari and McKenna, LLP | $495/hour |

*See* Gutkoski Decl., Magee Decl.

The hourly rates applied in this case are reasonable in light of experience and are lower than the rates of similarly-situated attorneys in the Boston and nationwide markets.  Notably, in deciding to award attorneys' fees and costs pursuant to Chapter 93A in *Benchmark* just last month, Judge Stearns opined that the hourly rates charged by Sunstein attorneys ranging from $920 per hour for a senior partner to $540 for an associate "appear reasonable."  *Benchmark Techs.*, 2023 WL 3727913, at *2.  A full decade ago, this Court approved a rate of $800 per hour for a Boston-based partner at DLA Piper, which is a competitor of both Sunstein and Morse in the Boston-area market.  *Bear Republic Brewing Co. v. Center City Brewing Co*., No. CV 10-10118-RBC, 2013 WL 12319907, at *3 (D. Mass. June 27, 2013).  More recently, the Superior Court found that $960 per hour for senior partners and $714 per hour for more junior partners were reasonable rates. *Source One Fin. Corp. v. Occidental Fire & Cas. Co. of N. Carolina*, No. 2084CV2712BLS2, 2021 WL 5626236, at *5 (Mass. Super. Sept. 29, 2021).  14 years ago, this Court found that $495 per hour was a reasonable hourly rate for a fourth year associate.  *Tuli v. Brigham & Women's Hosp., Inc.*, No. 07CV12338-NG, 2009 WL 10693567, at *2 (D. Mass. June 8, 2009), *aff'd sub nom. Tuli v. Brigham & Women's Hosp*., 656 F.3d 33 (1st Cir. 2011).  The hourly rates charged by KPM's counsel are each lower than those above, either outright or when adjusted for inflation.

---

[3] Mr. Gutkoski was previously with the firm Cesari and McKenna, LLP ("Cesari") before joining Sunstein.  Mr. Wadhwa and Mr. McCloskey provided limited support during Mr. Gutkoski's time at Cesari. *See* Gutkoski Decl.

A third-party survey of average prevailing hourly rates for intellectual property litigation in the Boston-area and nationwide likewise establishes that the hourly rates charged to KPM are lower than industry standards.  The chart below sets forth the data reported by Thomas Reuters' Financial Insights and its Peer Monitor program, running from May of 2022 to the present:

| Attorney Role and Experience | IP Litigation Peer Firms (All Offices) | Nationwide IP Litigation Firms (Boston Offices) |
|---|---|---|
| 1st Year Associate | $513 | $459 |
| 2nd Year Associate | $556 | $532 |
| 3rd Year Associate | $622 | $605 |
| 4th Year Associate | $662 | $654 |
| 5th Year Associate | $718 | $616 |
| 6th Year Associate | $774 | $724 |
| 7th Year Associate | $781 | $727 |
| 8th+ Year Associate | $801 | $773 |
| Non-Equity Partner | $956 | $905 |
| Equity Partner | $1,082 | $1,083 |

*See* Gutkoski Decl.

The rates charged by KPM's attorneys are below rates that this Court has previously found reasonable for attorneys with similar experience, and below the average prevailing rates reported in third-party data.  Thus, the hourly rates charged to KPM were reasonable in view of both the experience of KPM's attorneys and the prevailing hourly rates in the marketplace.  *See Twin Fires*, 445 Mass. at 430-31 (experience and ability of the attorneys and usual price charged for similar services two important components when assessing reasonableness); *Arthur D. Little*, 995 F. Supp. at 221 (same).

**D.     The Requested Fees and Costs are Reasonable.**

The $3,612,967 that KPM seeks in attorneys' fees and $314,167 it seeks in costs are reasonable requests in view of the complexity of the case (*see, supra*, § II.A), the near-total victory achieved (*see, supra*, § II.B), the experience, skill, and reasonable hourly rates of KPM's attorneys (*see, supra*, § II.C), and when compared with fees and costs awards in similar cases.

In a comparable case, *Specialized Technology Resources*, the court awarded more than $5 million in attorneys' fees and costs after multi-year litigation culminated in a finding in favor of the plaintiff on its trade secret misappropriation and Chapter 93A claims.  *Specialized Tech. Res.*, 2011 WL 1366584, at *9-16.  In that case, initial damages amounted to less than one-third of the damages that KPM was awarded here, just over $1 million, and the court trebled that number to just over $3.2 million – a figure still lower than what the Jury awarded KPM here.[4]  *See id.* at *9.  Despite the lower damages figure in that case, the court additionally awarded the plaintiff over 93 percent of its requested attorneys' fees and costs.  *See id.* at *9, 16 (awarding $5,030,539 in attorneys' fees and costs after considering $5,385,362 request).  The trial in *Specialized Technology Resources* involved one trade secret – not three categories of trade secrets as with this case.  *Compare id.* at *1 ("Defendants JPS Elastomerics Corp. and James Galicia… misappropriate[ed] the Plaintiff's UF trade secret.") with ECF No. 230 (finding existence of and misappropriation of three groups of trade secrets).

