## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                        )
KPM ANALYTICS NORTH AMERICA                             )
CORPORATION,                                            )
                                                        )
                        Plaintiff,                      )
                                                        )
v.                                                      ) Civil Action No. 4:21-cv-10572-TSH
                                                        )
BLUE SUN SCIENTIFIC, LLC; THE INNOVATIVE                )
TECHNOLOGIES GROUP & CO., LTD; ARNOLD                   )
EILERT; MICHELLE GAJEWSKI; ROBERT                       )
GAJEWSKI; RACHAEL GLENISTER; GREGORY                    )
ISRAELSON; IRVIN LUCAS; and PHILIP                      )
OSSOWSKI,                                               )
                                                        )
                        Defendants.                     )
                                                        )
_____      )

## DEFENDANTS BLUE SUN SCIENTIFIC, LLC AND
## THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD'S
## OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT IN FAVOR
## OF PLAINTIFF ON ITS CHAPTER 93A COUNT AND FOR PREJUDGMENT
## INTEREST ON ALL COUNTS

Defendants Blue Sun Scientific, LLC ("Blue Sun") and The Innovative Technologies Group & Co., Ltd ("ITGC," and collectively with Blue Sun, the "Entity Defendants"), by their undersigned counsel, hereby file this Opposition to Plaintiff KPM Analytics North American Corporation's ("KPM" or "Plaintiff") Motion for Entry of Judgment in Favor of Plaintiff on its Chapter 93A Count and for Prejudgment Interest on all Counts (the "Motion"). For the reasons discussed below, the Entity Defendants respectfully request that the Court deny the Motion and the requested judgment and dismiss the 93A count.

## INTRODUCTION

In its Motion, KPM seeks to turn a jury award of a combined $3.3M against the Entity Defendants into a $16M+ windfall by award of treble damages, attorneys' fees, and prejudgment

interest under the Massachusetts Consumer Protection Law, Mass. Gen. L Chapter 93A §11.  KPM alleges, and 93A requires, willful and knowing violations that occurred *primarily and substantially* within Massachusetts. (ECF No. 1, at ¶ 134, "Compl.").  However, the record establishes that neither of the Entity Defendants engaged in any conduct at all in or directed to Massachusetts. None of the individual Defendants (KPM's former employees), nor any of KPM's alleged lost customers, nor any of the allegedly misappropriated trade secrets or proprietary and/or confidential information are or ever were located in Massachusetts. Virtually all of the conduct at issue occurred outside the Commonwealth, and there can be no Chapter 93A liability in this case. Moreover, the Massachusetts Uniform Trade Secrets Act ("MUTSA") provides the exclusive civil remedies for trade secret claims and supersedes Chapter 93A in this case because the underlying conduct is misappropriation of a trade secret.  Even if this Court finds no preemption and a sufficient geographical nexus, neither of the Entity Defendants held the subjective intent required for enhanced damages under 93A, let alone treble damages, and KPM's demand for fees, costs, and interest are unreasonable.  This Court should deny Plaintiff's request.

## BACKGROUND

On April 5, 2021, Plaintiff filed its Verified Complaint.  Compl.  Entity Defendants are named in: Count I – Defend Trade Secrets Act 18 U.S.C. § 1836(b)(1), Count II – Misappropriation of Trade Secrets, Count VII – Tortious Interference with Contractual Relations, Count VIII – Conversion, Count IX – Unjust Enrichment, and Count X – Violation of M. G. L. c.93A, §11.[1]

Following a nine-day trial, the jury returned a verdict in favor of KPM against both Entity Defendants on Count VII – Tortious Interference and Count X – M. G. L. c.93A, §11, and against Blue Sun only on both trade secret misappropriation Counts I & II.  (ECF No. 230).  In answering

---

[1] This Court granted Entity Defendants' motion to dismiss Count IX (Unjust Enrichment), ruling that Plaintiff failed to state a claim for unjust enrichment. (ECF No. 64, Order).

2

the Verdict Form, the jury found the following sums of money "would fairly and reasonably compensate KPM for the damage caused:

| Count | ITG | Blue Sun |
|---|---|---|
| Counts I & II (Trade Secret) | $0 | $1.5M |
| Count VII (Tortious Interference) | $1.8M | $1.5M |

*Id.*

The Entity Defendants have filed a Motion to Alter or Amend Judgment or, in the Alternative, For Remittitur, alleging that the awards constitute an impermissible double-award against Blue Sun and that both awards exceed the maximum "unjust enrichment" evidence presented by KPM's damage expert.  (ECF No. 250).  The Entity Defendants submit that a single judgment should be entered against each of them as follows: Blue Sun for $1,605,000 and ITG for $1,248,127.

