UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BLUE SUN SCIENTIFIC, LLC; THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD; ARNOLD EILERT; MICHELLE GAJEWSKI; ROBERT GAJEWSKI; RACHAEL GLENISTER; GREGORY ISRAELSON; IRVIN LUCAS; and PHILIP OSSOWSKI,<br><br>Defendants. | Civil Action No. 4:21-cv-10572-MRG |

**INDIVIDUAL DEFENDANTS' AND BLUE SUN SCIENTIFIC'S PARTIAL OPPOSITION TO PLAINTIFF'S MOTION FOR A PERMANENT INJUNCTION**

Defendants Arnold Eilert, Robert Gajewski, Rachael Glenister, and Irvin Lucas (the "Individual Defendants") and Blue Sun Scientific, LLC ("Blue Sun") submit this partial opposition to KPM Analytics North America Corporation's ("KPM") motion for entry of a permanent injunction. The Defendants do not oppose a permanent injunction prohibiting them from using the UCal software or KPM's datasets. But KPM has failed to demonstrate the need for an injunction enjoining the Defendants from soliciting or doing business with KPM customers in perpetuity. While KPM pays lip service in its motion to the standard that a party is entitled to have its trade secrets protected "until others in the industry are likely to have become aware of those secrets," KPM offered no evidence at trial (and makes no argument in its motion) about how long it would take a competitor to discover KPM's customers' information, many of whom are already well-known throughout the industry and own NIR analyzers manufactured by different companies.

1

KPM's failure to even try to explain why the Individual Defendants would be *unable to ever* become aware of KPM's customers is fatal to KPM's motion.

The Defendants have already been enjoined from competing for KPM's customers for almost two years. KPM has offered no evidence whatsoever that the Defendants would not have been able to discover information about those customers during those two years. KPM's request for a permanent injunction should therefore be denied to the extent it seeks a *de facto* perpetual noncompete.

## ARGUMENT

**A.      KPM Has Failed to Demonstrate That the Defendants Could Not Become Aware of KPM's Customer Information Through Legitimate Business Procedures**

A plaintiff seeking a permanent injunction is required to satisfy a four-factor test: (1) that it is has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Greene v. Ablon*, 794 F.3d 133, 156 (1st Cir. 2015). "An injunction should not be granted where a less drastic remedy will suffice." *Id.* at 157 (quotations omitted). "It is clear that injunctions granted to prevent trade secret violations must be reasonable as to time." *Eastern Marble Products Corp. v. Roman Marble, Inc.*, 372 Mass. 835, 842 (1977) ("It is possible that the remedy of a permanent injunction may no longer be appropriate").

A plaintiff "is entitled to have its trade secrets protected at least until others in the trade are likely, through legitimate business procedures, to have become aware of these secrets." *Analogic Corp. v. Data Translation, Inc.*, 371 Mass. 643, 649 (1976); *Specialized Tech. Res., Inc. v. JPS Elastomerics Corp.*, 2011 WL 1366584, at *18 (Mass. Super. Feb. 10, 2011), *aff'd,* 80 Mass. App.

2

Ct. 841 (2011) ("The duration of injunctive relief in a trade secret case ordinarily should be limited to the time necessary to protect the plaintiff from harm attributable to the misappropriation and to deprive the defendants of any economic advantage attributable thereto."). "If the defendant retains no unfair advantage from the appropriation, an injunction against the use of information that is no longer secret can be justified only on a rationale of punishment and deterrence. However, because of the public interest in promoting competition, punitive injunctions are ordinarily inappropriate in trade secret actions." *Atl. Research Mktg. Sys., Inc. v. Troy*, 2010 WL 1904849, at *9 (D. Mass. May 11, 2010) (citing *Jillian's Billiard Club*, 35 Mass. App. Ct. 372, 376 (1993) ("the judge could well have determined that the relief sought by the plaintiffs, precluding the opening of a competing establishment, was too Draconian a remedy and against the public interest")).

In *Analogic Corp.*, the Supreme Judicial Court held that "evidence as to [the time period to reverse engineer the plaintiff's device] is one factor which should be considered in determining the reasonableness of the scope of [a permanent] injunction." *Id.* at 648-49. Courts have often referred to this as the "head start rule." *See, e.g., Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 171 n. 11 (1979).

Courts have repeatedly held that the value of historical customer information is "of limited duration" and any confidential information employees possess about such strategies "soon go stale." *Kroeger v. Stop & Shop Cos.*, 13 Mass. App. Ct. 310, 318 (1982). This is particularly true where, as here, such information changes over time. *See Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F. Supp. 2d 525, 537 (S.D.N.Y. 2004) (information in employees' possession with regard to past "pricing proposals is now stale and, in any event, already available to JCI's competitors"); *Filter Specialists, Inc. v. Hendi*, 2008 WL 11391139, at *9 (N.D. Ind. Nov. 17, 2008) ("[I]nformation about customers, cost, and pricing is among the most fragile and ephemeral

3

96479029v.2

types of trade secrets."); *DeVere Co. v. McColley*, 2014 WL 6473513, at *8 (W.D. Wis. Nov. 18, 2014) ("whatever value marketing materials, pricing information and even customer lists may have had in the nearer term, it is hard to imagine a scenario where they would not have become common knowledge to active competitors in the market after a full year."); *La Calhene, Inc. v. Spolyar*, 938 F. Supp. 523, 531–32 (W.D. Wis. 1996) ("After one year, the information that defendant acquired while employed by plaintiff will have lost a good part of its economic value to plaintiff or to plaintiff's competitors. Plaintiff will have developed new inventions, new techniques and new market strategies and its competitors will have caught up . . . . At that point, it would be anti-competitive to continue to restrain defendant from using the information he has because the lead time a competitor could gain from defendant's misappropriation would have expired.").

