# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 4:21-cv-10572-MRG |
| BLUE SUN SCIENTIFIC, LLC; THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD; ARNOLD EILERT; MICHELLE GAJEWSKI; ROBERT GAJEWSKI; RACHAEL GLENISTER; GREGORY ISRAELSON; IRVIN LUCAS; and PHILIP OSSOWSKI, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## INDIVIDUAL DEFENDANTS' OPPOSITION TO KPM ANALYTICS NORTH AMERICA CORPORATION'S MOTION FOR ATTORNEYS' FEES AND COSTS

Defendants Arnold Eilert, Robert Gajewski, Rachael Glenister, and Irvin Lucas (the "Individual Defendants") oppose KPM Analytics North America Corporation's ("KPM") motion for attorneys' fees and costs.  KPM has failed to meet its burden of proving that its request for nearly $4 million in fees and costs is reasonable.  The invoices attached to the motion are so grossly over-redacted that it is impossible for the Individual Defendants, or the Court, to determine the nature of the work performed by KPM's counsel and whether it is reasonable.

Additional grounds exist to substantially reduce KPM's fee request.  Nearly all of the fees KPM seeks to recover are the result of "block billing" by its attorneys, rendering it impossible to determine whether the time spent on each individual task is reasonable.  Moreover, even with the excessive redactions, it is clear that KPM's counsel spent an unreasonable amount of time on the case, failed to assign "non-core" administrative tasks to other professionals, and failed to deduct time spent on unsuccessful claims.

Lastly, the amount of fees sought against the Individual Defendants is grossly disproportionate to the amount awarded to KPM against the Individual Defendants.  The jury found that the Individual Defendants collectively, at most, caused KPM $95,000 in damages.  Yet KPM seeks almost $4 million in fees and costs.  In the event the Court grants KPM any attorneys' fees, and it should not, those fees should be allocated proportionately to each Individual Defendant based on the *de minimis* harm they caused KPM.

## **ARGUMENT**

### A.    **Redactions To KPM's Legal Invoices Render Them Impossible to Review For Reasonableness**

"The fact that the plaintiff is the prevailing party does not mean he can recover fees for all of the time expended during the litigation."  *Norkunas v. Brossi Bros. P'ship*, 2012 WL 772047, at *4 (D. Mass. Mar. 7, 2012) (citing *Culebras Enters. Corp. v. Riviera–Rios,* 846 F.2d 94, 102

(1st Cir. 1988)).  It is KPM's burden, as the party seeking fees, to prove that the hours it expended are reasonable.  *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008).  Courts customarily look to contemporaneous billing records supplied by the plaintiff, but "the court's discretion is by no means shackled by those records." *Gay Officers Action League v. Commonwealth of Puerto Rico*, 247 F.2d 288, 295–96 (1st Cir. 2001).  The records submitted in support of any fee request should be clear enough to "allow the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) (cleaned up).  "[T]he absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984); *Gardner v. Simpson Financing Ltd. Partnership*, 963 F. Supp. 2d 89, 92 (D. Mass. 2013) ("The court may also disallow or discount requests where the records are too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like") (citations omitted).

This is an "egregious case" that justifies disallowance of KPM's attorney fee request.  The invoices attached to KPM's motion are so excessively redacted that it simply is not possible for the Defendants to dispute the accuracy of the records or the reasonableness of the time spent.  This includes dozens of time entries where KPM's counsel purports to have worked entire days on this matter (often in excess of 10 hours per day), but almost the entire time entry is redacted.

For example, KPM's counsel claims to have worked a total of 22.8 hours over a two-day period in July 2021, yet his time entries are indecipherable as to what he was actually doing:



One week later, counsel billed 27.8 more hours over another two-day period, but again did not provide detailed time records that would permit the Defendants from contesting the reasonableness of those nearly 28 hours of work:



Then, during a three-day period in May 2022, counsel billed 35.4 hours (22.2 of them over the weekend), again redacting out all information that could identify what tasks he performed during that time:



| 05/21/2022 | JTG | REVIEW AND REVISE ███████████; ███████; █████ CALL WITH ███████; REVIEW ██████████. | 11.60 Hrs |
| 05/22/2022 | JTG | WORK ON ██████████████; █████████ TEAM EMAILS AND CORR. WITH ███████████. | 10.60 Hrs |
| 05/23/2022 | JTG | COMMENTS ON █████████████; CALLS WITH EXPERT; FINAL REVIEW; FOLLOW UP WITH TEAM AFTER ██████ ██████; ATTENTION TO ██████████ REVIEW AND SIGNOFF. | 13.20 Hrs |

