# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

KPM ANALYTICS NORTH AMERICA
CORPORATION,

*Plaintiff.*

v.

BLUE SUN SCIENTIFIC, LLC, THE
INNOVATIVE TECHNOLOGIES GROUP &
CO., LTD., ARNOLD EILERT, MICHELLE
GAJEWSKI, ROBERT GAJEWSKI,
RACHAEL GLENISTER, GREGORY
ISRAELSON, IRVIN LUCAS, AND PHILIP
OSSOWSKI,

*Defendants.*

Civil Action No. 21-10572-MRG

Leave to File Granted May 31, 2023,
ECF No. 246.

## PLAINTIFF KPM ANALYTICS NORTH AMERICA CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF ON ITS CHAPTER 93A COUNT AND FOR PREJUDGMENT INTEREST ON ALL COUNTS

Plaintiff KPM Analytics North America Corporation ("KPM") is entitled to full relief under Chapter 93A as set forth in its opening brief. Defendants Innovative Technologies Group & Co., Ltd. ("ITG") and Blue Sun Scientific, LLC ("Blue Sun," and collectively with ITG, the "Entity Defendants") fail to meet their burden of showing that their unfair or deceptive trade practices, which they do not contend were either fair or honest, did not occur primarily and substantially in Massachusetts, as Courts have applied that statutory affirmative defense. The

1

Entity Defendants' argument that KPM's Chapter 93A claims are preempted by the Massachusetts Trade Secret Act, Mass. Gen. L. c. 93, § 42 et seq., ignores the language of the statute, the prevailing case law applying the statute, and the scope of the claims in this case, and it should be rejected.  The actual damages found by the Jury on counts other than the Chapter 93A claim are properly supported as the single damages component of the Chapter 93A count as well.  Nothing in the Defendants' opposition gives a legitimate basis to deny treble damages against ITG, or to ignore the Defendants' violations of the preliminary injunction as an additional basis for further Chapter 93A damages, or to depart from the well-established First Circuit rule that prejudgment interest in a diversity case like this should be assessed at the Massachusetts interest rate on all of the damages assessed by the Jury.

## ARGUMENT

### A.  The Entity Defendants Fail to Satisfy Their Burden of Showing that Their Unfair or Deceptive Acts Did Not Occur Primarily and Substantially in Massachusetts Particularly Given Detailed Trial Evidence that They Did.

ITG and Blue Sun bear the burden to show that the unfair or deceptive acts, which the Jury found they engaged in, did not occur primarily and substantially in Massachusetts.  Mass. Gen. L. c. 93A, § 11 para. 8 ("For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.").  The SJC has adopted the center of gravity test that is factually intensive and does not rely on any single fact as dispositive in determining whether a defendant has met its burden of showing, by the preponderance of the evidence, that the center of gravity of the conduct was not Massachusetts.  *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 472-73 (2003).  The Defendants have failed to meet this burden, instead citing case law where the facts connecting the conduct to Massachusetts are nearly non-existent, unlike this case, where the Defendants (and the individuals acting for them) were directly engaged in destroying KPM's

Massachusetts-oriented business, stealing trade secrets and other KPM property from Massachusetts, by using Massachusetts-based databases and means of communication, and tortiously interfering with Massachusetts contracts, all resulting in losses exclusively in Massachusetts.

Judge Sorokin summarized the standard to be applied in determining whether the Entity Defendants have met their burden of proof:

> The Supreme Judicial Court has concluded that "the analysis required under § 11 should not be based on a test identified by any particular factor or factors." *Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 438 Mass. 459, 473 (2003). Instead, "a judge should ... determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." Id. Though this inquiry is "necessarily ... fact intensive and unique to each case," as "significant factors that can be identified for one case may be nonexistent in another," the Supreme Judicial Court has also acknowledged that factors such as "where the defendant commit[ed] the unfair or deceptive act ... where the plaintiff receive[d] or act[ed] on the wrongful conduct ... [and] where the plaintiff sustained losses caused by the wrongful conduct," etc. can still guide the inquiry. *Id.* at 472-73, fn. 13 (citing *Play Time, Inc.*, 123 F.3d at 33 and *Roche v. Royal Bank of Canada*, 109 F.3d 820, 829 (1st Cir. 1997)); *see also Uncle Henry's Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 45 (1st Cir. 2005)(noting "the *Kuwaiti Danish* court certainly did not hold or imply that the factors identified by the district court (derived from our *Roche* decision) are irrelevant to the 93A calculus"). No one fact or set of factors is determinative, however. *Kuwaiti Danish*, 438 Mass. at 473.

