UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION,<br><br>              *Plaintiff.*<br><br>    v.<br><br>BLUE SUN SCIENTIFIC, LLC, THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD., ARNOLD EILERT, MICHELLE GAJEWSKI, ROBERT GAJEWSKI, RACHAEL GLENISTER, GREGORY ISRAELSON, IRVIN LUCAS, AND PHILIP OSSOWSKI,<br><br>              *Defendants.* | Civil Action No. 21-10572-MRG<br><br>**Leave to File Granted May 31, 2023, ECF No. 246.** |

**PLAINTIFF KPM ANALYTICS NORTH AMERICA CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR FINDING OF WILLFUL AND MALICIOUS MISAPPROPRIATION OF PLAINTIFF'S TRADE SECRETS BY DEFENDANTS AND FOR EXEMPLARY DAMAGES**

Plaintiff, KPM Analytics' North America Corporation ("KPM") hereby submits this Reply Memorandum in further support of its Motion for Finding of Willful and Malicious Misappropriation of Plaintiff's Trade Secrets by Defendants Blue Sun Scientific, LLC ("Blue Sun"), Irvin Lucas ("Lucas"), Robert Gajewski ("Gajewski"), Arnold Eilert ("Eilert") and Rachael Glenister ("Glenister") (collectively referred to herein as the "Defendants"). Defendants, in their Opposition to Plaintiff's opening brief, rely heavily on the Court's

statements in the trial record pertaining to a discussion between counsel and the Court concerning whether the Jury should be given the question of whether Defendants' misappropriation of trade secrets was done willfully and maliciously. See ECF No. 263 at 4-5. However, what Defendants fail to acknowledge is that these statements by the Court were done (a) before the close of evidence and (b) before there was a finding by the Jury that there was any misappropriation of trade secrets. Therefore, the question of willful and malicious misappropriation of KPM's trade secrets remains open for the Court to decide. Furthermore, Defendants avoid altogether the evidence introduced at trial establishing that the Defendants' misappropriation of trade secrets was done with the intent to harm KPM. *See*, ECF No. 256 at 5-7.

KPM notes that (i) the *Contour Design, Inc. v. Chance Mold Steel Co., Ltd.*, cited extensively by Defendants actually supports a finding that the Defendants' misappropriations of trade secrets were done willfully and maliciously, and (ii) there was plenty of evidence introduced during trial that establishes the Defendants' intent was to actually cause harm KPM and specifically its Unity division.

## ARGUMENT

**A. The *Contour Design, Inc. v. Chance Mold Steel Co., Ltd*., decision supports a finding for willful and malicious misappropriation of trade secrets in the present matter.**

Defendants rely on the *Contour Design, Inc. v. Chance Mold Steel Co., Ltd*. decision in support of their argument that a finding of willful and malicious misappropriation requires evidence of an "evil motive" and the Court already determined that there was no evidence introduced that the Defendants had "ill will, hatred, hostility, or evil motive that would warrant a finding that willful and malicious misappropriation has occurred." ECF No. 263 at 6. First, the

2

definition that the District of New Hampshire adopted for the term "malicious" used in the New Hampshire Uniform Trade Secrets Act ("NUTSA") includes other bases, not just "evil motive."

Assuming, *arguendo*, that Massachusetts would interpret this definition of "willful and malicious" under MUTSA to be the same or similar as its neighbor, the actions of the Defendants in the present case satisfy this definition. In particular, Defendants do not argue that their actions were not willful. See ECF No. 263 at 6-8. Instead, Defendants' substantive argument is that their actions do not meet the definition of "malicious" because their intentions were only to increase revenue and profits (ECF No. 263 at 6), they did not violate the preliminary injunction order (ECF No. 263 at 7), and the UCal software was not transferred to Blue Sun (ECF No. 263 7-8). These examples, which include no citation to the actual trial evidence, fail to establish that Defendants' actions were *not* done maliciously and ignores the vast amount of evidence cited in support of a finding of "ill will" towards KPM cited in KPM's opening brief.

