**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| |
|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION, |
| *Plaintiff.* |
| V. |
| BLUE SUN SCIENTIFIC, LLC, THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD., ARNOLD EILERT, MICHELLE GAJEWSKI, ROBERT GAJEWSKI, RACHAEL GLENISTER, GREGORY ISRAELSON, IRVIN LUCAS, AND PHILIP OSSOWSKI, |
| *Defendants.* |

Civil Action No. 21-cv-10572-MRG

**KPM ANALYTICS NORTH AMERICA CORPORATION'S**
**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION**
**FOR ENTRY OF A PERMANENT INJUNCTION**

Plaintiff, KPM Analytics North America Corporation ("KPM") hereby submits this reply memorandum in further support of its motion for the Court to make permanent its current Preliminary Injunction Order, ECF 94 and 120, and in response to both the partial opposition of defendant Blue Sun Scientific LLC ("Blue Sun") and the "Individual Defendants": Arnold Eilert, Robert Gajewski, Rachael Glenister, and Irvin Lucas, ECF 267, and the separate opposition of defendant The Innovative Technologies Group & Co., Ltd. ("ITG"), ECF 265.

All defendants concede the need for a permanent injunction, ECF 267 at 1; ECF 265 at 2, n.1, yet they attempt to limit its scope hoping to return to their misconduct causing KPM irreparable harm, *see id.* In their two short opposition filings, the defendants fail to address, let alone rebut, the prior findings this Court made in ordering and maintaining the Preliminary Injunction, which were then confirmed by the evidence at trial. Defendants then simply ignore the trial record – ***including the proof defendants repeatedly violated the Preliminary Injunction***. The Court should reject their attempts and re-enter KPM's proposed order.

1

I.    **DEFENDANTS' CONCESSIONS TO AN INJUNCTION ON THE UCAL AND DATASET TRADE SECRETS ENTITLE KPM TO ITS PROPOSED ORDER.**

The Jury found that Blue Sun and the Individual Defendants (in different combinations) misappropriated three broad categories of KPM's trade secrets, that in so doing each of the Individual Defendants breached their contracts, and that Blue Sun and ITG tortiously interfered with those contracts and committed unfair and/or deceptive trade practices. ECF 230. The three trade secret categories are KPM's: UCAL software, Datasets, and Customer Information. *Id.* Defendants do not oppose an injunction based upon the first two categories. ECF 267 at 1; ECF 265 at 2, n.1. As a result, KPM is entitled to the form of permanent injunction it seeks.

At trial, defendants themselves conceded that they sell one M5/Phoenix analyzer machine, and that the only way it is differentiated, *e.g.,* for chocolate versus for milk, lies in how it is calibrated with software and data. Tr. Ex. 22; Day 5, Tr. 83-84.  Defendants further conceded that they established with potential customers the alleged capabilities of the M5/Phoenix to accurately analyze so many substances through the misuse of KPM's UCAL software and datasets that Gajewski misappropriated to create dozens of Application Notes, which Lucas and Blue Sun then shared with customers via their website. Tr. Ex. 24; Day 7, Tr. 100-102; Day 5, Tr. 76-85.

Therefore, if defendants are to be permanently enjoined from making use of KPM's UCAL software and calibration datasets they should be permanently enjoined from selling the M5/Phoenix at all into the marketplace they created and contaminated misusing those very trade secrets. "Trade secret protection... extends not only to the misappropriated trade secret itself but also to materials 'substantially derived' from that trade secret." *Gen. Elec. Co. v. Sung*, 843 F. Supp. 776, 778 (D. Mass. 1994) (citing *USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334, 351, 467 N.E.2d 1271, 1284 (1984)). KPM conservatively limited its request to enjoin sales of M5/Phoenix products to KPM's customers, but it could have sought to prevent all sales given defendants' misconduct. At the very least, KPM is entitled to its proposed order.

II.   **ALL DEFENDANTS FAIL TO REFUTE THE ESTABLISHED IRREPARABLE HARM TO KPM AND BALANCE OF HARDSHIPS, AND <u>THE INDIVIDUAL DEFENDANTS ARE PROHIBITED FROM DOING SO.</u>**

If the first two categories of trade secrets, and related breaches of contract, tortious interference and unfair and deceptive trade practices can somehow be viewed as insufficient to justify the proposed permanent injunction, defendants' misuse of the third category of KPM's Customer Information, and the related breaches, tortious interferences and unfair/deceptive competition, all require the Preliminary Injunction to be made permanent.  The Jury awarded damages for defendants' conduct up through the time of trial, but similar damage will only continue, necessitating repeated future lawsuits, if defendants are not required to stop.

