UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION,<br>                    *Plaintiff.*<br><br>        V.<br><br>BLUE SUN SCIENTIFIC, LLC, THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD., ARNOLD EILERT, MICHELLE GAJEWSKI, ROBERT GAJEWSKI, RACHAEL GLENISTER, GREGORY ISRAELSON, IRVIN LUCAS, AND PHILIP OSSOWSKI,<br><br>                    *Defendants.* | Civil Action No. 21-cv-10572-MRG |

**KPM ANALYTICS NORTH AMERICA CORPORATION'S
OPPOSITION TO THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD.'S
<u>MOTION FOR ALTERNATE INJUNCTION ORDER (ECF No. 291)</u>**

Plaintiff KPM Analytics North America Corporation ("KPM") respectfully requests that this Court deny defendant The Innovative Technologies Group & Co., Ltd.'s ("ITG")'s Motion for Alternative Injunction Order, ECF No. 291, and enter a permanent injunction consistent with the current preliminary injunction and KPM's proposed form, ECF No. 257. In its motion, ITG requests that the Court adopt either a "corporate wall" with respect to ITG and its wholly owned and controlled subsidiary Blue Sun, or carve out nine key KPM customers[1] to allow ITG to resume diverting them away from KPM. *See* ECF No. 291-1. The proposed corporate wall is unworkable on its face, and both the corporate wall and the carve-outs are unsupportable on the trial record and in view of the facts that came to light after trial.

---

[1] The KPM customers ITG proposes carving out are Disney, Ingredion, Kellogg's, Kraft/Mondelez, Mariani Packing, Nestle, Pepsico/Frito Lay, Post Foods and Purina. *See* ECF No. 291-1 at 2.

1

Instead, the proposed permanent injunction language set forth in KPM's motion better serves the interests of justice and fundamental fairness. *See* ECF No. 257.[2]

### I. ITG's Basis for Seeking to Escape the Injunction Is Unsupported by the Verdict and the Trial Evidence

At the outset, ITG's motion is premised on a misreading of this Court's existing preliminary injunction orders. *See* ECF Nos. 93 and 94 (initial Memorandum and Order), and 120 (Updated Preliminary Injunction Order). ITG claims those orders were solely "premised upon the Court's finding that KPM had demonstrated a likelihood of success on the merits of its claim that ITG had misappropriated KPM's trade secrets." ECF No. 291 at 2. To the contrary, this Court explained, twice, that the preliminary injunction was required by a likelihood of success not only on the trade secret claims, but also KPM's breach of contract, tortious interference, and Chapter 93A claims. ECF Nos. 93 ("I find that KPM has shown a reasonable likelihood of success on the merits on its trade secret, breach of contract, tortious interference, and 93A claims, if not its conversion claims."), 120 ("KPM has a reasonable likelihood of success on the merits of its claim that the Corporate Defendants, [Blue Sun and ITG], have misappropriated [KPM's] trade secrets…interfered with [KPM's] contractual relations, and violated M.G.L. c. 93A."). The jury's verdict was in KPM's favor on nearly all of its claims, expressly finding that Blue Sun (ITG's wholly owned and controlled "sales-arm" subsidiary) misappropriated KPM's trade secrets and that ***both*** ITG and Blue Sun tortiously interfered with KPM's contractual relations and, knowingly and willfully, engaged in unfair and deceptive trade practices in violation of Ch. 93A. ECF No. 230 (jury verdict). Those breaches/interferences of contracts and unfair and deceptive practices were based on the misuse of KPM's secrets and confidential information. ITG offers neither argument nor evidence

---

[2] ITG also challenges in passing the duration of injunctive relief in this case. *See* ECF No. 291 at n.1. At trial, all parties agreed that a single life cycle of the analyzer products at issue in the case is 15-20 years. *See* ECF No. 258 at 7-8 (citing trial testimonies). At a minimum, the injunction should extend for a single product cycle or until 2036-2041. *See id.*

undermining KPM's actual success in proving the merits of its claims and provides no basis to question the necessity of continuing the injunction to prevent further irreparable harm to KPM.

