UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KPM ANALYTICS NORTH AMERICA CORPORATION,<br>     *Plaintiff.*<br><br>    V.<br><br>BLUE SUN SCIENTIFIC, LLC, THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD., ARNOLD EILERT, MICHELLE GAJEWSKI, ROBERT GAJEWSKI, RACHAEL GLENISTER, GREGORY ISRAELSON, IRVIN LUCAS, AND PHILIP OSSOWSKI,<br><br>     *Defendants.* | Civil Action No. 21-10572-MRG<br><br>Leave to file Granted 4/10/24<br>ECF No. 297 |

**PLAINTIFF'S SUPPLEMENTAL BRIEFING ON THE PERMANENT INJUNCTION, ATTORNEYS' FEES, JOINT AND SEVERAL LIABILITY, AND INTEREST CALCULATION**

Pursuant to this Court's April 10, 2024 memorandum, ECF No. 297 at 54, Plaintiff KPM Analytics North America Corporation ("KPM"), by and through its counsel, hereby submits supplemental briefing in advance of the April 26, 2024 hearing related to (i) the Permanent Injunction the Court will be entering against the Defendants (*see*, ECF No. 297 at 53), (ii) Plaintiff's Motion for Attorney's Fees and Costs (ECF No. 259), (iii), Plaintiff's position on the calculation of prejudgment interest, and (iv) Plaintiff's position on joint and several liability for the damages award and Plaintiff's attorney's fees and costs.

    **I. PERMANENT INJUNCTION**

KPM has attempted to meet and confer with Defendants concerning the scope of the permanent injunction, to no avail. On April 5, 2024, KPM provided Defendants' counsel with a list of the customers that should be explicitly included in the permanent injunction, each with one

or more references to trial exhibits, trial transcripts, ECF filings and, in a limited number of cases, documents produced in discovery that were not admitted at trial.  On April 15, 2024, KPM provided a revised list of the same customers in which KPM replaced many of the citations to certain Bates numbers with citations to trial exhibits and added one deposition citation.  On that same date, KPM confirmed that three of the non-trial exhibit documents that were listed and previously designated attorneys' eyes only under the protective order by KPM, on which none of the individual defendants were copied, would be re-designated as confidential for purposes of conferring on the scope of the permanent injunction to allow counsel to share those KPM documents with his clients.  The remaining 12 non-trial exhibit documents KPM listed for meet and confer purposes, although designated attorneys' eyes only by KPM, fell within the exception to the attorneys' eyes only designation in the Court's original protective order, allowing counsel to share the document (which are all emails) with the individual defendant that either sent or received the email.

      Specifically, of the 12 documents marked attorney's eyes only by KPM, Robert Gajewski ("Gajewski") is listed on 10 of them and Arnold Eilert ("Eilert") is listed on 3 (2 of the ones Eilert is on, Gajewski is also on) and 1 has only Rachael Glenister ("Glenister") on it.   Paragraph 6.3(e) of the Stipulated Protective Order entered by the Court (ECF No. 59) allows documents marked attorney's eyes only to be seen by "the author of the document, the original source of the information, and others who had access to the document or information at the time it was created or made available, as determined on the face of the document in question."  Therefore, the relevant Individual Defendants with respect to each document may see the documents on which their KPM email address appears on the face of the document in question.  Notwithstanding KPM's counsel's explanation that defense counsel has the ability to share the documents with the individual

defendant whose KPM email address appears on the face of each of the 12 emails, Defendants have not responded to multiple requests to meet and confer on the permanent injunction nor have they provided their position on a proposed joint submission concerning the scope of the permanent injunction that was previously shared with the Defendants on April 9, 2024, as directed by the Court. KPM submits, verbatim here, the position that it shared with the Defendants on April 9, excluding the list of customers that are referred to as "Exhibit A," which KPM will provide separately to the clerk.

**KPM's Position**

The Court's March 29, 2024, email indicated that there would likely be two categories of prohibited customers included in the permanent injunction, those explicitly named in the trial record and a separate catchall category for those customers not identified during trial, but nonetheless are considered KPM customers as of the date of entry of the permanent injunction.

