UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KPM ANALYTICS NORTH AMERICA
CORPORATION,

      Plaintiff,

    v.

                           Civil Action No.
                           21-10572-MRG

BLUE SUN SCIENTIFIC, LLC, THE
INNOVATIVE TECHNOLOGIES GROUP &
CO., LTD., ARNOLD EILERT,
ROBERT GAJEWSKI,
RACHAEL GLENISTER, AND
IRVIN LUCAS,

      Defendants.

**GUZMAN, D.J.**

**MEMORANDUM & ORDER**

## I.   Introduction

   This Memorandum and Order addresses KPM's motion for
attorneys' fees and costs.  [ECF No. 259].  Familiarity is
assumed with this Court's prior post-trial Memorandum and Order
[ECF No. 297], particularly with respect to previously defined
terms.

   After careful consideration of the parties' filings and oral
argument [e.g., ECF No. 279; ECF No. 303], the Court awards KPM
reasonable attorneys' fees and reasonable costs as follows:

- **Total Reasonable Attorneys' Fees Due KPM:**

    o $1,519,800

- **Total Reasonable Costs Due KPM:**

    o $271,530

Each of the following Defendants shall owe the following amounts towards these totals:

| Defendant | Amount of Reasonable Attorneys' Fees Owed | Amount of Reasonable Costs Owed |
|---|---|---|
| Blue Sun | $682,301.20 | $121,446 |
| ITG | $833,923.80 | $148,434 |
| Gajewski | $1,125 | $500 |
| Eilert | $200 | $100 |
| Glenister | $750 | $300 |
| Lucas | $1,500 | $750 |
| Total Due KPM | **$1,519,800** | **$271,530** |

The Court's reasoning for these determinations follows.

II.  **KPM's Request**

With its motion (and supplemental briefing), [ECF No. 259; ECF No. 299 at 8-10] KPM has asked this Court to award **$3,799,531** in purportedly reasonable attorneys' fees.  [ECF No. 299 at 8].  KPM has also asked this Court to award **$339,409.45** in purportedly reasonable costs.  [Id.]

    a. **KPM's Grounds for Requesting Attorneys' Fees & Costs**

KPM argues that there are three independent grounds that entitle it to reasonable attorneys' fees and costs.  Notably, neither the Individual Defendants nor the Corporate Defendants

have meaningfully[1] challenged these assertions; meaning that the real crux of the matter will be *exactly how much* of KPM's requested sums the undersigned determines to be reasonable. However, the Court will briefly explain why KPM is entitled to at least some amount of attorneys' fees and costs.

The first basis for KPM's claimed entitlement is the fact that Chapter 93A -- the state statute under which it prevailed against Blue Sun and ITG -- provides a mechanism by which plaintiffs automatically recoup reasonable attorneys' fees and costs in certain circumstances. See Mass. Gen. Laws ch. 93A, § 11 (providing in part that, "[i]f the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner ***shall***, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs incurred in said action." (emphasis added)).

Second, each of the Individual Defendants signed employment agreements with KPM that had a provision relating to the award of reasonable attorneys' fees and costs. [See, e.g., ECF No. 299 at 9 (quoting the Individual Defendants' employment

---

[1] Although it is true that the Individual Defendants and the Corporate Defendants seek the Court's outright denial of KPM's request [ECF No. 266 at 5-6; ECF No. 268 at 20], neither have substantively rejected the notion that KPM is owed at least some amounts of reasonable attorneys' fees and costs under Chapter 93A and under the Individual Defendants' employment agreements.

agreements as containing the following provision: "[i]n any action successfully brought by [KPM] against you...[KPM] shall also be entitled to recover from you its reasonable attorneys' fees and costs of the action." (alteration in original))].

Third, KPM points out that because this Court has found that Blue Sun, and each of the Individual Defendants willfully and maliciously misappropriated certain KPM trade secrets, the undersigned now has the discretion under both the Massachusetts Trade Secrets Act and the federal Defend Trade Secrets Act to award reasonable attorneys' fees and/or costs to KPM as the "prevailing party."  See 18 U.S.C. § 1836(b)(3)(D) ( "In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court ***may***...if...the trade secret was willfully and maliciously misappropriated, ***award reasonable attorney's fees*** to the prevailing party" (emphasis added)); M.G. L. c. 93 § 42C ("The court ***may*** award ***reasonable attorney's fees and costs*** to the prevailing party if: (i) a claim of misappropriation is made or defended in bad faith, (ii) a motion to enter or to terminate an injunction is made or resisted in bad faith, ***or (iii) willful and malicious misappropriation exists."*** (emphasis added)).  To be sure, only the first and second of these three theories of recovery for attorneys' fees point towards a mandatory award, since neither the federal nor the state trade secret statute requires this

4

Court to impose any attorneys' fees or costs; it only empowers it to do so in its discretion.