The most recent case in this district to award fees and costs pursuant to Chapter 93A awarded nearly $1 million to the prevailing plaintiff despite no monetary damages.  *Benchmark Techs.*, 2023 WL 3727913, at *3.  In *Benchmark*, there were only two defendants, the parties took only five depositions during discovery, the trial was limited to only one trade secret, and liability for trade secret misappropriation and under Chapter 93A were already established on summary judgment.  *Id.* at *2 ("At summary judgment, the Court found that Defendants had engaged in unfair methods of competition and unfair or deceptive acts or practices in violation of Chapter 93A § 2.").  There were only five witnesses at trial in *Benchmark*, which spanned merely five days.

---

[4] The approximately $3.4 million jury award to KPM is subject to doubling or trebling at the Court's discretion.  *See* M.G.L. c. 93A § 11; *see also* ECF No. 253 (KPM's memorandum in support of its motion to enter damages under Chapter 93A).

Here, the parties engaged in extensive discovery that required 21 depositions, there were six defendants at trial, and the trial proceeded on three categories of trade secrets with nine trial witnesses over the course of ten days.  The time, effort, and resources necessary to try this case were far greater than in *Benchmark*, and the issues presented to the jury were more numerous and complex, thus KPM spent a significantly higher amount of fees and costs and a significantly higher award is warranted here.

The claims that KPM asserted against the defendants were all intertwined, because each claim arose from the same set of facts.  The First Circuit has held that no parsing out of fees and costs between claims is necessary when the Chapter 93A claims and non-93A claims "arise from a single chain of events" or "are largely based on identical facts."  *Haddad Motor Grp.*, 603 F.3d at 10 (no apportionment necessary where 93A and non-93A claims "arise from a single chain of events"); *Incase*, 421 F. Supp. 2d at 244 (no need to apportion fees and costs between claims when the "the chapter 93A claim and accompanying…claims are largely based on identical facts").  The Supreme Judicial Court of Massachusetts has held the same.  *Twin Fires Inv.*, 445 Mass. at 430 (no apportionment necessary because the non-93A claims "and the claims under G.L. c. 93A were largely predicated on identical facts, and thus [] the legal effort to establish the two classes of claims were virtually the same.").

Similarly, no parsing out of fees and costs incurred defending against the counterclaims is warranted, because "the policies of 93A strongly counsel against any reduction for work on counterclaims" that were "unsuccessful."  *Arthur D. Little*, 995 F. Supp. at 223 (fees incurred defending against counterclaims "should be included as part of the award" if "interconnected with the 93A claim and successful").  Regardless, the time KPM spent defending against the counterclaims was minor in the context of the case as a whole, and would not account for a

meaningful portion of the sum KPM requests in attorneys' fees and costs. Fees for expert witnesses are also recoverable, as they are routine in cases of this nature. *See Maillet v. ATF-Davidson Co.*, 407 Mass. 185, 194 (1990) ("[E]xpert witness fees should normally be recoverable in a c. 93A case in order to vindicate the policies of the act.").

Fees incurred in preparing post-trial motions and briefing, including this motion for attorneys' fees and costs, should also be included as part of the Court's award to KPM because the "action" contemplated by Chapter 93A includes post-trial motions and briefing. *See Bear Republic Brewing*, 2013 WL 12319907, at *4 (explaining that use of word "action" encompasses more than just proving specific cause of action and includes preparation of motion for fees and costs); *U.S. v. Metro. Dist. Comm'n*, 847 F.2d 12, 18 n.6 (1st Cir. 1988) (affirming award that included fees for work on motion for fees and costs); *Arthur D. Little,* 995 F. Supp. at 225 (awarding fees for time spent on motion for fees and costs). As such, KPM will seek to supplement this Motion with updated totals reflecting attorneys' fees and costs incurred through June 21, 2023.

### III.   CONCLUSION

For the reasons set forth above, KPM respectfully requests that this Court award KPM its reasonable attorneys' fees and costs in the amount of $3,612,967 in attorneys' fees and $314,167 in costs incurred through May 31, 2023, to be supplemented with updated figures reflecting attorneys' fees and costs incurred through June 21, 2023.

**Dated:** June 21, 2023                         Respectfully submitted,

                                                 **PLAINTIFF,**
                                                 **KPM Analytics North America, Corp.**

                                                 By its attorneys,

                                                 _/s/ Kevin R. Mosier_
                                                 John T. Gutkoski (BBO# 567182)
                                                 Kevin R. Mosier (BBO# 703739)
                                                 Sunstein LLP
                                                 100 High Street
                                                 Boston, MA 02110
                                                 Tel: (617) 443-9292
                                                 jgutkoski@sunsteinlaw.com
                                                 kmosier@sunsteinlaw.com

                                                 Scott R. Magee (BBO# 664067)
                                                 Paige K. Zacharakis (BBO# 699108)
                                                 Morse, Barnes Brown, and Pendleton, P.C.
                                                 480 Totten Pond Road, 4th Floor
                                                 Waltham, MA 02451
                                                 (781) 622-5930
                                                 smagee@morse.law
                                                 pzacharakis@morse.law

## **Local Rule 7.1 Certification**

The undersigned counsel met and conferred with opposing counsel concerning the relief sought in this Motion via email on June 21, 2023.

*/s/ Kevin R. Mosier*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 21st day of June, 2023, a true and exact copy of the foregoing was served on all counsel of record through the Court's ECF system.


/s/ *Kevin R. Mosier*