In the name of consumer protection under 93A, KPM now asks the Court to enter an order in its favor on its Chapter 93A claim (Count X), accept the jury's assessments as the baseline amount of *actual damages* to be multiplied under Chapter 93A, treble both damages amounts, assess attorney fees, costs, and 12% prejudgment interest, and throw in another $1.75M for two newly-asserted violations of the preliminary injunction. More specifically, KPM seeks entry of judgment under 93A against (i) ITG for $1,800,000, trebled to $5,400,000, (ii) Blue Sun directly for $1,500,000, trebled to $4,500,000, (iii) ITG and Blue Sun jointly for two newly-asserted violations of the preliminary injunction in the amount of $582,764 trebled to $1,748,292.  (ECF 252–53).  Additionally, and by separate Motion, KPM seeks an award of $3,612,967 in attorneys' fees and $314,167 in costs incurred through May 31, 2023.  (ECF 259).  The total exceeds $16,000,000.

10219816.2  58144/146507  7/7/23

## ARGUMENT

A.    KPM is not entitled to judgment under C. 93a, §11 because the unfair acts occurred primarily and substantially outside the Commonwealth.

"No action shall be brought or maintained under [the Massachusetts unfair trade-practices act] unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth." Mass. Gen. Laws Ch. 93A §11. Courts must "determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Kuwaiti Danish Comp. Co. v. Digital Equip. Corp.*, 438 Mass. 459, 781 N.E.2d 787, 799 (2003). It is the Entity Defendant's burden to demonstrate that the center of gravity of the circumstances that [gave] rise to the claim were not primarily and substantially within the Commonwealth.  Id. at 473. The Entity Defendants previously established minimal contacts in the Commonwealth in the context of personal jurisdiction, this Court concluding that theft of trade secrets and intentional misconduct directed toward a Massachusetts company were sufficient to support a finding of jurisdiction under §3(c) of the long-arm statute.  (ECF No. 64 pp16-17). However, the location of the defendant is not sufficient to support a judgment under Chapter 93A. *Spring Inv'r Servs., Inc. v. Carrington Capital Mgmt.*, LLC, No. 10-10166-FDS, 2013 WL 1703890, at *12 (D. Mass. Apr. 18, 2013) (court finds 93A inapplicable despite harm to Massachusetts company where "[v]irtually all of the allegedly unfair conduct…took place in Connecticut."). It has long been recognized that "if the place of injury were the only test, practically no case involving a Massachusetts plaintiff would be exempt from 93A status, no matter how negligible the defendants' business activity in this State. Such a result would effectively nullify the words 'primarily and substantially within the Commonwealth..' *Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 309-10, 518 N.E.2d 519, 523 (1988); *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012) (fact that all the harm

4

occurred in Massachusetts, where plaintiff was based, was insufficient for 93A to apply).  Only the allegedly unfair and deceptive conduct may be considered: "[c]ontacts with Massachusetts that were neither unfair nor deceptive do not play a part in this assessment." *Skyhook Wireless, Inc. v. Google, Inc.*, 86 Mass. App.Ct. 611, 622 (2014). Applying these principles to the instant case compels the conclusion that the "center of gravity" of the challenged actions and transactions was not in Massachusetts. The jury concluded that both ITG and Blue Sun engaged in tortious interference, and that Blue Sun misappropriated KPM's trade secrets.  (ECF No. 230, Verdict Form).  However, both Entity Defendants are Maryland-based companies.  (ECF 21, page 23 at ¶2, Affidavit of Robert Wilt).  Neither of the Entity Defendants have any employees or agents that live or work in Massachusetts, and Blue Sun has never conducted business or sales in Massachusetts. (ECF 21, page 23 at ¶6-8, Affidavit of Robert Wilt).  ITG's minimal past business in Massachusetts is entirely unconnected with any conduct alleged in this lawsuit.  (*Id* at ¶ 6-7). The Individual Defendants reside in Illinois, Colorado, Missouri, California, and North Carolina. (ECF 1, ¶¶ 6-12, Compl.).  All of the Individual Defendants worked remotely from their homes at all times relevant to this lawsuit, and none have traveled to Massachusetts within the scope of their employment. (ECF 237, page 31, Trial Transcript Day 5; ECF 240, page 28, Trial Transcript, Day 8). None of the named KPM customers reside in Massachusetts. Indeed, KPM's damages expert compiled all revenue from the Entity Defendant's sales of services and equipment to KPM customers from 2018 to March 31, 2023 and none of those customers are located in the Commonwealth. (Trial Exhibit 474, Blue Sun NIR Sales Data 2018-Feb 2020; Trial Exhibit 475, Blue Sun NIR Sales Data Feb. 15, 2020 – March 31, 2023, both admitted into evidence at ECF 237, Trial Day 5, page 75)  In sum, none of the Defendant's acts originated from or took place at all in Massachusetts, or affected any Massachusetts-based customer. Just the converse, all of the unfair acts were initiated from the individual defendant's homes and affected out-of-state

customers. The Entity Defendants in particular did not undertake any wrongful conduct in Massachusetts. As per *Kuwaiti*, when 'virtually all the conduct that can be said to be unfair or deceptive' occurs outside the Commonwealth, there can be no Chapter 93A liability." *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 234, 236 (1ˢᵗ Cir. 2003) (quoting *Kuwaiti* 438 Mass. at 475, 781 N.E.2d at 800).  Consequently, entry of judgment under C. 93A against the Entity Defendants should be denied.