This Court has already stated that this is not a case about a "head start." (Day 10 Tr., 155:14-21) ("But even if [the jury is] considering [the issue of the head start], even if they heard it and they are considering it, the evidence is that that isn't what's happening in this case. It really is not even relevant to this case . . . . They're not even talking about the market. They're talking about actual misappropriation."). And the Court was right. KPM offered no testimony whatsoever at trial about how long it took KPM (or how long it would take a competitor) to discover KPM's so-called "customer information." On the other hand, the Individual Defendants offered unrebutted testimony that discovering the identities of customers is not difficult, given the ease of access to information on the internet, or even by reviewing the packaging on foods at the local grocery store. *See, e.g.,* Day 5 Tr. 89:1-17; Day 6 Tr., 87:15-88:2). Simply put, KPM made no effort at all, either during the trial or in its motion, to prove that the Defendants could not become aware of KPM's customer information during the two years they have been preliminary enjoined

from soliciting certain KPM customers. KPM's motion for a permanent injunction should be denied for that reason alone.

Courts have refused to grant permanent noncompetition injunctions where others in an industry could eventually become aware of the alleged trade secret. For example, in *Arborjet, Inc. v. Rainbow Treecare Scientific Advancements, Inc.*, 187 F. Supp. 3d 217, 224 (D. Mass. 2016), the court denied the plaintiff's request for a permanent injunction enjoining the defendant from selling generic versions of the plaintiff's product in perpetuity. Instead, in balancing the hardships between the parties, the court entered an injunction on such activity until February 2018, the date upon which the plaintiff estimated the defendant could have developed and marketed a generic product without violating the parties' contract. Here, notably, KPM offers no estimate of when the Defendants could have become aware of KPM's customer information through legitimate business procedures.

Rather than address the length of time it would take the Defendants to discover KPM's customer information, KPM instead claims that the nature of the NIR business proves KPM has no adequate remedy at law. But KPM's argument is both irrelevant, and incorrect. KPM cites to no legal authorities holding that the nature of an industry is germane to whether a permanent injunction should be entered. Rather, as set forth above, the relevant standard is the length of time it would take a competitor to learn the alleged trade secret through legitimate business purposes. Further, KPM ignores that the jury awarded money damages to KPM, fully undercutting its assertion of irreparable harm.

KPM also claims that it cannot possibly know how much harm the Defendants have caused because "KPM may be rejected by customers months or years from now as a result of the confusion caused by defendants and the necessity for this lawsuit." (Motion at 8). But once again, KPM has

96479029v.2

offered no evidence whatsoever of actual customer confusion, let alone that any confusion will exist for months or even years. Indeed, although no evidence was offered at trial regarding actual customer confusion, it was learned through discovery that KPM created a letter in May 2021 to "forward to active customers" clarifying Blue Sun's lack of relationship with KPM. *See* ECF No. 149, Ex. G. KPM also sent emails to several customers warning that Blue Sun may go out of business as a result of this lawsuit and therefore the customer should reconsider doing business with Blue Sun. *See id.*, Ex. H-J. And KPM has widely publicized the jury's verdict. There is simply no evidence whatsoever that, years after KPM commenced this lawsuit, any customer ever was, or currently is, confused about the relationship between KPM and Blue Sun, or that such confusion could lead to a customer to inadvertently do business with Blue Sun in the future, rather than KPM.

"The court must protect the legitimate interests of the trade secret owner without unduly interfering with legitimate competition by the defendant." *Specialized Tech.*, 2011 WL 1366584, at *18. Here, a limited permanent injunction that enjoins the Defendants from using the UCal software and/or KPM's datasets ensures that KPM's trade secrets will be protected. But imposing a *de facto* noncompetition order against the Defendants, in perpetuity, based on so-called customer information that KPM has not even attempted to establish could not be discovered within two years, would interfere with legitimate competition and deprive customers of the right to choose which company they want to do business with.