Other examples of KPM's counsels' over-redactions of full-day time entries are legion:



| 06/29/2022 | JTG | REVIEW OF ████████████████ ███████████████████████ ███████████████████████ CONTINUE WORK ██████████ ████████ | 7.30 Hrs |
| 06/30/2022 | JTG | ATTENTION TO ███████████████████ ████████████████████ | 8.40 Hrs |
| 07/25/2022 | JTG | WORK WITH ███████████████; CONTRAST OF ████████████████████ ██████████ | 8.80 Hrs |
| 07/26/2022 | JTG | ATTEND TO ████████; CONTINUED WORK WITH ████████████. | 8.40 Hrs |
| 07/27/2022 | JTG | WORK O ████████████████████ ████████████████████████. | 9.10 Hrs |
| 07/28/2022 | JTG | PREPARE FOR AND CONDUCT MEETING WITH EXPERTS AND TEAM ██████████ ███████████████████████████; TEAM EMAILS ███████████████ ████████████ TEAM AND CLIENT EMAILS ON █████████████. | 9.60 Hrs |
| 07/29/2022 | JTG | CONTINUE WORK OF ██████████████ ████████ CORR. W/ OPPOSING COUNSEL; CALL WITH ENTITY DEFENDANTS' LEAD COUNSEL RE: SCHEDULE AND IRVIN LUCAS INDICTMENT; TEAM EMAILS AND INPUT. | 9.30 Hrs |



These examples alone (which represent a small fraction of the total over-redacted invoices attached to KPM's motion) account for 193.1 hours of Attorney Gutkoski's time, which at $650 per hour, total $125,515 in fees sought by KPM.  Yet it is impossible to tell from any of the time entries what counsel did while billing KPM over $125,000.[1]

And the over-redactions were not limited to Attorney Gutkoski.[2]  Attorneys Magee and Zacharakis's time entries are equally indecipherable:

---

[1] By highlighting these examples, the Defendants do not suggest that these are the only offending invoices or that the Court should reduce the lodestar amount for these examples only. Indeed, nearly every time entry submitted by KPM is improperly redacted.

[2] In addition to Attorney Gutkoski's over redaction of his billing entries, he habitually began many of them with "attention to . . ." or "work on . . ." and the like, which are hallmarks of



billing entries that are unreasonably vague and difficult to evaluate for reasonableness, even in the absence of redactions.  This problem is addressed in detail below in Section B(b).

6



In other particularly perplexing time entries, Attorney Zacharakis billed KPM multiple hours for merely sending and receiving emails from/to somebody:



This begs the question: was it reasonable for counsel to spend over four and a half hours sending and reading emails?  The Individual Defendants and the Court cannot possibly answer that question given the time entry's redaction.

And these are not trifling amounts of fees.  They amount to, in some instances, almost **$10,000 per day** in fees based on the multiple lawyers billing time on this matter.  Again, the

Individual Defendants, and the Court, cannot possibly determine whether those fees were reasonable because the actual tasks performed are entirely redacted.  In fact, in some instances, the entire amount of time billed is redacted:



Courts have refused to grant attorneys' fees when parties submit excessively redacted billing records.  For example, in *Full Spectrum Software, Inc. v. Forte Automation Systems, Inc.*, 125 F. Supp. 3d 301 (D. Mass. 2015), the court (Hillman, J.) expressed concern over the supporting documentation submitted by the plaintiff with its request for attorneys' fees, which consisted of "nearly 150 pages of heavily redacted, chronological invoices."  *Id.* at 304.  The court "recognize[d] that it is the prerogative of the fee applicant to redact information contained in legal bills on the basis of work-product or attorney-client privilege . . . [h]owever, when it comes to a fee request, a plaintiff has an obligation to submit sufficient documentation to enable the judge to evaluate the hours spent on particular aspects of the case or the precise nature of the work."  *Id.* (citations omitted).  The court therefore held that the plaintiff had not met its burden to establish its entitlement to fees because "[d]ue to the extent of the redactions contained in the billing records, there is simply no way for this Court to competently determine whether the tasks and time billed by counsel were reasonable."  *Id.*  Given the Court's limited judicial resources, "it is not for the