*TLT Constr. Corp. v. RI, Inc.*, No. CV 05-10223-LTS, 2006 WL 8458259, at *1 (D. Mass. Mar. 28, 2006).

Attempting to downplay the extensive evidence at the jury trial connecting their misconduct to Massachusetts, the Entity Defendants wrongly ignore significant facts. The situs of the loss is one factor that Courts consider. *Auto Shine Car Wash Sys., Inc. v. Nice 'N Clean Car Wash, Inc.*, 58 Mass. App. Ct. 685, 689 (2003) (quoting *Kuwaiti Danish*, 438 Mass. at 472 n. 13). There is no question here that the extensive losses to KPM occurred where it and its Near Infra-Red business unit Unity Scientific are located in Westborough, Massachusetts. Day 3, 13:2-13.

The misconduct that Blue Sun, ITG, and their agents engaged in also occurred in or through Massachusetts, or would not have occurred but for their consistent and repeated interactions with Massachusetts.[1] There is no dispute that, at all relevant times during their employment with KPM, the Individual Defendants and even non-defendants who were used by Blue Sun/ITG were employees of KPM as a Massachusetts entity that was headquartered in Massachusetts. And their employment was directed from Massachusetts. For example, Rob Gajewski's performance review, Tr. Ex. 716, introduced by Defendants, Day 7, 84:4-14, identifies Ron Geis as his managing reviewer. Mr. Geis was based in Massachusetts. Day 2, 64:7-14. The Employee Handbook governing the obligations of each of the former KPM employees who worked for Blue Sun and/or ITG, including not only the individual defendants but also others poached by or working on behalf of Blue Sun and ITG (Greg Israelson, Michelle Gajewski, Bill Brown) was published at 113 Cedar Street, Milford, MA. Tr. Ex. 332.

Blue Sun and ITG, through each of the four Individual Defendants and some non-defendants, including Michelle Gajewski, utilized goods and information available only from Massachusetts and which required their interaction with Massachusetts. The Spectrastar analyzers that Gajewski and Eilert serviced, and which Irvin and Glenister sold, were manufactured in Massachusetts. Day 3:14:24-15:2. Blue Sun repeatedly and publicly stated that it was the original manufacturer of the Spectrastars, deceptively placing themselves squarely in Massachusetts. Tr. Ex. 76, 311, 470. The sales operation to sell the Spectrastars is and always was based in Massachusetts. Day 3, 15:3-5. All of the efforts of ITG and its sales arm Blue Sun to sell Phoenix

---

[1] From the beginning of ITG launching the Blue Sun venture, eventual Blue Sun employees were taking steps in Massachusetts to establish the competing company to poach KPM employees and customers. Doug Evans and Greg Israelson, who eventually went to Blue Sun and supported the competing company, approached Bob Schumann about the new venture as early as 2019 in a meeting in Milford, Massachusetts. Day 2, 28:16-29:15.

4861-2621-6306, v. 2

analyzers by making misrepresentations and by developing a service-to-sales scheme explained in KPM's opening brief (pp. 10-12) were directly diverting Massachusetts revenue and interfering with KPM's Massachusetts sales and manufacturing.

The UCAL software used improperly by Gajewski and Eilert on behalf of Blue Sun is only available from KPM, which is located in Massachusetts.  Day 3, 22:10-11; Tr. Exs. 133 (UCAL based in Milford, Massachusetts), 140 (same), 771 (UCAL maintained in Westborough, Massachusetts); *see also* Tr. Ex. 65 (Eilert improperly using UCAL for Blue Sun); 155 (same); 192 (Gajewski improperly using UCAL for Blue Sun), 201 (same).  The Software License Agreement protecting the UCAL software that was misused by Eilert and Gajewski is based in, governed by, and has a jurisdiction selection clause in Massachusetts.  Day 3, 20:15-22:19; Tr. Ex. 370 (license agreement).  The Application Notes that Gajewski created using the Massachusetts-based UCAL and provided to Blue Sun were based on datasets maintained in Massachusetts.  Day 2, 23:13-24:2; Day 3, 13:2-13; 26:11-14; 130:12-19.  And those datasets were to be returned to KPM and its Massachusetts-based repository even when used for legitimate purposes.  Day 3, 130:12-19. Gajewski's copying of KPM's preventative maintenance checklists that assisted Blue Sun and ITG in poaching KPM customers through underhanded means likewise copied the Massachusetts-based PM checklists maintained by KPM there.  *See* Tr. Ex. 110.  Thus, Blue Sun's theft of KPM's datasets and UCAL for use in its sales and marketing was directly a theft from Massachusetts.