1. <u>Defendants' misappropriation of KPM's trade secrets was malicious.</u>

The actions of the defendants in the *Contour Design, Inc*. decision, where the New Hampshire Court found that the defendant acted willfully and maliciously, are in fact strikingly similar to the actions performed by the Defendants here:

- Defendant "embark[ing] on a conscious effort to ***exploit the end of [a] long-term relationship***" between plaintiff and plaintiff's long-time customer – to which the court commented "[t]his sort of ***treacherous opportunism*** supports a finding of willful and malicious misappropriation." 2011 WL 6300622, at *13.

- Defendants "engag[ing] in a series of efforts to ***obscure the source of the products*** it sold" to plaintiff's customers – to which the court stated "[a] defendant's ***attempts to conceal its misappropriation*** supports a finding that it was willful and malicious." *Id*.

- Defendants' employees boasting that "it was really good news that he had increased sales and ***taken as many as he could of customers*** from Contour" all unbeknownst to the plaintiff – the court explained "[t]his ***admitted animosity***

3

> toward Contour further supports a finding of willful and malicious misappropriation." *Id*. (internal quotation marks omitted).

- Defendants ***continued to sell its infringing product even after a preliminary injunction was entered*** – the court categorizing this behavior as "***disrespectful*** – if not contemptuous – ***attitude towards the preliminary injunction*** also supports the conclusion that [defendant] was acting willfully and maliciously." *Id*.

The corresponding actions of Defendants in the present case include, but are not limited to, the following:

- Defendants sought to exploit KPM's notice to its customers who owned legacy Spectrastar machines that simply stated that KPM could not guarantee service or parts on its older SpectraStar machines and sought to convert these customers to Blue Sun customers by wrongly claiming KPM refused to service older machines. *See, e.g.,* Tr. Day 7, 37:14-38:11; Tr. Day 3, 55:7-15.

- Defendants, and in particular Robert Gajewski, sent many emails to KPM's customers confusing exactly which company he worked for and Blue Sun's association with KPM.[1] Tr. Ex. 108; Tr. Day 28:15 – 31:2.

- Defendants sought to convert KPM customers into Blue Sun customers in a variety of ways. For example:

    o Ms. Glenister coached the Blue Sun sales team to advertise that KPM "discontinued service" on its legacy Spectrastar instruments and that Blue Sun now employed "80% of KPM's Unity employees", a percentage which Ms. Glenister admitted to making up after Blue Sun had officially hired Eilert, and further advertised KPM's inability to meet its customer's needs because it lacked the "staff expertise." Tr. Ex. 4; Tr. Day 6, 71:7-73:23.

    o When customers reached out to Mr. Gajewski asking for a new Spectrastar, he instead sold them a Phoenix. Tr. Ex. 14; Tr. Day 7, 41:10-44:2.

    o When customers reached out to Michelle Gajewski, Mr. Gajewski's wife, Mr. Gajewski diverted those customers to steal the business from KPM for Blue Sun. Tr. Day 7, 48:5-49:11; Tr. Day 7, 18:1-19:18 (Gajewski warning Lucas that they would not want a KPM employee to "blow the

---

[1] KPM notes the majority of this evidence comes from Mr. Gajewski's "Rob Roberts" Blue Sun email account because Mr. Gajewski kept a back-up of some of his emails. Blue Sun deleted its email server hosted by GSuite in March of 2021, less than one month before this lawsuit was filed. KPM does not know what additional evidence was destroyed.

4

> whistle" and that getting a large KPM customer would be a "nice one to get."); Tr. Ex. 112.

- Defendants continued efforts to convert KPM customers into Blue Sun customers between the filing of the Complaint in April of 2021 and the entry of the preliminary injunction in August of 2021 by completing about a dozen preventative maintenances on Spectrastar machines. See Tr. Ex. 474.

- In addition, trial evidence establishes that Defendants violated the preliminary injunction order more than once. *See*, ECF No. 258 at 9-10.