At trial, defendants themselves repeatedly took the stand and admitted they wrongly diverted annual PM service contracts by lying to and confusing KPM's customers in order to steal those customers for ITG/Blue Sun, not only for the short-term gains of service revenues but for the long-term and larger goal of selling them new M5/Phoenix analyzers – the "service to sale" business model in the industry. *See, e.g.*, Day 3, Tr. at 46:5 - 50:11; Day 4, at 13:22 - 17:18, 26:7 - 28:6; Day 5, Tr. at 51:24- 52:25 (referencing Tr. Ex. 10); Day 6, Tr. at 60:11 - 65:1 (referencing Tr. Ex. 11 and Tr. Ex. 323); Day 7,Tr. 42:3 -44:2 (referencing Tr. Ex. 14); Tr. Exs. 17, 46, 59, 65, 102, 106, 118, 122, 124, 324, 326, 329, 331, 443, 446, and 740. As this Court previously found, "the record shows that Defendants' actions to divert KPM customers are ongoing, suggesting a high possibility of future harm, and that they have caused confusion and alarm, which likely affects KPM's goodwill. … KPM stands to lose future [preventative maintenance] and analyzer sales opportunities as a result of Defendants' actions." ECF 93 at 22. Never in this case have Defendants provided a rationale to challenge these findings of ongoing irreparable harm to KPM and the balance of any hardships being overwhelmingly in KPM's favor, and they do not do so in their current oppositions. *See* ECF 265 and 267.

Indeed, now that the Individual Defendants have been held to have misappropriated KPM trade secrets and to have breached their employment contracts, they are prohibited by those contracts from contesting otherwise:

> Page 3: "Whereas, Company's and its clients' confidential and proprietary information is highly valuable and its **disclosure would cause serious or irreparable harm to Company and its clients**;"

> Page 4: "You further acknowledge and agree that the Confidential Information is highly valuable and proprietary to Company and that the disclosure of any such Confidential Information to third parties or the otherwise **unauthorized use of the Confidential Information by you would cause Company serious or irreparable harm**."

> Page 6: "You recognize that your **breach of this Agreement** may give rise to irreparable injury to Company and/or its **Affiliates inadequately compensable in damages and, accordingly, agree that Company may seek and obtain and that you will consent to injunctive relief granted by a court of law against such breach or threatened breach**, in addition to any other legal remedies which may be available, including the recovery of monetary damages from you."

Tr. Ex. 349 (Lucas - emphasis supplied); *see also* Tr. Exs. 346 (Eilert), 351 (Glenister) and 353 (Gajewski). Under Massachusetts law, such agreements are enforced with injunctions. *See Washington Tr. Advisors, Inc. v. Arnold*, No. CV 22-11847-PBS, 2022 WL 17630520, at *7 (D. Mass. Dec. 13, 2022) (finding the irreparable harm element met based upon an "irreparable harm clause" in employment contract, which Massachusetts courts "generally enforce[]"). KPM cited these prohibitive agreements and authority in its Opening Brief and the Individual Defendants offer no response. *Compare* ECF 258 at 5-6 *with* ECF 267.

KPM, therefore, is entitled to have the injunction made permanent. *See Esso Standard Oil Co. v. Lopez-Freytes*, 522 F.3d 136, 148 (1st Cir. 2008) (irreparable harm and balance of hardship the touchstones of injunctions); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006) (same); *CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008) (the court's earlier findings in support of a temporary restraining order combined with plaintiffs success on the merits justified issuance of permanent injunction); *Picker Int'l Corp. v. Imaging Equip.*

*Servs., Inc.*, 931 F. Supp. 18, 45 (D. Mass. 1995) (holding "an 'injunction is not unreasonable merely because it is permanent' or indefinite in duration.") (citing *Curtiss-Wright Corp. v. Edel-Brown Tool & Die, Co.*, 381 Mass. 1, 4-5, 407 N.E.2d 319, 323-24 (1980)), *affd sub nom*. *Picker Int'l Inc. v. Leavitt*, 94 F.3d 640 (1st Cir. 1996); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 14 (1st Cir. 2000) (holding an injunction that specifically enforces a contract between the parties is appropriate and sufficiently precise).