## II. ITG Fails to Support Its Proposed "Corporate Wall" and the Court Should Reject It

The corporate wall ITG proposes with respect to it and Blue Sun is unworkable, impractical, and would not provide effective protection to KPM. As established at trial, Blue Sun is a wholly owned subsidiary of ITG that exists to function solely as ITG's sales arm; ITG does not make any sales outside of Blue Sun. *See* Trial Tr. at 27:20-24. ITG and Blue Sun share the same owner (Mr. Wilt), the same corporate headquarters, the same customer databases ("CRMs"), and the same personnel handling accounting and finances. *See* ECF No. 152 at 15-20. Given this close relationship between Blue Sun and ITG, it is hard to imagine how any corporate wall could be implemented effectively.

Nowhere in ITG's motion does it explain how such a corporate wall is feasible, or how it purports to actually implement the wall. *See* ECF No. 291. ITG says its "sales functions will operate independently of Blue Sun," but ITG has no sales functions aside from Blue Sun and does not explain either *what* sales functions it would now create or *how* such its sales functions would operate independently from Blue Sun, especially considering that its sells the same M5/Phoenix analyzer made by ITG. *See id.* ITG says it and Blue Sun will not have access to each other's "customer, technical or financial information," but likewise fails to explain how it would wall off that information given that ITG's and Blue Sun's assets and functions are commingled and their operations are intertwined. *See id.* Critically, ITG provides no detail as to what type of compliance monitoring would be put in place or what controls would exist to prevent ITG or Blue Sun from interfering with KPM's customer relationships. *See id.*

A separate fundamental problem with the proposed corporate wall is that compliance relies entirely on ITG's and Blue Sun's self-policing. The trial record and facts that have come to light after trial repeatedly make clear that these defendants cannot be trusted to police

themselves. The record is replete with examples of the defendants' dishonesty, acts of subterfuge, and outright lies in pursuing KPM's customers. *See, e.g.*, Tr. Ex. 111 ("Please, please, please be careful where you are sending emails to me. You can't send Blue Sun emails to my Unity address."); Tr. Ex. 118 (lying to customers about KPM's servicing department changing its name to Blue Sun); Tr. Ex. 119 (same); Tr. Ex. 331 (continuing to further that lie with Disney). Beyond the myriad examples of the defendants lying to customers, and their destruction of emails attempting to obscure their misdeeds, the defendants' testimony at trial further established two clear-cut violations of the preliminary injunction order via prohibited sales to KPM customers Idahoan and R&R Machine, *see, e.g.*, ECF No. 258 at 8-10. After trial, KPM learned that the defendants used a subsidiary to again violate the preliminary injunction by servicing KPM SpectraStar analyzers for KPM's customer Omega Protein. *See* ECF No. 281. This established record of the defendants' deceit and disregard for this Court's preliminary injunction orders proves that these defendants cannot be trusted, and will not take seriously their obligations to implement, monitor, and comply with any corporate wall or lesser restrictions that ITG requests. Nothing has stopped defendants before now, and only the full force of a permanent federal court injunction has the hope of protecting KPM moving forward.

### III. ITG Fails to Support Its Proposed Customer Carve-outs.

ITG alternatively requests that this Court's permanent injunction include carve-outs that would allow ITG to sell to certain key KPM customers that ITG claims "were Unity Scientific customers prior to the sale of that company."[3] *See* ECF No. 291-1; *supra* note 1, at 1 (listing the customers). The Court should not adopt these carve-outs because there is no evidence in the record supporting ITG's claims about these companies being ITG customers or

---

[3] When Mr. Wilt sold Unity Scientific in 2008, he admittedly sold the entire company, including its customer information and relationships. When KPM purchased Unity Scientific, it purchased those customers relationships and related goodwill as well. ITG offers no evidence to the contrary. *See* ECF No. 291.

that ITG maintained any relationship with them after the sale of Unity. Rather, the record contradicts ITG's claims regarding these nine customers. ITG stated that its sole purpose in reentering the analyzer market was to compete in the forage (animal feed) industry against a company called FOSS and not to pursue KPM's consumer food customers. Trial Tr. 1-125:11-16. Nothing in the record suggests, let alone establishes, that any of Ingredion, Kellogg's, Kraft/Mondelez, Mariani Packing, Pepsico/Frito Lay, or Post Foods are forage or FOSS customers. ITG completely ignores these facts. See ECF No. 291.