*Explicitly Named Customers – Category 1.* KPM respectfully requests that this Court enter a permanent injunction that enjoins all Defendants, including any and all subsidiaries, affiliates, and representatives of the Defendants, from contacting, selling, and/or offering to sell any goods or services to the customers identified in the exhibit enclosed herewith as Exhibit A. In Exhibit A, KPM lists all of its customers identified at trial with citations to the trial record, along with other customers who were either identified in Judge Hillman's Preliminary Injunction Memorandum and Decision, were mentioned in other Court filings, or were mentioned in Trial Exhibits 474 or 475 (but not otherwise mentioned at trial despite being KPM customers) with citations to the case record, including ECF references where relevant. While KPM recognizes that the Court's current intention is to limit the scope of enjoined customers to only those who appear in the trial record, KPM believes that such an approach does not serve the interests of justice or

fundamental fairness in this case and that *all* customers included in the attached as Exhibit A should be incorporated as the list of customers to whom the Defendants are explicitly prohibited from contacting, selling, and/or offering to sell any goods or services.

Given the time constraints of trial, it would have been impractical to present to the jury every single customer identified in the case as having been connected to the wrongful acts of the Defendants. Instead, in an effort to streamline the trial and present its case in the most clear and cohesive manner possible for the jury, KPM focused its efforts during the trial on approximately 50 of its customers, which are included in the list attached as Exhibit A. Presenting to the jury *every* customer identified in the case record as having been connected to the wrongful acts of the Defendants would have required an exorbitant amount of time at trial, and would not have been an efficient use of judicial resources nor the jurors' time. In addition, each and every document produced by the entity Defendants was marked as "Highly Confidential – Attorney's Eyes Only" (including what became Trial Exhibits 474 and 475) meaning KPM representatives' only had the ability to cross-reference the customers that Blue Sun sold its products and services to (as listed on Trial Exhibits 474 and 475) *after* these exhibits were introduced as evidence during the trial. It was logistically impossible for KPM to have known whether any particular customer was wrongly solicited away by the Defendants, or if that customer simply chose not to get PM service on its Spectrastar machine that year without seeing which of the KPM customers or contacts the Defendants had already sold Blue Sun products and services to. The information KPM needed in order to determine which of its customers were subject to the Defendants wrongful actions was in the sole possession of the Defendants, and it was (and still is) almost impossible for KPM to recreate this information because the Defendants destroyed all of their emails up through March of 2021, just weeks before the Complaint was filed, as found by Judge Hillman.

Overall, the fact that KPM chose to streamline its case for efficiency and easier juror comprehension, and the fact that the entity Defendants marked essentially *all* of their meaningful documents as "Highly Confidential – Attorney's Eyes Only" should not give the Defendants a windfall in limiting KPM to only the approximately 50 customers it strategically chose to present evidence about at the trial, which would significantly limit the scope of relief afforded to KPM, particularly in view of this Court's order finding that defendants Irvin Lucas and Robert Gajewski willfully and maliciously misappropriated KPM's trade secrets and that ITG and Blue Sun knowingly and willfully engaged in unfair and deceptive trade practices pursuant to ch. 93A. *See* ECF No. 296 (citing ECF No. 230 at 7); *see also* ECF No. 141 (Sorokin, J.) (Denying Defendants' motion to compel and explaining that "Much of the discovery from the Defendants, including important information identifying list sales, has been produced under an Attorneys Eyes Only limitat8ion. This was done at the Defendants' request. In that circumstance, and obviously, the 30(b)(6) witness [of KPM] would not and could not give complete answers to these types of questions").

Finally with respect to the customers falling under Category 1, KPM requests that the list of prohibited customers be entered **under seal**. Because the disclosure of these customers on the public docket could lead to other competitors learning information that was previously disclosed primarily in sealed filings (e.g. the preliminary injunction proceedings) or at a trial that, as a practical matter, was not attended by anyone in the NIR industry beyond the parties, disclosing the list publicly would make easily available to non-Blue Sun/ITG competitors of KPM a valuable list of some of KPM's customers. The Defendants would still have full notice of the injunction and the list of customers. Filing under seal would minimize the likelihood of *other* competitors easily

obtaining information about KPM's customers that became public only because of Defendants' wrongdoing that necessitated this lawsuit.

*Catchall Category of Customers – Category 2*.  The Court also indicated that it intends to include what the Court's March 29, 2024, email described as a category that would be -

> triggered only if any of the enjoined parties (likely to include ITG) offers to provide or provides or offers to sell or sells to *a party that is a KPM customer as of [the date of the Permanent Injunction Order]* any services or products, including but not limited to any maintenance, hardware, software or data, **related to any Near Infra-Red analyzer manufactured or sold by KPM or its predecessors in interest**, including but not limited to analyzers manufactured or sold by Unity Scientific or Process Sensors Corporation.