## III.   Corporate Defendants' and Individual Defendants' Responses

The Individual Defendants and the Corporate Defendants have lodged a host of objections to KPM's request.  [See, e.g., ECF No. 266; ECF No. 268].  For example, they both take issue with the degree to which KPM redacted its submitted legal billing invoices as originally filed. [E.g., ECF No. 268 at 2-11].  Although KPM later submitted versions of its billing invoices that contained significantly fewer redactions,[2] it was clear from oral argument that the level of redactions remains a point of contention.  Relatedly, the Individual Defendants and the Corporate Defendants also complain of purported "block billing"[3] by KPM's attorneys [ECF No. 268 at 10-13], and of the

---

[2] Apparently recognizing that the amount of redactions contained in its first submissions rendered them nearly undecipherable, KPM chose to attach a new, less redacted copy of its legal invoices in its reply brief.  [ECF No. 275-1].  The Court opted to review this submission instead, although it notes and has taken into account that this was inefficient and did to some extent limit the Individual Defendants and the Corporate Defendants' ability to oppose the KPM's motion in their initial opposition briefs.

[3] This term refers to "the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Conservation Law Found., Inc. v. Patrick, 767 F. Supp. 2d 244, 253 (D. Mass. 2011).  It is a method that is "disfavor[ed]" by other sessions of this Court and it is disfavored in this one, as well.  See id. (citation omitted).

5

purportedly "vague" nature of many of the submitted time entries. [ECF No. 268 at 12-14]. They also argue that many of the billing entries reveal that KPM's attorneys spent unreasonable amounts of time on certain tasks and/or duplicated efforts, etc. [ECF No. 268 at 14-18].

In terms of apportionment, the Individual Defendants essentially ask this Court to index any fees/costs amounts that they will be made to pay to the degree to which they were found liable and also ask that this Court consider their relative abilities to pay such an award. [Id. at 18-20]. Somewhat relatedly, the Corporate Defendants ask the Court to deny the fees/costs request in its entirety relative to ITG, principally because ITG was found not to have misappropriated KPM's trade secrets. [ECF No. 266 at 5-6].[4]

## IV.   Attorneys' Fees Analysis

### a. Legal Framework

As a threshold matter, the Court must determine the appropriate method for evaluating the reasonableness of KPM's attorneys' fees request. The parties disagree as to the

---

[4] Although the Jury did not find ITG liable for trade secret misappropriation, it did render an advisory opinion that ITG committed a Chapter 93A violation [ECF No. 230 at 7] -- a finding that this Court later independently ratified. [ECF No. 297 at 37]. Thus, it is not the case that ITG is somehow immune from liability from an imposition of reasonable attorneys' fees and reasonable costs. See Mass. Gen. Laws ch. 93A, § 11.

controlling method -- with Individual Defendants[5] and the
Corporate Defendants[6] arguing that the so-called lodestar
approach controlled -- and KPM urging this Court to reject the
lodestar method in favor of a more undefined, "holistic"
approach.[7]  After careful consideration of this issue, the Court
will, as other sessions of this Court have done in arguably
similar cases, apply the lodestar approach.  See, e.g.,
BioPoint, Inc. v. Dickhaut, No. 20-10118-RGS, 2023 U.S. Dist.
LEXIS 118565, at *1 (D. Mass. July 11, 2023) ("Courts in the
First Circuit use the lodestar method to determine a reasonable
attorney fee." (citation omitted)); Red Wolf Energy Trading, LLC
v. BIA Capital Mgmt., LLC, No. 19-10119-MLW, 2022 U.S. Dist.
LEXIS 194402, at *7 (D. Mass. Oct. 25, 2022).  Moreover, the
Court notes that the lodestar method is also permitted in
Massachusetts state courts -- meaning that this approach is
appropriate in light of the state law claims that were at issue
in this case.  See, e.g., Simmons v. Pilaster Digit. LLC, No.