      B.      Any Award of Actual Damages for Misappropriation Under Mass. Gen. Law Ch. 93A § 11 is Preempted by the Massachusetts Uniform Trade Secret Act.

The Massachusetts Uniform Trade Secrets Act ("MUTSA") provides the exclusive civil remedies for misappropriation of trade secret claims. *See*, M.G.L. Ch. 93 §42F(a) ("Except as provided in subsection (b), sections 42 to 42G supersede any conflicting civil laws of the commonwealth providing civil remedies for the misappropriation of a trade secret"). Thus, the MUTSA supersedes Chapter 93A and tortious interference claims where the underlying conduct is theft of a trade secret but expressly does not affect other civil remedies to the extent that they are not based upon misappropriation of trade secret. Mass. Gen. L. c. 93 § 42F(b). This is significant because MUTSA exemplary damages are limited to double—not treble—and MUTSA requires a finding of malice for exemplary damages as opposed to merely willful and knowing. M.G.L. Ch. 93 §42B(b).  Those distinctions loom especially large in this case because the Court's jury instructions likewise distinguished between "willful blindness" versus "willful and malicious."[2]  (ECF 242, page 4, Day 10 Trial Transcript of May 16, 2023). There was no finding of malice at trial.

---

[2] *See also* the contemporaneously filed Opposition to Motion for Finding of Willful and Malicious Misappropriation of Plaintiff's Trade Secrets by Defendants and for Exemplary Damages.

The jury explicitly found that Blue Sun misappropriated trade secrets (UCAL™ software, calibration datasets, and customer information). (ECF 230, Question 4, Verdict Form).  KPM admits that the other claims asserted against the defendants were all intertwined, because each claim arose from the same set of facts.  (ECF 259 at 19, Plaintiff's Motion for Attorneys' Fees and Costs).  Thus, the underlying conduct in this case is theft of a trade secret, and the MUTSA supersedes Chapter 93A and tortious interference claims and preempts any award of damages under 93A.

      C.      The Measure of 93A "Actual Damages" Submitted by KPM is Improper.

A Plaintiff cannot recover multiple times for misappropriation, tortious interference, and a Chapter 93A claim.  For example, in *Atlantic Research*, Troy misappropriated A.R.M.S.' trade secrets.  After a two week trial, a jury found Troy liable for misappropriation of trade secrets and breach of fiduciary duty and entered a verdict. *Atlantic Research Marketing Systems, Inc. v. Troy,* Case No. 07-CV-11576 (D. Mass.). The Court reserved judgment on the Ch. 93A, § 11 count, later issuing its findings of fact and conclusions of law. (Exhibit 1, *Atlantic Research Marketing Systems,* Document 259 filed 11 May 2010) "As A.R.M.S.' 93A damages arise from the same conduct that comprises the elements of A.R.M.S.' trade secrets claim, any separate award of damages would be improperly cumulative."  (*Id.* at 18).  Likewise, KPM admits that the other claims asserted against the defendants were all intertwined, because each claim arose from the same set of facts. (ECF 259 at 19, Plaintiff's Motion for Attorneys' Fees and Costs).  As detailed in the Entity Defendant's Motion To Alter or Amend Judgment, the jury awarded KPM $3M against Blue Sun ($1.5 million for trade secret misappropriation and $1.5 million for tortious interference with contract), and $1.8M against ITG for tortious interference with contract only. ECF No. 250, Motion to Amend Judgment/Remittitur.  However, the evidence only support a damage award against Blue Sun of $2,071,974, and against ITG of $1,143,127, plus $211,000

(assuming the jury found ITGC responsible for all of the incidental costs).  KPM now asks this Court to enter a duplicative judgment under 93A finding on Count X: (i) ITG directly liable for $1,800,000, trebled to $5,400,000, (ii) Blue Sun directly liable for $1,500,000, trebled to $4,500,000.  *See* Motion at 18.  The request is entirely duplicative of the prior awards on KPM's tortious interference and misappropriation claims.  *See, e.g.*, *Grand Pacific Finance Corp. v. Brauer*, 57 Mass. App. Ct. 407, 422 n.10 (2003). Any amount of damages awarded under Chapter 93A would be duplicative of the awards on KPM's tortuous interference and trade secret misappropriation claims.