**B.   Any Permanent Injunction Should Be Tied to Customers That The Individual Defendants Allegedly Used Misappropriated Trade Secrets**

Alternatively, should the Court determine to enter a permanent injunction enjoining the Defendants from soliciting or doing business with certain KPM customers, that list of customers should be more narrowly defined and limited to a specific time period. KPM's proposed

permanent injunction would forever enjoin the Defendants from selling any Phoenix NIR analyzer product to any party for which any of the Individual Defendants previously solicited or sold NIR analyzers manufactured by KPM from July 2, 2018.  *See* ECF No. 257-1.[1]  But KPM has not offered any evidence that the Individual Defendants misappropriated KPM trade secrets related to *every customer* that the Individual Defendants worked with while at KPM.  Indeed, the actual evidence at trial was far narrower and KPM offers no additional evidence, or even argument, as to why the Individual Defendants should be barred from doing business with customers about whom they did not misappropriate KPM customer information.  "Injunctions must be tailored to the specific harm to be prevented."  *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 14 (1st Cir. 2000).  If a permanent injunction is necessary to protect KPM's customer information trade secrets, then that injunction necessarily must be limited to *those* customers about whom the Individual Defendants used KPM's trade secrets.

KPM argues in its motion, as it did at trial, that "the most likely method in the industry of securing future and additional analyzer sales [is] the so-called 'service to sale' model." (Motion, at 7).  But all witnesses agreed that only a small percentage of KPM customers receive preventative maintenance services from KPM.  *See* Day 4 Tr., 93:3-5 (Mr. Olson testifying that only a small percentage of KPM customers pay for preventative maintenance); Day 5 Tr., 92:15-18 (10-15% of KPM customers receive preventative maintenance from KPM); Day 7 Tr., 76:5-9 (80% of KPM customers service their instrument on their own).  And Mr. Gajewski only serviced 30 KPM customers on behalf of Blue Sun.  Thus, to the extent any permanent injunction is entered (and the Defendants deny that any injunction is necessary or appropriate), the injunction should be limited

---

[1] KPM's proposed order appears to contain a typo where it says that the Defendants are prohibited "for the duration of this Action" from selling NIR analyzers to KPM customers.  KPM presumably is asking for the injunction to extend in perpetuity, after "the duration of this Action."

to the 30 KPM customers that Mr. Gajewski serviced on behalf of Blue Sun. And the duration of that permanent injunction should be no longer than August 23, 2024 — which would amount to a three-year injunction against the Individual Defendants, which should be more than enough time for KPM to shore up its relationships with those customers, dispel any ongoing confusion, and eliminate any purported "head start" that the Defendants would otherwise obtain.

Additionally, KPM's proposed permanent injunction is far too vague and it would be difficult, if not impossible for the Defendants to comply with it. The Individual Defendants have not worked for KPM for years; they cannot be expected to remember every single customer they may have solicited or done business with while at KPM. Rule 65(d)(1)(B) requires every injunction "state its terms specifically." The specificity requirements are designed to prevent uncertainty and confusion and avoid basing a contempt citation on a decree too vague to be understood. *Axia NetMedia Corporation v. Massachusetts Technology Park Corp.*, 889 F.3d 1, 12 (1st Cir. 2018). Accordingly, if a permanent injunction is entered, it should identify each customer, by location, that the Defendants are enjoined from soliciting.[2]

## CONCLUSION

Based on the foregoing, the Defendants request that KPM's motion for a permanent injunction be denied, in part, by striking paragraphs 5 and 6 from KPM's proposed order. Alternatively, the Individual Defendants request that paragraphs 5 and 6 of KPM's proposed order be modified consistent with the proposed order attached hereto as Exhibit A.

---

[2] KPM falsely asserts that the Individual Defendants violated the preliminary injunction by selling analyzers to R&R and Idahoan after the preliminary injunction entered. For the reasons stated in the Affidavit of Irvin Lucas, Blue Sun did not sell any Phoenix analyzers to R&R, and the Idahoan location that purchased from Blue Sun after the injunction order had independent purchasing authority, and therefore did not violate the preliminary injunction, as amend by the Court. These disputes about whether certain conduct violated the preliminary injunction evidence the need for a more precise injunction (should any injunction be deemed appropriate).

Respectfully submitted,

ARNOLD EILERT, ROBERT GAJEWSKI, RACHAEL GLENISTER, AND IRVIN LUCAS

_____
William L. Prickett (BBO #555341)
wprickett@seyfarth.com
Dawn Mertineit (BBO # 669988)
dmertineit@seyfarth.com
Dallin R. Wilson (BBO #676662)
drwilson@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Tel: (617) 946-4800

BLUE SUN SCIENTIFIC, LLC,

*/s/ George F. Ritchie*
Christopher R. O'Hara (BBO# 548611)
cohara@toddweld.com
Maria T. Davis (BBO# 6754477)
mdavis@toddweld.com
Todd & Weld, LLP
One Federal Street
Boston, MA 02110

George F. Ritchie*, Fed Bar #22408
gritchie@gfrlaw.com
Royal Craig*, Fed. Bar #24546
rcraig@gfrlaw.com
Lauren E. Lake*, Fed. Bar #20488
llake@gfrlaw.com
GORDON FEINBLATT LLC
1001 Fleet Street, Suite 700
Baltimore, MD 21202
Tel/Fax: (410) 576-4131
* *pro hac vice*

9


Dated: July 12, 2023

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 12, 2023.

_____
      Dallin R. Wilson