Court to sort out the plaintiff's perplexing submission in support of a fee request." *Id.* (citation omitted).[3]

KPM's grossly over-redacted invoices represent the type of "egregious case" justifying denial of KPM's entire request for attorneys' fees. *Grendel's Den,* 749 F.2d at 952. By submitting its motion in such a fashion, KPM has deprived the Individual Defendants the ability to contest the reasonableness of KPM's fees, and has forced the Court to sift through hundreds of opaque time entries in an attempt to come to its own conclusion as to reasonableness. And, KPM should not be permitted a second bite at the apple by submitting less redacted invoices in the future. *See Full Spectrum*, 125 F. Supp. 3d at 304 ("Full Spectrum's offer to provide unredacted copies for *in camera* review is not sufficient"); *Wine Educ. Council v. Arizona Rangers*, 2023 WL 4269748, at *4 (D. Ariz. June 29, 2023) (refusing to grant the defendant's request to file unredacted versions of time entries under seal in its reply where the defendant "had sufficient time to contemplate filing its application or exhibits under seal"). If the Court is nevertheless inclined to grant KPM some portion of its fee request, that amount should be substantially reduced by disallowing any time

---

[3] *See also Pizzo v. Gambee*, 796 F. Supp. 2d 270, 273 (D. Mass. 2011) ("the Court's ability to determine the reasonableness of the fees is hindered by plaintiff's extensive redaction of the documentation submitted. Such redactions pervade the 40 pages of invoices submitted, making it impossible to determine whether the hours spent on particular tasks were reasonable."); *DataTern, Inc. v. MicroStrategy, Inc.*, 2018 WL 6310274, at *4 (D. Mass. Dec. 3, 2018) ("By only filing a redacted version [of invoices], Warren has not provided the Court with sufficient evidence from which to make a decision, and therefore Warren has failed to meet its burden. The Court accordingly will award no fees to Carl Warren & Company."); *RFF Family Partnership, LP v. Link Development, LLC*, 2015 WL 1472253, at *5 (D. Mass. March 31, 2015) ("the invoices contain numerous redactions that prevent the court from determining the reasonableness of the fees requested. Although some degree of redaction based on privilege is permitted, the Court will disallow a portion of the compensation requested where the substance of the work is elusive."); *DSSDR, LLC v. Zenith Infotech, Ltd.*, 2014 WL 2815769, at * 5 (D. Mass. June 20, 2014) (excluding from lodestar calculation time entry that could not be evaluated due to excessive redaction).

contained in a time entry that is redacted to the extent that it is not possible to conclude what task the billing attorney performed and whether the time spent on that task was reasonable.

**B.      Additional Grounds Exist To Deny or Substantially Reduce The Amount Of Fees Requested By KPM**

Based on the limited information revealed in KPM's many pages of entries seeking almost $4 million, it is clear that additional grounds exist to deny or substantially reduce the amount of fees and costs KPM is entitled to.

**a.      A global denial or reduction in KPM's fee award should be applied based on counsel's pervasive use of block billing**

Nearly every time entry submitted with KPM's motion contains block billing.  Block billing is "the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Conservation Law Found., Inc. v. Patrick*, 767 F. Supp. 2d 244, 253 (D. Mass. 2011).  "Because such practice 'impede[s] the court's ability to evaluate the utility of those hours,' the First Circuit has endorsed a global fee reduction to the lodestar hours after specific deductions have been applied." *Joyce v. Town of Dennis*, 2015 WL 13664120, at *3 (D. Mass. Sept. 17, 2015) (quoting *Torres-Rivera*, 524 F. 3d at 340).[4]  "Courts disfavor the use of block billing because it requires deciphering on the judges' part." *Hermida v. Archstone*, 950 F. Supp. 2d 298, 312 (D. Mass. 2013).  For this reason, courts regularly impose global fee reductions where counsel engages in block billing.  *See, e.g., In re Volkswagen & Audi Warranty Extension Litig.*, 2015 WL 848312, at *19 (D. Mass. Feb. 10, 2015) (collecting cases and noting that the "global deduction is generally in the order of fifteen to twenty-percent"); *Sullivan v. Experian Info. Sols., Inc.*, 2022 WL 392848, at *3 (D. Mass. Feb. 9,

---

[4] "The court agrees that some reduction is appropriate because nearly all of the time entries by Attorneys Gearan and Studen consist of block billing." *Joyce*, at *3 (imposing a 15% global reduction with respect to hours billed by attorneys that block billed).