The unfair or deceptive conduct proven at trial included significant efforts, often successful, by Blue Sun, ITG, and their agents to destroy relationships between KPM customers doing business in or through Massachusetts.  The Entity Defendants cannot simply avoid the importance of this, as "'although the defendant['s] behavior originated out of state, it was intended

5

to that plaintiff's behavior be influenced in Massachusetts.'" *TLT Constr. Corp. v. RI, Inc.*, No. CV 05-10223-LTS, 2006 WL 8458259, at *2 (D. Mass. Mar. 28, 2006) (quoting *Charles River Data Systems, Inc. v. Oracle Complex Systems Corp.*, 788 F. Supp. 54, 61 (D. Mass. 1991) (alterations in original).   Each of the customer relationships that were the target of Defendants' unfair or deceptive conduct was a relationship with Massachusetts that was governed by Massachusetts law. Substantial evidence demonstrates that the sales with which Blue Sun and its employees interfered were explicitly run out of "113 Cedar Street S-3, Milford, MA."  For example, when Rob Gajewski diverted customers on behalf of Blue Sun, those poached quotes were from Milford, MA.  *See* Tr. Ex. 115 (quotes from Unity in Milford, MA to Lamb Weston).  Lamb Weston, like every other KPM customer, was doing business directly with KPM/Unity in Massachusetts and agreeing that any litigation under its quotes would be in Massachusetts pursuant to Massachusetts law.  *E.g.*, Tr. Ex. 115 at GAJEWSKI_000325, 329, 333, 337, 341, 345.  The same is true of Defendant Glenister and her actions to poach KPM customers from Massachusetts relationships.  Tr. Ex. 338 (Quote to R&R Machine Works from Milford, MA); Tr. Ex. 738 (demo system from Milford, MA to Mariani Packing Co.by Glenister); Tr. Ex. 110 at GAJEWSKI_002078, 2081 (showing Junbunzlauer's relationship with Milford, MA).   Blue Sun also falsely told customers that KPM no longer serviced Spectrastar instruments, deliberately targeting KPM in Massachusetts and its customer relationships fostered from there.  Day 3, 55:10-15; Tr. Exs. 324, 471.  This tortiously and deceptively interfered with the preventative maintenance service, calibration, and repair services from KPM in Massachusetts.  Each of the customer relationships, therefore, which Blue

4861-2621-6306, v. 2

Sun and ITG destroyed resulting in lost sales to KPM was the destruction of a relationship explicitly and directly connected to Massachusetts.[2]

While engaging in all of the nefarious conduct detailed in KPM's opening brief – the unfairness of which the Entity Defendants do not contest – the Blue Sun/ITG agents or employees who were formerly or simultaneously at KPM regularly communicated with or through KPM and its servers in Massachusetts.  KPM maintains the core of its operations, including databases, email servers, and customer lists and data in Massachusetts.[3] Day 3, 13:2-13. Indeed, there is no dispute that Rob Gajewski's computer, which was provided by KPM from Massachusetts and improperly used by him for Blue Sun purposes during that employment with KPM was connected to the KPM network in Massachusetts from where Eric Olson was able to view Gajewski's nefarious activity. Day 3, Tr. 113:9-19; 129:15-19; Tr. Ex. 94.  To update calibrations, which he did on behalf of Blue Sun, Gajewski used KPM's confidential databases.  Day 4, 124:18-125:11.  Those confidential databases are maintained at KPM in Massachusetts.  Day 2, 23:13-24:2; Day 3, 13:2-13; 26:11-14; 130:12-19.  And the KPM employees obtained the calibration data from the central server and uploaded new data to that centralized server.  Day 3, 130:12-19.  All of the data that Rob Gajewski and Arnold Eilert used on behalf of Blue Sun necessarily came from this centralized database.  ECF No. 253 at 9.  And, as explained in KPM's brief, the record is replete with misuse of this data.  ECF No. 253 at 9-10.  Rob Gajewski and others at Blue Sun also regularly conspired

---

[2] The same was true of the Defendants' efforts to explicitly "poach" the KPM/Unity employees, which, as noted, were all employed by a Massachusetts company.  Tr. Exs. 4, 175.