Based on the trial evidence, there is a parallel action performed by Defendants that corresponds directly with the actions performed by the defendants in the *Contour Design, Inc.* decision where the Court not only found willful and malicious misappropriation of trade secrets, but also awarded exemplary damages. Therefore, based on an analysis of the *Contour Design, Inc.* decision, Defendants' actions towards misappropriating KPM's trade secrets were done maliciously.[2]

        2.      <u>Exemplary damages are warranted based on Defendants' willful and malicious misappropriation of trade secrets.</u>

After determining that defendant's actions support a finding of willful and malicious trade secret misappropriation, the court in *Contour Design, Inc.*, while keeping in mind that the Uniform Trade Secret Act "follows federal patent law," applied the factors laid out by the Federal Circuit in *Read v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992). The Federal Circuit, in *Read*, articulated the following factors when assessing whether a patent infringer should be subject to exemplary damages:

> (1) whether the infringer deliberately copied the ideas of another;

---

[2] Defendants do not argue that their actions were not done willfully and only that their actions were not malicious.

5

(2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;

(3) the infringer's behavior as a party to the litigation;

(4) the defendant's size and financial condition;

(5) closeness of the case;

(6) duration of the defendant's misconduct;

(7) remedial action by the defendant;

(8) the defendant's motivation for harm; and

(9) whether the defendant attempted to conceal its misconduct.

*Contour Design, Inc.*, 2011 WL 6300622, at *15. The Court in *Contour Design, Inc.* stated that these factors weigh in favor of granting "a large enhanced damages award" based on the facts presented in that case. *Id*. The court explained that the defendant -

> deliberately copied Contour's products (factor 1); engaged in no meaningful inquiry into the scope of Contour's trade secret rights, and had no good-faith basis for believing that it was not violating those rights (factor 2); continued to engage in misappropriation, even after this court issued the preliminary injunction…(factor 7); was motivated by ill will toward [plaintiff] (factor 8); and engaged in a series of actions to try to hide the misappropriation (factor 9). [Defendant's] conduct of this litigation (factor 3) and the one-sidedness of the case (factor 5) also counsel in favor of substantial enhanced damages. [Defendant] resisted the entry of the preliminary injunction…and later appealed that order, on grounds that were thin at best…

*Id*. at *16. The Court concluded by stating that "[t]his all happened in a case, moreover, where [defendant] conceded using the models it made for [plaintiff] and [plaintiff's] firmware to make competing products – and where the jury found in favor of [plaintiff] on all of its claims and awarded it the full amount of its requested damages. In other words, the case was not close." *Id*.

6

Similarly here, Defendants admitted to using KPM proprietary UCal software, calibration datasets, and customer information for the benefit of Blue Sun (factor 1) (*See, e.g.*, Tr. Ex. 201; Tr. Day 7, 33:17-36:14); avoided asking the ex-KPM employees about their employment contracts with KPM even though they were well aware of the provisions contained in the employment contracts (factor 2) (Tr. Day 5, 144:16-23; Tr. Day 4, 152:21-154:24); continued to target KPM customers in order to sell Blue Sun machines, equipment and services even after the complaint was filed and only slowed down after the preliminary injunction was entered (factor 7) (*See*, Tr. Ex. 474); were motivated by ill will towards KPM as described in more detail in subsection A.1 herein (factor 8); engaged in a series of actions to hide its misappropriation (factor 9) (*See, e.g.,* Tr. Ex. 111; *see*, Tr. Day 5, 68:17-69:5 (acknowledging the "Rob Roberts, Greg Gregory, and Don Donaldson" email accounts that were "lost" a few weeks before the Complaint was filed in this action); not only opposed the preliminary injunction, but sought to amend it twice to encourage its misappropriating behavior and sought to wholly dissolve it before trial (factor 3) (ECF Nos. 98, 105, and 148); and the trial was one-sided in that the Jury found on all almost all counts that went to the Jury for finding (except for breach of duty of loyalty) (factor 5) (ECF No. 230).  Ultimately, Defendants attempt to skew the *Contour Design, Inc.* decision, and focus on one small part of the opinion,[3] while ignoring the remaining evidence that was introduced in support of a finding of willful and malicious misappropriation of trade secrets.  The *Contour Design, Inc*. decision therefore not only supports a finding of malicious misappropriation on the part of Defendants, but also supports a finding for exemplary damages.