### III.   DEFENDANTS REPEATEDLY VIOLATED THE PRELIMINARY INJUNCTION, AND THEIR CURRENT MISREPRESENTATIONS ABOUT IT FURTHER ESTABLISH THE NEED FOR A PERMANENT ORDER.

The Preliminary Injunction prohibits in relevant part:

> Defendants are prohibited for the duration of this Action ***from offering to sell or selling any Phoenix Near-Infrared analyzer product to any party for which any Defendant has previously offered to provide or provided or offered to sell or sold any services or products*** related to any Near Infra-Red analyzer manufactured or sold by KPM or its predecessors in interest, including but not limited to analyzers manufactured or sold by Unity Scientific or Process Sensors Corporation from July 2, 2018 to the present.

ECF No. 94, ¶6 (entered August 23, 2021); ECF No. 120, ¶6 (emphasis supplied). KPM detailed, in its Opening Brief at 8-10, how Defendants' subsequent sales of M5/Phoenix analyzers to two KPM customers, R&R Machine and Idahoan, violated the Court's injunction. *See also* ECF No. 253 at 13-15. Defendants offer a new sworn affidavit from defendant Lucas attempting to justify Defendants' sales. ECF 267 at n. 2; ECF 264-2. As the Court is well-aware, Mr. Lucas admitted on the stand to making repeated misrepresentations in harming KPM, to violating his own contractual promises and assisting Blue Sun and ITG to tortiously interfere with other contracts, and to destroying email evidence of his actions. As the Court is also aware, Mr. Lucas has pled guilty to a crime of moral turpitude and awaits his sentencing in the Northern District of Illinois. The record shows that Mr. Lucas has not learned the error of his ways:

**R&R Machine** – Mr. Lucas attempts to justify the multiple violative sales to R&R Machine by claiming that the M5/Phoenix analyzers Defendants sold R&R were not "branded" as the Phoenix or by ITG or Blue Sun, and contained sufficient structural and functional differences that they were not really Phoenixes. ECF 264-2 ¶¶ 5-6. Mr. Lucas's justifications are belied by his own prior, sworn, deposition testimony:

Q:   What's the -- in line 238 for customer R&R Machine Works?

A:   Yes.

Q:   A $30,000 amount, and it says for an R&R analyzer top window, ***what's the R&R analyzer***?

A:    Okay, so R&R Machine Works, this is a customer that they wanted to have an OEM or I guess called a private label version. They use NIR in conjunction with some steam chest some industrial equipment that they sell. And what they wanted was the ability for us to put their logo on the instrument and then for them to be able to go on brand it as their own. That way, when they're out at a trade show, or something of that nature, someone doesn't see oh, that's a Blue Sun, I'll go to Blue Sun and circumvent R&R. ***So it's a Phoenix just with R&R's logo on it, and R&R branding.***

\* \* \*

Q:   ***How many R&R branded Phoenixes has Blue Sun sold to R&R***?

A:   I believe as of today that number is going to be, I believe, nine.

Q:   When was the first one?

A:   As I mentioned, September October 2019, I believe.

Q:   When was the most recent one?

A:   ***The most recent one would have been within the last six weeks.***  I believe about three or four units.

\* \* \*

Q:   Just to finish up on R&R just going up line 37.

A:   Okay.

Q:   Would that be the first ***sale of Phoenix units to R&R***?

A:   ***Yes, it would.***  That would be two units.

Q:   How many locations does R&R have?

A:   R&R themselves have one location. ….

\* \* \*

Q:   Mr. Lucas, just a follow up question that occurred to me, before we broke we're talking about sales to R&R Machine. What's the total number of units that you've sold to them under *Phoenix 5000s branded R&R*?

A:   I believe that was nine.

(4/27/22 Dep. of I. Lucas and 30(b)(6) of Blue Sun, pp. 130-136, copy attached here as Ex. A (emphasis supplied).) If they were Phoenixes when sold, they are Phoenixes today.