The *only* evidence identified by ITG to support carving out these customers is Mr. Wilt's unsubstantiated testimony that merely names the customers. See Trial Tr. at 8-96:22–8-97:17. Wilt did not explain, if indeed these customers *were* in Unity customers "back in the day" (over a decade ago), what those customers bought from Unity, when, or who at either Unity or the customer was involved. See id. He made no claim and provided no explanation of how any prior relationship had relevance to current sales. See id. Moreover, the defendants' own evidence belies Wilt's claims and establishes that none of these nine companies were ITG customers prior to the formation of Blue Sun and defendants' misdeeds. See Tr. Ex. 474 (sales data). Defendants' sales and customer data indicates which customers ITG claimed were part of its independent "ITG Pipeline." See id.; Trial Tr. 2-57:12-18; 9-49:16–9-55:12; 9-83:3–9-85:6. Six of the nine customers – Post, Nestle, Purina, Mariani Packing, Ingredion, and Disney – are marked "No," meaning they were *not* part of the ITG pipeline. Id. The remaining three – Pepsico/Frito Lay, Kellogg's, and Kraft – are not listed at all. Id. Contrary to Wilt's claims, these nine companies are not ITG customers, but rather KPM's.

The evidence at trial established that defendants' relationships with many of these nine customers resulted from defendants' tortious interference with KPM's contractual relations and their knowing and willful, unfair and deceptive practices. For example, the defendants misled several of these customers telling them that Mr. Gajewski had already left Unity when he had

5

not, and misrepresented that KPM's servicing department had changed its name to or was part of Blue Sun. *See, e.g.*, Tr. Exs. 104, 118, 331. Post Foods is one of the key customers that Mr. Gajewski admittedly misled into repeatedly accepting service from defendants and that involved revising Post's calibrations on KPM machines by misusing KPM's software and proprietary data bases. *See, e.g.*, Trial Tr. 5-162:6–21 (Lucas testimony that Gajewski performed calibration work for Post on KPM machines and Blue Sun got paid for that work, not KPM), 7-33:17–7-36:14 (Gajewski testimony admitting same); Tr. Exs. 186-203 (emails between Post and Gajewski concerning calibration work on KPM machines using KPM's software and proprietary data bases). ITG provides no evidence that these customers are in any way free from the misconduct found by the Jury, and provides no rationale for why ITG should be permitted to continue to irreparably harm KPM regarding these nine customer relationships.

## IV. Conclusion

For all of these reasons, the Court should deny ITG's Motion, ECF No. 291, and enter a permanent injunction in the form proposed by KPM against all defendants, ECF No. 257.

Date: March 22, 2024                           Respectfully submitted,

**KPM ANALYTICS NORTH AMERICA CORPORATION**

By its attorneys,

 */s/ Kevin R. Mosier*
John T. Gutkoski (BBO# 567182)
Kevin R. Mosier (BBO# 703739)
SUNSTEIN LLP
100 High Street
Boston, MA 02110
Tel: (617) 443-9292
jgutkoski@sunsteinlaw.com
kmosier@sunsteinlaw.com

AND

Scott R. Magee (BBO# 664067)
Paige K. Zacharakis (BBO# 699108)

6

MORSE, BARNES-BROWN, AND PENDLETON, P.C.<br>
480 Totten Pond Road, 4th Floor<br>
Waltham, MA 02451<br>
Tel: (781) 622-5930<br>
smagee@morse.law<br>
pzacharakis@morse.law

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March, 2024, a true and exact copy of the foregoing was served on all counsel of record through the Court's ECF system.

<em>/s/ Kevin R. Mosier</em>