(bold emphasis).  KPM requests two specific edits to the proposed language in relation to Category 2.

First, KPM requests that the Court not limit this category of customers to only KPM customers as of the date of the Permanent Injunction Order.  There were numerous other customers and potential customers/contacts that have now been identified by KPM within the documents produced during discovery which the Defendants had contact with as KPM employees, and whose confidential information could have been transferred by the Defendants.  For that reason, the "catchall" provision of the permanent injunction should include any KPM customers or potential customers with whom any of the individual defendants, or any other Blue Sun or ITG employee(s) or agent(s) who previously worked at KPM, had access to confidential or proprietary information during their time at KPM, in addition to any KPM customers as of the date of the permanent injunction.  If the Court has any doubt as to the importance of including in the catchall category customers with whom the Defendants had contact while employed by KPM and not solely KPM's customers as of the date of the permanent injunction, KPM has assembled a non-exhaustive list of its customers that the individual defendants had contact with as KPM representatives, dating back to October of 2018, based on documents produced in this litigation.  This list shows over 200

additional KPM customers with whom the individual defendants communicated while at KPM, demonstrating the scope of harm that KPM could suffer in the absence of a robust catchall provision.  However, because the list includes KPM's confidential and proprietary information in the form of extensive customer identification that was not introduced at trial or used in any pretrial filings or depositions akin to those documents on Exhibit A, KPM understands that the Court would not include these customers in the list of customers explicitly named in the injunction.  KPM is willing to provide it to the Court *in camera* and to the Defendants on an attorneys' eyes only[1] basis under this Court's protective order (ECF No. 59).

Second, KPM requests that the permanent injunction not be limited to only the Defendants "offer[ing] to provide or provide[ing] or offer[ing] to sell or sell[ing]…any services or products…related to any Near Infra-Red analyzer *manufactured or sold by KPM or its predecessor in interest*." (emphasis added).  This language, in practice, would limit the injunction to only prohibiting the Defendants from offering (a) consumables for a Spectrastar and (b) PM service on a Spectrastar.  While the Defendants should be prohibited from providing any PM service on a Spectrastar and/or consumables for a Spectrastar, the injunction should also prohibit the Defendants from reaching out to KPM's customers that have a Spectrastar machine, which may be nearing the end of its life, and offering to sell that customer a Phoenix analyzer instead.  Therefore, KPM requests that the Court change the proposed language to allow KPM to pursue contempt remedies if any of the enjoined parties, including ITG:[2]

> offers to provide or provides or offers to sell or sells to a party that is a KPM customer as of *[the date of the Permanent Injunction Order], or to any KPM customer or KPM contact that the Defendants either had access to as KPM employees, or had ever communicated with as a KPM employee,* any services

---

[1] Given the dishonest conduct of the Defendants found by the jury, providing this list to the actual Defendants would heighten the risk that they would utilize it to violate the injunction.
[2] For easy reference, proposed additions are italicized.

7

or products *(including any Phoenix analyzers or other NIR analyzers manufactured or sold by Defendants)*, including but not limited to any maintenance, hardware, software or data, related to any Near Infra-Red analyzer manufactured or sold by KPM or its predecessors in interest, including but not limited to analyzers manufactured or sold by Unity Scientific or Process Sensors Corporation.

For the foregoing reasons, KPM respectfully requests that the Court's permanent injunction apply to all of the customers identified in the attached Exhibit A, and that the Court expand the limits of its proposed language for its second "catch all" category of customers to include all customers and contacts that the Defendants had access to and/or communicated with as KPM representatives and to expand the scope of the permanent injunction to prohibit the Defendants from offering to sell the Phoenix analyzer to any of KPM's customers.

## II. ATTORNEY'S FEES

KPM reiterates its request for the Court to grant its Motion for Attorneys' Fees and Costs in the amount articulated in Plaintiff's Reply in Support of its Motion at ECF No. 275. KPM, in the interest of streamlining the remaining post-trial issues in hopes of receiving a final judgment against the Defendants promptly, seeks the attorneys' fees and costs it has already presented to the Court on July 26, 2023 in the amount of $3,799,531 in attorneys' fees and $339,409.45 in costs. KPM does not waive its ability to seek its fees incurred to date in any later appellate proceeding or when otherwise appropriate.