---

[5] [ECF No. 268 (making repeated references to the lodestar
approach)].

[6] [ECF No. 266 at 2-3].

[7] [ECF No. 283 at 81 (KPM's counsel stating that, "[i]n any
event, the Supreme Court of Massachusetts has made it clear that
the Court is to consider the request as a whole. It's not to
parse out individual entries. That approach is more of what's
known as the lodestar approach, and it's clear from case law
that the lodestar approach is, quote, disfavored under the
holistic approach that is favored in these instances."]

19-40072-DHH, 2021 U.S. Dist. LEXIS 267803, at *10 (D. Mass. Nov. 29, 2021) (observing that "[b]oth the First Circuit and Massachusetts courts generally follow the so-called 'lodestar' method for evaluating the reasonableness of fee application" (citation omitted)).

As the First Circuit has explained, the lodestar approach functions as follows:

- [A] district court first calculate[s] the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are excessive, redundant, or otherwise unnecessary.

- The court then determines a reasonable hourly rate or rates -- a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence.

- Multiplying the results of these two inquiries yields the lodestar amount.

- The court may then adjust the potential award based on factors not captured in the lodestar calculation.

Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015) (internal citations and quotation marks omitted) (bullet points added).

Under the lodestar approach, KPM bears the burden of proving that both the number of hours billed and the hourly rates charged are reasonable. Creative Playthings Franchising Corp. v. Reiser, No. 09-11456-DLC, 2015 U.S. Dist. LEXIS 101063, at *7 (D. Mass. Aug. 3, 2015) (citations omitted).  Very importantly, "the burden is on the fee applicant to establish his entitlement

to reasonable fees through submission of evidence" and this Court "is not in the business of estimating hours." <u>Janney Montgomery Scott LLC v. Tobin</u>, 692 F. Supp. 2d 192, 199 (D. Mass. 2010) (citation omitted). Although there is a "strong presumption" that the lodestar represents a "reasonable" fee, the parties opposing a fee application may present arguments and evidence that justify a downward adjustment of the lodestar amount. <u>Creative Playthings Franchising Corp.</u>, 2015 U.S. Dist. LEXIS 101063, at *7 (citations omitted).

Another threshold issue is whether the Court should consider the attorneys' fees request on a claim-by-claim basis. The Court will *not* do so here since it finds that each of KPM's claims essentially involved the same operative set of facts and sought to remedy the same injury. <u>See, e.g.</u>, <u>Haddad Motor Grp., Inc. v. Karp, Ackerman, Skabowski & Hogan, P.C.</u>, 603 F.3d 1, 10 (1st Cir. 2010) ("Under Massachusetts precedent, fees and costs for non-Chapter 93A claims are recoverable provided that those claims and the Chapter 93A claims arise from a 'single chain of events'... (citations omitted)); <u>Hanover Ins. Co. v. Sutton</u>, 705 N.E.2d 279, 296 (Mass. App. Ct. 1999) (reasoning that since "a single chain of events gives rise to both a common law and a Chapter 93A claim, apportionment of legal effort between the two claims is not necessary..." (citation omitted)).

As the trial judge, the undersigned is deeply familiar with the facts of this case and has easily concluded that all of the claims that were put to the Jury arose from a single chain of events. Accordingly, this is not an instance where a claim-by-claim analysis of the legal fees would be appropriate.

### b. <u>Application -- Reasonableness of Hours Spent</u>

As noted above, step one of the lodestar approach requires the Court to determine the number of hours reasonably spent less those hours it finds to be excessive, redundant, or otherwise unnecessary. <u>See</u> <u>Matalon v. Hynnes</u>, 806 F.3d at 638. The "usual starting place" for this inquiry is "the billing record supplied by the plaintiffs." <u>Fryer v. A.S.A.P. Fire and Safety Corp.</u>, 750 F. Supp. 2d 331, 335 (D. Mass. 2010) (citation omitted). When determining the number of reasonable hours spent, the Court "scrutinizes 'the individual fees for the contemporaneousness and sufficient detail required to justify the charge.'" <u>Janney</u>, 692 F. Supp. 2d at 196 (citation omitted). Then, the court subtracts the "duplicative, unproductive, or excessive hours." <u>Gay Officers Action League v. Commonwealth of Puerto Rico</u>, 247 F.3d 288, 295 (1st Cir. 2001).