Moreover, under Chapter 93A the base "recovery shall be in the amount of actual damages."  Mass. Gen. Laws ch. 93A, § 11.  As a general matter, "actual damages" are understood as the losses that flow foreseeably from the harmful conduct.  *See*, *Haddad v. Gonzalez*, 410 Mass. 855, 867, 576 N.E.2d 658, 665 (1991). The courts have determined that the proper measure of damage is the plaintiff's lost profits, not the defendant's gain. *See*, Exhibit 1, page 15, *Atlantic Research Marketing Systems*, supra, citing *Refuse & Envtl. Sys.*, 932 F.2d at 43); *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 56-57 (1st Cir. 1998).  In this case KPM's expert witness set forth alternate measures of damages under 93A, both KPM's lost profits and the Entity Defendant's unjust enrichment.  (ECF 241, page 20, Day 9 Trial Transcript of May 15, 2023). Thus, for tortious interference counts (as opposed to misappropriation of trade secret counts), both $3,426,792 (unjust enrichment) and $1,130,211 (lost profit and expenses) were available to measure KPM damages.  (*Id.* at 19).  Mr. Zoltowski was clear that, although he calculated damages under the different counts, these amounts were not additive, and that KPM was not seeking a double recovery. (*Id.* at 64–65).  The jury verdict[3] squarely reflects Mr. Zoltwoski's testimony that

---

[3] The jury found that Blue Sun damaged KPM in the amount of $1.5M for misappropriation of trade secrets (UCAL™ software, calibration datasets, and customer information).  (ECF 235 at

KPM sought $2 million in unjust enrichment damages against Blue Sun and a separate $1.4 million in unjust enrichment damages against ITG, plus $211,000 in costs. (*Id.* at 68). On the other hand, Mr. Zoltowski testified that the profit lost by KPM was only $918,520. (*Id.* at 25). $918,520 is the only suitable Actual Damage multiplier for use in calculating enhanced damages under Mass. Gen. Law Ch. 93A § 11. Nevertheless, KPM suggests that this Court should do as Judge Stearns did in *BioPoint* and simply adopt the Jury's unjust enrichment damage assessment as part of the Chapter 93A claim. In *BioPoint*, Judge Stearns did indeed take a $5M judgment based on a $312K "lost profit" jury verdict, add the defendant's profits (unjust enrichment), and then triple the sum. This was after he stated on the record prior to the jury trial that he would do so and thereafter held a separate bench trial on the Ch. 93A count, ultimately issuing his order. Defendants never questioned his 93A damage assessment, nor did they raise any MUTSA preemption argument until post-judgment rulings. Judge Stearns simply deemed such arguments waived. *BioPoint, Inc. v. Dickhaut*, Civil Action 20-10118-RGS (D. Mass. Apr. 25, 2023) Document 248 Filed 06/22/23 Page 7 of 9. There is no equivalent reason or basis in this case to simply adopt the jury's unjust enrichment damage assessment as part of the Chapter 93A claim. In view of the foregoing, if the Court finds that any award of exemplary damages under 93A is proper, $918,520 is the maximum baseline measure of actual damages supported by KPM's evidence.

Moreover, state and federal courts have sparingly applied Mass. Gen. L. ch. 93, § 42, which gives the Court discretion to double the jury's damages award in a trade secrets case. *See, CardiAQ Valve Techs., Inc. v. Neovasc Inc.*, No. 14-cv-12405-ADB, 2016 WL 6465411, at *6 (D. Mass. Oct. 31, 2016). In *USM Corp. v. Marson Fastener Corp.*, the Massachusetts Supreme Judicial Court held that enhanced damages were inappropriate under Chapter 93A, where the jury had

---

Question 4). The jury also found that Blue Sun and ITG damaged KPM in the amount of $1.5M and $1.8M, respectively, for tortuous interference with contract. (*Id.* at Question 13).

awarded damages based on the defendant's profit (i.e. unjust enrichment) rather than plaintiff's lost profit. *USM Corp. v. Marson Fastener Corp.*, 467 N.E.2d 1271, 1276–77 (Mass. 1984). The Massachusetts Supreme Judicial Court found that "[t]he reference to damages 'resulting from' a defendant's tortious act concerns the trade secret holders' loss of profit, and not, as here, a defendant's profit at a plaintiff's expense." *Id.* at 1285. Thus, the Massachusetts Supreme Judicial Court concluded that a defendant's ill-gotten gains cannot be enhanced under the statute, since they are technically not damages "resulting from" the misappropriation. *Id.* As discussed *supra* and in Defendants Blue Sun and The Innovative Technologies Group & Co., LTD's Motion to Alter or Amend Judgment or, in the Alternative, for Remittitur, KPM's damages theory in this case has centered on recovery of unjust enrichment damages. (ECF No. 250).