2022) (imposing 10% reduction for block and overbilling); *Covidien LP v. Esch*, 2020 WL 1905322, at *3 (D. Mass. Apr. 17, 2020) (imposing 25% reduction of all fees that were block-billed in increments of more than one hour).

The Court need not look far to find dozens, if not hundreds, of examples of block billing in KPM's counsels' invoices:





In addition to disallowing overly-redacted entries, the Court should also deny or impose a global reduction of at least 30% to any fee award due to KPM's counsels' excessive block billing.

### b.  KPM's counsels' vague time entries justify additional reductions

The First Circuit recently stated that "[a] court charged with awarding attorneys' fees should not be asked to buy a pig in a poke." *Pérez-Sosa v. Garland*, 22 F.4th 312, 329 (1st Cir. 2022). Typically, attorney time entries will reveal "the date the work occurred, the kinds of work that were done and the percentage of time spent at each task." *Id.* (cleaned up). The First Circuit further noted that

> Anything less will unfairly hamper the party who is expected to pay the freight in challenging the accuracy of the records as well as the reasonableness of the time spent. So too, anything less will unfairly hamper the district court in performing its evaluative task. After all, "nebulous" entries amounting to "gauzy generalities" threaten to frustrate a district court's effort to fashion a fair and reasonable fee award.
>
> *        *        *
>
> An attorney's time sheets are generally not intended for public consumption; and when the billing entries are disclosed at the end of a case, confidentiality concerns are at a minimum. In all events, we see no reason why the general subject matter of a meeting or communication cannot be supplied so that the court may conduct the necessary review.

*Id.* at 329-30 (citation omitted).[5]

Time entries that use generic phrases to describe their tasks such as "review complaint," "review discovery," "preparation for trial," and "investigation of claim" "prevent the Court from being able to perform any meaningful assessment of the reasonableness of the time spent." *Gardner*, 963 F. Supp. 2d at 92.  *See also Norkunas*, 2012 WL 772047, at *6 (reducing requested fees by half for entries such as "phone call," "reviewing notes," and "preparing letters"); *Smith v. City of Boston*, 496 F. Supp. 3d 590, 597 (D. Mass. 2020) (applying 20% global reduction of overall time billed by each attorney; holding that "[a] more precise description of the topic researched or discussed, or a reference as to what documents were being reviewed would allow a court to determine whether the time spent during the litigation was reasonable."); *Walsh v. Boston Univ.*, 661 F. Supp. 2d 91, 106 (D. Mass. 2009) ("a court may either discount or disallow hours where time records are too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy and the like.").

The small percentage of KPM's task descriptions which are visible are nevertheless replete with vague and generic time entries that prevent the Individual Defendants from ascertaining the reasonableness of the time spent by KPM's counsel.  For example, on April 7, 2022, Attorney Gutkoski billed 9.4 hours for "deposition planning and scheduling; multiple doc review and production issues":

---

[5] In *Perez-Sosa*, the district court determined that time entries that read only "meeting with client," "telephone conference with client," and "electronic correspondence to or from client" failed to provide the court with sufficient information to glean the reasonableness of the time spent and therefore reduced those hours by thirty percent.  *Id.* at 329.  The First Circuit held that the district court did not abuse its discretion in applying a thirty percent reduction "to offset the paucity of meaningful information in the submitted time sheets."  *Id.* at 331.



| 04/07/2022 | JTG | DEPOSITION PLANNING AND SCHEDULIONG; MULTIPLE DOC REVIEW AND PRODUCTION ISSUES. | 9.40 Hrs |
|---|---|---|---|