[3] *Cf Skyhook Wireless, Inc. v. Google, Inc*., 86 Mass. App. Ct. 611, 623 (2014) (explaining that the acts occurred outside Massachusetts where "[a]ll … communications, both physical and electronic, occurred outside the Commonwealth.")  In contrast, here, all of the electronic communications used by both Gajewskis when they were working on behalf of Blue Sun and KPM simultaneously that used KPM's emails or data were housed in and occurred in Massachusetts.

with his wife Michelle on behalf of Blue Sun to redirect emails sent to Massachusetts-based KPM accounts to Rob's Blue Sun account(s) for the purpose of nefariously diverting business and stealing servicing revenue.  Tr. Exs. 11, 102, 112, 114, 480.  Rachael Glenister, acting on behalf of Blue Sun, sent emails from her Massachusetts-based KPM/Unity account to her personal email. Tr. Ex. 167.  Blue Sun, through counsel, also misrepresented to KPM in Massachusetts that Glenister was not using any of KPM's confidential information when it affirmatively sent a letter to KPM's counsel in Massachusetts.  Tr. Ex. 453.  Blue Sun used Michelle Gajewski, while she was employed at KPM, to use her Massachusetts-based KPM/Unity email address to obtain UPS notifications for products that Blue Sun was unlawfully diverting from KPM to Blue Sun.  Tr. Ex. 145.  While acting for Blue Sun's benefit, Defendants Eilert and Gajewski used their Massachusetts-based KPM email addresses to lie to Bob Schumann about the existence of Blue Sun while Rob Gajewski was simultaneously working for Blue Sun and Eilert had been actively assisting Blue Sun.  Tr. Exs. 153, 481, 482; see also ECF No. 253 at 7-10.  Greg Israelson also acted on behalf of Blue Sun using his KPM email address.  Tr. Exs. 478, 720.  In short, through email and through connection to the servers, KPM's employees, regardless of physical location at any given moment, were perpetually connected to KPM's central location in Massachusetts.

Even after the lawsuit was filed, Blue Sun made misrepresentations to KPM in Massachusetts using means of communications based in Massachusetts and in communications directed to Massachusetts.  The Gajewskis communicated with KPM in the Westborough office. Day 3, 119:16-23.  Upon termination, KPM wrote from Milford, Massachusetts to Gajewski demanding return of all company property.  Tr. Ex. 95.  Acting on Blue Sun's behalf and for the benefit of Blue Sun and ITG, Gajewski nevertheless rejected that demand, returning two hard drives but retaining the valuable Lexar thumb drive and the KPM data on it.  Day 3, 121:3-24.

Unlike "run of the mill" trade secret and tortious interference cases, here the Individual Defendants who were acting on behalf of Blue Sun, as well as Michelle Gajewski, started and for months or years continued their misconduct while still working for the Massachusetts company KPM, kept taking paychecks issued from the Massachusetts company KPM, and kept taking benefits provided by a Massachusetts company.

In short, the center of gravity of the unfair or deceptive conduct by the Entity Defendants and their agents was in Massachusetts. The KPM-customer relationships they destroyed were all Massachusetts-oriented relationships, the data that the Entity Defendants stole from KPM all originated in Massachusetts, a large number of the communications – particularly electronic communications – that included falsehoods and diversion of business occurred in or through Massachusetts, and all of the harm was felt in Massachusetts.

### B. The MUTSA Does Not Pre-empt Chapter 93A.

The MUTSA does not preempt the application of Chapter 93A. Mass. Gen. L. c. 93, § 42F(a), on which Defendants rely, is limited, and states, "Except as provided in subsection (b), sections 42 to 42G, inclusive, shall supersede any conflicting laws of the commonwealth providing civil remedies for the misappropriation of a trade secret."

KPM has found no court decision interpreting this language to render Chapter 93A inapplicable in trade secret cases. And Defendants have cited none. To the contrary, since the MUTSA was enacted on October 1, 2018, courts in the Commonwealth have issued rulings allowing Chapter 93A claims to proceed where the unfair or deceptive conduct was based on a misappropriation of trade secrets. *See, e.g., Milliman, Inc. v. Gradient A.I. Corp.*, -- F.Supp.3d -- , 2023 WL 320064, *5 (D.Mass. 2023); *Neural Magic, Inc. v. Facebook, Inc.*, 2020 WL 13538627, *3 (D.Mass. Oct. 29, 2020). That makes sense, given that the statute only supersedes "any ***conflicting*** laws of the commonwealth." (emphasis added). A "conflict" is explicitly required for

9

Section 42F(a) to apply.  And there is nothing in the elements of the broad, remedial statute Chapter 93A that *conflicts* with the MUTSA, nor have the Defendants identified any.  At most, Chapter 93A supplements the remedies in the MUTSA.  Under traditional conflict preemption analysis, to find a *conflict* that leads to preemption it is necessary that there is a "physical impossibility" as a barrier to complying with both.  *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). If the legislature had intended to effect a broader preemption that did not require an actual conflict, it could have, and presumably would have, said so explicitly.  The MUTSA does not say that it is the "exclusive" remedy for circumstances where a defendant has engaged in conduct that involved misappropriation of trade secrets.