### B. There is evidence in the trial record that supports a finding that the defendants had ill-will towards KPM.

---

[3] Namely, one piece of testimony whereby the defendant testified that she felt "betrayed" by the plaintiff.

Defendants, in their Opposition, avoid acknowledging the evidence in the trial record that support a finding of "ill will" towards KPM. In addition to what has already been outlined in subsection A above, that evidence includes:

1. The Defendants utilized the unique access and contacts that Michelle Gajewski had to KPM's customers in order to unlawfully divert customers from KPM to Blue Sun, and even coordinated with Mrs. Gajewski to follow up with customers that recently received a "high" KPM quote. Day 7, Tr. 48:5-49:11; Tr. Exs. 102, 112, 114, and 302; Day 5, Tr. 134:18-135:11.

2. The Defendants set the Blue Sun prices based on what KPM offered to its customers in the previous year. Day 6, Tr. 147:1 – 148:9.

3. Robert Gajewski in some instances simply told the KPM customer that he was going to perform the preventative maintenance on the Spectrastar machine as Blue Sun, with little to no explanation and with no opportunity for the customer to object. Day 7, Tr. 14:2-22; Trial Ex. 113.

4. Lucas and Gajewski continued to collect paychecks from KPM for months, and in the Gajewskis' circumstances for years, while simultaneously attempting to drain KPM's customers and employees that were integral to its Unity business. Tr. Day 4, 154:11-25; Tr. Day 4, 155:6-12.; Tr. Day 6, 124:20-125:19

5. Gajewski immediately started to copy KPM information onto an external thumb drive and un-install his web-browser when he learned that he was terminated and that a KPM representative was going to come to pick up his KPM issued laptop. Tr. Day 3, 116:4-118:20.

6. Glenister, within the month of her leaving her employ with KPM, began moving customer contact information through a series of email accounts before sending it to her Blue Sun email account. Tr. Ex. 165; Tr. Ex. 166; Tr. Ex. 167; Tr. Day 6, 45:1-50:2.

7. Eilert lied to KPM representatives about why he was leaving KPM at the end of 2020, stating that he was going to focus on the "family farm", all the while having already accepted the offer from Blue Sun. Tr. Day 7, 144:13-145:4.

8. Eilert and Gajewski lied to KPM employee, Robert Schumann, when Mr. Schumann asked them whether they had come across Blue Sun while working in the NIR field. Tr. Ex. 153; Tr. Day 7, 148:11-149:2; Day 7, 60:1-61:24

These are just a sample of Defendants' actions that support a finding of "ill will" to KPM. Based on the entirety of the trial record, the Court should find that the actions of Defendants taken as a whole equate to malicious misappropriation.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiff KPM Analytics North America Corporation's opening brief, this Court should allow KPM's Motion for Finding of Willful and Malicious Misappropriation of Trade Secrets.

**Date:** July 26, 2023

Respectfully submitted,

KPM Analytics North America Corporation,

By its attorneys,

*/s/ Paige K. Zacharakis*
John T. Gutkoski (BBO No. 567182)
Kevin R. Mosier (BBO No. 703739)
Sunstein LLP
100 High Street
Boston, MA 02110
Phone: (617) 443-9292
jgutkoski@sunsteinlaw.com
kmosier@sunsteinlaw.com

**AND**

Scott R. Magee (BBO No. 664067)
Paige Zacharakis (BBO No. 699108)
Morse, Barnes-Brown & Pendleton, P.C.
480 Totten Pond Road, 4th Floor
Waltham, MA 02451
Phone: (781) 622-5930
Fax: (781) 622-5933
smagee@morse.law
pzacharakis@morse.law

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of July 2023, a true and correct copy of the foregoing document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

>/s/ *Paige K. Zacharakis*
>Paige K. Zacharakis

4868-4852-3378, v. 1