**Idahoan –** Mr. Lucas admits that Idahoan was a prohibited KPM customer, but claims that it was so only at its Idaho Falls location. He says that defendants' subsequent sales of Phoenix analyzers to Lewsiville, Idaho and Rupert, Idaho were not prohibited because "each location makes completely independent buying decisions". ECF 264-2 at ¶7. Mr. Lucas offers no proof of this alleged independence, and, in fact, his claim is disproven by the evidence admitted at trial.  Trial Exhibit 163 is an email from Idahoan's Director of Quality Assurance Dave Moore (at the Idaho Falls location) to several Idahoan employees located at various Idahoan locations – Lee Shelton (Rigby), Shirley Bond (*Rupert*), Zachary Healey (unknown), Nicole Peter (*Lewisville*), and Kenny Kniep (Idaho Falls)[1] – instructing them that he had put the near infrared project on hold because of concerns that he had regarding Blue Sun (and Unity). Tr. Ex. 163. Director Moore's instructions to the other Idahoan locations shows that they were not making independent purchasing decisions. Therefore, Defendants' 11 analyzer sales to Idahoan, Tr. Exhs 474 and 475, were made in violation of the Preliminary Injunction.

Mr. Lucas is not stopping. Blue Sun is not stopping. Defendants are not stopping. The Court should formally and permanently stop them from their continued misconduct.

---

[1] Dave Moore's LinkedIn, https://www.linkedin.com/in/dave-moore-75b55a1a; Lee Shelton's LinkedIn, https://www.linkedin.com/in/lee-shelton-8b9a78bb; Resume information regarding Shirley Bond, https://www.signalhire.com/profiles/shirley-bond%27s-email/8439416; Resume information regarding Nicole Peter, https://www.zoominfo.com/p/Nicole-Peter/5170956782; Kenny Kniep's LinkedIn, https://www.linkedin.com/in/kenny-kniep-1b13a774?original_referer=https%3A%2F%2Fwww.google.com%2F

**IV.    BLUE SUN AND THE INDIVIDUAL DEFENDANTS OFFER NO
        LEGITIMATE REASON TO REDUCE THE INJUNCTION.**

In their Opposition, Blue Sun and the Individual Defendants cite several authorities involving defendants obtaining a "head start," yet then concede that this is not such a case. ECF 267 at 2-4. Their cited cases, therefore, are inapplicable. They then make fundamentally three arguments to try and justify a shorter or more curtailed permanent injunction. All three are unavailing.

First, they seek to reduce the Customer Information category of KPM trade secrets to "the identities of the customers", and claim that discovering those identities would happen over time. *Id.* at 4. But this case and the evidence at trial was not about the customers' identities. The Individual Defendants each worked for KPM for years and were the key sales and service individuals for KPM. They know who the customers are and which people at the customers to call. The problem is that they did call them, for Blue Sun and ITG, while being paid by KPM. Defendants unfairly leveraged much more than the customer identities, they used KPM's emails and correspondence, KPM's service forms and checklists, the experience and knowhow defendants had built up servicing KPM Spectrastars, along with KPM's software and datasets to mislead the customers. They called the customers, misled the customers, and deceptively diverted the customers to Blue Sun and to buying M5/Phoenix analyzers from Blue Sun and ITG. They seek now, after the hiatus of this lawsuit and trial, to continue doing so. That is the ongoing risk of harm, harm which cannot be repaired – the loss of those relationships and the impact to KPM's goodwill and standing with its customers.

Second, they surprisingly argue that there is no evidence that customers were ever confused by defendants. ECF 267 at 5-6. Day after day of trial testimony from defendants themselves, going through their admitted misrepresentations to customers about for whom they were working and which company was providing the service and calibrations, and the many exhibits where customers emailed the "wrong" company or wrong address all stand in stark