It is without question that KPM has been successful on the majority of its claims asserted in its Complaint, and moreso now that the Court has awarded exemplary damages and indicated an intent to impose a permanent injunction. Not only did the Jury find that Defendants, Blue Sun Scientific, LLC ("Blue Sun"), Irvin Lucas ("Lucas"), Gajewski), Glenister, and Eilert all misappropriated trade secrets from KPM (ECF No. 230), but the Court has now also found that all of the above listed Defendants did so willfully and maliciously (ECF No. 297 at 20-30) and

awarded exemplary damages against Lucas and Gajewski for their misappropriation. ECF No. 297 at 32-33. In addition, the Court has ordered that the damages assessed against Defendant The Innovative Technologies Group & Co., Ltd. ("ITG") and Blue Sun be doubled under G. L. c. 93A, for their unfair and deceptive trade practices, generating a combined total of 6.6 million dollars in damages against the entity defendants and an additional $65,000 in damages against the Individual Defendants. The near-complete success on the merits on the claims asserted by KPM in the Complaint against the Defendants and the total amount of damages awarded to KPM ($6,665,000) further supports KPM's Motion for Attorneys' Fees and Costs (ECF No. 259) in that the amount of fees and costs incurred in pursuing this action were reasonable in light of KPM's success on its claims. *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 430-31 (2005) (result obtained is important factor in assessing reasonableness of requested fees and costs).

As previously argued in KPM's Motion for Attorney's Fees and Costs, attorney's fees are automatically awarded when violations of G. L. c. 93A have occurred (which is the case here against ITG and Blue Sun). Furthermore, each of the individual defendants entered into contracts with KPM whereby they agreed that "[i]n any action successfully brought by [KPM] against you…[KPM] shall also be entitled to recover from you its reasonable attorneys' fees and costs of the action." Trial Exhibits 158 at 4 (Glenister), 346 (Eilert), 349 (Lucas), and 353 (Gajewski). Finally, it is within the Court's discretion to award attorney's fees and costs to KPM from Blue Sun, Lucas, Gajewski, Glenister, and Eilert under either (or both) the Massachusetts Uniform Trade Secrets Act (G. L. c. 93 § 42C)[3] and the Defend Trade Secrets Act (18 U.S.C. §

---

[3] G. L. c. 93 § 42C states, in relevant part, "[t]he Court may award reasonable attorney's fees and costs to the prevailing party if: … (iii) willful and malicious misappropriation exists."

9

1836(b)(3)(D)[4]) now that the Court has found that each of these Defendants willfully and maliciously misappropriated KPM's trade secrets, and it should do so.

### III.  PREJUDGMENT INTEREST

Prejudgment interest should be awarded at 12% as to each of the Defendants on the non-exemplary portion of the damages for the reasons set forth in KPM's earlier memoranda addressing that issue.  ECF No. 253 at 20; ECF No. 272 at 17-19.  This prejudgment interest should run from the date of the filing of the Complaint (April 5, 2021) and apply to the compensatory damages that this Court found. G. L. c. 231 §6B.  The Defendants acknowledge that "prejudgment interest is only appropriate for compensatory damages."  ECF No. 264 at 17.

In this Court's memorandum analyzing the jury's verdict, this Court has already expressed on multiple occasions that the damages awarded by the jury are indeed properly categorized as "compensatory damages."  ECF No. 297 at 8 ("the Court finds that they jury intended for the Individual Defendants and the Corporate Defendants to be liable – *at least in terms of compensatory damages* – as follows…. KPM has rightly pointed out that these are the amounts that they are owed in terms of compensatory damages under a fair reading….") (emphasis in original); *id*. ("the jury intended for the total compensatory damages owed by each Defendant to be in the amounts owed listed in the table above."); *id*. at 12 ("the Court declines to remit the jury's compensatory damages award against ITG."); *id*. ("It is the Court's considered opinion that there was ample evidence in the trial record from which the jury could have rationally concluded that ITG owed KPM $1,800,000 in compensatory damages."); *id*. at 13 ("it was not irrational for the

---

[4] 18 U.S.C. § 1836(b)(3)(D) states, in relevant part, "[i]n a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may…if…the trade secret was willfully and maliciously misappropriated, award reasonable attorney's fees to the prevailing party."

10

jury to assign a higher total compensatory damages figure to ITG than to Blue Sun"); *id*. at 45 ("The compensatory damages that the jury awarded against the each of the Corporate Defendants (i.e., $1,500,000 against Blue Sun and $1,800,000 against ITG) did constitute KPM's 'actual damages' for purposes of 93A"). Because the Jury and the Court have already found that Blue Sun owes KPM $1.5 million, ITG $1.8 million, Lucas $20,000, Gajewski, $15,000, Glenister $10,000, and Eilert $2,500 in *compensatory damages*, then, under G. L. c. 231 §6B, an interest rate of 12% from April 5, 2021 through the date of final judgment, should be assessed against each of these amounts. KPM's calculation on the amount of interest that should be assessed against each of the Defendants is articulated in the Table appearing in Section IV below.