Before the Court delves into its analysis of the billing record that KPM has supplied [i.e., ECF No. 275-1], it will briefly describe the nature of this case, so that the legal

billings can be appreciated and evaluated in their proper context.

This complex action has run for over three years.  Indeed, the first series of KPM's submitted legal billing entries is from April 2021.  [ECF No. 275-1 at 2-9].  From the start, this case has been a complex and contentious affair marked by bitter disputes often requiring Court involvement.  A few examples illustrate this point.  KPM sought -- and obtained -- a preliminary injunction in the second half of 2021.  [ECF No. 94; ECF No. 120].  The discovery process that followed was wide-ranging and time-consuming.  For example, the parties took some twenty-one total depositions -- generating over one hundred deposition exhibits.  [ECF No. 259 at 11].  In addition to navigating a vast ocean of fact discovery, KPM's lawyers also engaged in extensive expert discovery relative to both liability and damages.  KPM notes that its attorneys reviewed "tens of thousands" of documents and responded to some seventy-five interrogatory and document requests.  [Id.]  An additional layer of discovery-phase complexity was driven by that fact that, as KPM points out, large swaths of relevant material involved the Individual Defendants' use of deliberately false email aliases. [Id.]

In addition to discovery, the parties also engaged in extensive motion practice -- including, just for example, the

11

defendants' motions to dissolve the preliminary injunction and motions for summary judgment. [ECF No. 148 (both the Individual Defendants and the Corporate Defendants' moving to dissolve the Preliminary Injunction); ECF No. 144 (Defendant ITG moving for summary judgment in its favor)]. The Court ruled in KPM's favor on both scores. [ECF No. 165]. The case culminated in a nine-day jury trial on seven, legally and factually complex counts. Nine live witnesses testified, and two witnesses testified by deposition. In the end, the Jury's verdict represented a near-total victory for KPM. [ECF No. 297 at 5-6 (the Court describing the outcome at trial)]. Indeed, the Court finds that KPM's attorneys provided their client with able representation prior to, during, and through trial.

However, careful review of the billing record submitted by KPM reveals some material deficiencies that weigh against a finding that the numbers of hours spent were reasonable. The Court has three specific areas of concern: first, the Court has been presented with a "data dump"[8] of sequential legal invoices

---

[8] See, e.g., Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 837 N.E.2d 1121, 1137 (Mass. 2005) (finding that the trial court had been presented with what amounted to a "data dump" in connection with an attorneys' fees application where the plaintiffs had submitted "eight affidavits, three of attorneys who had worked on the case and five of attorneys familiar with the reputations of the principal attorneys who had worked on the case; sixty pages of invoices from two law firms and two expert witnesses; and 458 pages of detailed computerized daily time sheets and records of disbursements generated by thirty-seven

that are voluminous and written for a much different audience
(i.e., a client, and not the Court) and which are presented
without sufficient summaries and explanations.  Second, a
significant amount of the billing entries are overly vague
and/or heavily redacted and were presented without a sanitized
summary.  Third, there was a considerable amount of block
billing contained within the legal invoices.  Each of these
factors weigh against a finding that the number of total hours
spent was reasonable and therefore warrant a globalized
reduction to the requested attorneys' fees amount.

### i. **Data Dump**

The Court understands that legal billing invoices are, of
course, primary evidence of KPM's entitlement to an amount of
attorneys' fees.  However, merely presenting some 400 pages of
invoices [ECF No. 275-1] without any meaningful summary charts
or explanations onto the docket is not a particularly useful way
to carry the burden of showing entitlement to the total amount
of attorneys' fees requested.  See Janney Montgomery Scott LLC
v. Tobin, 692 F. Supp. 2d at 199.  Indeed, as the Court noted in
Fryer, the billing record is the "usual ***starting place***" for the
Court's analysis of an attorneys' fees request.  750 F. Supp. 2d

---

individual 'timekeepers' at the plaintiffs' primary law firm.
The hundreds of pages of routine, computerized time sheets were
not summarized in any meaningful fashion.")

at 335 (emphasis added).  It should not also be the ending
place.