  D.   The Court Should Decline to Assess Discretionary Treble Damages Against ITG.

Section 11 of chapter 93A includes mandatory double and discretionary treble damages. The Massachusetts Supreme Judicial Court has recognized that [b]ecause the assessment of multiple damages is premised on a defendant's wrongful conduct, and not on the amount of harm suffered by a plaintiff, the multiple damages authorized by [chapter 93A] are essentially punitive in nature. *Kraft Power Corp. v. Merrill*, 464 Mass. 145, 157–58 (2013); *Cambridge Plating Co., Inc. v. Napco, Inc.*, 85 F.3d 752, 771 (1st Cir. , 1996)(citing *Heller v. Silverbranch Constr. Corp.*, 382 N.E.2d 1065, 1070 (Mass. 1978) (only "callous and intentional violations" merit multiple damages); *VMark Software*, 642 N.E.2d at 596 (court refused to multiply damages in intentional misrepresentation case stating that section 11 multiple damages are an "extraordinary remedy" not applicable to a case of "dogged bumbling"). Revisiting *Atlantic Research* cited above where Troy misappropriated A.R.M.S.' trade secrets, although Troy's actions were unfair they did "not rise to the level of callousness or meretriciousness that would justify multiple damages" as there was no

evidence that he did so maliciously. *See* Exhibit 1, *Atlantic Research,* supra, page 15.   The foregoing achieves consistency with the MUTSA, the exclusive civil remedies for trade secret claims.  This Court has already noted that the willful and malicious subsection of the MUTSA[4] is very specific, and it "requires some evidence of -- or behavior on the part of defendants that has a core purpose that is not about monetary accumulation. It's about a base motive of harming. It is -- the reason they use the word "evil."  (ECF 242, page 8, Day 10 Trial Transcript of May 16, 2023).

In this case, the Court instructed the jury that a "*defendant cannot claim lack of knowledge as a defense to a plaintiff's legal claim(s) if it purposefully avoided learning of certain facts or circumstances giving rise to the plaintiff's claim(s). We call this "willful blindness." willful blindness being an alternative to proving actual knowledge.*"  The "willful blindness" instruction was allowed based on two decisions applying willful blindness instructions in a trade secret context, despite defendant's objections that it is not established under Chapter 93A that recklessness satisfies the element of actual knowledge.  (*Id.*).  KPM relied on Robert Wilt's failure to investigate confidentiality obligations to KPM and to place restrictions on poaching KPM employees to start the new entity Blue Sun to compete with KPM, and Wilt's business experience over the past 25 years, concluding that he "should have known."  However, proof that Mr. Wilt or ITG should have known is insufficient for a 93A treble damage award; proof of actual knowledge should be required for an assessment of punitive treble damages under chapter 93A as per <u>Kraft Power Corp.</u> and progeny, *supra*. The Court Should Decline to Assess Discretionary Treble Damages Against Blue Sun.

---

[4] M. G. L. c. 93 § 42B(b) states "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a)".  *See also* 18 U.S.C. §1836(b)(3)(C).

ITG's gross revenue over the last five years has varied between $1-1.3M. Ex. 5 at 20 (ECF 240, page 85, line 20, Day 8 Trial Transcript of May 12, 2023 (Wilt)).  Blue Sun's gross revenue and net profit is as follows:

| Year | Gross Revenue | Profit (Net Income) |
|---|---|---|
| 2018 | $48,411 | $46,468 |
| 2019 | $298,947 | $3,774 |
| 2020 | $1,489,508 | $198,887 |
| 2021 | $1,513,070 | -$20,009 |
| 2022 | $2,234,497 | -$95,907 |
| **Totals** | **$5,584,433** | **$132,813** |
| **Average** | **$1,116,886** | **$26,562** |

*See*, Exhibit 2, Declaration of Irvin Lucas, para 4.

Given Blue Sun's average profit of less than $42K annually, it will take over fifty years to pay the jury-assessed judgment plus their own legal fees, and KPM now seeks to triple that and separately seeks a permanent injunction. KPM's request for such a disproportionately punitive award is not supported by the evidence of record.

E.      The Entity Defendant's Should Not Be Deemed Jointly and Severally Liable for Additional Violations of the Preliminary Injunction.

KPM seeks entry of judgment that ITG and Blue Sun are jointly and severally liable for *de facto* violations of the preliminary injunction, tenuously citing a Rule 1.28 opinion for authority.[5] These new allegations have not been litigated and cannot constitute proper evidence or proof of additional Chapter 93A damages. If KPM persists on this, its remedy comprises a contested motion for contempt.  Nevertheless, KPM seeks additional amounts from sales to Idahoan in the amount

---

[5] Summary decisions issued by the Appeals Court pursuant to its rule 1:28, as amended by 73 Mass. App. Ct. 1001 (2009), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  *See Chace v. Curran*, 71 Mass. App. Ct. 258, 260 n.4 (2008).

of \$210,165, trebled to \$630,495, and ITG and Blue Sun jointly and severally liable for the violation of the preliminary injunction in the amount of the sales to R&R Machine in the amount of \$372,599.50, trebled to \$1,117,798.50.  *See* Motion at 18.  KPM contends that: 1) "the undisputed evidence at trial showed that Blue Sun then sold multiple *Phoenix NIR analyzers*[6] (and other products) to R&R Machine after the injunction was entered – on at least February 11, 2022 (Trial Ex. 474), March 18, 2022, and August 3, 2022 (Trial Ex. 475; Trial Transcript of May 10, 2023, at 51:24-52:15; 113:18-114:3); and 2) Phoenix analyzer sales to Idahoan on January 26, 2022 (Tr. Ex. 474) and June 2, 2022 (Tr. Ex. 475; Ex. 3at 53:16-24).