In August 2022, Attorney Gutkoski billed another 24.4 hours over four days for tasks such as "work on," "call with," and "attention to" certain redacted tasks:

| 08/28/2022 | JTG | WORK ON ███████████████ | 4.40 Hrs |
|---|---|---|---|
| 08/29/2022 | JTG | CALL WITH ██████████████ | 6.70 Hrs |
| 08/30/2022 | JTG | ATTENTION TO ████████████ | 6.10 Hrs |
| 08/31/2022 | JTG | ATTENTION TO ████████ | 7.20 Hrs |

Even if these time entries were not redacted, they would not provide sufficient detail of KPM's counsels' work and therefore additional reductions in the lodestar amount should be imposed.

### c.    KPM should not be awarded fees for unreasonable time, duplicated work, or work on claims that were not successful

Additional reductions should be applied to the lodestar amount because KPM seeks fees for unreasonable work, duplicated work, work by attorneys on "non-core" work, and work on claims that were not successful. Once again, KPM's excessive redactions make it impossible for the Individual Defendants to identify each instance of unreasonable work performed by KPM's counsel. But even with the redactions, certain unreasonable work is apparent.

A plaintiff should not recover attorneys' fees for work on claims as to which he or she did not prevail. *See Torres–Rivera,* 524 F.3d at 336 (**"the court may disallow time spent in litigating failed claims."**). KPM appears to be asking to be awarded every minute of time spent by its counsel over the multiple years of this case, regardless of whether that time was spent on a successful claim or motion. But several of KPM's claims were dismissed, including all claims against three original defendants. *See* ECF No. 64 (order dismissing all claims against Michelle Gajewski (seven counts), Gregory Israelson (eight counts), and Philip Ossowski (eight counts); dismissing breach

of noncompetition agreement claims and other against remaining Individual Defendants). Additionally, KPM does not appear to have removed from its request the time spent on its unsuccessful motion for contempt. *See* ECF No. 119 (order denying KPM's motion for contempt). Any time spent on claims against Mrs. Gajewski, Mr. Israelson, and Mr. Ossowksi, along with any time spent on KPM's motion for contempt, should not be counted towards the lodestar amount.

Neither should any fees be awarded for time spent by KPM's attorneys on "non-core" work. "We have said before — and today reaffirm — that, in general, clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." *Perez-Sosa*, 22 F.4th at 328. While attorneys may be compensated for clerical work, they need not be compensated at an attorney's full rate. *Gardner*, 963 F. Supp. 2d at 93.

It is not possible to determine all of the non-core work performed by KPM's attorneys (and for which KPM seeks to be reimbursed at attorneys' rates), but some can be identified notwithstanding the redactions. For instance, Attorney Zacharakis attended several depositions with Attorneys Gutkoski and/or Magee, at which she was responsible for simply loading the exhibits into the online deposition platform used by the parties. As an example, on July 8, 2021, KPM took the deposition of Luigi Faustini, during which Attorney Magee questioned Mr. Faustini and Attorney Zacharakis controlled the exhibits. But Attorney Zacharakis billed her time for that work at her normal attorney rate:



Such administrative work could have been done by a paralegal or other legal professional with a lower billing rate.

As another example, Attorney Gutkoski billed 9.2 hours on April 8, 2023 for "continue to assemble" something:



It is unclear what Attorney Gutkoski was assembling for more than nine hours, but assembling exhibits is a "non-core" task that should be billed at $675 per hour. Additional global reductions should be applied for non-core work billed at attorney rates. *See Davis v. Footbridge Eng'g Servs., LLC*, 2011 WL 3678928, at *5 (D. Mass. Aug. 22, 2011) (deducting 30% from the total amount awarded to account for the failure to make the distinction between core and non-core work).