Beyond that failure by the Defendants to identify any conflict, the statute then imposes a significant caveat: "(b) Sections 42 to 42G, inclusive, do not affect: … (3) other civil remedies to the extent that they are not based upon misappropriation of a trade secret…."  Another Court in this District properly concluded that even where some allegations of misappropriation of trade secrets are present, there is no preemption where the other civil remedies have different elements than the MUTSA; those other claims are not barred by Section 42F.  *Neural Magic*, 2020 WL 13538627 at *3.  In that case, the Court refused to dismiss Chapter 93A, tortious interference and unjust enrichment claims that were premised, in part, on theft of confidential or proprietary information that did not constitute a trade secret within the definition of the MUTSA, paralleling the claims here.

The response to Defendants' argument with respect to ITG is easy: the Chapter 93A claim against ITG is not intended to provide a civil remedy for misappropriation of trade secrets.  The Jury found that ITG did not misappropriate any of KPM's trade secrets.  ECF No. 230, Question 3.  And as explained in KPM's opening brief, ITG engaged in unfair or deceptive trade practices

through its tortious interference with contracts and other independent knowing and willful misconduct, ECF No. 253 at 2-6, as well as by participating in the violation of the Preliminary Injunction.  ECF No. 253 at 13-15.

The conduct by Blue Sun underlying the Chapter 93A claim is also not solely premised on the misappropriation of trade secrets. The jury found that Blue Sun, like ITG, engaged in tortious interference with contractual relations.  Moreover, there is copious evidence of lying by Blue Sun, ITG, and their employees to customers and to KPM.  *See* ECF No. 253 at 6-8 (unlawfully diverting customers), 8 (copying KPM data for use by Blue Sun and ITG, whether confidential or not), 10 (copying preventative maintenance checklists), 10-11 (telling falsehoods to customers to interfere with their relationships with KPM), 11-12 (wrongfully diverting service revenue), 12 (using pseudonymous email addresses), 12-13 (publishing KPM's data as Blue Sun's data to attract customers).  In short, nothing in the MUTSA preempts Chapter 93A and no case law says it does. And even if preemption applied in some cases, it would not here because KPM seeks civil remedies under Chapter 93A against both ITG and Blue Sun that are not based on the misappropriation of trade secrets.

## C.  KPM's Damages Claim Is Legitimate and Supported By the Evidence.

KPM is entitled to the damages it seeks in its opening brief.  As an initial matter, to the extent that the Entity Defendants contend that KPM is seeking to stack the non-exemplary portion of its Chapter 93A damages on top of the existing damages for misappropriation of trade secret or tortious interference damages awarded by the Jury, that is not correct.  Assuming that there is no remittitur, KPM will be entitled to recovery only once for the $1.5 million assessed against Blue Sun and only once for the $1.8 million assessed against ITG.  KPM is entitled, however, to trebling of those actual damages.

11

The Entity Defendants' challenge to the $1.5 million against Blue Sun and $1.8 million against ITG for Chapter 93A damages as a base for the trebling, however, is incorrect. The gravamen of the Entity Defendants' argument is that the Jury awarded unjust enrichment damages, rather than lost profits damages, and that only lost profits damages can be damages under Chapter 93A. That argument fails for two reasons. First, nothing in the Jury verdict specifically identifies or categorizes the damages as unjust enrichment damages. *See* ECF No. 230. Second, the plain language of Chapter 93A allows for unjust enrichment damages as "equitable relief." The statute states that "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful…may… bring an action … ***for damages and such equitable relief***, including an injunction, as the court deems to be necessary and proper." Mass. Gen. L. c. 93A, § 11 para. 1. Even though unjust enrichment damages are equitable in nature, that is expressly permitted by the statute.

Two cases demonstrate that unjust enrichment of defendants' ill-gotten gains can and should serve as the basis for actual damages under Chapter 93A. In *Tashjian v. CVS Pharmacy, Inc.*, 2020 WL 1931859, *9-*10 (D.Mass. Mar. 13, 2020), Magistrate Judge Hennessey concluded that a plaintiff was entitled to Chapter 93A damages in the form of disgorgement of CVS's profits where the plaintiff had failed to show other forms of actual damages. Judge Hillman adopted Judge Hennessey's report and recommendation in full. *Tashjian v. CVS Pharmacy, Inc.*, 2020 WL 2048456 (D.Mass. Mar. 30, 2020). The Court in *Tashijian* relied heavily on Chief Justice Gants' analysis of the same issue in *Kelley v. CVS Pharmacy, Inc.*, 2007 WL 2781163, *11-*15 (Mass. Super. Ct. Aug. 24, 2007). In *Kelley*, Chief Justice Gants held that a plaintiff was entitled to