contrast to defendants' current lack of confusion contention. So does the Jury's Verdict finding defendants competed unfairly and/or deceptively. *See* ECF 230. Most importantly, however, this is a red-herring as "confusion" is not a required element for a permanent injunction but rather irreparable harm is. *See Allstate Ins. Co. v. Fougere*, 581 F. Supp. 3d 307, 318 (D. Mass. 2022) (applying the irreparable harm standard while issuing a permanent injunction for misuse of confidential and trade secret information). '"[A]s a general rule,' the wrongful use of trade secret information by a competitor 'triggers a finding of irreparable harm.'" *Id*. (quoting *Aspect Software, Inc. v. Barnett*, 787 F. Supp. 2d 118, 130 (D. Mass. 2011); *Optos, Inc. v. Topcon Med. Sys., Inc.*, 777 F. Supp. 2d 217, 241 (D. Mass. 2011) (misappropriation of trade secrets creates a presumption of irreparable harm); *TouchPoint Sols., Inc. v. Eastman Kodak Co.*, 345 F. Supp. 2d 23, 32 (D. Mass. 2004) ("The loss of a trade secret is generally found to constitute irreparable harm. ...That is in recognition of the fact that, 'once the trade secret is lost, it is gone forever.'") (internal citations omitted).

Lastly, they seek to reduce the injunction to just the list of customers for which KPM was able to find incriminating emails, namely the 30 customers Gajewski serviced before he was fired and sued. ECF 267 at 6-8 and proposed order. Defendants destroyed extensive email evidence just before KPM brought suit and sought the injunction. As indicated above by their violations of the injunction, they know which customers they worked with while at KPM. Even now, after two years of litigation, KPM still does not know how many of its lost customers it can recover in the long term. Tr. Day 4 at 26-28. Defendants, in contrast, are not harmed by the injunction and always claimed their business was directed at different competitors and different markets. ECF 258 at 10-12. The burden should be solely on defendants to stay clear of their known prior KPM relationships and, in an abundance of caution, avoid even the risk of future harm to KPM.

## V.      ITG SHOULD NOT ESCAPE THE INJUNCTION.

ITG files a separate three and a half page attempt to insulate itself from any injunction. ECF 265. ITG's motivation would seem to be to move on from this lawsuit, shut down Blue Sun, and go back to selling the M5/Phoenix on its own or some new strawman. Contrary to ITG's assertions, KPM does not seek an order prohibiting the manufacture of the M5/Phoenix or its sale to all customers. KPM only seeks that ITG, like Blue Sun and the Individual Defendants, be prohibited from selling it to the KPM customers the defendants misled.

ITG's arguments boil down to two contentions against an injunction – that the Verdict made KPM whole and ITG was "merely" found liable for tortious interference and the related unfair or deceptive trade practices. *See* ECF 265. Neither permits ITG to escape an injunction. First, the Verdict by its terms only covered past damages and, for all the reasons noted above and in its Opening Brief, KPM  does not yet know how much it has and will continue to lose from the customer relationships contaminated and perhaps destroyed by defendants', including ITG's, misconduct. Second, unfair or deceptive practices alone, for which ITG was not only held accountable but assessed by the Jury the most past damages amongst the defendants, justifies injunctive relief against future harm. *See Warner-Lambert Co. v. Execuquest Corp.*, 427 Mass. 46, 48 (1998); *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 15 (1st Cir. 1996) (finding injunctive relief available under 93A on showing of "demonstrated risk of future actual loss").

This was not a close case. Defendants' misconduct was repeated, systematic, insidious and ongoing. All of it ultimately benefited ITG. None of it should be allowed to continue.


## VI.      CONCLUSION

For all of the above reasons, KPM respectfully requests that the Court enter a permanent injunction as proposed by KPM.

Date: July 26, 2023                         Respectfully submitted,

                                            **KPM ANALYTICS NORTH AMERICA
                                            CORPORATION**

                                            By its attorneys,

                                            */s/ John T. Gutkoski*
                                            John T. Gutkoski (BBO# 567182)
                                            Kevin R. Mosier (BBO# 703739)
                                            SUNSTEIN LLP
                                            100 High Street
                                            Boston, MA 02110
                                            Tel: (617) 443-9292
                                            jgutkoski@sunsteinlaw.com
                                            kmosier@sunsteinlaw.com

                                            Scott R. Magee (BBO# 664067)
                                            Paige K. Zacharakis (BBO# 699108)
                                            MORSE, BARNES-BROWN, AND PENDLETON, P.C.
                                            480 Totten Pond Road, 4th Floor
                                            Waltham, MA 02451
                                            Tel: (781) 622-5930
                                            smagee@morse.law
                                            pzacharakis@morse.law

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of July, 2023, a true and exact copy of the foregoing was served on all counsel of record through the Court's ECF system.

                                            /s/ John T. Gutkoski
                                            John T. Gutkoski