## IV.   JOINT AND SEVERAL LIABILITY

ITG should be liable not only for the compensatory and exemplary damages awarded against it in the amount totaling $3,600,000. It should also be liable for the total damages awarded against Blue Sun ($3,000,000) under either a veil piercing or vicarious liability theory. For this, KPM refers to its prior briefing on the issue. ECF No. 253 at 17-19.

As to the Individual Defendants, the damages should be treated severally such that each Individual Defendant is liable for the full amount set forth at ECF No. 297 at 12. The evidence at trial showed that different individual defendants engaged in different conduct with respect to different KPM customers, albeit as one overarching course of misconduct among all the Defendants, and therefore each Individual Defendant should be responsible for satisfying his or her own portion of the actual damages found by the jury, prejudgment interest thereon, plus exemplary damages applied by the Court in the case of Lucas and Gajewski. Together with prejudgment interest, these amounts are as follows, applying April 26, 2024 as the date of a potential final judgment for the purpose of interest calculation.

| Defendant | Actual Damages | 12% Prejudgment Interest on Actual Damages From April 5, 2021 - April 26, 2024 | Exemplary Damages | Total Judgment Before Attorneys' Fees |
|---|---|---|---|---|
| Blue Sun | $1,500,000 | $550,472.28 | $1,500,000 | $3,550,472.28** |
| ITG | $1,800,000 | $660,566.74 | $1,800,000 | $4,260,566.74 |
| Irvin Lucas | $20,000 | $7,339.63 | $10,000 | $37,339.63 |
| Robert Gajewski | $15,000 | $5,504.72 | $7,500 | $28,004.72 |
| Rachael Glenister | $10,000 | $3,669.82 | N/A | $13,669.82 |
| Arnold Eilert | $2,500 | $917.45 | N/A | $3,417.45 |

** Blue Sun's damages owed jointly and severally by ITG

Attorneys' fees, however, should be assessed jointly and severally against all Defendants and not apportioned. *Haddad Motor Grp., Inc. v. Karp, Ackerman, Skabowski & Hogan, P.C.*, 603 F.3d 1, 10 (1st Cir. 2010) (no apportionment necessary between 93A and non-93A claims when each concern the same facts and injury); *Incase, Inc. v. Timex Corp.*, 421 F. Supp. 2d 226, 244 (D. Mass. 2006), aff'd, 488 F.3d 46 (1st Cir. 2007) (same); *Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 430-31 (2005) (same, noting that "the legal effort to establish the two classes of claims were virtually the same."); *Azar v. Quinn*, No. 88604, 1994 WL 879709, *9, *11 (Mass. Super. Jan. 1994) ("where several defendants have participated through their own individual acts in a single wrong, liability for compensatory damages, attorneys' fees, and costs is joint and several."). KPM respectfully requests that the Court enter final judgement against each of the defendants in accordance with its calculations appearing in the Table above, and enters judgment for its attorney's fees and costs jointly and severally across all of the Defendants.

4890-1728-8120, v. 3

**Dated:** April 23, 2024                                    Respectfully submitted,

                                                                              **PLAINTIFF,**
                                                                              **KPM Analytics North America, Corp.**

                                                                              By its attorneys,

                                                                              */s/ Scott R. Magee*
                                                                              Scott R. Magee (BBO# 664067)
                                                                              Paige K. Zacharakis (BBO# 699108)
                                                                              Morse, Barnes Brown, and Pendleton, P.C.
                                                                              480 Totten Pond Road, 4th Floor
                                                                              Waltham, MA 02451
                                                                              (781) 622-5930
                                                                              smagee@morse.law
                                                                              pzacharakis@morse.law

                                                                              Kevin R. Mosier (BBO# 703739)
                                                                              Sunstein LLP
                                                                              100 High Street
                                                                              Boston, MA 02110
                                                                              Tel: (617) 443-9292
                                                                              jgutkoski@sunsteinlaw.com
                                                                              kmosier@sunsteinlaw.com

## CERTIFICATE OF SERVICE

    I hereby certify that on this 23rd day of April, 2024, a true and exact copy of the foregoing was served on all counsel of record through the Court's ECF system.

                                                                               /s/ *Scott R. Magee*