The Court considers KPM's sequential submissions of
invoices to be a "data dump" -- a form of submission that is
disfavored by other sessions of this Court and by Massachusetts
state courts.  See, e.g., Twin Fires, 837 N.E.2d at 1137; Full
Spectrum Software, Inc. v. Forte Automation Sys., 125 F. Supp.
3d 301, 304 (D. Mass. 2015) ("Due to the extent of the
redactions contained in the billing records, there is simply no
way for this Court to competently determine whether the tasks
and time billed by counsel were reasonable. Full Spectrum's
offer to provide unredacted copies for in camera review is not
sufficient, either. Even if the Court were to review unredacted
invoices, the documentation still resembles the 'data dump'
confronted by the Massachusetts Supreme Judicial Court in Twin
Fires, where the court affirmed a 45% reduction in the requested
award.")

The limited utility of this data dump had a material effect
on the Court's ability to evaluate the reasonableness of KPM's
requested award.  Perhaps most significantly, the Court is not
able to easily discern with any precision the exact number of
purportedly reasonable hours at purportedly reasonable rates
since such aggregate figures were seemingly not calculated and
presented in KPM's filings.  Whereas, for example, the Court in

14

BioPoint was able to state with precision how many hours had been billed to each major portion of the case -- this Court is left guessing as to exactly how many billed hours KPM believes were reasonable.  See BioPoint, Inc. v. Dickhaut, No. 20-10118-RGS, 2023 U.S. Dist. LEXIS 118565, at *2 (D. Mass. July 11, 2023) ("BioPoint seeks fees for 3,690.60 hours of work, including 2,671.2 hours in pre-trial work and 1,019.4 hours in jury trial, bench trial, and post-trial work").  Indeed, this Court  "is not in the business of estimating hours."   Janney, 692 F. Supp. 2d at 199.

In addition to hindering the Court's ability to assess the exact number of purportedly reasonable hours, the lack of any charts and summaries also prevents the Court from having a real sense as to whether the amount of work being conducted was reasonable given the context of the various phases of the case's lifecycle.  For example, it would have been helpful if KPM had provided some form of a graph showing trendlines of legal billings in relation to the different phases of the case (e.g., discovery, trial, etc.)  This factor weighs against a finding that the number of hours was reasonable. See, e.g., Full Spectrum, 125 F. Supp. 3d at 304 ("Given its limited judicial resources, it is not for the Court 'to sort out the plaintiff's perplexing submission' in support of a fee request." (citation omitted)).

15

## ii. **Vague/Heavily Redacted Entries**

Another problem that plagued KPM's submission was the presence of a non-negligible number of vague and/or heavily redacted billing entries.  Vague, boilerplate billing entries are disfavored.  See, e.g., Janney, 692 F. Supp. 2d at 199 ("This Court discounts time billed that is vague and lacks sufficient detail in its description.  [Attorney's] billing description fails for lack of detail and vagueness.  A description reading 'Review arbitration issue' is hardly sufficient for the purpose of awarding fees." (citations omitted)).

In terms of redactions, the Court of course recognizes the need to make certain redactions on the basis of work-product and/or attorney-client privilege issues, but there is still an overarching obligation to provide the Court with sufficient detail about the requested attorneys' fees.  See, e.g., Full Spectrum, 125 F. Supp. at 304 ("The Court recognizes that it is the prerogative of the fee applicant to redact information contained in legal bills on the basis of work-product or attorney-client privilege.  However, when it comes to a fee request, a plaintiff 'has an obligation to submit sufficient documentation to enable the judge to evaluate the hours spent on particular aspects of the case or the precise nature of the work.'" (citations omitted)).

16

Here, although some of the submitted billing entries were sufficiently detailed,[9] a non-negligible amount of KPM's entries were either too heavily redacted and/or too vague to pass muster.  Several illustrative examples prove the point.  For example, during the month of trial, a KPM attorney billed 12.8 hours for an entry that reads: "Exhibit list generation; multiple messages with team and client; assemble materials; emails to opposing counsel."  [ECF No. 275-1 at 334].  An entry from April 2022 for 9.40 hours contains the following description: "Deposition planning and [scheduling]; multiple doc review and production issues." [Id. at 391].  A 10.40 hour billing entry from February 2023 reads simply, "Prepare for hearing."  [Id. at 322].  Finally, a September 2022 entry for 8.80 hours just reads, "Work on Motions." [Id. at 405].

---

[9] Just by way of example, one KPM attorney's 1.80 hour entry in March 2023 is described as follows:

> Develop trial and witness strategy; develop strategy for identifying and admitting exhibits at trial; correspondence concerning trial logistics, including hotel accommodations, working space, trial hot seat operators, and printing needs; develop strategy concerning trial brief and joint pre-trial memorandum; correspondence with opposing counsel concerning pre-trial schedule; correspondence with damages expert concerning supplementation of damages opinions[.]