On the contrary, with respect to R&R the evidence shows that Blue Sun sold *non-Phoenix* analyzers after the injunction was entered.  See, Exhibit 3, Deposition of Blue Sun, page 266.  R&R was looking for an original equipment supplier, and KPM had declined to be such a supplier. *See also*, Exhibit 2, Declaration of Irvin Lucas, para 5.  Blue Sun's sales were of unbranded equipment, *i.e.*, non-Phoenix Analyzers. These OEM sales do not violate the preliminary injunction because they are not Phoenix® Analyzers.  Exhibit 2, Declaration of Irvin Lucas, para 6.

Similarly, Idahoan at Idaho Falls had no NIR instruments, tested out a KPM SpectraStar, and ultimately, though, purchased a Phoenix® all prior to entry of the preliminary injunction. Exhibit 2, Declaration of Irvin Lucas, para 7.  KPM contends that Blue Sun violated the preliminary injunction by two subsequent sales to "Idahoan".  However, Idahoan has multiple different locations and each makes independent buying decisions. On December 17, 2021 Judge

---

[6] The Court expressly enjoined Defendants from "selling any Phoenix Near-Infrared analyzer product to any party for which any Defendant has previously offered to provide or provided or offered to sell or sold any services or products related to Near Infra-Red analyzer manufactured or sold by KPM or its predecessors in interest, including but not limited to analyzers manufactured or sold by Unity Scientific or Process Sensors Corporation from July 2, 2018 to the present. (ECF No. 94 at ¶ 6, Injunction). It also enjoined Defendants from "using … for their own benefit or anyone else's benefit any of the Plaintiff's "Confidential Information" and trade secrets." *Id.* at ¶ 2.

Hillman modified the preliminary injunction to specify "If any organization includes multiple individual divisions, sites, or locations that make independent buying decisions, each division, site, or location is deemed a separate party under this Paragraph."[7]  Blue Sun has refrained from any subsequent sales to Idahoan - Idaho Falls.  However, Idahoan – Lewisville had never been solicited by any of the individual defendants, and so Blue Sun's January 26, 2022, sale of a Phoenix® to Lee Shelton of Idahoan – Lewisville did not violate the modified preliminary injunction. Similarly, Idahoan – Rupert had never been solicited by any individual defendant, and so Blue Sun's June 2, 2022, sale of a Phoenix to BJ Leonard of Idahoan – Rupert also did not violate the modified preliminary injunction.  Neither of these Idahoan locations were a KPM customer and therefore neither is a "party" under Paragraph 6 of the Modified Preliminary Injunction Order.

Accordingly, Entity Defendants have in no way violated the Preliminary Injunction, let alone knowingly or willfully.  Consequently, the sales to Idahoan and R&R cannot provide an additional basis for finding a Chapter 93A violation because they were not unfair or deceptive acts, let alone willful or knowing unfair acts.

F.    Attorneys' Fees and Costs

A plaintiff is entitled to recover reasonable attorney fees and costs for willful and knowing violations of M.G.L. c. 93A § 11.  However, for the same reasons described above, the MUTSA supersedes Chapter 93A when the alleged unfair and deceptive conduct is theft of a trade secret. Under the MUTSA Section 42C the court *may* award reasonable attorney's fees and costs to the

---

[7] "A division, site, or location makes independent buying decisions if the division, site, or location has the authority to determine which near-infrared analyzer to purchase without input from other divisions, sites, or locations within the organization. A division, site, or location does not make independent buying decisions if the division, site, or location was referred to the defendants by a person to whom the defendants previously sold or offered to sell services or products related to any Near Infra-Red analyzer manufactured or sold by KPM or its predecessors in interest."

14

prevailing party if willful and malicious misappropriation exists.[8]  Mass. Gen. L. c. 93 § 42C

      Moreover, the chapter 93A claim was brought together with a number of other claims. Under such circumstances, an award of fees and costs under Chapter 93A should generally include an amount only for those fees and costs that were incurred in connection with the Chapter 93A portion of the case.  In this case, Plaintiff has submitted a separate motion seeking an award of $3,612,967 in attorneys' fees and $314,167 in costs incurred through May 31, 2023, roughly $150,000 per month since filing the Complaint on April 5, 2021.  Plaintiff offers heavily redacted time sheets to support its request for attorneys' fees and costs with most all itemized entries removed, entries that are absolutely necessary for any meaningful assessment of what is reasonable.  For example, ECF 260, Declaration of John T. Gutkoski, Exhibit 2 comprises 367 pages of timesheets in which nearly every entry is redacted out, in each case rendering the scope of work entirely unascertainable.  Mr. Gutowski's billing narrative for September 9, 2021 merely states that he spent 5.6 hours on "EMAILS RE: [REDACTED]; ATTENTION T [REDACTED]" and on September 10, 2021, Mr. Gutowski's billing narrative states, "[REDACTED] ATTENTION TO [REDACTED] DRAFTING [REDACTED]."  *See* ECF No. 260-2 at 12.  On 11 September 2021, Mr. Gutkoski spent 8.4 hours reviewing, finalizing and distributing something unnamed.  These and the other heavily redacted billing records submitted by Plaintiff's attorneys provide sparse details necessary for a meaningful assessment of what, if any, attorneys' fees award is at all relevant to the 93A claim and, if so, reasonable.  Itemized time records, with individual tasks performed, are necessary to evaluate the reasonableness of "the hours spent on particular aspects of the case or the precise nature of the work."  *Twin Fires Investment, LLC v. Morgan*