Lastly, the lodestar amount should be globally reduced based on the unreasonable amount of time spent by KPM's counsel on various tasks. Redactions again make determining the reasonableness of the amount of time spent by KPM's counsel impossible. But the Court need look no further than the September 2022 invoice submitted by Attorney Gutkoski, in which he alone billed KPM for more than $107,000:



| Date | | | | Hours | Rate |
|------|---|---|---|-------|------|
| 09/01/2022 | JTG | ATTENTION TO | | 6.70 Hrs | 675.00 /hr |
| 09/02/2022 | JTG | ATTENTION TO | | 4.80 Hrs | 675.00 /hr |
| 09/06/2022 | JTG | WORK ON | | 9.60 Hrs | 675.00 /hr |
| 09/07/2022 | JTG | ATTENTION TO | | 10.20 Hrs | 675.00 /hr |
| 09/08/2022 | JTG | ATTENTION TO | | 9.10 Hrs | 675.00 /hr |
| 09/09/2022 | JTG | WORK ON | | 8.80 Hrs | 675.00 /hr |
| 09/10/2022 | JTG | REVIEW | | 8.30 Hrs | 675.00 /hr |
| 09/11/2022 | JTG | WORK ON | | 7.90 Hrs | 675.00 /hr |
| 09/12/2022 | JTG | DRAFT | | 9.80 Hrs | 675.00 /hr |
| 09/13/2022 | JTG | ATTENTION TO | | 8.70 Hrs | 675.00 /hr |
| 09/14/2022 | JTG | WORK ON | | 8.30 Hrs | 675.00 /hr |
| 09/15/2022 | JTG | | | 8.70 Hrs | 675.00 /hr |
| 09/16/2022 | JTG | | | 8.60 Hrs | 675.00 /hr |
| 09/17/2022 | JTG | REVISING | | 10.40 Hrs | 675.00 /hr |
| 09/18/2022 | JTG | REVISE AND FINALIZE | | 10.20 Hrs | 675.00 /hr |
| 09/19/2022 | JTG | FINALIZE AND WORK WITH | | 15.30 Hrs | 675.00 /hr |
| 09/21/2022 | JTG | ATTENTION TO | | 4.10 Hrs | 675.00 /hr |
| 09/27/2022 | JTG | ATTENTION TO | | 5.20 Hrs | 675.00 /hr |
| 09/28/2022 | JTG | STRATEGY DEVELOPMENT ON | | 4.90 Hrs | 675.00 /hr |

**TOTAL SERVICES:** $107,730.00

The only litigation activity that occurred in September 2022 included KPM's oppositions to a very limited motion for summary judgment by ITG (ECF Nos. 144, 156) and Defendants' motion to dissolve or modify the preliminary injunction (ECF Nos. 148, 157). Neither motion involved particularly complex issues of law or required substantial factual analysis. Yet Attorney Gutkoski alone billed nearly 160 hours, presumably on those two oppositions.[6] That amount of time is grossly excessive and unreasonable.

Also, in addition to the example above regarding Attorney Zacharakis's presence at nearly every KPM deposition to control the exhibits, KPM also brought four lawyers, one paralegal, and one trial software vendor to trial. Attorneys Zacharakis and Mosier attended all 10 days of trial, and despite the Court conducting half-day sessions, both attorneys billed for each entire day.

---

[6] This does not include the time that month spent by Attorneys Magee and Zacharakis.

Attorney Zacharakis questioned one witness for less than one hour and Attorney Mosier did not question any witnesses.[7]  While it is certainly up to KPM how to staff its case, it should not be allowed to saddle the Individual Defendants with the cost of having two attorneys and a paralegal bill for full days at a trial that they did not meaningfully participate in.  *See Grendel's Den*, 749 F.2d at 953 ("we see no justification for the presence of two top echelon attorneys at each proceeding"); *Esch*, 2020 WL 1905322, at *2 ("Covidien's records reflect overstaffing of both local and out of town attorneys, duplicative entries, inefficient use of junior attorneys, vague work descriptions and unreasonable hourly rates of support staff.  The Court will accordingly reduce the award of fees by $300,000"); *Joyce*, 2015 WL 13664120, at *2 (D. Mass. Sept. 17, 2015) ("it was unnecessary for five attorneys, two paralegals and a librarian to be involved in the appeal").

### C.    Any Fees Awarded Against The Individual Defendants Should Be Apportioned Based On Their Relative Liability To KPM.