disgorgement of defendant's profits from the alleged unfair and deceptive acts as a measure of actual damages. He specifically equated the analysis applicable there to one in which a plaintiff is the victim of a business tort, including those that the Jury found ITG and Blue Sun engaged in here. As Chief Justice Gants explained, "In cases involving so-called 'business torts,' such as the misappropriation of trade secrets, trademark infringement, and tortious interference with contractual relations, the measure of damages 'entitles a plaintiff to recover full compensation for his lost profits and requires a defendant to surrender the profits which he realized from his tortious conduct.'" *Id.* at *13 (quoting *Jet Spray Cooler, Inc. v.. Crampton,* 377 Mass. 159, 169-170 (1979)). After explaining that the common law rule of disgorgement to prevent a "wrongdoer to profit from his wrongdoing" should apply in equal force to Chapter 93A violations,[4] he reasoned that "[c]ertainly, once the conduct at issue is determined to be unfair or deceptive, it would make no sense to allow the defendants to keep the profits they reaped from such conduct and provide a financial incentive for such unfair and deceptive conduct to continue." *Id.* at *14. If ITG and Blue Sun are permitted to avoid the full amount of actual damages Judges Hennessey, Hillman and Gants concluded were appropriate to deter unfair or deceptive conduct, ITG, Blue Sun, and any other similarly situated defendant may have, in Chief Justice Gants' words, a "financial incentive for such unfair and deceptive conduct to continue." *Id.*

Even if the Entity Defendants are correct that only lost profits are an appropriate measure of actual damages, KPM is entitled, at a minimum, of $918,520 in lost profit damages that are supported by the record and which should form the basis for the trebling of damages against ITG and Blue Sun. The Entity Defendants admit as much. ECF No. 264 at 9 ("if the Court finds that

---

[4] Although Chief Justice Gants was applying the principle in a Section 9 case, both Sections 9 and 11 allow for "actual damages," and the remedial purpose of the statute in deterring wrongdoing is the same under both sections.

any award of exemplary damages under 93A is proper, $918,520 is the maximum baseline measure of actual damages supported by KPM's evidence.").

### D.  Treble Damages Against ITG Are Warranted.

ITG's argument that it should not be subjected to treble damages asks this Court to ignore the findings made by the Jury without giving any legitimate justification for doing so.  Upon a finding that ITG engaged in willful *or* knowing violation of Chapter 93A's prohibition on unfair or deceptive trade practices, or unfair methods of competition, exemplary damages are mandatory. Mass. Gen. L. c. 93A, § 11, para. 5 ("recovery *shall* be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two.") (emphasis added).  The Jury found that ITG engaged in unfair or deceptive trade practices, or unfair methods of competition, and did so knowingly.  ECF No. 230, Questions 14 & 15.  As explained in its opening brief, the Jury's conclusion was supported by the trial record.  ECF No. 253 at 3-6.  The Entity Defendants' response is simply to suggest that Mr. Wilt at most "should have known" of the nefarious conduct and that he did not have actual knowledge, despite the Jury's express finding that ITG itself had that knowledge.  ECF No. 230, Questions 14 & 15.  Their reliance on *Kraft Power Corp. v. Merrill*, 464 Mass. 145, 157-58 (2013) is misplaced.  In *Kraft Power*, the SJC refused to impose multiple damages because the defendant had died, making the punitive and deterrent benefits of exemplary damages moot.  *Id.  Cambridge Plating Company, Inc. v. Napco, Inc.*, also cited by the Entity Defendants, is likewise a poor analogy to this case.  85 F.3d 752, 771 (1st Cir. 1996).  In that case, although the defendant knew of a problem with a machine had arisen, it failed to disclose it "hoping that it would somehow resolve itself."  *Id.* at 771.  Unlike those cases, here, ITG (and its owner and principal Mr. Wilt) continue to exist.  And as set forth in KPM's opening brief, Mr. Wilt purposefully avoided asking Mr. Lucas about any

4861-2621-6306, v. 2

obligations he or others had to KPM, and this Court should conclude that he did so for the sole purpose of avoiding liability should ITG or Blue Sun get caught poaching KPM's information or customers through nefarious means, which they did from the beginning of Blue Sun's existence.

Even if that were true as to some of the conduct presented to the Jury was somehow not knowing or not willfully blind, the Entity Defendants do not dispute, nor could they, that Mr. Wilt was fully willful and knowing in refusing to put an end to Blue Sun's and ITG's unfair and deceptive conduct when the lawsuit was filed, when he did nothing. ECF No. 253 at 6. That in itself warrants treble damages.