[ECF No. 275-1 at 328].

Redacted entries provided without any sanitized summaries weaken KPM's submission somewhat, too.  Three illustrative examples prove this point.  On July 12, 2021, a 5.9 hour billing entry reads: "Prepare for and call with E. Olsen; checklist to team; attention to proof regarding [Redacted]."  [Id. at 24].  A 4.30 hour entry from October 2021 reads, "Attention to discovery responses and docs RE: [Redacted]." [Id. at 46].  A July 2021 entry for 11.2 hours bears the following description: "Prepare for and attend [redacted]; prepare for Blue Sun deposition [redacted]" [Id. at 23].  Although the Court certainly understands the need for certain material to be redacted, it is unable to fully assess the reasonableness of the hours spent without any meaningful, accompanying sanitized explanations. See Full Spectrum, 125 F. Supp. 3d at 304 (finding that an attorneys' fees application was weakened by the fact that the plaintiff "has filed nearly 150 pages of heavily redacted, chronological invoices. No meaningful attempt has been made to summarize the content of the billing records, organize them by subject matter, or provide a total figure for the number of hours spent on the case by each attorney.")

### iii. **Block Billing**

Another deficiency with KPM's submission was the too common use of block billing.  Examples of this practice included:

- A 7.85 hour entry from May 2021 described as including, "Summarize research findings and email to S. Magee and J. Gutkoski; Review Motions to Dismiss and Opposition to Emergency Motion for Expedited Discovery; Call with S. Magee and J. Gutkoski regarding Motions to Dismiss and Opposition to Cross Motion to Stay Discovery; Legal research – [Redacted]; Client call with J. Gutkoski and S. Magee regarding Motions to Dismiss and Opposition to Cross Motion to Stay Discovery; Legal research – expedited discovery Legal research – [Redacted] discovery." [ECF No. 275-1 at 81].

- A 5.9 hour entry from July 2022 described as including, "Edit opposition to motion to compel; work on exhibits for motion to compel; contact clerk regarding motion to seal; review orders regarding sealing and redaction; emails with J. Gutkoski regarding opposition; redact brief; emails with clerk regarding same; finalize and serve redacted and unredacted versions of opposition to motion to compel." [Id. at 213].

- An 8.7 hour entry from April 2023 described as "Research and develop strategy for trial brief, jury instructions, verdict form, voir dire questions, and motions in limine; draft, finalize, and file same; review and analyze the defendants' trial brief, jury instructions, voir dire questions, and motions in limine; research, analyze, and develop strategy for oppositions to the defendants' motions in limine." [Id. at 338].

While not fatal to KPM's request, the use of block billing hinders the Court's ability to fully assess the reasonableness of the hours spent, yet another factor weighing against the requested award.  See, e.g., Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340 (1st Cir. 2008) (finding no error in lower court's global reduction due to the presence of block billing).

c. **Application -- Reasonable Hourly Rates**

The next step in the lodestar analysis requires the Court to determine reasonable hourly rates based on "prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." See, e.g., Gay Officers Action League, 247 F.3d at 295 (citations omitted).  The First Circuit has explained that reasonable hourly rates are calculated by considering "such factors as the type of work performed, who performed it, the expertise that it required, and when it was undertaken." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950-51 (1st Cir. 1984).

Although the Court notes that neither the Individual Defendants nor the Corporate Defendants appear to have challenged the reasonableness of KPM's lawyers' hourly rates [see ECF No. 266; ECF No. 268], the Court still needs to assure itself that these rates are reasonable.  See, e.g., Janney, 692 F. Supp. 2d 192, 200 (D. Mass. 2010) (noting that the Court had engaged in a "careful review" of submissions regarding the issue of reasonable rates in an instance where it "appear[ed] that [the opposing party] d[id] not contest[] the hourly rates.")