---

[8] *See also* the contemporaneously filed Opposition to Plaintiff KPM Analytics North America Corporation's Motion for Finding of Willful and Malicious Misappropriation of Plaintiff's Trade Secrets by Defendants and for Exemplary Damages and Request for Hearing.

*Stanley Dean Witter & Co.*, 445. Mass. 411, 428, 837 N.E.2d 1121 (2005). The lack of supporting materials can be fatal to a request for attorneys' fees. *See Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984) (holding that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance"). Even at their high blended rate of $500 per hour, plaintiff's attorneys would had to have worked over 300 hours to bill $150,000 in attorneys' fees each month, *e.g.*, 15 hours per workday. In the absence of adequate unredacted records with sufficient details regarding KPM's attorneys' work on its Chapter 93A claim, neither of the Entity Defendants nor this Court can begin to evaluate the reasonableness of such attorneys' fees. Accordingly, KPM's request for attorneys' fees and costs should be denied, or minimally postponed with instructions to refile unredacted time sheets under seal for review.

  G. <u>Pre-Judgment Interest</u>

  KPM contends that it is entitled to statutory interest at a rate of 12% from the date of the filing of the complaint on the single damages component of its Chapter 93A damages, but not on the exemplary component. Motion at 20 (citing Mass. Gen. L. c. 231, § 6B).

  First, Massachusetts courts have held that G. L. c. 231, § 6B does not require the addition of prejudgment interest to a monetary award where the award is based on the defendant's profits, as it was in this case. *USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334, 349 (1984); *Governo Law Firm LLC v. Bergeron*, 487 Mass. 188, 200 (Mass. 2021) (denying prejudgment interest on a monetary award of disgorgement of profits, which is not designed to make a plaintiff whole).

  Second, even if KPM is entitled to prejudgment interest, they are not entitled to prejudgment interest on the disgorgement award of $2 million in unjust enrichment damages against Blue Sun plus a separate $1.4 million in unjust enrichment damages against ITG. Per section C above that measure of 93A "Actual Damages" Submitted by KPM is Improper. Again,

the purpose of prejudgment interest is to make the plaintiff whole by compensating him for the loss of the use of *his* money. Massachusetts courts uniformly hold that prejudgment interest should not be applied to cases in which the court calculates the plaintiff's damages by measuring the defendant's wrongful profits. *USM Corp.*, supra at 348–51; *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 181–83, 385 N.E.2d 1349 (1979). For this reason, prejudgment interest is only appropriate for compensatory damages (e.g., lost profits, injury to person or property). *See also Anastos v. Sable*, 443 Mass. 146, 155 (2004) (prejudgment interest is awarded only to compensatory awards "so that a person wrongfully deprived of the use of money should be made whole for his [or her] loss."). KPM's expert, Neil Zoltowski, testified that the profit lost by KPM was only $918,520. (ECF 241 at 13:6-9, 25:1-4, Day 9 Trial Transcript of May 13, 2023). $918,520 is the only suitable Actual Damage amount for use in calculating prejudgment interest under Mass. Gen. Law Ch. 93A § 11.

Third, any award of prejudgment interest on the compensatory damages award should be at the current benchmark federal interest rate 5-5.25%. KPM admits that the other claims asserted against the defendants were all intertwined, because each claim arose from the same set of facts. (ECF 259 at 19, Plaintiff's Motion for Attorneys' Fees and Costs). Such claims included Count I: Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1), a federal question claim. The federal interest rate also applies to calculate prejudgment interest on a judgment that is based upon both state and federal claims without distinguishing them. *See Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 150 (2d Cir. 2010). Here, the jury's compensatory damages award is based on both the federal Defend Trade Secrets Statute and the Massachusetts Uniform Trade Secrets Statute. Because neither the jury nor the Court delineated between the two claims, the federal interest rate should apply. *Id.*

H.      Joint and Several Liability

KPM asks the Court to pierce Blue Sun's corporate veil and hold ITG indirectly liable for all damages awarded against Blue Sun.  However, it is black letter law that ITG cannot disgorge profits from Blue Sun that it never received.  See *Liu v. Securities and Exchange Commission*, 140 S.Ct. 1936, 1945 (2020) ("The rule against joint-and-several liability for profits that have accrued to another appears throughout equity cases awarding profits.") (citing *Belknap v. Schild*, 161 U.S. 10, 25–26 (1896) ("The defendants, in any such suit, are therefore liable to account for such profits only as have accrued to themselves from the use of the invention, and not for those which have accrued to another, and in which they have no participation.")).