In addition to the reasons for denying outright, or substantially reducing, KPM's excessive fee request, any fee award to KPM against the Individual Defendants should be reduced due to the lesser amount of harm the jury found that the Individual Defendants caused KPM, and the amount should be apportioned based the percentage of harm caused by each Individual Defendant.  In considering whether time was reasonably expended, the Court may consider, among other things, the amount of damages involved and the result obtained.  *See Esch*, 2020 WL 1905322, at *3-4. Here, the jury found that the Individual Defendants collectively caused KPM $95,000 in damages.[8] A damages award of less than $100,000 does not justify a nearly $4 million fee and cost award.

---

[7] Attorneys Zacharakis and Mosier also read two deposition transcripts into the record during trial.

[8] If the Court agrees that the jury double-counted the harm caused by the Individual Defendants, the total amount of damages would be reduced to $47,500.

Moreover, any amount awarded to KPM should be apportioned to each Individual Defendant based on the amount of damage each Individual Defendant caused. The First Circuit has explained that

> Where the plaintiffs have prevailed over more than one defendant, the court must take an additional step: it must determine whether the fee award should run jointly and severally against the defendants or, if not, what portion of the award each defendant should bear. In cases in which apportionment is the preferred option, there is no uniform prescription as to how to effect that result. Rather, a district court in a multi-defendant case must choose among a variety of modalities. These modalities include equal division among the defendants, division by relative liability, and division by assignment of the time reasonably expended in litigating against each defendant. The appropriate choice among these modalities depends on the contours and idiosyncrasies of the particular case. The guiding principle is equity; the district court should strive to determine the most fair and sensible solution for apportioning the fee award.

*Torres-Rivera*, 524 F.3d at 337.

Here, given the large disparity in the damages amounts the jury found with respect to the Individual Defendants and the Entity Defendants, the most fair and sensible solution for apportioning any fee award would be division by relative liability. The total amount of damages the jury awarded against all Defendants was $4,885,000.[9] The jury found that Mr. Eilert was liable to KPM for $5,000 in damages, which represents 0.1% of the total damages awarded by the jury (5,000/4,885,000 = 0.00102); Mr. Gajewski was liable for 0.6% of the total damages (30,000/4,885,000 = 0.00614); Ms. Glenister was liable for 0.4% of the total damages (20,000/4,885,000 = 0.00409); and Mr. Lucas was liable for 0.8% of the total damages (40,000/4,885,000 = 0.00818). Piling on an additional hundreds of thousands, or millions of dollars in legal fees on top of the *de minimis* damages award against the Individual Defendants would be inequitable. *See Dixon v. Int'l Broth. of Police Officers*, 434 F. Supp. 2d 73, 90 (D.

---

[9] This again presumes no reduction for double-counting of damages or other reductions by the Court.

Mass. 2006) (apportioning only one percent of attorneys' fee award against defendant who had a "relatively small damage assessed against" him); *Grendel's Den*, 749 F.2d at 960 (assessing 25% of fee award to defendant).

The Court should also "consider the relative ability of each of [the] defendants to pay the fees." *Grendel's Den*, 749 F.2d at 960; *Charves v. Western Union Telegraph Co*, 711 F.2d 462, 465 (1st Cir. 1983) (fee award may be reduced dependent upon the party's ability to pay). Evidence at trial showed that each of the Individual Defendants earns a modest salary from Blue Sun, and none of them could possibly pay a six or seven-figure fee award. This factor further weighs in favor of apportioning any fee award against the Individual Defendants based on each Individual Defendant's relative liability.

## CONCLUSION

For the foregoing reasons, the Individual Defendants request that KPM's motion for attorneys' fees be denied. Alternatively, if any fees are awarded, the amount should be substantially less than the $4 million sought by KPM and the amount should be apportioned among the Defendants based on their respective percent of liability to KPM.

Respectfully submitted,

ARNOLD EILERT, ROBERT GAJEWSKI,
RACHAEL GLENISTER, AND IRVIN
LUCAS

_____

William L. Prickett (BBO #555341)
wprickett@seyfarth.com
Dawn Mertineit (BBO # 669988)
dmertineit@seyfarth.com
Dallin R. Wilson (BBO #676662)
drwilson@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Tel: (617) 946-4800

Dated: July 12, 2023

### CERTIFICATE OF SERVICE

I hereby certify that this document filed
through the CM/ECF system will be sent
electronically to the registered participants as
identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those
indicated as non-registered participants on
July 12, 2023.

_____
        Dallin R. Wilson