The Entity Defendants' final attempt to avoid additional liability is the peculiar argument that a treble damages award would be too hard for them to pay given their current revenues. That is not a legitimate basis for refusing to impose the exemplary damages called for by the Jury's verdict. "[M]ultiple damages under c. 93A serve the twin goals of punishment and deterrence." *H1 Lincoln, Inc. v. South Washington Street, LLC*, 489 Mass. 1, 25 (2022) (internal quotations omitted). If this Court disregards the Jury's findings, there is no reason to think that ITG, Mr. Wilt, or any other of the defendants will be adequately deterred from engaging in the same sort of nefarious conduct in their next business venture. ITG (and its owner and principal Mr. Wilt) continue to exist and have shown a history of starting new businesses. Day 8, 59:2-3; 83:13-17; 96:4-13. Rewarding the Defendants' pleas for mercy merely because they got caught and cannot pay will only encourage further wrongful conduct in the future that exemplary damages under Chapter 93A is intended to prevent.

### E. The Violations of the Preliminary Injunction Are An Additional Basis for Chapter 93A Liability.

The Entity Defendants' challenge the additional Chapter 93A liability arising out of their violations of the preliminary injunction on several weak bases, all of which should be rejected.

15

First, they provide no authority to contest that a violation of an injunction can constitute an unfair and deceptive business practice under Chapter 93A, as the Massachusetts Appeals Court has found. *See* ECF No. 253 at 13 (citing *Auto Placement Center, Inc. v. Clemmey's, Inc.*, 2001 WL 881685, *1 (Mass. App. Ct. Aug. 6, 2001).  They cite no contrary authority because there is no contrary authority.  At most they challenge the persuasiveness of the decision cited by KPM solely on the basis that it was a Rule 1:28 decision, but they never challenge the actual content or merits of that decision.  The Entity Defendants' attempt to dismiss the Appeals Court ruling should be rejected.

They then suggest, falsely, that the allegations concerning the Entity Defendants' violation of the preliminary injunction "have not been litigated and cannot constitute proper evidence or proof of additional Chapter 93A damages."  That is false for several reasons.  As both KPM's brief and the Defendants' brief makes clear by citing extensive trial testimony, the issue of sales to Idahoan and R&R Machine were in fact litigated.  *See* ECF No. 253 at 14-15 (KPM citing trial testimony of Eric Olson and Defendants Lucas and Glenister and trial exhibits); ECF No. 264 at 13 (Defendants citing trial testimony of Defendant Glenister and trial exhibits).

The Entity Defendants' attempt to challenge the merits of their violation of the preliminary injunction, fares no better.  They file a declaration of Irvin Lucas that contradicts his own testimony, despite having had two opportunities to examine him at trial about the merits of the Entity Defendants' conduct.  KPM addresses the merits of the Entity Defendants' belated attempt to avoid additional liability based on their violations of the preliminary injunction in its reply brief in support of a permanent injunction.  *See* KPM Reply Mem. in Further Supp. Of Its Motion for Entry of Perm. Inj. at 5-7 (to be filed July 26, 2023).  KPM respectfully incorporates by reference those arguments here where they establish additional bases for 93A treble damages.

**F.  Attorneys' Fees and Costs.**

The Entity Defendants' challenge to KPM's entitlement to its reasonable attorneys' fees and costs – which is mandatory upon a finding of Chapter 93A liability – is threefold and easily dispensed with.  First, the Entity Defendants' claim that Chapter 93A is preempted by the MUTSA is simply false, for the reasons set forth above.  *See* Section B, *supra*.  Second, without any citation, they claim that "an award of fees and costs under Chapter 93A should generally include an amount only for those fees and costs that were incurred in connection with the Chapter 93A portion of the case."  Opp'n at 15.  The absence of any citation from the Entity Defendants is explained by the fact that their argument is simply false.  *See Haddad Motor Grp., Inc. v. Karp, Ackerman, Skabowski & Hogan, P.C.*, 603 F.3d 1, 10 (1st Cir. 2010) (no apportionment necessary between 93A and non-93A claims when each concern the same facts and injury); *Incase, Inc. v. Timex Corp.*, 421 F. Supp. 2d 226, 244 (D. Mass. 2006), *aff'd*, 488 F.3d 46 (1st Cir. 2007) (same); *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 430-31 (2005) (same, noting that "the legal effort to establish the two classes of claims were virtually the same.").  Third, and finally, the Entity Defendants attack the fee petition.  All of those issues are addressed in KPM's briefing justifying its attorneys' fees and costs, and rather than reiterate those arguments here, KPM incorporates by reference those arguments.  *See* ECF Nos. 259, KPM Reply Brief to be filed July 26, 2023.