The Court will start by looking at who performed the work. KPM avers that it was primarily represented by four different attorneys during the lifecycle of this case: Mr. John Gutkowski,

20

Mr. Scott Magee, Ms. Paige Zacharakis, and Mr. Kevin Mosier. [ECF No. 259 at 15]. Unsurprisingly, other attorneys worked on the case on a much less frequent, as-needed basis. [Id.] As of the time of KPM's motion [ECF No. 259], the following attorneys had represented KPM in this case at the following hourly rates[10]:

| Name and Title | Law Firm Name | Hourly Billing Rate |
|---|---|---|
| John Gutkoski, Partner | Sunstein | $650-675 |
| Scott Magee, Partner | Morse | $495-555 |
| Paige Zacharakis, Associate | Morse | $330-370 |
| Kevin Mosier, Associate | Sunstein | $505 |
| Jacqueline Salwa, Associate | Sunstein | $435 |
| Katherine Soule, Associate | Sunstein | $505 |
| Bryan Harrison, Associate | Sunstein | $605 |
| Joseph Marrow, Partner | Morse | $620 |
| Matthew Mitchell, Partner | Morse | $545 |
| Omar Wadhwa, Partner | Cesari and McKenna, LLP | $500 |
| Matthew McCloskey, Partner | Cesari and McKenna, LLP | $495 |

After careful review of the primary attorneys' background and experience -- coupled with its assessment of their performance at trial -- the Court easily concludes that these lawyers had the appropriate level of expertise to handle this type of complex civil litigation. [See, e.g., ECF No. 260-1; ECF No. 261-1]. This finding weighs in favor of a finding that the requested number of hours was reasonable. Further, the

---

[10] [ECF No. 259 at 15-16].

Court credits KPM's analysis and argument that the hourly rates charged were appropriate and comparable to, if not lower than, those charged by similar commercial law firms in the community. [See, e.g., ECF No. 259 at 16-17; ECF No. 260 at 5-6].  Finally, the Court finds that the rates charged were commensurate with the skill of the attorneys, who like the attorneys in the BioPoint case, have "professional profiles [that] reflect extensive experience and credentials."  See 2023 U.S. Dist. LEXIS 118565, at *4.

For all of these reasons, the Court finds that the hourly rates charged by KPM's attorneys in this case were reasonable and that no reductions are warranted on the basis of the rates charged.

### d. Total Amount of Attorneys' Fees Awarded

Applying the lodestar approach, the Court has essentially concluded that, on the one hand, KPM's attorneys provided their client with effective, diligent and ultimately successful legal counsel.  On the other hand, there were deficiencies in KPM's attorneys' fees submission that made it difficult for the Court to fully assess their request.  Bearing in mind that KPM bore the burden of showing its entitlement to this attorneys' fees award, the Court has determined that an across-the-board deduction is appropriate.  Accordingly, the Court will impose an approximately 60 percent global reduction of KPM's requested

22

attorneys' fees amount (i.e., $3,799,531) such that KPM is due a total of **$1,519,800** in attorneys' fees.  This sort of global reduction based on submission deficiencies are not without precedent in this Court.  See, e.g., Full Spectrum, 125 F. Supp. 3d at 306 ("In light of the foregoing, the Court concludes that an award of $166,162.08 in fees (50% of the fees request)...is reasonable"); Benchmark Techs., Inc. v. Yuqiang Tu, No. 22-10227-LTS, 2023 U.S. Dist. LEXIS 93512, at *9 (D. Mass. May 30, 2023) ("Accordingly, the Court will apply an across-the-board 50 percent reduction to the award of fees and costs..."). Who will pay what of this total is described below.

## V. Costs

With respect to costs, KPM argues that they are entitled to a purportedly reasonable sum of $339,409.45.  [ECF No. 299 at 8]. In the affidavits submitted in conjunction with its initial motion [ECF No. 259], KPM sought a purportedly reasonable sum of $314,167 and provided a helpful summary chart showing how they arrived at that figure (reproduced here):

| Cost Category | Sum of Cost |
|---|---|
| E-Discovery Fees | $78,234 |
| Deposition and Transcript Fees | $29,577 |
| Printing and Copying Fees | $21,687 |
| Expert Fees – Mr. Neil Zoltowski | $127,620 |
| Trial Presentation Technician Fees | $36,683 |
| Shipping Fees | $1,026 |
| Travel and Lodging Fees | $19,340 |
| Total | **$314,167** |

[See e.g., ECF No. 260 at 7].

However, in their reply to the Defendants' opposition briefs, KPM increased the total amount of purportedly reasonable costs sought to $339,409.45.  [ECF No. 275 at 12].  Rather than showing the Court how that number increased, KPM merely attached additional invoices and explained that the new total reflected purportedly reasonable costs that had been incurred in the interim period between the briefs.  However, no such helpful cost breakdown chart was provided.