Moreover, in Massachusetts the corporate veil "may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity," and the Massachusetts Supreme Judicial Court has identified the following factors to be considered holistically when determining whether piercing the corporate veil is appropriate: (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud. *Lothrop v. North Am. Air Charter, Inc.*, 95 F. Supp. 3d 90, 100 (D. Mass. 2015) (citing *Scott v. NG U.S. 1, Inc.*, 881 N.E.2d 1125, 1131 (Mass. 2008)); *Malden Transp., Inc. v. Uber Techs., Inc.*, 286 F. Supp. 3d 264, 271–72 (D. Mass. 2017) (applying same factors to attempt to pierce veil between corporation and individual defendants).  In order to pierce the corporate veil, a court must conclude after evaluating these factors that the parent corporation *directed and controlled the subsidiary and used it for an improper purpose.  TechTarget, Inc. v. Spark Design, LLC*, 746 F.

Supp. 2d 353 (D. Mass. 2010).  KPM itemizes certain facts and characterizes them as "point[ing] to confused intermingling and pervasive control."  Motion at 19–20.  The facts establish exactly the opposite, a complete lack of control.  Mr. Wilt and ITG never asked whether Mr. Lucas or any other former KPM employees that Mr. Lucas would then hire had any contracts or nondisclosure obligations to KPM.  (*See* ECF 240 at 74:4–12; 76:8–16, Day 8 Trial Transcript of May 12, 2023). In fact, Mr. Wilt affirmatively said he did not want to know anything. (ECF 241 at 147:17–23, Day 9 Trial Transcript of May 13, 2023).  After Mr. Lucas joined Blue Sun, Mr. Wilt did not take any steps to ensure that Mr. Lucas was living up to his confidentiality obligations to KPM and he placed no restrictions on Mr. Lucas as to who Mr. Lucas could hire for Blue Sun. (ECF 240 at 75:3–8, Day 8 Trial Transcript of May 12, 2023). Mr. Wilt never put any restrictions on who Mr. Lucas could hire (or contract with) to work for Blue Sun.  (*Id.* at 75:6-8).  Mr. Wilt never asked Mr. Ossowski if he had any contract or non-disclosure obligations with KPM.  (*Id.* at 73:14–74:12; Trial Exhibit 89).  ITG never placed any restrictions on what Blue Sun could do in selling ITG's analyzers. (ECF 240 at 80:17–22, Day 8 Trial Transcript of May 12, 2023).

KPM cites *Angiodynamic, Inc. v. Bioletic AG*, 991 F.Supp.2d 299, 304, 306 (D. Mass. 2014), which found tortious interference and a violation of Chapter 93A by a parent company where the parent set up a subsidiary to insulate the parent from responsibility for breaches of contract with a third party.  Motion at 5.  <u>Angiodynamic</u> involved a default judgment where in awarding damages, the court reviewed the complaint and offered evidence, which it found sufficient to satisfy virtually all the discretionary factors identified by Massachusetts courts that support piercing a corporate veil.  *AngioDynamics, Inc. v. Biolitec AG*, No. 09–cv–30181–MAP, 2011 WL 3157312, at *6 (D.Mass. July 25, 2011).

Despite KPM's attempt to check the box on each of the relevant factors under Massachusetts' veil piercing analysis, after stripping away their conclusory allegations, the weight

of the evidence when taken at face value fails to plausibly justify the extraordinary measure of piercing the corporate veil.

V.      CONCLUSION

For all of the foregoing reasons, this Court should deny Plaintiff's Motion.


Date:  July 12, 2023                          /s/ Maria T. Davis
                                              Christopher R. O'Hara (BBO# 548611)
                                              cohara@toddweld.com
                                              Maria T. Davis (BBO# 6754477)
                                              mdavis@toddweld.com
                                              Todd & Weld, LLP
                                              One Federal Street
                                              Boston, MA 02110

                                              /s/ Royal Craig
                                              Royal Craig*, Fed. Bar #24546
                                              rcraig@gfrlaw.com
                                              George F. Ritchie*, Fed Bar #22408
                                              gritchie@gfrlaw.com
                                              Lauren E. Lake*, Fed. Bar #20488
                                              llake@gfrlaw.com
                                              GORDON FEINBLATT LLC
                                              1001 Fleet Street, Suite 700
                                              Baltimore, MD 21202
                                              Tel/Fax: (410) 576-4131
                                              * pro hac vice

                                              Attorneys for Defendants Blue Sun Scientific, LLC
                                              and The Innovative Technologies Group & Co.,
                                              LTD


## CERTIFICATE OF SERVICE

I hereby certify that, on July 12, 2023, this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.  Paper copies will be sent to those indicated as non-registered participants.

                                              /s/  Royal Craig
                                              Royal Craig