**G.  Prejudgment Interest**

KPM is entitled to the prejudgment interest it seeks on all single damages.  The main thrust of the Entity Defendants' argument is that prejudgment interest should only be awarded on KPM's lost damages (i.e. lost use of money) and not on any unjust enrichment damages.  They then argue that the lower federal prejudgment interest rate and not the Massachusetts rate should apply.  None of those arguments are persuasive.

17

First, nothing in the Jury Verdict identified how the Jury calculated the damages and whether the manner of calculation was based on a lost profits theory or unjust enrichment theory. It is well established that "[t]he jury is free to select the highest figure for which there is adequate evidentiary support." *Harding v. Cianbro Corp.*, 498 F. Supp. 2d 344, 363 (1st Cir. 2007) (internal quotations omitted).  Although the Entity Defendants point to KPM's expert as setting a maximum on the lost profits damages, that is not how a Jury Verdict is to be interpreted.  Rather, the Jury is free to make its own determination and is not bound to follow the suggestions or calculations of KPM's expert. *See Azimi v. Jordan's Meats, Inc*., 456 F.3d 228, 236 (1st Cir. 2006), ("[T]ranslating legal damage into money damages…is a matter peculiarly within a jury's ken.")

Second, as with the Chapter 93A claim, where the Entity Defendants challenge the actual damages calculation offered by KPM, they concede that there is evidentiary support for a lost profits damages award of $918,520.  ECF No. 264 at 17.  There was no contrary evidence.  Thus, there is no dispute that KPM had lost profits of at least that amount and that KPM was deprived of that money, for which prejudgment interest is appropriate.

Citing a Second Circuit case, the Entity Defendants argue that the Court should apply the "current benchmark federal interest rate 5-5.25%."  That case is inapplicable here, where the First Circuit has explained, much more recently, that "substantive state law governs the prejudgment interest award in diversity actions."  *ITyX Solutions AG v. Kodak Alaris, Inc*., 952 F.3d 1, 13 (1st Cir. 2020).  All but one of KPM's claims are based on diversity jurisdiction in this Court.  ECF No. 1, ¶ 14 ("This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000").  Moreover, even on its own terms, the Second Circuit case cited by the Entity Defendants fails.  In that case, the jury awarded damages to the plaintiff for both

18

federal and state claims "without distinguishing between the two." *Thomas v. iStar Financial, Inc.*, 652 F.3d 141, 150 (2d Cir. 2011).  Here, of course, the Jury did distinguish between the state and federal claims, allowing the Court to assess prejudgment interest on the state law claims as stand alone claims.  ECF No. 230.  Moreover, the Jury found in favor of ITG on the sole federal claim against it in this case, and even under *Thomas*, the Second Circuit agreed that state law would apply to a judgment in those circumstances where the jury finds for the defendant on all federal claims but still awards a verdict on state law claims.  *Id.* (citing *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 85 (2d Cir. 1998).  Thus, this Court should apply the 12% Massachusetts prejudgment interest rate.

### H.  Joint and Several Liability

The Entity Defendants offer nothing new to escape ITG's liability for Blue Sun's conduct. Therefore, KPM rests on the arguments it has previously briefed at length, with supporting record citations.  *See* ECF Nos. 156, 201, 253.

### CONCLUSION

For the foregoing reasons and those set forth in Plaintiff KPM Analytics North America Corporation's opening brief, this Court should allow KPM's Motion for Entry of Judgment in Favor of Plaintiff on its Chapter 93A Count and for Prejudgment Interest on All Counts.

4861-2621-6306, v. 2

**Date:** July 26, 2023

Respectfully submitted,

KPM Analytics North America Corporation,

By its attorneys,

_/s/ Scott R. Magee_
John T. Gutkoski (BBO No. 567182)
Kevin R. Mosier (BBO No. 703739)
Sunstein LLP
100 High Street
Boston, MA 02110
Phone: (617) 443-9292
jgutkoski@sunsteinlaw.com
kmosier@sunsteinlaw.com

**AND**

Scott R. Magee (BBO No. 664067)
Paige Zacharakis (BBO No. 699108)
Morse, Barnes-Brown & Pendleton, P.C.
480 Totten Pond Road, 4th Floor
Waltham, MA 02451
Phone: (781) 622-5930
Fax: (781) 622-5933
smagee@morse.law
pzacharakis@morse.law

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 26th day of July 2023, a true and correct copy of the foregoing

document was filed through the ECF system and will be sent electronically to the registered

participants as identified on the Notice of Electronic Filing (NEF).

_/s/ Scott R. Magee_
Scott R. Magee