Upon review of both the cost breakdown chart contained in their initial filings [e.g., ECF No. 260 at 7] coupled with a review of the costs-related invoices themselves, the Court finds that these costs *categories* were each generally reasonable, especially given the length and complexity of this litigation. However, the Court is skeptical of, among other things, the high e-discovery fees.  Indeed, some of the e-discovery-related invoices are vague and/or contain technical terminology that is difficult for the Court to fully understand.

Just by way of example, one e-discovery line item from March 2023 for $2,067.50 (among several other, similar ones) is described as "Host files in Insight repository for March 2023." [ECF No. 260-2 at 345].  Another entry from April 2022 for $144.00" is described as "TIFF conversion of 322 native electronic files with text and metadata extraction."  [Id. at

24

334].  The lack of plain English summaries of these sorts of charges weighed against a finding that the requested amount was reasonable.

With respect to the expert-related fees, the Court certainly recognizes their value in this complicated case. However, the Court finds that certain of the expert-related invoices were too vague for the Court to fully assess.  For example, one invoice from March 2023 for $3,282.50 was composed of seven separate expert billing entries where the only descriptors used were various combinations of the words, "[d]iscussions," "[d]ocument [r]eview," and "[a]nalysis."  [Id. at 301].

For all of these reasons, the Court will apply an approximately 20 percent global reduction of KPM's requested costs; such that KPM shall be due a total of **$271,530**.  Who will pay what of this total is described below.

## VI.  **Allocation**

With respect to who will pay what of these reasonable attorneys' fees and costs, the Court will start with assigning the amounts that each of the Individual Defendants will be made to contribute.  As a starting point, the Court finds that they each earn modest salaries.  [ECF No. 268 at 21].  Moreover, the Court recognizes that each will already have to pay varying amounts of compensatory damages and that Lucas and Gajewski will

have to pay additional amounts of punitive damages.  This Court
may consider a party's ability to pay when assigning liability
for reasonable attorneys' fees and costs.  See e.g., Andrade v.
Jamestown Hous. Auth., 82 F.3d 1179, 1193 (1st Cir. 1996) ("Once
it has calculated the lodestar for a prevailing defendant, the
district court may deny or reduce that amount after considering
the plaintiff's financial condition" (citation omitted)).

That said, the fact remains that each of the Individual
Defendants signed an employment agreement that explicitly
provided for KPM's ability to recover from them reasonable
attorneys' fees and costs in the event of a successful action
being brought against them.  [See, e.g., ECF No. 299 at 9].
Therefore, they must be made to contribute some meaningful
amount towards the reasonable attorneys' fees and costs totals
that have been determined.  In keeping with the spirit of the
Jury's assignment of different compensatory damages amounts
based on each of their varying levels of liability in the case,
the Court will likewise structure their required contributions
towards the attorneys' fees and costs with Lucas paying the
most, Gajewski paying second most, Glenister paying third most,
and Eilert paying the least of the four.

With respect to the Corporate Defendants, the Court finds it
reasonable to assign Blue Sun with approximately 45 percent of
the remaining reasonable attorneys' fees and costs -- and to

26

assign ITG with 55 percent of those totals.  This division is in approximately direct proportion with the Jury's assignment of compensatory damages against each of the Corporate Defendants at trial.  [See ECF No. 296 (the Court interpreting the Verdict Form as finding that Blue Sun was liable for $1,500,000 in compensatory damages and ITG was liable for $1,800,000 in compensatory damages)].

   Accordingly, the Individual Defendants and the Corporate Defendants shall be liable as follows:

| Defendant | Amount of Reasonable Attorneys' Fees Owed | Amount of Reasonable Costs Owed |
|---|---|---|
| Blue Sun | $682,301.20 | $121,446 |
| ITG | $833,923.80 | $148,434 |
| Gajewski | $1,125 | $500 |
| Eilert | $200 | $100 |
| Glenister | $750 | $300 |
| Lucas | $1,500 | $750 |
| Total Due KPM | **$1,519,800** | **$271,530** |

**VII.   Conclusion**

     For the foregoing reasons, KPM's Motion for Attorney's Fees and Costs [ECF No. 259] is **granted in part** and **denied in part**.


     **SO ORDERED.**
Dated: October 10, 2024

                              /s/ Margaret R. Guzman
                              MARGARET R. GUZMAN
                              United States District Judge